## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| EVAN BRIAN HAAS, MICHAEL SHAHBAZI, | § § § | Chapter 7 |
| | § | |
| Plaintiffs, | § | Case No. 15-35586 (DRJ) |
| | § | |
| v. | § | Adv. Pro. No. 16-03175 (DRJ) |
| | § | |
| NAVIENT SOLUTIONS, LLC, NAVIENT CREDIT FINANCE CORPORATION | § § | **NATIONWIDE CLASS ACTION** |
| | § | |
| Defendants. | § | |
| | § | |

## PLAINTIFFS EVAN BRIAN HAAS' AND MICHAEL SHAHBAZI'S MOTION FOR PRELIMINARY INJUNCTION AND LIMITED CLASS CERTIFICATION

**This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing.**

**Represented parties should act through their attorney.**

**A hearing on this motion will be set by separate notice.**

Plaintiffs, Evan Brian Haas ("Haas") and Michael Shahbazi ("Shahbazi"), appearing both individually and on behalf of all similarly situated individuals who have declared bankruptcy since 2005 in the various district courts of the United States with consumer educational loans serviced by Defendants, Navient Solutions, LLC ("NSL") and Navient Credit Financial Corporation ("NCFC"), that do not meet the definition of a qualified education loan in 26 U.S.C. § 221(d) and 11 U.S.C. § 523(a)(8), respectfully submit this memorandum in support of their Motion for Preliminary Injunction and Limited Class Certification.

## I.      INTRODUCTION

Defendants, NSL and NCFC, along with their parent company, predecessors, and affiliated companies, have engaged in a decade-long scheme to defraud student debtors and subvert the orderly working of the bankruptcy courts. In particular, Defendants have been providing dischargeable consumer loans to students and misrepresenting them as non-dischargeable student loans, in order to discourage debtors from exercising their constitutional right to relief under Title 11 of the United States Code (the "Bankruptcy Code") and to permit Defendants and their affiliates to collect on debts that were discharged by way of discharge orders entered by the bankruptcy court and 11 U.S.C. § 524(a) ("Section 524(a)"). Defendants are appropriating a legal presumption for a class of debt that they know is not entitled to such a presumption, thereby using the bankruptcy courts' authority to cloak their fraud in the color of law and evade exposure.

Plaintiffs are former student debtors who filed this action to enforce their rights and the rights of those similarly situated under the law. In this action, Plaintiffs ask this Court to end Defendants and their affiliates' willful and malicious activities and prevent further manipulation of the bankruptcy process. In this motion, Plaintiffs seek a preliminary injunction and limited

class certification to restrain Defendants and their agents, employees, servants, and attorneys from taking any action to collect or attempt to collect on debts that were discharged by the bankruptcy courts' discharge orders, in violation of Section 524(a) of the Bankruptcy Code.

Plaintiffs fulfill the requirements of Federal Rule of Civil Procedure 65, made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Rule 7065, for obtaining a preliminary injunction. First, there is a substantial likelihood of success on the merits of Plaintiffs' underlying declaratory judgment action, as Defendants have sought to collect on non-qualified consumer educational loans that were discharged in bankruptcy (the "Loans") in violation of Section 524(a). Second, there is a substantial threat that Section 524(a)'s discharge injunction will be violated so as to cause irreparable injury if the injunction is not issued by threatening the "fresh start" afforded to former debtors by the Bankruptcy Code. Third, Defendants cannot show that any harm will result from the entry of a preliminary injunction. Lastly, the grant of an injunction will serve the public interest in preserving the bankruptcy process.

Plaintiffs likewise fulfill the requirements of Federal Rule of Civil Procedure 23, made applicable to bankruptcy adversary proceedings by Federal Rule of Bankruptcy Procedure 7023, for limited certification of the proposed class, defined as: The citizens of the various states who filed for bankruptcy protection in any of the United States Judicial Districts and were issued discharge orders since April 20, 2005 (the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act), who (1) obtained consumer education loans from Defendants or their predecessors to cover expenses at non-Title IV accredited institutions ("Consumer Education Loans" or "Non-Qualified Education Loans"); (2) have never reaffirmed any pre-petition consumer education loan debt; and (3) have nonetheless been subjected to Defendants' attempts to induce payment on discharged debts (the "Class" or the "Injunctive Class").

First, there are well over 1,000 members of the Class ("Class Members" or "Injunctive Class Members"), such that numerosity is satisfied. Second, Plaintiffs' claims are typical of the claims of the Class and are based on harm that is the result of Defendants' common practice of continuing to collect or to attempt to collect on discharged Loans. Resolution of the common question—whether Defendants' actions violate Section 524(a)—will be dispositive of Plaintiffs' and Class Members' claims. Third, Plaintiffs and Plaintiffs' counsel are adequate representatives for the Class, as counsel are experienced in bankruptcy law and class actions and Plaintiffs' interests are squarely aligned with the interests of the Class. Finally, limited class certification is proper because in the present motion, Plaintiffs seek only injunctive relief to put an end to Defendants' practice or policy that is generally applicable to the Class as a whole.

## II.  FACTUAL BACKGROUND

As students, Haas and Shahbazi applied for their respective Loans with subsidiaries of SLM Corporation d/b/a Sallie Mae ("SLM")—a for-profit corporation—that are now serviced by Defendants.[1] Haas received a Consumer Education loan in 2009 in the form of a Bar Exam Study loan from Sallie Mae Bank to pay for expenses associated with preparing for the Texas bar exam. The loan was then transferred from Sallie Mae Bank to SLM Education Credit Finance Corporation, which then changed its name to Navient Credit Finance Corporation. Shahbazi received a Sallie Mae Career Training loan from Sallie Mae, Inc. in 2002 for tuition expenses at STMC, an unaccredited technical school in Vienna, Virginia. Sallie Mae, Inc. later became Navient Solutions, Inc. On January 31, 2017, Navient Solutions, Inc. became Navient Solutions, LLC.[2] NCFC and NSL are subsidiaries of Navient Corporation ("Navient").

---

[1]  SLM Corporation's loan servicing operation is now a separate, publicly traded entity known as Navient Corporation.

[2]  *See* Notice of Name Change, Rec. Doc. 97.

4

Subsequently, Plaintiffs separately sought relief under Chapter 7 of the Bankruptcy Code, listing their Consumer Education Loans as educational or student loan debt. Each Plaintiff received a Chapter 7 discharge under Section 524(a), discharging all properly scheduled pre-petition debt, including all education-related debt that was not excepted from discharge by 11 U.S.C. § 523(a)(8) ("Section 523(a)(8)"). Defendants did not file an adversary proceeding to contest the dischargeability in either instance, nor did their parent company, predecessors, or affiliated companies.

Though Plaintiffs' Consumer Education Loans were not excepted from discharge under 11 U.S.C. § 523(a)(8), and were not contested as non-dischargeable after entry of the discharge injunctions, Defendants engaged the services of various collection firms to attempt to collect on these otherwise discharged Loans in violation of the court orders and Section 524(a) of the Bankruptcy Code. As with Plaintiffs, Defendants have sought to collect on discharged Consumer Education Loans from the Injunctive Class Members, all of whom borrowed various types of consumer educational loans to attend unaccredited colleges, secondary schools, trade schools, and professional skills programs, and have since been issued discharge orders from various bankruptcy courts. To effectuate this fraud, Defendants have represented to student debtors that the Bankruptcy Code prohibits discharge of any loan made to any person for any educational purpose. Defendants continue to employ abusive, deceptive, and harassing tactics in an attempt to accomplish their illegitimate collection efforts, thus warranting a preliminary injunction pending further resolution of this matter.

5

### III.      PROCEDURAL HISTORY

Haas filed for relief under Title 11 as a Chapter 7 debtor in this Court on November 3, 2015,[3] and this Court thereafter ordered discharge of all of Haas' properly scheduled pre-petition debt on February 9, 2016.[4] Shahbazi filed for relief under Title 11 as a Chapter 7 debtor in the Eastern District of Virginia on September 20, 2011.[5] The Court entered discharge of all Shahbazi's properly scheduled pre-petition debt on December 27, 2011.[6]

On August 5, 2016, Haas filed an adversary proceeding in this Court against SLM and Navient, seeking a declaratory judgment that his debt had been discharged, entry of judgment holding Navient and SLM (the predecessor to Navient) in contempt for violations of the discharge injunction, and a temporary injunction.[7]

That same day, this Court entered a Temporary Restraining Order (TRO) pending Haas' application for preliminary injunctive relief, enjoining SLM and Navient, as well as "their agents, employees, servants, and attorneys," so as to restrain them "from taking any action . . . to collect or attempt to collect" from Haas in any manner.[8] In doing so, this Court stated that Haas would "be irreparably harmed if a temporary restraining order [was] not issued."[9] This Court

---

[3]      *See* Chapter 7 Voluntary Petition, *In re Evan Brian Haas*, No. 15-35886 (Bankr. S.D. Tx. Nov. 3, 2015), ECF No. 1.

[4]      *See* Order Discharging Chapter 7 Debtor, *In re Haas*, No. 15-35886 (Bankr. S.D. Tx. Feb. 9, 2016), ECF No. 18.

[5]      *See* Chapter 7 Voluntary Petition, *In re Michael Shahbazi*, No. 11-16643 (Bankr. E.D. Va. Sept. 20, 2011), ECF No. 1.

[6]      *See* Certificate of Mailing of Discharge of Debtor, *In re Shahbazi*, No. 11-16643 (Bankr. E.D. Va. Dec. 30, 2011), ECF No. 14.

[7]      *See* Plaintiff's Original Complaint, Rec. Doc. 1.

[8]      *See* Temporary Restraining Order, Rec. Doc. 4 at 2.

