## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| *In re*:<br><br>**EVAN BRIAN HAAS,**<br><br>          **Debtor.** | **Chapter 7**<br><br>**Case No. 15–35886 (DRJ)** |
| **EVAN BRIAN HAAS and**<br>**MICHAEL SHAHBAZI,**<br><br>          **Plaintiffs,**<br><br>**v.**<br><br>**NAVIENT SOLUTIONS, LLC and**<br>**NAVIENT CREDIT FINANCE CORPORATION,**<br><br>          **Defendants.** | **Adv. Pro. No. 16–03175 (DRJ)** |

## MOTION TO DISMISS ADVERSARY PROCEEDING AND TO STRIKE CLASS ALLEGATIONS BY NAVIENT SOLUTIONS, LLC AND NAVIENT CREDIT FINANCE CORPORATION

This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 30 days pursuant to the parties' Agreed Order [Dkt. No. 94]. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing.

Represented parties should act through their attorney.

A hearing on this motion will be set by separate notice.

<u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................ 3

I.      EVAN BRIAN HAAS ................................................................................................ 3

II.     MICHAEL SHAHBAZI ............................................................................................. 5

III.    THE EVOLUTION OF THIS ADVERSARY PROCEEDING .......................................... 6

LEGAL STANDARD ......................................................................................................... 7

ARGUMENT ..................................................................................................................... 8

I.      THE COURT LACKS JURISDICTION OVER SHAHBAZI'S CLAIMS ........................... 8

II.     PLAINTIFFS HAVE NOT STATED A CLAIM UPON WHICH THE COURT CAN GRANT
        RELIEF ................................................................................................................. 14

        A.      Plaintiffs seek impermissible redundant relief in Count I (Declaratory
                Judgment) and in their Prayer for successive injunctions................................... 15

        B.      The discharge orders at issue here are not sufficiently clear and definite in
                regard to which, if any, of Plaintiffs' educational loans are dischargeable
                to support a finding of contempt. ........................................................................ 17

        C.      Plaintiffs' Second Amended Complaint suffers from fatal pleading
                deficiencies. ......................................................................................................... 22

        D.      Plaintiffs have not alleged that they suffered any actual loss, and their
                allegations of emotional distress are too superficial to support relief. ............... 23

        E.      Plaintiffs cannot recover punitive damages. ....................................................... 25

III.    THE COURT SHOULD STRIKE PLAINTIFFS' CLASS ALLEGATIONS ...................... 27

        A.      This Court lacks jurisdiction over a nationwide class action............................... 27

        B.      Haas waived his right to participate in a class. .................................................... 28

CONCLUSION ................................................................................................................ 31

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*In re Alcantara*,
  389 B.R. 270 ..............................................................................................................24

*Alderwoods Grp., Inc. v. Garcia*,
  682 F.3d 958 (11th Cir. 2012) .........................................10, 11, 13, 14, 15, 17, 27

*Am. Airlines, Inc. v. Allied Pilots Ass'n*,
  228 F.3d 574 (5th Cir. 2000) ......................................................................................24

*Am. Airlines, Inc. v. Allied Pilots Ass'n*,
  53 F. Supp. 2d 909 (N.D. Tex. 1999) ......................................................................24

*Am. Exp. Co. v. Italian Colors Restaurant*,
  570 U.S. __, 133 S. Ct. 2304 (2013).......................................................................29

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...............................................................................................7, 8

*Asher v. A.G. Edwards & Sons, Inc.*,
  272 F. App'x 357 (5th Cir. 2008) ..........................................................................12

*Barrett v. Avco Fin. Srvs. Mgmt. Co.*,
  292 B.R. 1 (D. Mass. 2003) ...........................................................................9, 11, 27

*Barrientos v. Wells Fargo Bank, N.A.*,
  633 F.3d 1186 (9th Cir. 2011) ................................................................................17

*Matter of Baum*,
  606 F.2d 592 (5th Cir. 1979) .............................................................................18, 21

*Beavers v. Metro. Life Ins. Co.*,
  566 F.3d 436 (5th Cir. 2009) ....................................................................................7

*In re Beck*,
  283 B.R. 163 (Bankr. E.D. Penn. 2002) ..................................................................12

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...................................................................................................8

*Bessette v. Avco Fin. Servs., Inc.*,
  279 B.R. 442 (D.R.I. 2002)......................................................................................13

*Bessette v. Avco Financial Services Inc.*,
  230 F.3d 439 (1st Cir. 2000) ............................................................................13, 15

*Caldwell v. Redstone Fed. Credit Union*,
  No. 2:15–cv–1923 (JHE), 2016 WL 4702821 (N.D. Ala Sept. 8, 2016) ................................17

*In re Cano*,
  410 B.R. 506 (Bankr. S.D. Tex. 2009) (Isgur, J.) ..................................................14

*In re Chambers*,
  324 B.R. 326 (Bankr. N.D. Ohio 2005) ............................................................26

*In re Cline*,
  282 B.R. 686 (W.D. Wash. 2002) ..................................................................12

*Cox v. Zale Del, Inc.*,
  239 F.3d 910 (7th Cir. 2001) ...............................................................8, 9, 12, 15, 26, 27

*Dickey v. Bullard*,
  No. 07–0632, 2007 WL 1202449 (W.D. La. Apr. 20, 2007) ..........................................13

*Duzer v. U.S. Bank N.A.*,
  995 F. Supp. 2d 673 (S.D. Tex. 2014) ................................................................4

*In re Dyer*,
  322 F.3d 1178 (9th Cir. 2003) ......................................................................26

*In re Eastman*,
  419 B.R. 711 (W.D. Tex. 2009)......................................................................24

*Ehlinger & Assocs. v. La. Architects Ass'n*,
  No. 96–2413, 1996 WL 603928 (E.D. La. Oct. 22, 1996) ............................................13

*In re Fauser*,
  545 B.R. 907 (Bankr. S.D. Tex. 2016) (Isgur, J.) .................................................23, 24, 26

*Fed. Deposit Ins. Corp. v. LeGrand*,
  43 F.3d 163 (5th Cir. 1995) .......................................................................25

*Fernandez-Montes v. Allied Pilots Ass'n*,
  987 F.2d 278 (5th Cir. 1993) ........................................................................7

*Fin. Acquisition Partners LP v. Blackwell*,
  440 F.3d 278 (5th Cir. 2006) ......................................................................23

*In re Fina*,
  550 F. App'x 150 (4th Cir. 2014) ..................................................................15

*Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*,
565 F.3d 200 (5th Cir. 2009) ..........................................................................................22

*In re Forson*,
549 B.R. 866 (Bankr. S.D. Ohio 2016)............................................................................11

*Garfield v. Ocwen Loan Servicing, LLC*,
811 F.3d 86 (2d Cir. 2016).............................................................................................15

*In re Gervin*,
300 F. App'x 293 (5th Cir. 2008) ...........................................................................18, 19, 21

*Gloria v. Allstate Cnty. Mut. Ins. Co.*,
No. SA–99–CA–676–PM, 2000 WL 35754563 (W.D. Tex. Sept. 29, 2000) ........................28

*Gompers v. Bucks Stove & Range Co.*,
221 U.S. 418 (1911).......................................................................................................25

*Gray v. Petroseed Co., Inc.*,
985 F. Supp. 625 (D.S.C. 1996).......................................................................................13

*H.K. Porter Co., Inc. v. Nat'l Friction Prods. Corp.*,
568 F.2d 24 (7th Cir. 1977) ............................................................................................18

*In re Hamilton Allied Corp.*,
87 B.R. 43 (Bankr. S.D. Ohio 1988)................................................................................13

*Hartman v. Lyng*,
884 F.2d 1103 (8th Cir. 1989) .........................................................................................15

*Hicks v. Feiock*,
485 U.S. 624 (1988)........................................................................................................25

*Hitt v. Connell*,
301 F.3d 240 (5th Cir. 2002) ..........................................................................................25

*Int'l Longshoremen's Ass'n, Local 1291 v. Philadelphia Marine Trade Ass'n*,
389 U.S. 64 (1967).....................................................................................................18, 21

*Int'l Union, United Mine Workers of Am. v. Bagwell*,
512 U.S. 821 (1994).....................................................................................................9, 27

*Jones v. Alcoa, Inc.*,
339 F.3d 359 (5th Cir. 2003) .............................................................................................7

*Jones v. CitiMortg., Inc.*,
No. 15–14853, 2016 WL 6610208 (11th Cir. Nov. 9, 2016)................................................11

*In re Joubert*,
    411 F.3d 452 (3d Cir. 2005)................................................................................15

*In re Just Brakes Corporate Sys., Inc.*,
    108 F.3d 881 (8th Cir. 1997) ...........................................................................26

*In re Katrina Canal Breaches Litig.*,
    495 F.3d 191 (5th Cir. 2007) .............................................................................7

*Lamar Fin. Corp. v. Adams*,
    918 F.2d 564 (5th Cir. 1990) ...........................................................................25

*In re Logsdon*,
    32 F. App'x 427 (9th Cir. 2002) .................................................................19, 21

*In re Lohmeyer*,
    365 B.R. 746 (Bankr. N.D. Ohio 2007)............................................................24

*Lone Star Fund V (U.S.), LP v. Barclays Bank, PLC*,
    594 F.3d 383 (5th Cir. 2010) .............................................................................4

*In re Lonnie Davis*,
    No. 06–7016, 2006 WL 2827270, at *2 (Bankr. S.D. Tex. Sept. 27, 2006)
    (Isgur, J.) ...............................................................................................12, 13, 14

*Lubrizol Corp. v. Exxon Corp.*,
    871 F.2d 1279 (5th Cir. 1989) ...............................................................10, 12, 27

*In re Lycoming Engines v. Sup. Air Parts, Inc.*,
    486 B.R. 728 (Bankr. N.D. Tex. 2012)..............................................................4

*Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*,
    369 F.3d 464 (5th Cir. 2004) .............................................................................7

*Martin v. Trinity Indus., Inc.*,
    959 F.2d 45 (5th Cir. 1992) .........................................................................18, 20

*In re McLean*,
    794 F.3d 1313 (11th Cir. 2015) .............................................................9, 10, 11, 27

*Melder v. Morris*,
    27 F.3d 1097 (5th Cir. 1994) ...........................................................................22

*In re Montano*,
    488 B.R. 695 (Bankr. D.N.M. 2013) ...............................................................12