[9]      *Id.* at 1.

additionally noted that Haas "demonstrated a likelihood of success on the merits, no prejudice [would be] suffered by the defendant[,] and the public interest [would be] served."[10]

On August 17, 2016, the parties agreed to a Preliminary Injunction similar in scope to the Court's TRO, but limited to the proper party Defendant, Navient Solutions, Inc. (now NSL).[11] This Court signed that Agreed Order on August 18, 2016.[12]

On August 26, 2016, Haas amended his complaint to include Shahbazi and seek certification of a putative nationwide class of similarly situated former student debtors, as well as a declaratory judgment that Plaintiffs and Class Members' consumer education loans were discharged upon the entry of their respective discharge orders and damages, including attorneys' fees and costs, arising from the Defendants' willful violations of the applicable discharge injunctions.[13]

On November 14, 2016, Plaintiffs filed their First Motion to Amend, seeking to rename NCFC as a defendant and to dismiss SLM without prejudice in light of the corporate restructuring that occurred after Plaintiffs signed their loan agreements.[14] On December 30, 2016, SLM was dismissed without prejudice,[15] and on January 26, 2017, Plaintiffs' Second Amended Complaint was filed.[16]

---

[10]    *Id.*
[11]    *See* Proposed Order Re: Preliminary Injunction, Rec. Doc. 12.
[12]    *See* Agreed Order, Rec. Doc. 13.
[13]    *See* Plaintiffs' First Amended Complaint, Rec. Doc. 15.
[14]    *See* Plaintiffs' First Motion to Amend, Rec. Doc. 43.
[15]    *See* Order to Dismiss Defendant SLM without Prejudice, Rec. Doc. 74.
[16]    *See* Second Amended Complaint, Rec. Doc. 95.

1169516v.1

On January 25, 2017, this Court ordered that Defendants file an answer or otherwise respond to Plaintiffs' Second Amended Complaint within thirty days after its filing (or January 26, 2017).[17]

## IV.    LEGAL ARGUMENT

### A. PLAINTIFFS SATISFY THE STANDARDS FOR A PRELIMINARY INJUNCTION UNDER RULE 65.

The evidence cited below presents a sufficient basis to issue an order restraining Defendants from further violations of the Bankruptcy Code. "The four elements a plaintiff must establish to secure a preliminary injunction" under Rule 65 are:

> (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest.

*Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011) (citation omitted); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Though the movant must establish all four elements, where a movant demonstrates that there is either a strong likelihood of success or irreparable harm, the remaining factor is subject to a lower standard. *In re OGA Charters, LLC*, 554 B.R. 415, 425 (Bankr. S.D. Tex. 2016) ("[T]his Court summarizes the standard for a preliminary injunction, as to the relationship between the likelihood of success and irreparable harm, is that the movant must show [both], but if the movant should demonstrate that one factor has a strong likelihood, then the opposite factor may be subject to a lower standard.").

As discussed below, Plaintiffs satisfy each of the elements for preliminary injunction. Given the evidence supporting Plaintiffs' motion, and in light of the evidence presented herein, the onus should shift to Defendants to produce contrary evidence to justify denial of the injunction.

---

[17]      *See* Agreed Order, Rec. Doc. 94.

1169516v.1

**1. Plaintiffs are likely to succeed in establishing the elements of their Section 524(a) claim.**

With respect to the first requirement for a preliminary injunction, Plaintiffs present sufficient evidence to support their claims.[18] "To satisfy the first element of likelihood of success on the merits, the [Plaintiffs'] evidence in the preliminary injunction proceeding 'is not required to prove [their] entitlement to summary judgment.'" *Id.* at 595-96 (quoting *Byrum v. Landreth*, 566 F.3d 442, 446 (5th Cir. 2009)).[19] Additionally, as in this case and as discussed in Section IV(A)(1)(b)(i), *infra*, if the defendant has the burden of proof at trial, the plaintiff need only show that "there is a sufficient likelihood that the [defendant] will ultimately fail" to meet its burden. *Byrum*, 566 F.3d at 446. "To assess the likelihood of success on the merits," courts look to "standards provided by the substantive law." *Janvey*, 647 F.3d at 596 (citation omitted).

Here, where Plaintiffs and Injunctive Class Members' claims stem out of bankruptcy, those standards are provided by the Bankruptcy Code and the case law interpreting it.

Plaintiffs contend that Defendants seek to collect discharged Consumer Education Loans in violation of the injunctions imposed pursuant to Section 524(a) of the Code and the court orders implementing the same. To state a claim for violation of a discharge injunction under Section 524(a), a plaintiff must show that (1) a discharge injunction order was entered in the plaintiff's bankruptcy proceeding, (2) an act was subsequently taken to establish the plaintiff's liability for a debt or to recover a debt in any manner; and (3) that debt is pre-petition and discharged under the provisions of the Code. "The discharge injunction granted by section 524(a) is a substantive right conferred by the Bankruptcy Code, . . . enforceable through a declaratory

---

[18]     Therefore, as discussed in Section IV(A)(1)(b)(i), *infra*, the burden is on Defendants to produce  countervailing evidence, and in the absence of such evidence, Plaintiffs' motion should not be denied based on Plaintiffs' likelihood of success on the merits.

[19]     "All courts agree that plaintiff must present a prima facie case but need not show a certainty of winning." Charles A. Wright, Arthur R. Miller & Mary Kay Kane, 11A Federal Practice & Procedure § 2948.3 (3d ed. 2016) (citations omitted).

judgment action[.]" *In re Nat'l Gypsum Co.*, 118 F.3d 1056, 1063 (5th Cir. 1997). *See also id.* at 1064 ("[T]he adversary proceeding is a federal cause of action, asserting a statutory right under the Bankruptcy Code, that does not depend improperly on the Declaratory Judgment Act as a basis for core bankruptcy jurisdiction.").[20]

Defendants' violation of the discharge injunction arises under 11 U.S.C. § 524(a)(2), which states that:

A discharge in a case under this title—

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived[.]

11 U.S.C. § 524(a). Below, Plaintiffs cite evidence demonstrating the three elements needed to prove their Section 524(a) claim that Defendants violated the discharge injunction, so as to entitle them to declaratory judgment enforcing the injunction. Plaintiffs demonstrate that: (1) Plaintiffs and similarly situated Class Members obtained discharges in their respective bankruptcy proceedings; (2) Defendants continue to initiate attempts to collect or recover Loans from Plaintiffs and Class Members; and (3) the Loans Defendants seek to collect are discharged pre-petition debts.

---

[20] The Code additionally allows the bankruptcy courts to award damages and attorney's fees when such violations are willful. *See* 11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Code,]" including "taking any action . . . necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."). *See also In re Fauser*, 545 B.R. 907, 912 (Bankr. S.D. Tex. 2016) (citation omitted) ("Section 524(a) does not specifically address awarding monetary relief for violations of the discharge injunction, but courts have fashioned such relief . . . under § 105. . . . For willful violations of the discharge injunction, courts have awarded actual damages, emotional distress damages, and attorney's fees."); *cf. Matter of Terrebonne Fuel & Lube, Inc.*, 108 F.3d 609, 613 (5th Cir. 1997) ("We find that an order, such as the one entered by the bankruptcy court, which compensates a debtor for damages suffered as a result of a creditor's violation of a post-confirmation injunction under 11 U.S.C. § 1141, was both necessary and appropriate to carry out the provisions of the bankruptcy code.").

    *a. Plaintiffs obtained a discharge in their respective bankruptcy proceedings and Navient continues to employ various tactics in attempting to recover the Loans from Plaintiffs.*

Plaintiffs' respective discharges are not disputed. On February 9, 2016, this Court ordered discharge of all of Haas' properly scheduled pre-petition debt and on February 11, 2016, notice of the discharge was sent to Defendants' parent company.[21] Similarly, Shahbazi's properly scheduled pre-petition debt was discharged by the Eastern District of Virginia on December 27, 2011, and notice of the discharge was sent to Sallie Mae (predecessor to Navient) on December 30, 2011.[22] Injunctive Class Members are individuals with Consumer Education Loans serviced by Defendants who have subsequently declared bankruptcy and whose loans have also been discharged in the various district courts.

Despite the Section 524(a) discharges, Defendants and their agents continue to employ various tactics to collect or attempt to collect on these Consumer Education Loans. As shown in the attached email and call log, Navient contacted Haas concerning payment in June and July of 2016, over four months after Haas' discharge on February 9, 2016.[23] Similarly, as highlighted by the attached affidavit and letter, Defendants and their agents continued to contact Shahbazi as recently as August 10, 2016, almost five years after Shahbazi's discharge on December 27, 2011.[24] Defendants engage in similar behavior with regard to the other Injunctive Class Members.

---

[21]    *See* Order Discharging Chapter 7 Debtor, *In re Haas*, No. 15-35886 (Bankr. S.D. Tx. Feb. 9, 2016), ECF No. 18; Certificate of Mailing Order of Discharge at 3, *In re Haas*, No. 15-35886 (Bankr. S.D. Tx. Feb. 11, 2016), ECF No. 20 (attached as Exhibit 1).

[22]    *See* Certificate of Mailing of Discharge of Debtor, *In re Michael Shahbazi*, No. 11-16643 (Bankr. E.D. Va. Dec. 30, 2011), ECF No. 14 (attached as Exhibit 2).

[23]    *See* June 10, 2016 Email from Navient to Haas, Rec. Doc. 1-5 (attached as Exhibit 3); Navient/Sallie Mae's Collection Attempts, Rec. Doc. 1-6 (attached as Exhibit 4), Affidavit of Haas, Rec. Doc. 1-7 (attached as Exhibit 5).

[24]    *See* Affidavit of Shahbazi (attached as Exhibit 6).