*In re Motichko*,
    395 B.R. 25 (Bankr. N.D. Ohio 2008)..............................................................11

*Myart v. Glosson*,
No. SA–14–cv–831–XR, 2014 WL 6612008 (W.D. Tex. Nov. 20, 2014).............................28

*In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Injury Litig.*,
314 F.R.D. 580 (N.D. Ill. 2016).......................................................................................29

*Matter of Nat'l Gypsum Co.*,
118 F.3d 1056 (5th Cir. 1997) ........................................................8, 9, 10, 16, 27

*In re Nelson*,
234 B.R. 528 (Bankr. M.D. Fla. 1999) ...........................................................12

*Norman Bridge Drug Co. v. Banner*,
529 F.2d 822 (5th Cir. 1976) .........................................................................25

*Palmer v. Convergys Corp.*
No. 7:10–cv–145, 2012 WL 425256, *2–3 (M.D. Ga. Feb. 9, 2012)....................29

*In re Paul*,
534 F.3d 1303 (10th Cir. 2008) .....................................................................15

*Pereira v. First N. Am. Nat'l Bank*,
223 B.R. 28 (N.D. Ga. 1998) .........................................................................12

*Pertuso v. Ford Motor Credit Co.*,
233 F.3d 417 (6th Cir. 2000) .....................................................9, 11, 15, 27

*Randall D. Walcott, M.D., P.A. v. Sebelius*,
635 F.3d 757 (5th Cir. 2011) .......................................................................3, 7

*Reed v. Input/Output, Inc.*,
No. 2005 WL 2086179 (S.D. Tex. Aug. 26, 2005)............................................28

*Rosa v. Am. Water Heater Co.*,
177 F. Supp. 3d 1025 (S.D. Tex. 2016) .........................................................28

*In re Sandburg Fin. Corp.*,
446 B.R. 793 (S.D. Tex. 2011) .......................................................................23

*Shafer v. Army & Air Force Exch. Serv.*,
376 F.3d 386 (5th Cir. 2004) .........................................................................24

*Shushany v. Allwaste, Inc.*,
992 F.2d 517 (5th Cir. 1993) .........................................................................22

*In re Singleton*,
284 B.R. 322 (D.R.I. 2002)..............................................................................12

*Hodge ex rel. Skiff v. Hodge*,
   66 F. Supp. 2d 342 (N.D.N.Y. 1999) ...................................................................13

*Skinner v. White*,
   505 F.2d 685 (5th Cir. 1974) ...............................................................................9

*Southland Secs. Corp. v. INSpire Ins. Solutions, Inc.*,
   365 F.3d 353 (5th Cir. 2004) .............................................................................23

*Strubel v. Hartford Ins. Co. of the Midwest*,
   No. 8:09–cv–01858–T–17–TBM, 2010 WL 745616 (M.D. Fla. Feb. 26, 2010) ..................17

*Sullivan v. Leor Energy, LLC*,
   600 F.3d 542 (5th Cir. 2010) ...............................................................................4

*Matter of Terrebonne Fuel & Lube, Inc.*,
   108 F.3d 609 (5th Cir. 1997) ...................................................................2, 17, 26

*Toledo Scale Co. v. Computing Scale Co.*,
   261 U.S. 399 (1923).............................................................................................9

*Transam. Fin. Serv. v. Danney*,
   No. 99–228–P–H, 1999 WL 33117201 (D. Me. Dec. 23, 1999) ...........................13

*Turner v. Rogers*,
   564 U.S. 431 (2011)...........................................................................................25

*United States v. Petroski*,
   132 F.3d 1454, 1997 WL 802351 (5th Cir. 1997) (unpublished) ..........................21

*United States v. Reed*,
   773 F.2d 477 (2d Cir. 1985)................................................................................13

*United States v. United Mine Workers of Am.*,
   330 U.S. 258 (1947)...........................................................................................24

*W. Water Mgmt., Inc. v. Brown*,
   40 F.3d 105 (5th Cir. 1994) ...............................................................................15

*Waffenschmidt v. MacKay*,
   763 F.2d 711 (5th Cir. 1985) ...............................................9, 10, 12, 13, 14, 27

*Walls v. Wells Fargo Bank, N.A.*,
   276 F.3d 502 (9th Cir. 2002) .............................................................................15

*In re Waswick*,
   212 B.R. 350 (Bankr. N.D. 1997) .......................................................................16

*In re Wilborn*,
609 F.3d 748 (5th Cir. 2010) ................................................................10, 12, 14

*Williams v. Sears, Roebuck & Co.*,
244 B.R. 858 (S.D. Ga. 2000).........................................................................12

*Williams v. WMX Techs., Inc.*,
112 F.3d 175 (5th Cir. 1997) ..........................................................................22

*Xcentric Ventures, LLC v. Arden*,
No. C 10–80058 SI, 2011 WL 806629 (N.D. Cal. Mar. 2, 2011).........................13

*Yaghobi v. Robinson*,
145 F. App'x 697 (2d Cir. 2005) .......................................................................15

## Federal Statutes

11 U.S.C.
§ 105..................................................................................................2, 16, 17
§ 362(h)..........................................................................................................26
§ 523................................................................................................................8
§ 523(a)(8) ................................................................................................21, 23
§ 523(a)(8)(A) ..................................................................................................6
§ 524.....................................................................................................8, 15, 16, 26
§ 524(a)(2)–(3)........................................................................................8, 15, 27
§ 532(a)(8)(B) ..................................................................................................6
§ 727..............................................................................................................20

## Rules

Fed. R. Bankr. P.
Rule 7008 ........................................................................................................1
Rule 7009 .....................................................................................................1, 22
Rule 7012 .....................................................................................................1, 7

Fed. R. Civ. P.
Rule 8 ..............................................................................................................1
Rule 9 ..........................................................................................................1, 22
Rule 12 .....................................................................................................1, 7, 28
Rule 23 .....................................................................................................10, 29

Fed. R. Evid.
Rule 201(b)(2)..................................................................................................4

## Other Authorities

5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*
§ 1357 (2d ed. 1990) .........................................................................................7

**MOTION TO DISMISS ADVERSARY PROCEEDING AND TO
STRIKE CLASS ALLEGATIONS BY NAVIENT SOLUTIONS, LLC
<u>AND NAVIENT CREDIT FINANCE CORPORATION</u>**

**(RELATED TO DKT. NO. 95)**

By and through the undersigned counsel, Navient Solutions, LLC ("<u>NSL</u>") and Navient

Credit Finance Corporation ("<u>NCFC</u>") hereby move the Court under Federal Rules of Civil

Procedure 8, 9, and 12, as incorporated by Federal Rules of Bankruptcy Procedure 7008, 7009,

and 7012, to dismiss this adversary proceeding and to strike the class allegations asserted therein.

In support thereof, NSL and NCFC state as follows:

**INTRODUCTION**

In 2002, Michael Shahbazi obtained an educational loan to attend a technical school in

Vienna, Virginia.  In 2009, Evan Brian Haas obtained an educational loan to study for the Texas

Bar Exam.  Haas and Shahbazi (collectively, "<u>Plaintiffs</u>") subsequently filed voluntary petitions

for chapter 7 bankruptcy—Haas in this Court, Shahbazi in the United States Bankruptcy Court for

the Eastern District of Virginia.  At the end of their bankruptcy proceedings, Plaintiffs received

discharges of some of their prepetition debt—Haas from this Court, Shahbazi from the United

States Bankruptcy Court for the Eastern District of Virginia.  Plaintiffs assert in this Adversary

Proceeding that their discharges encompassed certain educational loans that NSL and NCFC are

alleged to service and own, respectively.  They further purport to represent a nationwide class of

debtors whose educational loans were allegedly discharged in bankruptcy.

Plaintiffs' Second Amended Complaint is fatally deficient in both substantive and

procedural respects.  First, Plaintiffs allege that NSL and NCFC violated their discharges by

attempting to collect on their educational loans.  Though authorized by statute, a discharge is a

court-ordered injunction that prohibits certain creditors from collecting or attempting to collect

discharged debts.  Plaintiffs' requests for a declaratory judgment (Count I) and for injunctive relief

1

(Prayer for Relief, ¶ 65(2)) are thus redundant of their discharges and should be dismissed.  That is, when this Court considers Count II of the Second Amended Complaint—styled as one for "Violations of the Discharge Orders"—it will necessarily determine whether Plaintiffs' educational loans were discharged in bankruptcy.  And Plaintiffs' prayer for "injunctive relief prohibiting Defendants from continuing to seek collection on discharged debts" is similarly duplicative of their court-ordered discharges and constitutes an impermissible successive injunction.

Second, in both form and substance, Count II of Plaintiffs' Second Amended Complaint is one for contempt.  (Titled "Violations of the Discharge Orders," Count II of the Second Amended Complaint specifically asks the Court to cite NSL and NCFC for "civil contempt" and to award Plaintiffs damages pursuant to section 105 of the Bankruptcy Code.  When made in the context of an alleged discharge violation, the latter request for damages asks the Court to exercise its civil contempt powers.  *See, e.g.*, *Matter of Terrebonne Fuel & Lube, Inc.*, 108 F.3d 609, 612–13 (5th Cir. 1997)).  To have committed contempt under Fifth Circuit law, a defendant must have violated an order that is clear and definite.  The discharge orders at issue here are anything but.  Instead, they equivocate on the very point that gives rise to Plaintiffs' claims: whether Plaintiffs' educational loans were discharged in their bankruptcy proceedings.  Specifically, the discharge orders state that "debts for most student loans" are *not* discharged.  Thus, the discharge orders cannot support a finding of contempt against NSL and NCFC for actions taken before any court has determined whether Plaintiffs' educational loans are dischargable.  The Court should therefore dismiss Count II to the extent that it seeks contempt sanctions or damages.

Third, Plaintiffs' Second Amended Complaint suffers from pleading deficiencies that preclude their recovery of affirmative relief.  To the extent Plaintiffs allege that NSL and NCFC

engaged in fraud, they fail to plead such allegations with specificity.  And to the extent that Plaintiffs fail to distinguish between defendants when alleging wrongdoing, they have engaged in impermissible group pleading.  Further, Plaintiffs have not alleged that they suffered any loss as a result of NSL's and NCFC's alleged collection efforts, so cannot recover compensatory damages. Nor have Plaintiffs alleged any facts that would support coercive damages, and the Court cannot award punitive damages under binding Fifth Circuit law.