*b. The Loans Navient seeks to collect on are pre-petition and are not excepted from discharge.*

Plaintiffs' and Injunctive Class Members' Consumer Education Loans were obtained prior to filing for bankruptcy and discharged upon entry of the applicable discharge orders because they are not educational debts excepted from discharge under Section 523(a)(8). Section 523(a)(8) contains three distinct provisions excepting from discharge the following kinds of student debt: (1) an educational loan made under a government or nonprofit loan program; (2) an obligation to repay funds received as an educational benefit, scholarship, or stipend; and (3) any other educational loan that is a qualified education loan as that term is defined in Section 221(d) of the Internal Revenue Code. *See* 11 U.S.C. § 523(a)(8).

Accordingly, in order for an educational debt to be non-dischargeable, it must either be (1) a student loan under Sections 523(a)(8)(A)(i) or 523(a)(8)(B), or (2) a conditional educational grant under Section 523(a)(8)(A)(ii). An educational debt that is not encompassed by Section 523(a)(8) is treated as any other dischargeable consumer debt and is automatically discharged pursuant to Section 524(a) upon entry of discharge order. As will be discussed, Plaintiffs and Class Members' Consumer Education Loans are not encompassed by Section 523(a)(8) and were therefore discharged.[25] Additionally, Defendants have already conceded that loans of this type are dischargeable.

---

[25]     *In re Haroon,* 313 B.R. 686, 689 (Bankr. E.D. Va. 2004) ("A student loan creditor is not required to seek a dischargeability determination during the pendency of the bankruptcy case. The failure to seek a dischargeability determination does not alter the fact that the debt is or is not discharged upon entry of the discharge order . . . [t]here are ramifications from not seeking a dischargeability determination, that is, . . . a creditor who attempts to collect the debt proceeds at his own peril and accepts the consequences of his own actions. If a creditor wants to avoid the adverse consequences of an erroneous analysis, he can come to this court at any time, . . . and seek an adjudication of the dischargeability issue. . . . If he fails to do that and seeks to collect the debt, the debtor may use a show cause order to have this determination made. If the creditor is wrong and the debt was discharged, he has violated § 524(a).").

i.  The burden is on Defendants to show that the Loans are non-dischargeable, hence Plaintiffs and Injunctive Class Members need only show "a sufficient likelihood" that Defendants will ultimately fail to prove the Loans are non-dischargeable.

As previously discussed, "[a] plaintiff is not required to prove its entitlement to summary judgment in order to establish 'a substantial likelihood of success on the merits' for preliminary injunction purposes." *Byrum*, 566 F.3d at 446 (citing *ICEE Distribs., Inc. v. J&J Snack Foods Corp.*, 325 F.3d 586, 596 n.34 (5th Cir.2003)). "Although the plaintiffs bear the burden on the preliminary injunction factors," *id.*, it is well established that a **creditor** who believes that a debt is a non-dischargeable student loan **bears the legal burden** to demonstrate by a preponderance of the evidence that the debt in question is encompassed by Section 523(a)(8). *See Grogan v. Garner*, 498 U.S. 279, 287 (1991) (stating that it is the burden of "the creditor to establish by a preponderance of the evidence that his claim is not dischargeable").[26] "Thus, when considering the likelihood of success," Plaintiffs and Injunctive Class Members need only show that "there is a sufficient likelihood [Defendants] will ultimately fail to prove" that the Loans were excepted from discharge. *Byrum*, 566 F.3d at 446 (citations omitted). If Defendants cannot show that the Consumer Education Loans are non-dischargeable, Plaintiffs and Class Members have necessarily shown a "likelihood of success" with regard to their claims for the purposes of a preliminary injunction. *See id.*

Though the legal burden to prove non-dischargeability rests with Defendants, Plaintiffs demonstrate herein that the Loans are not excepted from discharge under any three provisions of Section 523(a)(8), and thus, were discharged upon entry of this Court's discharge order.

---

[26]    *See also Matter of Benich*, 811 F.2d 943, 945 (5th Cir. 1987) ("The burden is on the person who asserts non-dischargeability of a debt to prove its exemption from discharge.").

13

     ii.  <u>Plaintiffs' and Injunctive Class Members' Loans are not "made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution" under Section 523(a)(8)(A)(i).</u>

Plaintiffs' and Class Members' Loans were not excepted from discharge under Section 523(a)(8)(A)(i). That section excepts from discharge only loans or educational benefit overpayments made, insured, or guaranteed by the government or made under any program funded in whole or part by a non-profit institution. Plaintiffs' Loans were not funded, insured, or guaranteed by any government or made under any program funded in whole or part by a non-profit.[27] In fact, Navient has stated unequivocally in documents filed with the Securities and Exchange Commission that its Career Training loans "are not guaranteed by any federal guarantor, or by any governmental agency or by any private guarantor."[28]   Hence, the Loans were not excepted from discharge under Section 523(a)(8)(A)(i).

     iii.  <u>Plaintiffs' and Injunctive Class Members' Loans Are Not "obligation[s] to repay funds received as an educational benefit" under Section 523(a)(8)(A)(ii).</u>

Plaintiffs' and Class Members' Loans were not excepted under Section 523(a)(8)(A)(ii) because they are not "obligations to repay funds received as an educational benefit, scholarship, or stipend." Creditors often disingenuously argue that where a loan was not made for qualified education expenses, the loan is nonetheless excepted from discharge under Section 523(a)(8)(A)(ii) as an "obligation to repay funds received as an educational benefit." However, this argument is without merit for at least three reasons. First, Congress did not use the word "loan" in Section 523(a)(8)(A)(ii), but instead used the phrase "obligation to repay funds

---

[27]   *See In re Pappas*, 517 B.R. 708, 717 (Bankr. W.D. Tex. 2014), *aff'd sub nom. Corletta v. Texas Higher Educ. Coordinating Bd.*, 531 B.R. 647 (W.D. Tex. 2015) ("The creditor must show: (1) the existence of a debt; (2) made for an educational loan; and (3) made, insured, or guaranteed by a government unit, or made under any program funded in whole or part by a governmental unit of nonprofit institution.") (internal quotation marks and citation omitted).

[28]   Navient Offering Memorandum, Navient Private Education Loan Trust 2014-CT at 43 (July 15, 2014) (attached as Exhibit 7).

received." Second, this interpretation relies on the wrong definition of the homonym "benefit" and in so doing violates the canon of *noscitur a sociis*. Third, this interpretation would mean that any debt made to any person for any educational purpose is non-dischargeable, which renders the other two subsections of 523(a)(8) superfluous and so violates the canon against superfluity (along with the plain language of the discharge injunction and the requirement to interpret exceptions to discharge narrowly).[29]

> (A) Section 523(a)(8)(A)(ii) does not contain the word "loan" and courts cannot inject language into a statute that was intentionally left out by Congress as indicated by the legislative history.

Section 523(a)(8)(A)(ii) conspicuously does not use the word "loan" but instead employs the phrase "obligation to repay funds received." While the two terms may have similarities, they are not interchangeable. Numerous courts have held that because Congress did not use the word "loan," Section 523(a)(8)(A)(ii) cannot be used to except "student loans" from discharge. Rather, Section 523(a)(8)(A)(ii) deals exclusively with defaulted conditional educational grants, such as VA benefits and ROTC scholarships. As the Ninth Circuit BAP reasoned in *Christoff*:

> § 523(a)(8)(A)(ii) is not a "catch-all" provision designed to include every type of credit transaction that bestows an educational benefit on a debtor. Instead, this subsection includes a condition, distinct from those in the other subsections of § 523(a)(8), that must be fulfilled. . . . In light of the many programs . . . which provide cash benefits to students, like veteran's educational benefits, stipends for teaching assignments, and cash scholarships, it is not absurd to assume that Congress intended the scope of § 523(a)(8)(A)(ii) to target obligations other than those arising from traditional student loans.

*In re Christoff*, 527 B.R. 624, 634 n.9 (B.A.P. 9th Cir. 2015), *appeal dismissed* Aug. 7, 2015. Although the Ninth Circuit BAP made this determination without the aid of the legislative history, the legislative history proves their reasoning and logic was precisely correct.

---

[29]    *See In re M.M. Winkler & Assocs.*, 239 F.3d 746, 751 (5th Cir. 2001) ("[E]xceptions to dischargeability are to be construed narrowly in favor of the debtor."); *In re Renshaw*, 222 F.3d 82, 90 (2d Cir. 2000) ("[T]he exception to discharge of a debt in bankruptcy set out in § 523(a)(8) must be narrowly construed[.]").

Legislative history demonstrates that Congress crafted the language in Section 523(a)(8)(A)(ii) to cover defaulted conditional educational grants, not student loans. During testimony before the Subcommittee on Economic and Commercial Law, the drafter of the 1990 amendment to Section 523(a)(8) explained that the new section was designed to except from discharge defaulted governmental service obligations (debts which he specifically contrasted with "student loans"). In support, Mr. Wortham cited an Eighth Circuit opinion demonstrating the need for this amendment and testified that:

> This section [523(a)(8)] adds to the list of nondischargeable debts, obligations to repay educational funds received in the form of benefits (such as VA benefits), scholarships (such as medical service corps scholarships) and stipends. These obligations are often very sizeable and should receive the same treatment as a "student loan" with regard to restriction on dischargeability in bankruptcy.