Finally, the Fifth Circuit requires that "[e]nforcement of an injunction through a contempt proceeding must occur in the issuing jurisdiction."  Indeed, the overwhelming weight of authority holds that a debtor must return to the court that granted him or her a discharge to prosecute his or her enforcement of that discharge.  Moreover, case law reaches this conclusion regardless of whether the plaintiff seeks a declaratory judgment, sanctions, or both for an alleged discharge violation.  As a consequence, Michael Shahbazi—who did not receive a discharge from this Court—cannot remain a party to the Adversary Proceeding.  The Court should strike Plaintiffs' class allegations for the same reason.[1]

In sum, the Court should dismiss the claims as set forth below.

## BACKGROUND[2]

### I.    EVAN BRIAN HAAS

To fund his study for the Texas Bar Exam, plaintiff Evan Brian Haas obtained an

---

[1]  NSL acknowledges that the Court recently denied its Motion to Compel Arbitration.  *See, e.g.*, Dkt. Nos. 37, 85.  The Motion to Compel Arbitration argued that, with respect to the claims asserted against NSL and NCFC in this Adversary Proceeding, Plaintiffs waived their right to judicial remedies.  NSL and NCFC's argument here, in relevant part, concerns the proper judicial body to hear Plaintiffs' claims now that they are being resolved by a court.

[2]  Consistent with well-established standards for a motion to dismiss, the following facts are taken from Plaintiffs' Second Amended Complaint.  However, the Court need not—and should not—accept Plaintiffs' legal conclusions.  *See, e.g.*, *Randall D. Walcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).  The Court can, however, consider documents that are central to Plaintiffs' claims and referenced in their Second Amended Complaint.  *See, e.g.*, *Lone Star Fund*

educational loan from Sallie Mae Bank in December 2009 in the principal amount of $15,000. Dkt. No. 95 ¶ 21; Ex. C.  Among other things, notices attached to Haas's loan application provide that the bar-study loan "may not be dischargeable in bankruptcy."  Ex. C at 11.  In July 2010, Haas's bar-study loan was transferred from Sallie Mae Bank to Education Credit Finance Corporation, which entity subsequently became NCFC.  Dkt. No. 95 ¶ 21.

Haas filed for voluntary chapter 7 bankruptcy in the United State Bankruptcy Court for the Southern District of Texas in November 2015.  *Id.* ¶ 22.  He scheduled the claim relating to his bar-study loan as an "Educational . . . Private loan."  Ex. E, Schedule F at 2.  He described the claim as non-contingent, liquidated, and not disputed.  *See id.*  On February 9, 2016, Haas received from this Court a discharge of some of his prepetition debts.  Dkt. No. 95 ¶ 23; Ex. A.  The Court closed his chapter 7 bankruptcy proceeding the same day.  *See* Dkt. No. 19.

Haas now asserts that this Court discharged his bar-study loan.  *See* Dkt. No. 95 ¶ 26.  He alleges that NSL violated the discharge by "engag[ing] the services of various collection firms to attempt to collect and/or induce payment on [the bar-study loan] in violation of this Court's Order and the Bankruptcy Code."  *Id.*  Haas further claims that NSL or its agents called him "not fewer than 29 times between July 1–11, 2016 to collect on discharged debt."  *Id.*

---

*V (U.S.), LP v. Barclays Bank, PLC*, 594 F.3d 383, 387 (5th Cir. 2010) and *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010).  Further, the Court may take judicial notice of filings made in Plaintiffs' bankruptcy cases pursuant to Federal Rule of Evidence 201(b)(2).  *See Duzer v. U.S. Bank N.A.*, 995 F. Supp. 2d 673, 685 (S.D. Tex. 2014) (taking judicial notice of, *inter alia*, pleadings and orders filed in plaintiffs' bankruptcy cases) and *In re Lycoming Engines v. Sup. Air Parts, Inc.*, 486 B.R. 728, 732 n.1 (Bankr. N.D. Tex. 2012) ("[T]he Court is permitted to take judicial notice of documents filed in the [applicable] bankruptcy case.").  To that end, NSL and NCFC have attached as Exhibits A though F Haas's note, schedules, and discharge order, and Shahbazi's note, schedules, and discharge order.  Of note, Haas and Shahbazi have judicially admitted and represented to this Court that they executed the attached notes.  *See* Dkt. No. 50 at 3–4, 4 n.4 (admitting that, "[i]n obtaining [their] loans, Plaintiffs entered into promissory notes that contained arbitration clauses and class action waivers" and citing Dkt. No. 37, Exs. A and B).

## II.   MICHAEL SHAHBAZI

To attend a technical school in Vienna, Virginia, plaintiff Michael Shahbazi alleges that he obtained in 2002 a private loan for tuition from Sallie Mae, Inc. in the principal amount of approximately $12,000.  Dkt. No. 95 ¶ 27.  *But see* Ex. D at 1 (indicating that Shahbazi obtained an educational loan from SLM Financial Corporation).  Sallie Mae subsequently changed its name to Navient Solutions, Inc., which later converted to an LLC and changed its name to NSL.  Dkt. No. 95 ¶ 27; *see also* Dkt. No. 97.   Among other things, notices attached to Shahbazi's promissory note state that the tuition loan "**IS AN EDUCATION LOAN THAT MUST BE REPAID**."  Ex. D at 5 (emphasis in original).

Shahbazi filed for voluntary chapter 7 bankruptcy in the United States Bankruptcy Court for the Eastern District of Virginia in September 2011.  Dkt. No. 95 ¶ 28.  Shahbazi scheduled the claim relating to his tuition loan as a "Student Loan."  Ex. F, Schedule F at 4.  He described the claim as non-contingent, liquidated, and not disputed.  *See id.*  On December 27, 2011, Shahbazi received from the United States Bankruptcy Court for the Eastern District of Virginia a discharge of some of his prepetition debt.  Dkt. No. 95 ¶ 29; Ex. B.  That court closed his bankruptcy proceeding on January 3, 2012.

Shahbazi now asserts that the United States Bankruptcy Court for the Eastern District of Virginia discharged his student loan.  *See* Dkt. No. 95 ¶ 31.  He alleges that NCFC violated this discharge by "engag[ing] the services of various collection firms, including but not limited to Northstar Location Services, LLC, to attempt to collect and/or induce payment on [the student loan] in violation of this Court's Order and the Bankruptcy Code."  *Id.*  Shahbazi further claims that Northstar Location Services, LLC sent him a single "letter demanding payment on the discharged debt on August 8, 2016."  *Id.*

III.    THE EVOLUTION OF THIS ADVERSARY PROCEEDING

Haas filed this adversary proceeding against SLM Corporation d/b/a Sallie Mae Education Trust ("Sallie Mae") and NSL on August 5, 2016.  Dkt. No. 1.  His initial pleading simply recounted his law school attendance and graduation, application for the educational bar-study loan, and bankruptcy filing.  *Id.* ¶¶ 6–10.  Because Haas (wrongly) believes that his bar-study loan does not fall within "the class of debts excepted under 11 U.S.C. § 523(a)(8)(A)[,]" he asked the Court to determine that it is dischargeable in bankruptcy.  *Id.* ¶¶ 14–22.  Haas also requested injunctive relief directing Sallie Mae and NSL to cease collection efforts, *id.* ¶¶ 31–37, 41, and damages for their alleged violation of the Discharge Order, *id.* ¶¶ 23–30, 40, 42–44.

On August 26, 2016, Haas filed his First Amended Complaint.  Dkt. No. 15.  This filing differed from its earlier iteration in several respects.  Most importantly, it added Shahbazi as a plaintiff and purported to represent a nationwide class of "individuals who have declared bankruptcy since 2005 in the various district courts of the United States with educational loans originated and/or serviced by [Sallie Mae and NSL] that do not meet the definition of a qualified education loan in [Internal Revenue Code section] 221(d) and 11 U.S.C. § 523(a)(8)(B)."  Dkt. No. 15 ¶¶ 3–4, 27–56.

After being served with the First Amended Complaint on September 1, 2016, Dkt. No. 17, NSL timely moved to compel arbitration of the claims asserted in this Adversary Proceeding on October 31, 2016.  Dkt. No. 37.  Following a hearing on the matter, on January 10, 2017 the Court denied NSL's motion to compel arbitration.  Dkt. Nos. 85, 88.  Next, under the terms of an agreed order in which the parties established various litigation deadlines, Dkt. No. 94, Haas and Shahbazi filed a Second Amended Complaint.  Dkt. No. 95.  Substantively similar to the First Amended Complaint, the Second Amended Complaint adds NCFC as a defendant and removes Sallie Mae.  *See* Dkt. No. 43 at 1–2, ¶¶ 4–8; *see also* Dkt. No. 74 (dismissing Sallie Mae from the Adversary

Proceeding without prejudice).

Because, among other things, Plaintiffs impermissibly seek to (1) adjudicate alleged contempt of discharge orders issued by other courts, (2) hold NSL and NCFC in contempt of an insufficiently clear and definite order, (3) obtain redundant relief, and (4) recover unavailable damages, NSL and NCFC now move to dismiss their claims as set forth below.

### LEGAL STANDARD

When considering a motion to dismiss, the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)) (internal quotations omitted). That does not mean, however, that the Court must "accept as true a legal conclusion couched as a factual allegation." *Walcott*, 635 F.3d at 763 (5th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotations omitted). Nor does it mean that the Court accepts a plaintiff's construction of a matter of law normally reserved for juridical resolution. *See Jones v. Alcoa, Inc.*, 339 F.3d 359, 363 (5th Cir. 2003) (citing 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (2d ed. 1990)). Indeed, "'conclusional allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.'" *Beavers v. Metro. Life Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2009) (quoting *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)); *see also* 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2016) (collecting authorities for the point that the Court "is not bound by a pleading's . . . 'unsupported conclusions,' or its unwarranted inferences,' or its 'unwarranted deductions'").