*Federal Debt Collection Procedures of 1990: Hearing on P.L. 101-647 Before the H. Subcomm. on Econ. and Commercial Law of the H. Comm. on the Judiciary*, 101st Cong. 74-75 (1990) (Mr. Brooks' Questions for the Record for Mr. Wortham) (parentheticals in original) (citing *U.S. Dep't of Health & Human Servs. v. Smith*, 807 F.2d 122 (8th Cir. 1986)).[30]

Thus, in amending Section 523(a)(8) to except from discharge "an obligation to repay funds received as an educational benefit, scholarship, or stipend," Congress was addressing the dischargeability of conditional sums of money provided by the federal government, including

---

[30]   In *Smith*, 807 F.2d 122, the debtor had defaulted on a PSASP medical school scholarship by failing to work in a physician shortage-area after graduation, thereby incurring an "obligation to repay funds received." Since this was not technically a "loan," the debtor sought to discharge the obligation in bankruptcy since it was not within the literal scope of Section 523(a)(8) at that time. To remedy this potential for abuse, Congress inserted the "obligation to repay funds received as an educational benefit, scholarship, or stipend" language into Section 523(a)(8).

16

"medical service corps scholarships" and "VA benefits."[31] Indeed, numerous courts have correctly applied the 1990 amendment to Section 523(a)(8) to debts for conditional service scholarships and stipends. *See*, *e.g.*, *In re Burks*, 244 F.3d 1245, 1246 (11th Cir. 2001) (affirming non-dischargeability of educational stipends awarded under the Louisiana Board of Regents' Graduate Fellowship Program for student who defaulted on his obligation to teach in minority school system after graduating); *In re Scott*, 287 B.R. 470, 474 (Bankr. E.D. Mo. 2002) ("The third provision . . . does not need to be construed broadly to except all loans for educational benefits . . . . [It] grants protection to 'obligations to repay funds received as an educational benefit.' An example of such an obligation would be for funds provided as grants that must be repaid only under certain conditions (like the failure of a medical student grant recipient to practice in a physician shortage area after graduation).").

> (B) *Interpreting "obligation to repay funds received as an educational benefit" to mean any loan that provides educational advantages violates the canon of nosctiur a sociis.*

Numerous courts across the country have recognized that a broad interpretation of Section 523(a)(8)(A)(ii) is unworkable and inappropriate because it defies the canon of *noscitur a sociis*. The canon of *noscitur a sociis* states that where a word is included in a series, each word is presumed to have a similar meaning to each other. Accordingly, the words "benefit, scholarship, and stipend" as found in Section 523(a)(8)(A)(ii) must be defined to give each word a similar meaning. Unlike the words "scholarship" and "stipend" whose meanings are obvious, the word "benefit" is a homonym with two very distinct definitions that are potentially

---

[31]     An educational benefit, such as a VA benefit, may require repayment if the student defaults on a condition of the benefit, such as failing to achieve passing grades in a course being paid for by the VA. This default thus renders the educational benefit "an obligation to repay funds received as an educational benefit." *See United States v. Brandon*, 781 F.2d 1051, 1052 (4th Cir. 1986) ("[T]he United States has a right of recovery against veterans who receive benefits and then fail to earn grades which count towards graduation.").

applicable, and can either mean "an advantage or profit gained from something" or "a payment made by an employer, an insurance company or the state." Oxford Dictionary of English (3d ed. 1997). Since the other two words (scholarship and stipend) in Section 523(a)(8)(A)(ii) are both types of "payments made by the state," it is necessary to interpret the word "benefit" in the same way. Accordingly, the word "benefit" should not be interpreted to mean "an advantage or profit gained from something," but instead "a payment made by the state." More eloquently stated:

> [T]he canon of statutory construction known as *noscitur a sociis* instructs that when a statute contains a list, each word in that list presumptively has a similar meaning. To the extent that educational benefit (defined nowhere in the Bankruptcy Code) is ambiguous, it should be presumed to have a meaning similar to the other items in the list set forth in § 523(a)(8)(A)(ii). Scholarship and stipend both refer to funds which are not generally required to be repaid by the recipient. Therefore, in the absence of plain meaning to the contrary, or compelling legislative history, educational benefit must be understood to refer to something other than a loan, especially given that Congress uses the word loan elsewhere in § 523(a)(8). The concept which unites the three separate terms in the list in § 523(a)(8)(A)(ii) is that they all refer to types of conditional grants.

*In re Campbell*, 547 B.R. 49, 55 (Bankr. E.D.N.Y. 2016) (internal citations omitted).

> (C) Interpreting "obligation to repay funds received as an education benefit" to mean any loan that provides educational advantages violates the canon against superfluity.

Lastly, interpreting section 523(a)(8)(A)(ii) broadly to preclude discharge of any educational debt is illogical because it would render the rest of the statute superfluous. That is, if any educational debt were non-dischargeable under section 523(a)(8)(A)(ii), Congress would have had no reason for crafting the other two subsections. Not only are those two sections superfluous, but the statute so interpreted would mean that debt for any educational purpose—whether a fine at the local library, or a credit card charge for books on Amazon, or a past-due museum membership—would all be non-dischargeable under section 523(a)(8). *See Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 836 (1988) (expressing reluctance "to

adopt an interpretation of a congressional enactment which renders superfluous another portion of that same law"). This is clearly not what the statute was intended to accomplish.

This principle has been recognized by multiple courts. *See, e.g.*, *In re Decena*, 549 B.R. 11, 18-19 (Bankr. E.D.N.Y.), *rev'd in part, vacated in part on other grounds sub nom. Citizens Bank v. Decena*, 562 B.R. 202 (E.D.N.Y. 2016) ("Section 523(a)(8)(A)(ii) is not a 'catch-all' provision designed to encompass any educational claim arising out of any transaction that bestows an educational benefit on a debtor. . . . [I]t defies logic to suggest that Congress added subsection 523(a)(8)(B) in 2005 to encompass a subset of loans already covered under subsection 523(a)(8)(A)(ii).").[32]

The reasoning and legislative history set forth above demonstrate the narrow scope of Section 523(a)(8)(A)(ii). Any argument that seeks to use Section 523(a)(8)(A)(ii) as a "catch all" to capture and exempt Plaintiffs' and Class Members' Loans should be rejected.

iv. Plaintiffs' and Injunctive Class Members' Loans are not "qualified education loans" under Section 523(a)(8)(B).

Plaintiffs and Injunctive Class Members' Loans are not excepted from discharge under Section 523(a)(8)(B) because they are not qualified education loans. Section 523(a)(8)(B) excepts from discharge a "qualified education loan" as defined in Section 221(d)(1) of the Internal Revenue Code. Section 221(d)(1) defines a "qualified education loan" as any

---

[32]    *See also In re Nunez*, 527 B.R. 410, 415 (Bankr. D. Or. 2015) (same); *In Matter of Swenson*, No. 16-10016, 2016 WL 4480719, at *3 (Bankr. W.D. Wis. Aug. 23, 2016) (same); *In re Meyer*, No. 15-13193, 2016 WL 3251622, at *2 (Bankr. N.D. Ohio June 6, 2016) (same); *Schultz v. Navient Solutions, Inc.*, Adv. Pro. No. 16-03042 (Bankr. D. Minn. Dec. 13, 2016), ECF No. 48 at 12-13 (attached as Exhibit 8) ("To read the phrase educational benefit as broadly as advocated by Navient would lead to the result that the other two provisions would in essence be read out of the statute[.]"). *See also In re McClure*, 210 B.R. 985, 988 (Bankr. N.D. Tex. 1997) ("In order for this court to find the debt [] nondischargeable it would be necessary to expand § 523(a)(8) to any loan which can be said to provide an educational benefit. The court finds that this would be outside the intent of Congress, and thus refuses to broaden § 523(a)(8).").

indebtedness incurred by a ***taxpayer*** solely to pay for "qualified higher education expenses." "Qualified higher education expenses" are in turn defined in Section 221(d)(1) as expenses incurred to cover the "cost of attendance" at a Title IV eligible institution by an "eligible student." A Title IV eligible institution is one recognized by the Department of Education under Title IV of the Higher Education Act.

Neither Haas' Bar Exam Study loan nor Shahbazi's Career Training loan meets these criteria. As evidence of such, Defendants have been warning investors, shareholders, and the SEC for the last ten years that only loans made for qualified higher education expenses are nondischargeable, and that in fact all "Career Training" loans (of the type incurred by Shahbazi) are fully dischargeable in bankruptcy.[33] Plaintiffs and Class Members were neither "eligible students" nor were they attending Title IV accredited schools, and thus the loans were not made for qualified higher education expenses. Hence, the Loans were not qualified education loans.

v.   <u>Defendants have already conceded that these Loans are dischargeable.</u>

Finally, Defendants have previously acknowledged that these Loans are dischargeable. As already mentioned, Defendants openly disclose that Career Training loans are dischargeable in bankruptcy.[34] Moreover, Defendants have stipulated to the fact that loans of this type are dischargeable in bankruptcy in prior adversarial proceedings.[35] Defendants should not be permitted to argue to the contrary now.

---

[33]    *See* Navient 2016 2nd Quarter Investor Deck at 48 (July 25, 2016) (attached as Exhibit 9); Navient Offering Memorandum, Navient Private Education Loan Trust 2014-CT at S-29 (July 15, 2014) (attached as Exhibit 7).

[34]    *See supra* note 33.

[35]    *See, e.g.*, Stipulation for Discharge of Debt, *Payne v. Sanford Brown College, et al.*, Adv. Pro. No. 16-4141 (Bankr. W.D. Wash. Jan. 23, 2017), ECF No. 16 (attached as Exhibit 10); Complaint, *Pitts v. Sallie Mae, Inc., et al.*, Adv. Pro. No. 16-1512 (Bankr. C.D. Cal. Nov. 29, 2016), ECF No. 1 at 13 (attached as Exhibit 11); Stipulated Judgment for Discharge of Debt, *Huffman v. Navient*, Adv. Pro. No. 16-6048 (Bankr. D. Or. May 13, 2016), ECF No. 4 (attached as Exhibit 12); Stipulated Judgment for Discharge of Educational Loan, *Kanoff v. Sallie Mae,*

Accordingly, Plaintiffs' and Injunctive Class Members' Loans were not exempt from discharge in bankruptcy under any subsection of 523(a)(8).