Ultimately, to survive a motion to dismiss for failure to state a claim under Federal Rule 12(b)(6), made applicable herein by Bankruptcy Rule 7012, "a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet this standard, *id.*, and a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

## ARGUMENT[3]

## I.     THE COURT LACKS JURISDICTION OVER SHAHBAZI'S CLAIMS

As an initial matter, Plaintiffs' Adversary Proceeding suffers from a significant procedural defect: it purports to assert claims for violations of discharge orders issued by other courts, including on behalf of a nationwide class of plaintiffs. A discharge order is unique to the court that issued it. That is, because an alleged violation thereof constitutes contempt if proven, only the issuing court can enforce its discharge order. As a result, the Court should dismiss Shahbazi's claims in their entirety for lack of jurisdiction.[4]

Though authorized by statute, a discharge in bankruptcy is ultimately effected when a court enters an order affording that relief to a debtor via injunction. 11 U.S.C. § 524(a)(2)–(3); *see Cox v. Zale Del, Inc.*, 239 F.3d 910, 915 (7th Cir. 2001) (stating that "the creditor who attempts to collect a discharged debt is violating not only a statute but also an injunction and is therefore in contempt of the bankruptcy court that issued the order of discharge") and *Matter of Nat'l Gypsum Co.*, 118 F.3d 1056, 1063 (5th Cir. 1997) (stating that "[t]he discharge injunction granted by

---

[3] NSL and NCFC hereby reserve all rights, arguments, and defenses with respect to certification of a class, venue, recovery of attorneys' fees under 11 U.S.C. §§ 523 and 524, and all other defenses and claims not addressed herein.

[4] *See supra* note 1.

section 524(a) is a substantive right conferred by the Bankruptcy Code, often enforced by a motion for contempt"). Thus, subject to limitations discussed below in Section II(B) (explaining that binding case law requires a clear and definite order to support contempt damages), when a party attempts to collect on a discharged debt, it violates a court-ordered injunction. *See, e.g.*, *Cox*, 239 F.3d at 915 and *Nat'l Gypsum*, 118 F.3d at 1063; *see also Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 421–23 (6th Cir. 2000) (explaining that "the traditional remedy for violation of an injunction lies in contempt proceedings"). And when a party violates a court-ordered, clear injunction, it commits contempt. *See, e.g.*, *Cox*, 239 F.3d at 917 (finding that suit alleging discharge violation can be brought as contempt action) and *Nat'l Gypsum*, 118 F.3d at 1063 (the same); *see also Skinner v. White*, 505 F.2d 685, 688–89 (5th Cir. 1974) (discussing contempt, generally).

Contempt necessarily concerns a court order, so the Fifth Circuit has required that "[e]nforcement of an injunction through a contempt proceeding must occur in the issuing jurisdiction because contempt is an affront to the court issuing the order." *Waffenschmidt v. MacKay*, 763 F.2d 711, 716 (5th Cir. 1985) (collecting authorities). Indeed, it is a "well-established principle that only the court that issued an order or injunction has subject matter jurisdiction to hold in contempt a violator of that order or injunction." *Barrett v. Avco Fin. Srvs. Mgmt. Co.*, 292 B.R. 1, 8 (D. Mass. 2003) (collecting authorities); *see also, e.g.*, *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 831 (1994) ("[C]ivil contempt proceedings leave the offended judge solely responsible for identifying, prosecuting, adjudicating, and sanctioning the contumacious conduct."); *Toledo Scale Co. v. Computing Scale Co.*, 261 U.S. 399, 426–27 (1923); *In re McLean*, 794 F.3d 1313, 1318–20 (11th Cir. 2015) ("It is settled that the court that issued the injunctive order alone possesses the power to enforce compliance with and

9

punish contempt of that order, and this power to sanction contempt is jurisdictional.") (internal quotations and citations omitted).  This conclusion applies regardless of whether the plaintiff seeks a declaratory judgment, sanctions, or both.  *See, e.g.*, *Alderwoods Grp., Inc. v. Garcia*, 682 F.3d 958, 969–73 (11th Cir. 2012) (considering, *inter alia*, a declaratory judgment count and holding that the issuing court was the proper body to hear that claim); *see also McLean*, 794 F.3d at 1319–20, 1319 n.2 (describing a court's ability to enforce its own orders through contempt as jurisdictional).

Here, Haas is the only party to the Adversary Proceeding that is alleged to have received a discharge from this Court.  Dkt. No. 95 ¶¶ 2, 22–23.  This Court cannot entertain claims that (or determine whether) discharge orders issued by other courts have been violated.  It should therefore dismiss the claims asserted by Shahbazi, who received his discharge from the United States Bankruptcy Court for the Eastern District of Virginia.  Dkt. No. 95 ¶¶ 3, 28–29.  (For the same reason, the Court should also strike the nationwide class allegations made in the Second Amended Complaint, as discussed *infra*.)

First, this result follows from binding Fifth Circuit precedent.  In addition to the requirements of *Waffenschmidt*, 763 F.2d at 716, and *National Gypsum*, 118 F.3d at 1063 (noting that "actions to enforce the discharge injunction . . . call on a bankruptcy court to construe and enforce its own orders"), the Fifth Circuit recently held that, assuming the requirements for certification under Federal Rule of Civil Procedure 23 could otherwise be met, a bankruptcy court may certify a "class action of debtors *whose petitions are filed within its judicial district*[.]" *Wilborn*, 609 F.3d 748, 754 (5th Cir. 2010) (citing *Waffenschmidt* for the proposition that Rule 23 cannot expand a court's jurisdiction) (emphasis added); *see also Lubrizol Corp. v. Exxon Corp.*, 871 F.2d 1279, 1282 (5th Cir. 1989).

Second, this limitation is consistent with the overwhelming weight of case law from jurisdictions across the country that have held that only the court that issues a discharge order may enforce it.  For example, in 2012 the Eleventh Circuit considered the exact issue of whether "a bankruptcy court in one federal district has jurisdiction to determine whether a debt was discharged in a bankruptcy case litigated in another federal district."  *Alderwoods*, 682 F.3d at 961.  After writing that "the ultimate question in a case like this one is which court has the power to enforce the discharge injunction," the Eleventh Circuit concluded that, for both declaratory and monetary relief, "the court that issued the injunctive order alone possesses the power to enforce compliance with and punish contempt of that order."  *Id.* at 968, 969.  This result followed from the nature of a bankruptcy court's jurisdiction over a debtor's estate, *id.* at 969, and from the general proposition that a court that enters an injunction retains the jurisdiction to enforce it, *id.* at 970.  The Eleventh Circuit also cited pragmatic concerns: it reasoned that "it would wreak havoc on the federal courts to leave enforcement of the injunctive order of a bankruptcy court in one district to the interpretive whims of a bankruptcy court in another district."  *Id.*  Notably, the Eleventh Circuit relied on *Waffenschimidt* for the conclusion that the issuing court "alone has the power to sanction . . . alleged contempt for prosecuting discharged claims in violation of the injunction."  *Id.* at 971; *see also Jones v. CitiMortg., Inc.*, No. 15–14853, 2016 WL 6610208, at *6 (11th Cir. Nov. 9, 2016) (the same, in a chapter 7 case) and *McLean,* 794 F.3d at 1318–20 (the same, in a chapter 7 case).

Third, lower courts routinely reach the same conclusion as did the Eleventh Circuit.  *See, e.g.*, *In re Forson*, 549 B.R. 866, 870 (Bankr. S.D. Ohio 2016) ("A contempt proceeding resulting from a violation of an order or injunction may only be maintained in the court that issued the order or injunction that was violated."); *In re Motichko*, 395 B.R. 25, 31 (Bankr. N.D. Ohio 2008) ("Even where a complaint is brought in the appropriate bankruptcy court, it will be dismissed under the

*Pertuso* rule if debtors attempt to create a nationwide class because that would require the bankruptcy court to rule upon violations of injunctions issued by other courts."); *Barrett*, 292 B.R. at 8 (collecting authorities); *In re Cline*, 282 B.R. 686, 693–95, 696 (W.D. Wash. 2002); *In re Singleton*, 284 B.R. 322, 325 (D.R.I. 2002); *In re Beck*, 283 B.R. 163, 166–75 (Bankr. E.D. Penn. 2002); *Williams v. Sears, Roebuck & Co.,* 244 B.R. 858, 867–68 (S.D. Ga. 2000); *In re Nelson*, 234 B.R. 528, 534 (Bankr. M.D. Fla. 1999); *Pereira v. First N. Am. Nat'l Bank*, 223 B.R. 28, 31 (N.D. Ga. 1998) (collecting authorities); *see also Cox*, 239 F.3d at 916 ("The court that issued the discharge order is in a better position to adjudicate the alleged violation, assess its gravity, and on the basis of that assessment formulate a proper remedy."). *Cf. Lubrizol*, 871 F.2d at 1289–90 (requiring defendant to assert in issuing court counterclaim based on New Jersey protective order restraining treatment of evidence) and *In re Montano*, 488 B.R. 695, 710–15 (Bankr. D.N.M. 2013) (granting motion to decertify classes of New Mexico debtors that alleged discharge violations).

It appears that this Court disagreed with this line of case law on two occasions, but neither of those opinions alters the analysis above. First, in a 2006 decision, this Court distinguished *Waffenschmidt* on the grounds that a statutorily created injunction differs from an "injunction crafted for a specific case." *In re Lonnie Davis*, No. 06–7016, 2006 WL 2827270, at *2 (Bankr. S.D. Tex. Sept. 27, 2006) (Isgur, J.). From that position, the Court wrote that "the authority to enforce the [statutorily created] injunction does not remain only with the issuing court." *Id.*

Most importantly, *Davis* is not precedential, and the Fifth Circuit has on multiple occasions reaffirmed its requirement that "[e]nforcement of an injunction through a contempt proceeding must occur in the issuing jurisdiction." *See, e.g.*, *Asher v. A.G. Edwards & Sons, Inc.*, 272 F. App'x 357, 358 (5th Cir. 2008); *Wilborn*, 609 F.3d at 754 (citing *Waffenschmidt*); *Lubrizol Corp.*,

12

871 F.2d at 1289–90.  So too have other courts relied on *Waffenschmidt* for this proposition.  *See, e.g.*, *Alderwoods*, 682 F.3d at 971.[5]

Next, the sole authority on which *Davis* relied, *Bessette v. Avco Financial Services Inc.*, 230 F.3d 439 (1st Cir. 2000), does not stand for the proposition that a court in one judicial district can enforce a discharge order entered by a court in a foreign judicial district.  Rather, the case concerned whether a district court could enforce a discharge order entered by a bankruptcy court in the *same* judicial district.  *See, e.g.*, *Bessette*, 230 F.3d at 442–43 (discussing procedural history) and *Bessette v. Avco Fin. Servs., Inc.*, 279 B.R. 442, 448–49 (D.R.I. 2002) (determining, on remand, that the court could only hear claims that relate to bankruptcy estates in the District of Rhode Island).