## 2. Without the proposed injunction, Plaintiffs and other Injunctive Class Members will suffer irreparable harm.

The proposed injunction would restrain prospective violations of the Bankruptcy Code by prohibiting Defendants and their agents, employees, servants, and attorneys from taking any action to collect or to attempt to collect on debts that were discharged by the bankruptcy courts' discharge orders. As set forth above, Defendants' actions violate Section 524(a) of the Bankruptcy Code. The bankruptcy courts are specifically authorized to restrain violations of Section 524(a) in a declaratory judgment action. *See Nat'l Gypsum*, 118 F.3d at 1063 ("The discharge injunction granted by section 524(a) is a substantive right conferred by the Bankruptcy Code, . . . enforceable through a declaratory judgment action[.]"). Section 524(a) was designed to provide former debtors with injunctive relief. Where a statute expressly provides for injunctive relief, irreparable harm is presumed and need not be established. *EEOC v. Cosmair, Inc., L'Oreal Hair Care Division*, 821 F.2d 1085, 1090 (5th Cir. 1987); *United States by Mitchell v. Hayes International Corp.*, 415 F.2d 1038, 1045 (5th Cir. 1969). Accordingly, because Section 524(a) expressly provides for injunctive relief, irreparable harm is presumed in the instant circumstances where Defendants have repeatedly violated that statute.

### a. Defendants consistently violate Section 524(a).

While Plaintiffs are not required to establish irreparable harm, as discussed below, Plaintiffs nonetheless present herein evidence sufficient to establish that Defendants' ongoing violations of Section 524(a) pose irreparable harm to Plaintiffs and the other Injunctive Class

---

*Inc.*, Adv. Pro. No. 14-3161 (Bankr. D. Or. Aug. 1, 2014), ECF No. 4 (attached as Exhibit 13); Stipulation for Settlement, *Shiflett v. SLM Financial Corp.*, Adv. Pro. No. 11-4020 (N.D. Fla. December 6, 2011), ECF No. 4 (attached as Exhibit 14).

21

Members. Indeed, Defendants have harassed both Haas and Shahbazi through repeated phone calls and other forms of communication following the entry of the discharge injunctions in their respective bankruptcies.[36]

      *b. Defendants' violations cause irreparable harm to Plaintiffs.*

Defendants' repeated violations of the Section 524(a) injunction corrupt the promised fresh start to which Plaintiffs, former debtors, are entitled. The Supreme Court "has certainly acknowledged that a central purpose of the Code is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy 'a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt.'" *Grogan v. Garner*, 498 U.S. 279, 286 (1991) (quoting *Local Loan Co. v. Hunt*, 292 U.S. 234, 243 (1934)). Thus, the fundamental purpose of the Bankruptcy Code is to grant the "honest but unfortunate debtor" a "fresh start." *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367 (2007) (quoting *Grogan*, 498 U.S. at 286-87). This adversary proceeding raises allegations that Defendants have continued to attempt to collect on discharged debts from former debtors, so as to "corrupt the promised fresh start." *See In re Cano*, 410 B.R. 506, 535 (Bankr. S.D. Tex. 2009). Defendants' collection efforts and corruption of Plaintiffs' promised fresh start constitutes irreparable harm. "In general, a harm is irreparable where there is no adequate remedy at law, such as monetary damages." *Janvey*, 647 F.3d at 600 (citations omitted).[37] An injury is also irreparable when compensatory damages are "extremely

---

[36]     *See* June 10, 2016 Email from Navient to Haas, Rec. Doc. 1-5 (attached as Exhibit 3); Navient/Sallie Mae's Collection Attempts, Rec. Doc. 1-6 (attached as Exhibit 4), Affidavit of Haas, Rec. Doc. 1-7 (attached as Exhibit 5); Affidavit of Shahbazi (attached as Exhibit 6).

[37]     The mere fact that economic damages may be available, however, does not always mean that a remedy at law is adequate; for example, some courts have found that a remedy at law is inadequate "if legal redress may be obtained only by pursuing a multiplicity of actions." *Janvey*, 647 F.3d at 600 (citations omitted).

difficult to calculate." *Quantum Fitness Corp. v. Quantum LifeStyle Centers, L.L.C.*, 83 F. Supp. 2d 810, 831 (S.D. Tex. 1999) (citations omitted).

This Court, just two years ago, granted a debtor's request for an injunction, along with sanctions, in a case where the defendants repeatedly communicated with the debtors and "acted in flagrant disregard of the discharge injunction by repeatedly attempting to collect a debt that it knew had been discharged." *In re Diaz,* 526 B.R. 685, 694 (Bankr. S.D. Tex. 2015). The plaintiffs presented evidence of twenty-three voicemail recordings, a letter, and two additional communications in which defendants attempted to collect on the discharged debts. The plaintiffs requested that the defendants be enjoined from seeking further collection of discharged debts, and the Court granted that request, holding:

> If ARA continues to call Plaintiffs, damages alone would not compensate them for the stress caused by the harassing phone calls. It appears that ARA continued to make calls as recently as October of 2014, when Plaintiffs met with their attorney regarding a new round of phone calls. . . . ARA persisted in their conduct despite facing the threat of court-ordered damages due to the complaint pending against them. Injunctive relief is necessary to prevent further violations of the discharge injunction.

*Id.* at 695. Similarly, in *In re Daniel*, a debtor who had been granted a discharge sought a preliminary and permanent injunction enforcing the provisions of Section 524(a), prohibiting a law firm representing a creditor from proceeding against the debtor in a state court lawsuit, and ordering the firm to cease and desist any further attempts to collect on that debt. 98 B.R. 73 (Bankr. M.D. Fla. 1989). The court held that "any action or attempt to collect" the debt at issue "in spite of a discharge is a clear violation of the permanent injunction included in the discharge," and held that "if the injunctive relief sought by the Debtor in this adversary proceeding is not granted the Debtors will suffer irreparable harm." *Id.* at 76.

In this case, as in *Diaz*, Defendants have acted in "flagrant disregard" of the discharge injunctions by repeatedly attempting to collect on Plaintiffs' and Class Members' discharged

debts. And as in *Diaz* and *Daniel*, Defendants' continued collection efforts will cause Plaintiffs and Class Members to suffer irreparable harm if an injunction is not entered. As will be discussed, Defendants' actions are not uniquely targeted at Plaintiffs, and these repeated collection efforts threaten the fresh start of all Injunctive Class Members.

### 3. The balance of harms favors the proposed injunction.

The injunction is narrowly drafted to require Defendants and their agents, employees, servants, and attorneys to refrain from taking any action to collect or to attempt to collect on debts that were discharged by the bankruptcy courts' discharge orders. As shown above, due to Defendants' contumacy in continuing to collect on these debts, an injunction is the only way to secure a "fresh start" for Plaintiffs and other Injunctive Class Members under the Bankruptcy Code. Defendants bore the burden to prove these loans were non-dischargeable prior to collection.[38] Their actions over the last ten years demonstrate a reckless disrespect for the bankruptcy process and the integrity of the bankruptcy courts.[39] Defendants must be made to understand it is their burden to prove these debts are non-dischargeable prior to collection. Defendants' arguments to the contrary simply underscore their utter disregard of the rights of debtors and sanctity of the discharge.

Conversely, any profits derived by Defendants from violating Section 524(a) cannot justify denial of the injunction. "[T]he fact that Defendants will suffer lost profits from not being able to [collect on debts in violation of the law] is not a factor that tips the scales in favor of Defendants." *Equibrand Corp. v. Reinsman Equestrian Prod., Inc.*, No. 07-0536, 2007 WL

---

[38]     *In re Bronsdon*, 435 B.R. 791, 796 (B.A.P. 1st Cir. 2010) ("The creditor bears the initial burden of establishing that the debt is of the type excepted from discharge under § 523(a)(8).").

[39]     *See, e.g., In re Dickerson*, 510 B.R. 289, 305 n.8 (Bankr. D. Idaho 2014) ("If Collection is in doubt as to the status of any debts it hopes to collect after discharge, it need not guess or gamble, but instead may commence an adversary proceeding in this Court to obtain a formal determination of dischargeability as to those debts.").

1461393, at *15 (N.D. Tex. May 17, 2007). *See also Lakedreams v. Taylor*, 932 F.2d 1103, 1109 n.12 (5th Cir. 1991) (noting the First Circuit's holding in *Concrete Machinery Co. v. Classic Lawn Ornaments, Inc.*, 843 F.2d 600, 612 (1st Cir. 1988), that "[w]here the only hardship that the defendant will suffer is lost profits from an activity which has been shown likely to be [in violation of the law], such an argument in defense 'merits little equitable consideration'"). This general rule should similarly apply in this instance—Defendants cannot claim a hardship from lost profits when those profits would be obtained by violating the Bankruptcy Code. Further, any loss of profits would only be temporary, and Defendants will not permanently lose any money during the pendency of this action. The debts at issue in this action can remain on their balance sheets until the final resolution by this Court and Defendants are entirely free to continue originating loans to new borrowers.

### 4. The public interest favors the proposed injunction.

The public interest factor in the determination to issue a preliminary injunction requires the court to look beyond the immediate interests of the named litigants and to consider the public interest in the dispute. *See Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 626 (5th Cir. 1985). "In recent years, federal courts have given increasing attention to the importance to the public interest of preliminary injunctive relief." *Id.* at 625-26; *see also In re Chiron Equities, LLC*, 552 B.R. 674, 700 (Bankr. S.D. Tex. 2016). No third parties will be harmed if Defendants are prevented from taking action to collect or to attempt to collect on debts that were discharged. Indeed, the proposed injunction protects a wide range of former debtors from Defendants' continuing violations of Section 524(a). Such violations threaten the "fresh start" afforded to debtors post-bankruptcy.