Finally, no other court appears to have interpreted *Waffenschmidt* in the same manner as did *Davis*.  Nor does any other court appear to have cited *Davis* or to have similarly considered the degree to which an injunction is specifically crafted by the issuing court.  Nor does this Court appear to have followed its reasoning in any other matter. And moreover, the analysis in which the *Davis* court engaged is dicta: ultimately, the court did not enforce another court's discharge order.  Rather, it bifurcated the adversary proceeding and transferred the defendant's discharge-violation counterclaim to the bankruptcy court that issued her discharge order.  2006 WL 2827270 at *2.

---

[5]   *See also United States v. Reed*, 773 F.2d 477, 481 (2d Cir. 1985) (noting that "contumacious conduct may be punished in the district where the order was issued whether or not the acts occurred elsewhere, the effects of the acts fell elsewhere or the evidence thereof is located elsewhere"); *Xcentric Ventures, LLC v. Arden*, No. C 10–80058 SI, 2011 WL 806629, at *2 (N.D. Cal. Mar. 2, 2011) (collecting authorities); *Dickey v. Bullard*, No. 07–0632, 2007 WL 1202449, at *1 (W.D. La. Apr. 20, 2007); *Transam. Fin. Serv. v. Danney*, No. 99–228–P–H, 1999 WL 33117201, at *2 (D. Me. Dec. 23, 1999); *Hodge ex rel. Skiff v. Hodge*, 66 F. Supp. 2d 342, 344 (N.D.N.Y. 1999); *Ehlinger & Assocs. v. La. Architects Ass'n*, No. 96–2413, 1996 WL 603928, at *2 (E.D. La. Oct. 22, 1996) ("The Fifth Circuit has consistently held that the district court that originally issued an order must enforce such order."); *Gray v. Petroseed Co., Inc.*, 985 F. Supp. 625, 631 n.5 (D.S.C. 1996); *In re Hamilton Allied Corp.*, 87 B.R. 43, 45 (Bankr. S.D. Ohio 1988).

The Court again addressed this matter in *In re Cano*, 410 B.R. 506 (Bankr. S.D. Tex. 2009) (Isgur, J.).  But *Cano* does not change the analysis above, either.  First, it antedates binding Fifth Circuit authority that authorizes, at most, a district-wide class action comprised of debtors. *Wilborn*, 609 F.3d at 754 (citing *Waffenschmidt*).  Second, it failed to address binding Fifth Circuit authority that holds that contempt claims must be adjudicated by the court that issued the order allegedly violated.  *Waffenschmidt*, 763 F.2d at 716.  And third, it dismissed claims for discharge violations under section 524, so any statements it made about the viability of a nationwide class would be non-binding dicta as applied to that statute.  410 B.R. at 536, 555.

Thus, for the reasons described above, the Court should dismiss Shahbazi's claims in their entirety for lack of jurisdiction.[6]

## II.      PLAINTIFFS HAVE NOT STATED A CLAIM UPON WHICH THE COURT CAN GRANT RELIEF

In addition to its lack of jurisdiction over Shahbazi's claims, the Court should dismiss Plaintiffs' claims as set forth below because of significant substantive deficiencies.  First, Plaintiffs' requests for a declaratory judgment and for successive injunctive relief are redundant of their discharges.  Second, Plaintiffs' Adversary Proceeding is one for contempt.  But the discharge orders issued in Haas's and Shahbazi's bankruptcy proceedings are not sufficiently clear and definite in regard to which, if any, of their educational loans are dischargeable and accordingly cannot support a finding of contempt based on conduct that occurred before any court has determined whether Plaintiffs' educational loans were discharged.  Third, to the extent Plaintiffs allege that NSL and NCFC engaged in fraud, they fail to plead those claims with the specificity

---

[6]  In the alternative, the Court should sever Shahbazi's claims and transfer venue to the Alexandria Division of the United States Bankruptcy Court for the Eastern District of Virginia, which is the division and jurisdiction in which Shahbazi filed his bankruptcy proceeding and the court from which he received a discharge.  *See, e.g.*, *Alderwoods*, 682 F.3d at 973–74 (transferring case to issuing court) and *Davis*, 2006 WL 2827270 at *2 (transferring discharge violation counterclaim to the issuing court).

that the Federal Rules require.  Plaintiffs further engage in impermissible group pleading by failing to differentiate between defendants.  Fourth, Plaintiffs have not alleged that they incurred any damages as a result of NSL and NCFC's alleged collection efforts or any facts that would support coercive damages; as a result, they cannot recover compensatory or coercive damages.  And finally, Plaintiffs cannot recover punitive damages in a civil contempt action such as this.  In sum, the Court should dismiss all claims, except to the extent that Count II seeks a determination of discharge with respect to Haas's educational loans.

### A.   Plaintiffs seek impermissible redundant relief in Count I (Declaratory Judgment) and in their Prayer for successive injunctions.

A discharge order is an injunction: it prohibits—subject to important exceptions applicable here—certain creditors from collecting and from attempting to collect certain prepetition debts. Indeed, in multiple locations in the statute's text, section 524 of the Bankruptcy Code explicitly describes its operation as an injunction.  *See* 11 U.S.C. § 524(a)(2)–(3) (stating that "[a] discharge in a case . . . operates as an injunction[.]").  As a general matter, litigants enforce injunctions through contempt proceedings.  *See generally, e.g.*, *W. Water Mgmt., Inc. v. Brown*, 40 F.3d 105 (5th Cir. 1994) (discussing contempt proceedings brought for violations of injunction) and *Hartman v. Lyng*, 884 F.2d 1103 (8th Cir. 1989) (the same).  The injunction effected by a discharge order is no exception: nearly every circuit to have considered the question has required a debtor to enforce discharge orders through contempt.  *See, e.g.*, *Alderwoods*, 682 F.3d at 966, 970; *In re Paul*, 534 F.3d 1303, 1306–07 (10th Cir. 2008); *In re Joubert*, 411 F.3d 452, 456 (3d Cir. 2005); *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 507 (9th Cir. 2002); *Cox*, 239 F.3d at 915; *Bessette v. Avco Fin. Srvs., Inc.*, 230 F.3d 439, 445 (1st Cir. 2000); *Pertuso*, 233 F.3d at 421–23; *see also Garfield v. Ocwen Loan Servicing, LLC*, 811 F.3d 86, 90 (2d Cir. 2016) (citing *Yaghobi v. Robinson*, 145 F. App'x 697 (2d Cir. 2005)); *In re Fina*, 550 F. App'x 150, 154 (4th Cir. 2014)

(noting that § 105 authorizes the imposition of contempt sanctions for violations of § 524); *Nat'l Gypsum*, 118 F.3d at 1063 (stating that a discharge injunction is "often enforced by a motion for contempt" but may also be "enforceable through a declaratory judgment action"); *In re Waswick*, 212 B.R. 350, 352 (Bankr. N.D. 1997) (discussing contempt and § 524).

Here, in addition to asking the Court to cite NSL and NCFC for civil contempt and to award them damages, attorneys' fees, and costs, Plaintiffs also seek declaratory and injunctive relief. Specifically, Plaintiffs ask the Court to declare that their educational loans were discharged in bankruptcy, Dkt. No. 95 ¶ 58, and to grant them "injunctive relief prohibiting Defendants from continuing to seek collection on discharged debts." *Id.* ¶ 65(2). This relief, however, is redundant of Plaintiffs' discharges and the Court should dismiss Plaintiffs' requests for that reason. Simply put, if plaintiffs' educational loans *were* discharged in their bankruptcies (which NSL and NCFC vigorously dispute), then Count I of the Second Amended Complaint and the requested injunction demand relief that the Bankruptcy Code already provides—insofar as it enjoins collection efforts on discharged debts—and that this Court will necessarily provide when it resolves Plaintiffs' Count II—insofar as the Court will then determine whether or not Plaintiffs' educational loans were discharged.

First, Count I of Plaintiffs' Second Amended Complaint requests a declaratory judgment. *Id.* ¶¶ 57–58. But the determination that it seeks is entirely duplicative of Count II of Plaintiffs' Second Amended Complaint, as the Court must necessarily determine whether Plaintiffs discharged their educational loans in bankruptcy when evaluating their claim that NSL and NCFC violated their discharges by allegedly attempting to collect on those loans. *See, e.g.*, *id.* ¶¶ 60–63. Plaintiffs' declaratory judgment claims, then, do not "allege any real and immediate controversy apart from what it already alleged in their other count[]." *Caldwell v. Redstone Fed. Credit Union*,

16

No. 2:15–cv–1923 (JHE), 2016 WL 4702821, *5 (N.D. Ala Sept. 8, 2016) (internal quotation omitted). The Court should dismiss Count I as a result. *See, e.g.*, *id.* at *5 (dismissing redundant declaratory judgment count in action seeking enforcement of discharge injunction) and *Strubel v. Hartford Ins. Co. of the Midwest*, No. 8:09–cv–01858–T–17–TBM, 2010 WL 745616, *2–3 (M.D. Fla. Feb. 26, 2010) (the same).

Second, Plaintiffs cannot sustain their prayer for successive injunctions. Simply put, the discharges that Plaintiffs obtained already enjoin—to the extent applicable—creditors from attempting to collect prepetition debts that are dischargeable. Granting further injunctive relief on the same point would be superfluous. *See Alderwoods*, 682 F.3d at 968 and *Barrientos v. Wells Fargo Bank, N.A.*, 633 F.3d 1186, 1190 (9th Cir. 2011). The Court should therefore dismiss Plaintiffs' request for successive injunctive relief. Dkt. No. 95 ¶ 65(2).

### B. The discharge orders at issue here are not sufficiently clear and definite in regard to which, if any, of Plaintiffs' educational loans are dischargeable to support a finding of contempt.