Likewise, the proposed injunction also benefits creditors of former debtors with nondischargeable debts, who may be at a disadvantage in collecting as a consequence of

25

Defendants' unfair and unlawful collection efforts. In addition, the federal government is harmed daily by Defendants' conduct. Many debtors in the putative class owe both non-dischargeable federal loans and dischargeable private loans from Defendants. These debtors have limited resources, and every payment made to Defendants on discharged debt leaves less money available to repay their non-dischargeable federal loans. Surely, Defendants' interests in continuing to collect on discharged debt during the pendency of this action should not come at the expense of the federal student loan trust fund (and the taxpayers who subsidize those loans).

As Judge Jeff Bohm of this District recently stated, "[i]t is in the public interest for bankruptcy courts . . . to ensure that the integrity of the bankruptcy system is upheld." *Chiron Equities*, 552 B.R. at 701.

## 5. This Court previously found the foregoing requirements satisfied in a different context.

Of additional note, this Court already found the required elements for a preliminary injunction satisfied with regard to Haas in the context of a TRO. This Court stated: "Plaintiff will be irreparably harmed if a temporary restraining order is not issued. Plaintiff has demonstrated a likelihood of success on the merits, no prejudice will [be] suffered by the defendant and the public interest is served."[40] Though the relevant inquiry for a TRO is different than for a preliminary injunction, this Court should extend its prior holding to grant Plaintiffs and Injunctive Class Members a preliminary injunction.

## 6. The Court should waive the bond requirement.

Rule 65(c) requires that a movant for a preliminary injunction give "security in an amount that the court considers proper" before any preliminary injunction issues. Fed. R. Civ. P. 65(c). "Despite the apparently mandatory language of Rule 65(c), the Fifth Circuit has held that a

---

[40]     *See* Temporary Restraining Order, Rec. Doc. 4 at 1.

court, in the proper exercise of its discretion, 'may elect to require no security at all' in an appropriate case." *Gordon v. City of Houston, Tex.*, 79 F. Supp. 3d 676, 695 (S.D. Tex. 2015) (quoting *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996)); *see also A.T.N. Indus., Inc. v. Gross*, 632 F. App'x 185, 192 (5th Cir. 2015). When "there is no risk of monetary loss to the defendants as a result of [the] preliminary injunction," the court should exercise its discretion and waive the bond requirement. *Gordon*, 79 F. Supp. 3d at 695. Defendants have no risk of monetary loss—at most, this injunction will simply delay their ability to collect on these debts (debts which they have already admitted to the SEC and their shareholders are dischargeable).

## B. PLAINTIFFS SATISFY THE STANDARDS FOR LIMITED CLASS CERTIFICATION UNDER RULE 23(B)(2).

Plaintiffs have alleged sufficient facts to warrant certification of the proposed class for the limited purpose of granting injunctive relief. The Injunctive Class is defined as the citizens of the various states who filed for bankruptcy protection in any of the United States Judicial Districts and were issued discharge orders since April 20, 2005, who (1) obtained Consumer Education Loans from Defendants or their predecessors to cover expenses at non-Title IV accredited institutions; (2) have never reaffirmed any pre-petition consumer education loan debt; and (3) have nonetheless been subjected to Defendants' attempts to induce payment on discharged debts.

This Court has previously held that bankruptcy courts have subject matter jurisdiction over nationwide class action proceedings, and the fact that some members of the putative class have or had bankruptcy cases pending in other districts does not impact the jurisdictional analysis. *See Cano*, 410 B.R. 506. This Court's decision to certify a class action under Rule 23 is reviewed for abuse of discretion. *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. 1981).

Rule 23, made applicable to bankruptcy adversary proceedings by Federal Rule of Bankruptcy Procedure 7023, provides the Court with the authority to certify the Injunctive Class for a limited purpose: "an action may be brought or maintained as a class action with respect to particular issues." Fed. R. Civ. P. 23(c)(4). "Rule 23(c)(4) explicitly recognizes the flexibility that courts need in class certification by allowing certification 'with respect to particular issues' and division of the class into subclasses." *Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970, 976 (5th Cir. 2000). In particular, the Fifth Circuit has previously confirmed that the bankruptcy courts may certify a limited debtor class for the purpose of obtaining an injunction. *See In re Rodriguez*, 695 F.3d 360, 365 (5th Cir. 2012). *See also Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036 (9th Cir. 2012) (holding that the district court possessed the authority to provisionally certify a class when the defendant acted on grounds that applied generally to the class; although the district court granted only preliminary injunctive relief when provisionally certifying the class, certification required only that final injunctive relief be appropriate, not that final injunctive relief actually issue). Such limited class certification is appropriate where, as here, "the injunctive or declaratory relief sought by the plaintiffs [] predominate[s] over claims for monetary relief." *In re Wilborn*, 609 F.3d 748, 757 (5th Cir. 2010) (citing *Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 524(a) (5th Cir. 2007)).

**1.    The class meets the requirements of Rule 23(a).**

"To obtain class certification, parties must satisfy Rule 23(a)'s four threshold requirements, as well as the requirements of Rule 23(b) . . . ." *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 837 (5th Cir. 2012) (quoting *Maldonado*, 493 F.3d at 523 (internal quotation marks omitted). The requirements of Rule 23(a) are:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the

representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). The Injunctive Class meets each of these elements, as shown below.

  a.  *The Injunctive Class satisfies the numerosity requirement.*

Numerosity is satisfied where "the class is so numerous that joinder of all members is impracticable[.]" Fed. R. Civ. P. 23(a)(1). "This involves a practical inquiry into the unique facts of the case to determine whether joinder is impracticable; however, the plaintiff need not go so far as to prove joinder is impossible." *In re Rodriguez*, 432 B.R. 671, 692 (Bankr. S.D. Tex. 2010), *aff'd*, 695 F.3d 360 (5th Cir. 2012), *and aff'd*, 695 F.3d 360 (5th Cir. 2012) (citations omitted).

To satisfy the burden of showing numerosity, "a plaintiff must ordinarily demonstrate some evidence or reasonable estimate of the number of purported class members." *Pederson v. Louisiana State Univ.*, 213 F.3d 858, 868 (5th Cir. 2000) (quoting *Zeidman*, 651 F.2d at 1038) (internal quotation marks omitted). Still, the actual number of class members is not determinative and the proper focus is "whether joinder of all members is practicable in view of the numerosity of the class and all other relevant factors." *Zeidman*, 651 F.2d at 1038 (internal quotation marks and citations omitted). Other relevant factors include "(i) the interest of judicial economy, (ii) whether the class involves small individual claims, (iii) the geographical dispersion of the class, and (iv) the ease with which class members may be identified." *Rodriguez*, 432 B.R. at 692 (citing *Zeidman*, 651 F.2d at 1038). "Rule 23(a)(1) does not require a movant to show that every factor favors numerosity before a court can find numerosity exists." *Id.* at 694 (citing *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620 (5th Cir. 1999)).

Here, each factor weighs in favor of certifying the Injunctive Class on the basis of numerosity.

First, "[a]lthough the number of members in a proposed class is not determinative of whether joinder is impracticable," the Fifth Circuit has previously held that a class exceeding forty members "raise[s] a presumption that joinder is impracticable" and a class consisting of 100 to 150 members "is within the range that generally satisfies the numerosity requirement." *Mullen*, 186 F.3d at 624. The size of the class may be estimated based on Navient's public disclosures regarding the size of their Career Training loan program. Navient has disclosed to investors that between 2003 and 2010, more than $3.9 billion of Career Training loans entered repayment and that the average amount of a private loan was $9,880.[41] Accordingly, not accounting for any other types of non-qualified education loans (such as Bar Exam Loans, K-12 Loans, etc.), Navient originated approximately 400,000 Career Training loans that entered repayment between 2003 and 2010 (*i.e.*, $3,900,000,000 ÷ $9,880). Since 2005, more than thirteen million consumers have filed for bankruptcy in the United States.[42] This represents about four percent of the total population of the United States (as measured in 2014). Assuming, a*rguendo*, that debtors with Career Training loans enter bankruptcy at roughly the same rate as the average American, there will be not less than 16,000 members in the class with Career Training loans (*i.e.*, 4% of 401,821).

Second, joinder is impracticable in light of the small individual claims and in the interest of judicial economy. *See Mullen*, 186 F.3d at 624-25. In this Motion, Plaintiffs and Class Members seek only injunctive relief. Thus, "the small size of the claims at issue favors a finding that the class is sufficiently numerous." *See Rodriguez*, 432 B.R. at 693. Judicial economy also

---

[41]   *See* Navient 2016 2nd Quarter Investor Deck at 5, 67 (July 25, 2016) (attached as Exhibit 6).

[42]   To be exact, there have been 13,566,632 non-business filings. *See* United States Courts, Caseload Statistics Data Tables, http://www.uscourts.gov/statistics-reports/caseload-statistics-data-tables (last visited Feb. 17, 2017).

favors a finding of numerosity as Plaintiffs and Class Members "might be reluctant to file individually" after evaluating the burdensome expenses of litigation. *Id.* at 624. Given that Class Members are former debtors, such reluctance is heightened. At present, "99.9 percent of bankrupt student loan debtors do not even try to discharge their student loans." *See* Jason Iuliano, *An Empirical Assessment of Student Loan Discharges and the Undue Hardship Standard*, 86 Am. Bankr. L.J. 495, 501 (2012). This is in part because so few bankruptcy lawyers will agree to take on student loan discharge cases. On the other hand, if Class Members were to file individually, "[j]udicial resources are wasted when each individual debtor is forced to seek an injunction prohibiting [Defendants] from collecting or attempting to collect unauthorized [debts]. The class action device enables the Court to grant injunctive relief more efficiently and on a larger scale." *Id.* at 693-94. Consequently, "[j]udicial economy also favors a finding that numerosity exists." *Id.* at 693.