In both form and substance, Plaintiffs' Adversary Proceeding is one for contempt. First, Count II of their Second Amended Complaint makes that clear by explicitly asking the Court to cite NSL and NCFC for "civil contempt." Dkt. No. 95 ¶ 63. Second, more fundamentally, Plaintiffs ask the Court to find that NSL and NCFC violated their court-ordered discharge injunctions. No matter the form in which this request manifests itself—be it a request for a declaratory judgment or a request for damages—courts consider the claim that a defendant violated a discharge to be in the nature of contempt. *See, e.g.*, *Alderwoods*, 682 F.3d at 966–68, 968 n.20. And third, Plaintiffs ask the Court to award them damages under section 105 of the Bankruptcy Code. Dkt. No. 95 ¶ 63. When made in the context of an alleged discharge violation, this request asks the Court to exercise its civil contempt powers. *See, e.g.*, *Terrebonne*, 108 F.3d at 612–13.

Under binding Fifth Circuit law, "[c]ontempt is committed only if a person violates a court

17

order requiring in specific and definite language that a person do or refrain from doing an act." *Martin v. Trinity Indus., Inc.*, 959 F.2d 45, 47 (5th Cir. 1992) (citing *Matter of Baum*, 606 F.2d 592, 593 (5th Cir. 1979)).  The Fifth Circuit has further cautioned that "'[t]he judicial contempt power is a potent weapon which should not be used if the court's order upon which the contempt was founded is vague or ambiguous.'"  *Id.* (quoting *Baum*, 606 F.2d at 593); *see also Int'l Longshoremen's Ass'n, Local 1291 v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, (1967) ("The judicial contempt power is a potent weapon.  When it is founded upon a decree too vague to be understood, it can be a deadly one.").  In other words, to support a claim of contempt, "the court's order 'must set forth in specific detail an unequivocal command.'"  *Baum*, 606 F.2d at 593 (quoting *H.K. Porter Co., Inc. v. Nat'l Friction Prods. Corp.*, 568 F.2d 24, 27 (7th Cir. 1977)).

For this reason, the Supreme Court has held that a court order that "contains only an abstract conclusion of law, not an operative command capable of 'enforcement'" could not support an imposition of contempt.  *Int'l Longshoremen's*, 389 U.S. at 74, 76.  Indeed, where the order at issue "did not state in 'specific . . . terms' the acts that it required or prohibited[,]" *id.* at 76 (alteration in original), the Supreme Court held that it was an "unintelligible . . . command that defies comprehension."  *Id.*  Similarly, the Fifth Circuit has reversed a bankruptcy court's finding of contempt that was premised on an order "not specifically addressed" to the sanctioned party that did not "specifically order" that the prohibited action "not be taken."  *Baum*, 606 F.2d at 593.

The Fifth Circuit has also reversed a finding of contempt based on an alleged discharge violation arising from the foreclosure of an ownership interest in a partnership where the discharge order was not sufficiently specific or definite.  *In re Gervin*, 300 F. App'x 293 (5th Cir. 2008).  In *Gervin*, a judgment creditor sought to sell a partnership interest on which it held a lien to satisfy a prepetition debt of a chapter 7 debtor.  *Id.* at 295–96.  Unbeknownst to the creditor, the party

against whom it possessed a judgment had assigned half of his partnership interest to his wife—also a chapter 7 debtor.  *Id.* at 296.  Both husband and wife received discharges.  The creditor's judgment lien was excepted from the husband's discharge, but not from the wife's.  *Id.* at 296–97.  On the wife's motion, the bankruptcy court found that the judgment creditor violated the discharge by seeking a sale of the *entire* partnership interest (which was scheduled as community property), rather than just the portion that the husband owned, and sanctioned it for contempt.  *Id.*  The district court reversed, and the Fifth Circuit affirmed that decision.  *Id.* at 300–01.  In relevant part, the Fifth Circuit noted that an order "must set forth in specific detail an unequivocal command" to support a finding of contempt.  *Id.* at 301.  The discharge order in *Gervin*, however, failed to identify in what proportions the husband and wife debtors owned their partnership interest.  *Id.*  The Fifth Circuit therefore reasoned its lack of specificity "negate[d] a finding of contempt[.]"  *Id.* at 301.

Similarly, the Ninth Circuit has reversed a finding of contempt where an order was ambiguous as to whether payments for "house repairs" were discharged.  *In re Logsdon*, 32 F. App'x 427, 428–29 (9th Cir. 2002).  The ambiguity was not resolved until the lower court ruled on the motion for contempt, but the contemnor was cited only for conduct that antedated the clarifying contempt ruling.  The Ninth Circuit reversed this circular reasoning, concluding that contempt was inappropriate because the discharge order itself "did not meet the requirements of specificity and clarity to give rise to the contempt imposed."  *Id.*

In contrast, as an example of a sufficiently definite court order, the Fifth Circuit has affirmed a finding of contempt where an employer "actively interfered" with an OSHA investigation conducted pursuant to a warrant that explicitly allowed the agency to affix certain identified safety equipment to employees.  *Martin*, 959 F.2d at 47.

In regard to educational loans, the discharge orders at issue here fall short of the standard required by binding precedent regarding contempt.[7]  First, they simply provide that Haas and Shahbazi have been granted discharges under section 727 of the Bankruptcy Code.  Ex. A at 1; Ex. B at 1.  Second, both discharge orders state that they merely supply "a general summary of the bankruptcy discharge" and that exceptions to the general rules exist.  Ex. A at 2; Ex. B at 2.  And third, most importantly, the discharge orders note that "debts for most student loans" are *not* discharged by the orders.  Ex. A at 2; Ex. B at 2.  Plaintiffs' Second Amended Complaint concedes as much: it notes that, "[i]mportantly, the discharge order does not state which loans, if any, are presumptively excepted from discharge.  Rather, [the discharge order] states that [it] does not discharge some debts, including 'debts for most student loans.'"  Dkt. No. 95 ¶ 16.  The true extent of a debtor's discharge, Plaintiffs believe, only becomes apparent after subsequent motions practice.  *Id.* ¶ 17.

The discharge orders are thus insufficiently clear and definite to support a finding of contempt.  They provide no guidance to NSL and NCFC on what conduct they prohibit.  Instead, they equivocate: the discharge orders state that most prepetition debts are discharged.  But, notably, they also state that debts for most student loans are *not* discharged.  And here, importantly, Haas and Shahbazi scheduled the loans at issue as an "Educational . . . Private loan" and a "Student Loan," respectively.  Ex. E, Schedule F at 2; Ex. F, Schedule F at 4.  These claims were not disputed by either of the Plaintiffs.  Further, in addition to those at issue in this Adversary Proceeding, Haas scheduled ten other "Educational" loans.  Ex. E, Schedule F at 1–3.  Nothing in the discharge order

---

[7]  To be clear, NSL and NCFC are not suggesting that the discharge orders, which are based on a national form, are deficient or that bankruptcy courts ought to draft individual discharge orders for each case.  Rather, NSL and NCFC assert that the discharge orders at issue here cannot support contempt damages for actions taken prior to any determination on whether or which of Plaintiffs' educational loans were discharged.

informs NSL and NCFC whether, or, in Haas's case, which of, the educational and student loans

of Haas and Shahbazi that it services are dischargeable and were in fact discharged in those

individuals' respective bankruptcies.  Put another way, the discharge orders are silent as to whether

the loans that NSL and NCFC allegedly services and owns, respectively, were discharged.  Lacking

such guidance, the discharge orders cannot support a finding of contempt or imposition of damages

against NSL and NCFC based on any conduct occurring before a determination of dischargeability.

*See, e.g.*, *Int'l Longshoremen's*, 389 U.S. at 74, 76; *Baum*, 606 F.2d at 593; *Gervin*, 300 F. App'x

at 300–01; *Logsdon*, 32 F. App'x at 428–29; *see also United States v. Petroski*, 132 F.3d 1454,

1997 WL 802351, at *3–4 (5th Cir. 1997) (finding order that prohibited introduction of "financial

status" evidence to be too ambiguous to support contempt) (unpublished).[8]

The same logic applies here.  As a result, the Court should dismiss Count Two of the

Second Amended Complaint, except to the extent that it seeks a determination of discharge with

respect to Haas's educational loans and Plaintiffs' requests for damages, costs, fees, interest,[9] and

other such relief as the Court deems just and proper.  Dkt. No. 95 ¶¶ 59–64, 65(2)–(3), (5)–(7).

---

[8] Relying on case law from the Second and Third Circuits, Plaintiffs claim in their Second Amended Complaint that a creditor that believes it holds a debt excepted from discharge bears the burden "to prove that the debt is encompassed by section 523(a)(8)."  Dkt. No. 95 ¶ 17.  Even if it were correct (which NSL and NCFC do not concede), that claim says nothing about whether the discharge orders themselves are sufficiently specific and definite to support a finding of contempt under Fifth Circuit law.  Indeed, regardless of which party bears the ultimate burden of proof, the discharge orders at issue in this case do not specify whether they encompass Plaintiffs' educational loans.  Thus, the orders cannot support Plaintiffs' contempt claims against NSL and NCFC.

[9] Additionally, Plaintiffs' prayer for "prepetition interest," to the extent that it is more than a scrivener's error, should likewise be dismissed, as there is no basis in law or fact for prepetition interest in regard to alleged claims for discharge violations, which claims necessarily accrue post-discharge (if at all).

### C. Plaintiffs' Second Amended Complaint suffers from fatal pleading deficiencies.

#### 1. Plaintiffs fail to plead fraud with the requisite specificity.

Though the Federal Rules generally require notice pleading, a plaintiff who asserts fraud claims—and claims in the nature of fraud—must satisfy a more stringent standard. Fed. R. Bankr. P. 7009 (incorporating Federal Rule of Civil Procedure 9 into adversary proceedings); *see, e.g.*, *Melder v. Morris*, 27 F.3d 1097, 1100 (5th Cir. 1994) (citing *Shushany v. Allwaste, Inc.*, 992 F.2d 517, 521 (5th Cir. 1993)) and *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997). That is, when "alleging fraud, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The Fifth Circuit interprets this heightened pleading standard "strictly, requiring the plaintiff to 'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'" *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009) (quoting *Williams*, 112 F.3d at 177).