Third, the geographical dispersion of the class is such that joinder is impracticable, as is the difficulty surrounding identification of the class. *See Mullen*, 186 F.3d at 624. Defendants are or were national providers, holders, and servicers of consumer education loans and made these loans available to students nationwide. Injunctive Class Members are citizens of various states who obtained dischargeable consumer education loans from Defendants or their predecessors, have been issued discharge orders since April 20, 2005 by a district court, and have nonetheless been subjected to Defendants' attempts to induce payment on discharged debts. Consequently, Class Members are located all over the country and may be difficult to identify.[43] Though Defendants may possess records that could facilitate the identification process, Plaintiffs are

---

[43]    This Court has previously held that bankruptcy courts have subject matter jurisdiction over nationwide class action proceedings. *See Cano*, 410 B.R. 506.

currently unaware of any method by which they may locate individuals who fall into this unique group. Accordingly, these factors favor a finding of numerosity.

    *b.  Common legal and factual issues pertain to both Plaintiffs and the Injunctive Class.*

The commonality and typicality requirements under Rule 23(a)(2) and 23(a)(3) are satisfied because there are sufficient common legal and factual questions as to each Injunctive Class Member, including Plaintiffs, to certify the Class.

Commonality is satisfied when "there are questions of law or fact common to the class[.]" Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury[.]'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). "This does not mean merely that they have all suffered a violation of the same provision of law." *Id.* at 350. Rather, the claims of the individual class members "must depend upon a common contention . . . . That common contention [] must be of such a nature that it is capable of classwide resolution— which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* Therefore, to establish commonality, a plaintiff must demonstrate two things: (1) "that there exists a common policy or practice, possibly an implicit one, that is the alleged source of the harm to class members," and (2) "that there are common questions of law or fact that will be dispositive of the class members' claim." *M.D. v. Perry*, 294 F.R.D. 7, 28-29 (S.D. Tex. 2013). Plaintiffs and Injunctive Class Members satisfy both criteria.

To satisfy the first requirement, a plaintiff "must identify a unified common policy, practice, or course of conduct that is the source of their alleged injury." *Id.* at 26. "The policy or practice that a plaintiff identifies need not be formal or officially-adopted[,]" and can be identified as a custom or consistent practice or deliberate indifference. *Id.* "A plaintiff also bears

the burden of connecting the policy or practice to the alleged harm, especially in cases where this connection is not readily apparent." *Id.* (citations omitted). This does not require the plaintiff to prove "that the harm actually occurred, *i.e.*, they do not need to prove that the policies they identified did, in fact, cause the harm they are alleging. . . . [T]he only consideration at the class certification stage is whether the issues are appropriate for classwide litigation." *Id.* Additionally, it is not required that every class member suffer the same injury or any injury as a result of the common policy, so long as the class alleges the existence of a pattern or practice generally applicable to the class as a whole. *Id.* at 28 (citations omitted).

With regard to the second requirement—common questions of fact or law—"the common questions identified must be dispositive of the claims." *Id.* "The number of common questions does not matter, one will suffice, provided it is critical to resolving the class members' claims." *Id.* (citing *Wal-Mart*, 564 U.S. at 359). Potential defenses must also be considered as they might undermine the dispositive nature of the common questions. *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 843-44 (5th Cir. 2012)). Still, some variations within the class members' claims or individualized defenses will not necessitate a finding that certification is improper. *Perry*, 294 F.R.D. at 28. Ultimately, "[s]o long as the common questions linking the putative class members are dispositive of their claim and the claim arises out of a single course of conduct and on a single theory of liability, Rule 23(a)'s commonality requirement is satisfied." *Id.* (citations omitted).

Here, Plaintiffs allege that Defendants have harmed Plaintiffs and Injunctive Class Members by violating Section 524(a). Thus, Plaintiffs must show: (1) Defendants have a common policy or practice of violating Section 524(a), and (2) resolution of a common question

of law or fact will be dispositive of the class members' claims that Section 524(a) was violated. Plaintiffs have shown both.

First, Plaintiffs allege that Defendants have engaged in a decade-long scheme to defraud student debtors with deliberate indifference to the requirements of Section 524(a). Though this practice is identifiable from the evidence provided by Haas and Shahbazi,[44] various adversarial complaints filed in bankruptcy courts across the country indicate that this practice is not uniquely targeted at Plaintiffs. Defendants appear to have an unofficial policy of continuing to collect or to attempt to collect on the discharged Loans until legal action is taken on behalf of the individual debtor.[45] Because most debtors do not know that their debts are dischargeable, these adversarial proceedings reflect a mere fraction of the harm suffered by Injunctive Class Members as a consequence of Defendants' practice of violating Section 524(a).

Second, resolution of common questions of law and fact will be dispositive of Injunctive Class Members' claims that Defendants violated Section 524(a). As previously stated, in order to prevail on a claim that Section 524(a) was violated, a plaintiff must show that: (1) a discharge injunction order was entered in the plaintiff's bankruptcy proceeding; (2) an act was subsequently taken to establish the plaintiff's liability for a debt or to recover a debt in any manner; and (3) the debt is pre-petition and discharged under the provisions of the Code.

---

[44]     *See* June 10, 2016 Email from Navient to Haas, Rec. Doc. 1-5 (attached as Exhibit 3); Navient/Sallie Mae's Collection Attempts, Rec. Doc. 1-6 (attached as Exhibit 4), Affidavit of Haas, Rec. Doc. 1-7 (attached as Exhibit 5); Affidavit of Shahbazi (attached as Exhibit 6).

[45]     *See, e.g.*, Complaint, *Finn v. Navient*, Adv. Pro. No. 17-4016 (Bankr. W.D. Wash. Feb. 13, 2017), ECF No. 1 (attached as Exhibit 15); Complaint, *Payne v. Sanford Brown College, et al.*, Adv. Pro. No. 16-4141 (Bankr. W.D. Wash. Nov. 21, 2016), ECF No. 1 (attached as Exhibit 16; Complaint, *Mauldin v. Navient Corp.*, Adv. Pro. No. 16-391 (Bankr. M.D. Fla. June 1, 2016), ECF No. 1 (attached as Exhibit 17); Complaint, *Williams v. Navient Solutions, Inc.*, Adv. Pro. No. 16-1244 (Bankr. S.D. Fla. June 1, 2016), ECF No. 1 (attached as Exhibit 18). *See also* Complaint, *Markley v. Navient*, Adv. Pro. No. 16-6027 (Bankr. N.D. Ohio filed July 27, 2016), ECF No. 1.

Because the Injunctive Class is limited to individuals that satisfy the first two requirements, the third element is the only relevant inquiry for purposes of resolving Plaintiffs' and Class Members' claims. Thus, a determination of the Consumer Education Loans' dischargeability will be dispositive of Plaintiffs' and Injunctive Class Members' claims for declaratory relief based on Section 524(a). Commonality is satisfied.

Typicality is likewise satisfied as Plaintiffs' claims are typical of the claims of the Injunctive Class. "The commonality and typicality requirements of Rule 23(a) tend to merge." *Wal-Mart*, 564 U.S. 338, 350 n.5 (2011) (quoting *Falcon*, 457 U.S. 147, 157 n.13). Like commonality,

> [t]ypicality does not require a complete identity of claims. Rather the critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality.

*James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001), *abrogated on other grounds by MD*, 675 F.3d at 832, *abrogation recognized Rodriguez*, 695 F.3d at 367 n. 9 (internal quotation marks and citations omitted). "Often, once commonality is shown typicality will follow as a matter of course." *Perry*, 294 F.R.D. at 29 (citation omitted). As already indicated, Plaintiffs' claims hinge on the same questions of law and fact as the claims of the Injunctive Class. Therefore, typicality is satisfied.

   *c.  Plaintiffs and their counsel are adequate representatives for the class.*

Adequacy of representation tends to merge with commonality, though it "also raises concerns about the competency of class counsel and conflicts of interest." *Wal-Mart*, 564 U.S. 338, 350 n.5 (2011) (quoting *Falcon*, 457 U.S. 147, 157 n.13). "Rule 23(a)'s adequacy requirement encompasses class representatives, their counsel, and the relationship between the two." *Stirman v. Exxon Corp.*, 280 F.3d 554, 563 (5th Cir. 2002) (quoting *Berger v. Compaq*

*Computer Corp.*, 257 F.3d 475, 479 (5th Cir. 2001)) (internal quotation marks omitted). The courts consider: (1) "the zeal and competence of the representative[s'] counsel" and (2) "the willingness and ability of the representative[s] to take an active role in and control the litigation and to protect the interests of absentees[.]" *Id.* (internal quotation marks and citations omitted).

Plaintiffs' counsel is well qualified and experienced in class action lawsuits, complex commercial litigation, bankruptcy law and procedure, and student loan litigation.[46] Counsel will advance the costs of litigation and will represent the Class on a contingent fee basis, and will provide adequate representation to the Class pursuant to Rule 23(a)(4). The fact that Plaintiffs have filed this Motion testifies to the vigor of Plaintiffs' representation of the Class. Likewise, no potential conflicts exist here: Plaintiffs share the precise claims as the Class and have an acute interest in stopping Defendants' violations of Section 524(a).