Here, Plaintiffs allege that NSL and NCFC have been engaged in a decade-long effort to "defraud student debtors and subvert the orderly working of the bankruptcy courts." Dkt. No. 95 ¶ 1. Plaintiffs further claim that unspecified creditors engaged in fraud by "represent[ing] to student debtors that the Bankruptcy Code prohibited discharge of any loan made to any person for any educational purpose." *Id.* ¶ 18. But when it comes to identifying particular statements by either NSL or NCFC that were fraudulent—as they must under federal pleading standards and binding Fifth Circuit law—Plaintiffs fall short. Plaintiffs note that NSL and its agents called Haas on a number of occasions in July 2016. *Id.* ¶ 26. And Plaintiffs claim that an agent of NCFC sent Shahbazi a single "letter demanding payment" in August 2016. *Id.* ¶ 31. Yet Plaintiffs do not identify what specific statements are allegedly fraudulent. Nor do they identify who made the statements. Nor do they

explain how the statements are allegedly fraudulent. *See Flaherty*, 565 F.3d at 207. Thus, to the extent that the Second Amended Complaint asserts claims for fraud, the Court should dismiss those claims for their failure to meet the stringent requirements of the federal pleading standards and Fifth Circuit precedent. Further, these vague statements do not concern misrepresentations of fact, which they must to support a claim for fraud under Texas law. *See, e.g.*, *Trenholm v. Ratcliff*, 646 S.W.2d 927, 930 (Tex. 1983); *see also Cannedy v. Wells Fargo Bank, N.A.*, No. 4:16–cv–00046 (ALM), 2016 WL 3946793, at *5 (E.D. Tex. June 28, 2016).

### 2. *Plaintiffs engage in impermissible group pleading.*

Throughout their Second Amended Complaint, Plaintiffs include numerous allegations concerning the history of section 523(a)(8) of the Bankruptcy Code. Dkt. No. 95 ¶¶ 11–20. In particular, they take great pains to malign the incentives of unidentified lenders who lobbied for the 2005 amendments to section 523(a)(8) and general educational loan lending practices. *Id.* ¶¶ 13–15, 18–20.

However, despite the length of this inflammatory and unnecessary history, Plaintiffs fail to identify any particular lender or debt collector who undertook the lobbying and allegedly wrongful acts detailed therein. Thus, the Court should dismiss these allegations as impermissible group pleading that falls below the demands of the federal pleading standards. *See, e.g.*, *Southland Secs. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 363–65 (5th Cir. 2004) (rejecting the group-pleading doctrine); *see also Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 287–88 (5th Cir. 2006) (affirming dismissal of group-plead allegations).

### D. **Plaintiffs have not alleged that they suffered any actual loss, and their allegations of emotional distress are too superficial to support relief.**

This Court has found that "[a] debtor who has suffered pecuniary losses as a result of a willful violation of a discharge injunction may request an award of compensation for actual

damages." *In re Fauser*, 545 B.R. 907, 913 (Bankr. S.D. Tex. 2016) (Isgur, J.); *see also In re Sandburg Fin. Corp.*, 446 B.R. 793, 803 (S.D. Tex. 2011).  Such an award of damages, however, "must of course be based upon evidence of [the plaintiff's] actual loss." *United States v. United Mine Workers of Am.*, 330 U.S. 258, 304 (1947); *see also Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 858 (5th Cir. 2000).  Put another way, "'[t]here must be some evidence showing the amount of the loss, since the court must have some basis for determining both the amount and the reasonableness of the costs claimed.'"  *Am. Airlines, Inc. v. Allied Pilots Ass'n*, 53 F. Supp. 2d 909, 940 (N.D. Tex. 1999).

Here, Plaintiffs request an award of actual damages.  Dkt. No. 95 ¶¶ 63, 65(3).  But they do not allege anywhere in the Second Amended Complaint that they have actually incurred any damages as a result of NSL and NCFC's collection efforts.  Thus, no grounds exist to award Plaintiffs compensatory damages for NSL and NCFC's alleged discharge violations.  *See, e.g.*, *In re Eastman*, 419 B.R. 711, 733–37 (W.D. Tex. 2009) (denying request for actual damages where claimed loss was speculative); *In re Alcantara*, 389 B.R. 270, 276 (granting motion to dismiss stay violation action for failure to sufficiently plead damages); *In re Lohmeyer*, 365 B.R. 746, (Bankr. N.D. Ohio 2007) (noting that debtors must plead injury in fact entitling them to compensatory contempt damages for alleged discharge violation).  *Cf. Shafer v. Army & Air Force Exch. Serv.*, 376 F.3d 386, 398 (5th Cir. 2004) (noting that contempt fine was "not compensatory because it [was] not based on any evidence of loss") and *Am. Airlines*, 53 F. Supp. 2d at 943 ("The Court has taken great pains to make sure that the compensatory damages awarded to American do not exceed the actual loss to American caused by Defendants' contumacious conduct.").  Further, Plaintiffs superficially paint NSL and NCFC's collection efforts as "abusive" and "harassing."  Dkt. No. 95 ¶ 32.  To the extent that these allegations may be an attempt to recover emotional distress damages,

they are too scant and generalized to support that relief. *Fauser*, 545 B.R. at 913 ("'Hurt feelings, anger and frustration are part of life, and are not the types of emotional harm that could support an award of damages.'") (quoting *Hitt v. Connell*, 301 F.3d 240, 250 (5th Cir. 2002)). Thus, the Court should dismiss Plaintiffs' request for damages. Dkt. No. 95 ¶ 65(3).

>    **E.      Plaintiffs cannot recover punitive damages.**

Contempt is "characterized as either civil or criminal depending on its primary purpose." *Fed. Deposit Ins. Corp. v. LeGrand*, 43 F.3d 163, 168 (5th Cir. 1995) (citing *Lamar Fin. Corp. v. Adams*, 918 F.2d 564, 566 (5th Cir. 1990)). Civil contempt "differs from criminal contempt in that it seeks only to 'corec[e] the defendant to do' what a court had previously ordered him to do." *Turner v. Rogers*, 564 U.S. 431, 441–42 (2011) (quoting *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 442 (1911)). In other words, "[w]here the purpose is to compel obedience of the court order or to compensate the litigant for injuries sustained from the disobedience, civil contempt is proper." *Norman Bridge Drug Co. v. Banner*, 529 F.2d 822, 827 (5th Cir. 1976) (collecting authorities).

Civil contempt is divisible into "two general classes: coercive and compensatory." *Id.* "Coercive civil contempt is intended to make the recalcitrant party comply. Compensatory civil contempt reimburses the injured party for the losses and expenses incurred because of his adversary's noncompliance." *Id.* With respect to coercive civil contempt, "once a contemnor complies with the underlying order, he is purged of the contempt and is free." *Turner*, 564 U.S. at 441–42 (citing *Hicks v. Feiock*, 485 U.S. 624, 633 (1988)).

As noted, Plaintiffs style their complaint as one for civil contempt. Dkt. No. 95 ¶ 63. Yet, for NSL's and NCFC's alleged violations of the discharge orders at issue, they request both compensatory damages and also punitive damages "in an amount not less than $500 for each violation of the Discharge Orders." *Id.* ¶ 65(3). As discussed above, because they have not alleged

any actual damages as a result of NSL's and NCFC's claimed discharge violations, Plaintiffs cannot recover compensatory damages.

Plaintiffs also fail in their request for punitive damages. Initially, the Fifth Circuit has found that bankruptcy courts lack criminal contempt powers, so Plaintiffs cannot recover punitive damages under that theory. *Terrebonne*, 108 F.3d. at 613 n.3; *see also In re Lothian Oil, Inc.*, 531 F. App'x 428, 445 (5th Cir. 2013); *In re Power Recovery Sys., Inc.*, 950 F.2d 798, 803 n.17 (1st Cir. 1991); *Matter of Hipp, Inc.*, 895 F.2d 1503, 1509 (5th Cir. 1990).[10] Plaintiffs appear to concede this point, as they only request in the Second Amended Complaint that NSL and NCFC be cited for civil contempt. Thus, Plaintiffs' request for punitive damages must really be one for coercive civil contempt sanctions (as compensatory damages must relate to actual damages that Plaintiffs incurred).

But that relief is also unavailable to Plaintiffs, as they do not allege any facts that would support an award of punitive damages in the form of coercive civil contempt sanctions—the only purpose for which would be to remedy ongoing alleged violations. Plaintiffs do not allege that NSL and NCFC are liable for ongoing discharge violations. Rather, they allege only that NSL or

---

[10]    In *Fauser*, this Court noted that, "[t]hough punitive damages are not explicitly authorized by the [Bankruptcy Code], they are justified under the assumption that Congress did not enact § 524 and then fail to give courts recourse to dissuade recalcitrant creditors from conduct violative of its clear prohibition." 545 B.R. at 914 (citing *In re Chambers*, 324 B.R. 326, 332 (Bankr. N.D. Ohio 2005). *Fauser* is not binding, nor does it cite any precedential authorities that concern the ability of a bankruptcy court to impose punitive damages for discharge violations. The Fifth Circuit does not appear to have directly addressed whether punitive damages are available for discharge violations, though in other contexts it has "point[ed] out that bankruptcy courts lack the power to hold persons in criminal contempt[,]" which suggests that they are not. *Terrebonne*, 108 F.3d at 613 n.3. Other circuits agree. *See, e.g.*, *In re Dyer*, 322 F.3d 1178, 1192–95 (9th Cir. 2003) and *Cox*, 239 F.3d at 916–17; *see also In re Just Brakes Corporate Sys., Inc.*, 108 F.3d 881, 885 (8th Cir. 1997) (restricting remedies for automatic stay violations to those enumerated in 11 U.S.C. § 362(h)). Thus, to the extent that Plaintiffs' request for punitive damages seeks damages in addition to compensatory or coercive damages (which they have failed to adequately plead, as set forth above), such claims should be dismissed for this additional reason.

its agents "called Haas not fewer than 29 times between July 1–11, 2016 to collect on discharged debt" and that NCFC's alleged agent Northstar Location Services, LLC "sent Shahbazi a letter demanding payment on the discharged debt on August 8, 2016." *Id.* ¶¶ 26, 32.

Thus, even if Plaintiffs were correct on the merits (which NSL and NCFC dispute), the Court could not award them punitive damages to coerce NSL and NCFC's compliance with the discharge orders, as Plaintiffs do not allege that NSL and NCFC are currently non-compliant with those orders. Accordingly, the Court should dismiss Plaintiffs' request for punitive damages. Dkt. No. 95 ¶ 65(3).