### 2. The class meets the requirements of Rule 23(b).

Given the limited purpose of the Injunctive Class, certification is appropriate under Rule 23(b)(2).[47] Class certification under Rule 23(b)(2) requires that the defendant acts "on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "Instead of requiring common issues, 23(b)(2) requires common behavior by the defendant towards the class." *Rodriguez*, 695 F.3d at 365 (quoting *Casa Orlando Apartments, Ltd. v. Fed. Nat. Mortg. Ass'n*, 624 F.3d 185, 198 (5th Cir. 2010)). "For these reasons, proposed (b)(2) classes need not withstand a court's independent probe into the superiority of the class action over other available methods of adjudication or the degree to which common issues predominate over those affecting

---

[46]   *See* Declaration of Jason W. Burge (attached as Exhibit 19); Declaration of Lynn Swanson (attached as Exhibit 20); Declaration of Austin C. Smith (attached as Exhibit 21).

[47]   With regard to additional relief requested in Plaintiffs' Second Amended Complaint, Plaintiffs reserve the right to seek class certification under Rule 23(b)(3) at a later time.

only individual class members, as (b)(3) classes must." *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 414 (5th Cir. 1998). "Thus, a Rule 23(b)(2) inquiry requires considering two factors: 1) whether the defendant's behavior is generally applicable to the class as a whole, and 2) whether injunctive relief predominates over monetary relief." *Casa Orlando*, 624 F.3d at 198. Here, both factors favor certification.

First, Plaintiffs seek class certification based on Defendants' standardized policy of continuing to collect or to attempt to collect on loans post-discharge, a practice that is generally applicable to the Injunctive Class. Though there are minute differences between the Class Members pertaining to their individualized experiences with Defendants and their underlying bankruptcy action, such differences are irrelevant in the context of Rule 23(b)(2). *See Rodriguez*, 695 F.3d at 366-67 ("The focus is properly upon [the defendant's] fee assessment and collection practice, not on the individualized manner in which each class member may have been affected by the practices."); *Casa Orlando*, 624 F.3d at 199 ("Differences do exist among the [class members] . . . . But regardless of these differences, [the defendant's] behavior and policy . . . is generally applicable to the class.").

Second, at this preliminary stage, Plaintiffs do not seek monetary relief on behalf of the Injunctive Class although they reserve all rights to seek monetary relief in this proceeding. An "injunctive claim on its own does not involve 'the myriad issues that may arise in each case as to whether and how fees and costs were imposed.'" *Rodriguez*, 695 F.3d  367 (quoting *Wilborn*, 609 F.3d at 757). Because Plaintiffs presently seek only injunctive relief, it necessarily follows that injunctive relief predominates over monetary relief. *See Allison*, 151 F.3d at 411 (explaining that class certification would have been proper if the plaintiffs were only seeking injunctive relief because the plain language of Rule 23(b)(2) would have been satisfied).

37

Finally, certification under Rule 23(b)(2) is appropriate where the class action will "settl[e] the legality of the behavior [at issue] with respect to the class as a whole[.]" Fed. R. Civ. P. 23(b)(2) advisory committee's note on 1966 amendments. In light of the foregoing, Rule 23(b)(2) certification is appropriate because the proposed injunction will settle the legality of Defendants' collection attempts as to the whole class.

## V.   CONCLUSION

There is sufficient evidence to conclude that Defendants routinely violate Section 524(a) of the Bankruptcy Code and court orders. As such, Plaintiffs seek injunctive relief to protect them and other former debtors who are targeted by Defendants' illicit collection and/or attempted collection of discharged debt. The proposed preliminary injunction balances appropriate protection of the "fresh start" interests of Plaintiffs and Injunctive Class Members, while minimizing the harm to Defendants' business by enforcing only what is already required to comply with the Bankruptcy Code. As such, Plaintiffs respectfully request that this Court grant the proposed injunction and certify the proposed Injunctive Class on a limited basis in order to effectuate the proposed injunction.

Dated: February 27, 2017.                    Respectfully submitted,


                                             By:    /s/*Adam Corral*
                                                    Adam Corral

                                             Jason W. Burge (*pro hac vice*)
                                             SBN (LA) 30420
                                             FISHMAN HAYGOOD L.L.P.
                                             201 St. Charles Avenue, 46th Floor
                                             New Orleans, Louisiana 70170-4600
                                             (504) 586-5252; (504) 586-5250 fax
                                             jburge@fishmanhaygood.com

Kathryn J. Johnson (*pro hac vice*)
SBN (LA) 36513
FISHMAN HAYGOOD L.L.P.
201 St. Charles Avenue, 46th Floor
New Orleans, Louisiana 70170-4600
(504) 586-5252; (504) 586-5250 fax
kjohnson@fishmanhaygood.com

Austin Smith (*pro hac vice*)
SBN (NY) 5377254
SMITH LAW GROUP
3 Mitchell Place
New York, New York 10017
(917) 992-2121
Austin@acsmithlawgroup.com

Catherine E. Lasky (*pro hac vice*)
SBN (LA) 28652
JONES, SWANSON, HUDDELL & GARRISON,
L.L.C.
601 Poydras Street, Suite 2655
New Orleans, Louisiana 70130
(504) 523-2500; (504) 523-2508
Klasky@jonesswanson.com

Kerry Murphy (*pro hac vice*)
SBN (LA) 31382
JONES, SWANSON, HUDDELL & GARRISON,
L.L.C.
601 Poydras Street, Suite 2655
New Orleans, Louisiana 70130
(504) 523-2500; (504) 523-2508
KMurphy@jonesswanson.com

Joshua B. Kons (*pro hac vice*)
SBN (IL) 6304853
Law Offices of Joshua B. Kons, LLC
939 West North Avenue, Suite 750
Chicago, IL 60642
(312) 757-2272
joshuakons@konslaw.com

Adam Corral
SBN (TX) 24080404
Corral Tran Singh, LLP
440 Louisiana St, Suite 2450
Houston, TX 77002
(832) 975-7300; (832) 975-7301 fax
Adam.corral@ctsattorneys.com

Susan Tran
SBN (TX) 24075648
Corral Tran Singh, LLP
440 Louisiana St, Suite 2450
Houston, TX 77002
(832) 975-7300; (832) 975-7301 fax
susan.tran@ctsattorneys.com

Brendon Singh
SBN (TX) 24075646
Corral Tran Singh, LLP
440 Louisiana St, Suite 2450
Houston, TX 77002
(832) 975-7300; (832) 975-7301 fax
brendon.singh@ctsattorneys.com

Marc Douglas Myers
SBN (TX) 00797133
Ross, Banks, May, Cron & Cavin, P.C.
7700 San Felipe, Suite 550
Houston, Texas 77063
(713) 626-1200; (713) 623-6014 fax
mmyers@rossbanks.com

*Counsel to Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on this 27th day of February, 2017, a true and correct copy of *Plaintiffs Evan Brian Haas' and Michael Shahbazi's Motion for Preliminary Injunction and Limited Class Certification* was served via that Court's electronic case filing system (CM/ECF) to all parties registered to receive such notice in the above-captioned proceeding.

/s/*Adam Corral*         
Adam Corral

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| EVAN BRIAN HAAS, MICHAEL SHAHBAZI,[1] | §<br>§<br>§<br>§ | Chapter 7 |
| Plaintiffs, | §<br>§ | Case Number 15-35586 (DRJ) |
| v. | §<br>§ | Adv. Pro. No. 16-03175 (DRJ) |
| SLM CORPORATION, NAVIENT SOLUTIONS, INC., | §<br>§<br>§ | **NATIONWIDE CLASS ACTION** |
| Defendants. | §<br>§<br>§ | |

**ORDER GRANTING PLAINTIFFS**
**EVAN BRIAN HAAS' AND MICHAEL SHAHBAZI'S MOTION FOR**
**PRELIMINARY INJUNCTION AND LIMITED CLASS CERTIFICATION**

Upon consideration of the motion (the "Motion") filed by Evan Brian Haas and Michael Shahbazi ("Plaintiffs") for entry of an order (i) granting a preliminary injunction to restrain Navient Solutions, Inc. and Navient Credit Financial Corporation ("Defendants") from taking any action to collect or to attempt to collect on discharged debts in violation of Section 524(a) of the Bankruptcy Code, and (ii) certifying the proposed Injunctive Class to effectuate this relief; and the Court having jurisdiction to consider the Motion and the Opposition pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(b); and due and proper notice of the Motion having been provided; and the Court having reviewed the Motion and the Opposition; and the Court having determined that the legal and factual bases set forth in the Motion and the Opposition establish

---

[1]    Plaintiffs appear both individually and on behalf of all similarly situated individuals who have declared bankruptcy since 2005 in the various district courts of the United States with educational loans serviced by Defendants, Navient Solutions, Inc. and Navient Credit Financial Corporation, that do not meet the definition of a qualified education loan in 26 U.S.C. § 221(d) and 11 U.S.C. § 523(a)(8).

1169516v.1

just cause for the relief denied herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause therefor; it is hereby

ORDERED that the Motion is GRANTED; and it is further

ORDERED that a preliminary injunction is hereby entered, restraining Defendants and their agents, employees, servants, and attorneys from taking any action to collect or to attempt to collect on debts that were discharged by the bankruptcy courts' discharge orders in violation of Section 524(a) of the Bankruptcy Code; and it is further

ORDERED that the Injunctive Class is hereby certified, to include the citizens of the various states who filed for bankruptcy protection in any of the United States Judicial Districts and were issued discharge orders since April 20, 2005, who (1) obtained consumer education loans from Defendants or their predecessors to cover expenses at non-Title IV accredited institutions, (2) have never reaffirmed any pre-petition consumer education loan debt, and (3) have nonetheless been subjected to Defendants' attempts to induce payment on discharged debts; and it is further

ORDERED that this Order shall be immediately effective upon entry; and it is further

ORDERED that this Court hereby retains jurisdiction to hear and determine all matters arising from or related to interpretation of this Order.


**Signed:**

_____
**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

1169516v.1