## III.   THE COURT SHOULD STRIKE PLAINTIFFS' CLASS ALLEGATIONS

For the same reasons that it lacks jurisdiction over Shahbazi's claims, the Court cannot entertain a nationwide class action of debtors who allege that discharge orders entered by various courts across the country have been violated. The Court should therefore strike the nationwide class allegations from Plaintiffs' Second Amended Complaint. Dkt. No. 95 ¶¶ 4, 33–56. In addition, and in the alternative, Haas has waived his right to participate in a class action.

### A.   This Court lacks jurisdiction over a nationwide class action.

As described in detail above in Section I, a claim for violations of a court-ordered discharge injunction is necessarily one for contempt. 11 U.S.C. § 524(a)(2)–(3); *Cox*, 239 F.3d at 915; *Nat'l Gypsum*, 118 F.3d at 1063; *see also Pertuso*, 233 F.3d at 421–23. Fifth Circuit precedent holds that "[e]nforcement of an injunction through a contempt proceeding must occur in the issuing jurisdiction because contempt is an affront to the court issuing the order." *Waffenschmidt*, 763 F.2d at 716; *see also Wilborn*, 609 F.3d at 754 and *Lubrizol*, 871 F.2d at 1282. Put another way, regardless of whether the requested remedy is a declaratory judgment, sanctions, or both, the "power to sanction contempt is jurisdictional." *McLean*, 794 F.3d at 1318–20, 1319 n.2; *Alderwoods*, 682 F.3d at 969–73; *see also Barrett*, 292 B.R. at 8 (collecting authorities) and

27

*Bagwell*, 512 U.S. at 831 ("[C]ivil contempt proceedings leave the offended judge solely responsible for identifying, prosecuting, adjudicating, and sanctioning the contumacious conduct.").

This authority instructs that the Court cannot entertain Plaintiffs' claim to represent a nationwide class of individuals "who filed for bankruptcy protection since 2005 in the various Judicial Districts of the United States with educational loans originated and/or serviced by" NSL and/or NCFC. Dkt. No. 95 ¶ 4. The only party alleged to have received a discharge from this Court is Haas. *Id.* ¶ 23. The Court lacks jurisdiction over claims that NSL and NCFC allegedly violated discharge orders entered by other courts. Accordingly, the Court should strike Plaintiffs' class allegations.[11]

## B.      Haas waived his right to participate in a class.

In addition, and in the alternative, Haas waived his right to participate in a class action.[12] Haas's note provides in relevant part that, if a party "**elect[s] to arbitrate a Claim,**"[13] the parties

---

[11] The Court may strike the class allegations from the Second Amended Complaint before the Plaintiffs ask it to certify a class. *See, e.g.*, *Rosa v. Am. Water Heater Co.*, 177 F. Supp. 3d 1025, 1042–54 (S.D. Tex. 2016) (granting, under Rule 12(b)(6), motion to strike class allegations); *Myart v. Glosson*, No. SA–14–cv–831–XR, 2014 WL 6612008, *5–7 (W.D. Tex. Nov. 20, 2014) (discussing authorities for the position that "class action claims can be dismissed pursuant to [Rule 12] motions if it is apparent from the pleadings the plaintiff does not properly state a class-action claim"); *Gloria v. Allstate Cnty. Mut. Ins. Co.*, No. No. SA–99–CA–676–PM, 2000 WL 35754563, *8–9 (W.D. Tex. Sept. 29, 2000) (stating that "[c]onclusory class allegations . . . have been deemed suitable for dismissal early in the case" and striking class allegations); *see also Reed v. Input/Output, Inc.*, No. 2005 WL 2086179, *2–3 (S.D. Tex. Aug. 26, 2005) ("This Court has authority to strike class allegations under both Federal Rules of Civil Procedure 12(f) as ('immaterial' allegations) and 23(d)(4).").

[12] Although this Court does not have jurisdiction over his claims for the reasons set forth above, NSL and NCFC observe that Shahbazi also waived his right to participate in a class, as his Arbitration Agreement includes a very broad waiver that is similar in substance to Haas's. NSL and NCFC reserve all of their rights, claims, defenses, and arguments in regard to Shahbazi's class action waiver to the extent that Shahbazi's claims are not dismissed or transferred in their entirety as requested herein.

[13] NSL elected to arbitrate this matter, *see* Dkt. No. 37 at 1, but the Court exercised its discretion to decline enforcement of the arbitration agreements. *See* Dkt. No. 85.

"**waive the right to . . . PARTICIPATE IN A CLASS ACTION IN COURT OR IN ARBITRATION, WHETHER AS A CLASS REPRESENTATIVE, CLASS MEMBER OR OTHERWISE**[.]"  Ex. C at 8 (emphases in original).  Haas's note defines "Claim" as

> any legal claim, dispute or controversy between you and me that arises from or relates in any way to [the] Note, including any dispute arising before the date of [the] Arbitration Agreement and any dispute relating to: (1) the imposition or collection of principal, interest, attorneys' fees, collection costs or other fees and charges relating to [the] Note, (2) other provisions of [the] Note; (3) any application, disclosure or other document relating in any way to [the] Note or the transactions evidenced by [the] Note; (4) any insurance or other service or product offered or made available . . . in connection with [the] Note, and any associated fees or charges; (5) [] methods of soliciting [] business; and (6) any documents, instruments, advertising or promotional materials that contain information about [the] Note or any associated insurance or other service or product.  This includes, without limitation, disputes concerning the validity, enforceability or scope of [the] Arbitration Agreement or [the] Note; disputes involving alleged fraud or misrepresentation, breach of contract or fiduciary duty, negligence or other torts, or violation of a statute, regulation or common law.  It includes disputes involving requests for injunctions, other equitable relief or declaratory relief.

Ex. C at 9.

True, the Court already exercised its discretion and declined to order Plaintiffs' claims to arbitration here.  *See* Dkt. No. 85.  But the Court did not have before it—and certainly did not decide—the question of whether Haas waived the right to participate in a class action in court proceedings.  Haas's class-action waiver applies with equal force both in court proceedings and arbitration.  Thus, the Court should enforce it.  *See, e.g.*, *Am. Exp. Co. v. Italian Colors Restaurant*, 570 U.S. __, 133 S. Ct. 2304, 2310 (2013) (rejecting argument "that federal law secures a nonwaivable opportunity to vindicate federal policies by satisfying the procedural strictures of Rule 23") and *In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Injury Litig.*, 314 F.R.D. 580, 601 (N.D. Ill. 2016) (citing *Italian Colors* for the proposition that "an individual's procedural right to pursue a claim under Rule 23 can be contractually waived").

In an analogous case, *Palmer v. Convergys Corp.*, the United States District Court for the

Middle District of Georgia rejected the claim that class-action waivers can only be enforced in the arbitration context. No. 7:10–cv–145, 2012 WL 425256, *2–3 (M.D. Ga. Feb. 9, 2012). There, plaintiffs filed a purported class action lawsuit alleging that they were forced "to work an undetermined amount of hours per work week for which they were not compensated." *Id.* at *1. The defendant filed a motion to strike the plaintiffs' class allegations on the ground that the plaintiffs executed class-action waivers as a component of their job applications. *Id.* at *2. The Court granted the defendant's motion, reasoning that "the class action waiver . . . is a binding, valid contractual provision . . . Plaintiffs effectively waived their right to bring a class action when they each signed an employment application with Defendant." *Id.* at *7.

In relevant part, the *Palmer* court reasoned that the validity of a class-action waiver is not dependent upon the forum in which it is presented—i.e., a class-action waiver can be enforced in court, outside the arbitration context. *Id.* at *2. Indeed, a class-action waiver, "like many other contractual terms, [is a] proper subject[] for contractual bargaining because there is no substantive right associated with class action litigation." *Id.* at *3. Thus, restricting a class-action waiver to arbitration "would unreasonably restrict parties from the freedom to contract in non-arbitration settings." *Id.* Accordingly, the *Palmer* court concluded, "the non-arbitration setting [in which enforcement of a class-action waiver is sought] does not automatically invalidate the class action waiver." *Id.*

The same result should follow here. First, Haas's allegations concern and arise from his note, so constitute a "Claim" under the terms of his class-action waivers. And second, though it appears in the arbitration agreement in Haas's note, the class-action waiver is not so limited in application: it explicitly applies to court proceedings. Finally, Haas has not alleged in the Second Amended Complaint that his note is in any way invalid or unenforceable. Thus, the Court should

enforce Haas's class-action waiver and strike the class allegations from the Second Amended Complaint.

<u>**CONCLUSION**</u>

For the reasons described above, the Court should dismiss this Adversary Proceeding and strike Plaintiffs' class allegations.

Dated: February 27, 2017        NAVIENT SOLUTIONS, LLC AND
      Houston, Texas           NAVIENT CREDIT FINANCE CORPORATION

*/s/ Thomas M. Farrell*
Thomas M. Farrell (TXB 06839250)
Attorney-in-Charge
JPMorgan Chase Tower
600 Travis Street
Suite 7500
Houston, Texas 77002
Telephone: 713.571.9191
Facsimile: 713.571.9652
E-mail: tfarrell@mcguirewoods.com

—and—

Dion W. Hayes (admitted *pro hac vice*)
K. Elizabeth Sieg (admitted *pro hac vice*)
Kyle R. Hosmer (*pro hac vice* pending)
Gateway Plaza
800 East Canal Street
Richmond, Virginia 23219
Telephone: 804.775.1000
Facsimile: 804.698.2255
E-mail: dhayes@mcguirewoods.com
        bsieg@mcguirewoods.com

*Counsel to Navient Solutions, LLC and*
*Navient Credit Finance Corporation*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 27th day of February, 2017, a true and correct copy of the foregoing *Memorandum in Support of Motion to Dismiss Adversary Proceeding in Part by Navient Solutions, LLC and Navient Credit Finance Corporation* was served via the Court's electronic case filing system (CM/ECF) to all parties registered to receive such notice in the above-captioned proceeding.

*/s/ Thomas M. Farrell*

## STATEMENT REGARDING CONSENT TO
## ENTRY OF FINAL ORDER OR JUDGMENT

Pursuant to Federal Rule of Bankruptcy Procedure 7012 and this Court's Local Rule 7012–1, NSL and NCFC hereby states that it does not consent to the entry of a final order or judgment by this Court on the claims asserted in the Second Amended Complaint.

*/s/ Thomas M. Farrell*