## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |
|---|---|
| *In re*: | Chapter 7 |
| **EVAN BRIAN HAAS,** |  |
| Debtor. | Case No. 15–35886 (DRJ) |
| **EVAN BRIAN HAAS and**<br>**MICHAEL SHAHBAZI,** |  |
| Plaintiffs, |  |
| v. | Adv. Pro. No. 16–03175 (DRJ) |
| **NAVIENT SOLUTIONS, LLC and**<br>**NAVIENT CREDIT FINANCE CORPORATION,** |  |
| Defendants. |  |

### MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT BY NAVIENT SOLUTIONS, LLC AND NAVIENT CREDIT <u>FINANCE CORPORATION</u>

**(Related to Dkt. Nos. 95, 162)**

## TABLE OF CONTENTS

PAGE

INTRODUCTION .................................................................................................... 1

BACKGROUND .................................................................................................... 4

    I.    EVAN BRIAN HAAS ................................................................................ 4

    II.   MICHAEL SHAHBAZI ............................................................................. 5

    III.  THE EVOLUTION OF THIS ADVERSARY PROCEEDING .............................. 6

LEGAL STANDARD ............................................................................................. 8

    I.    LACK OF JURISDICTION ........................................................................ 8

    II.   SUMMARY JUDGMENT .......................................................................... 8

ARGUMENT ........................................................................................................ 9

    I.    THE COURT LACKS JURISDICTION OVER SHAHBAZI'S CLAIMS ............... 9

    II.   PLAINTIFFS' LOANS CONSTITUTE OBLIGATIONS TO REPAY FUNDS
           RECEIVED AS EDUCATIONAL BENEFITS ................................................ 15

    III.  PLAINTIFFS' EDUCATIONAL LOANS ARE EXCEPTED FROM DISCHARGE
           UNDER SECTION 523(A)(8)(A)(II) OF THE BANKRUPTCY CODE ............... 17

           A.    Consistent with the plain language of the statute, the majority of
                   judicial decisions nationwide holds that a private student loan is an
                   "obligation to repay funds received as an educational benefit" that
                   is presumptively non-dischargeable under § 523(a)(8)(A)(ii). ............... 17

           B.    The minority line of cases holding otherwise is wrongly decided
                   and should not be followed. .................................................................... 20

                1.    The minority position misapplies canons of statutory
                        interpretation. ........................................................................... 21

                    a.    Including student loans within the § 523(a)(8)(A)(ii)
                           discharge exception does not render any other
                           provision superfluous. ................................................... 21

                    b.    Minority courts misapply the canon of noscitur a
                          sociis by constricting its focus too narrowly ................... 23

                      c.    Selective partial recitation of purported "legislative
                          history" is an illusory justification for ignoring the
                           statute's plain meaning. ................................................. 26

CONCLUSION.................................................................................................... 29

## TABLE OF AUTHORITIES

PAGE(S)

CASES

*Alderwoods Grp., Inc. v. Garcia,*
    682 F.3d 958 (11th Cir. 2012) ...............................................................11, 12, 14, 15

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986).................................................................................................8, 9

*Arbaugh v. Y&H Corp.,*
    546 U.S. 500 (2006)....................................................................................................8

*Asher v. A.G. Edwards & Sons, Inc.,*
    272 F. App'x 357 (5th Cir. 2008) ............................................................................14

*Barrett v. Avco Fin. Srvs. Mgmt. Co.,*
    292 B.R. 1 (D. Mass. 2003) ................................................................................11, 13

*In re Beck,*
    283 B.R. 163 (Bankr. E.D. Penn. 2002) ..................................................................13

*BedRoc Ltd., LLC v. United States,*
    541 U.S. 176 (2004)..................................................................................................21

*In re Beesley,*
    No. 12–2444–CMB, 2013 WL 5134404 (Bankr. W.D. Pa. Sept. 13, 2013) ....................17, 19

*Bessette v. Avco Fin. Servs., Inc.,*
    279 B.R. 442 (D.R.I. 2002).......................................................................................14

*Bessette v. Avco Financial Services Inc.,*
    230 F.3d 439 (1st Cir. 2000).....................................................................................14

*Boeynaems v. LA Fitness Int'l, LLC,*
    285 F.R.D. 331 (E.D. Pa. 2012)..................................................................................3

*In re Brown,*
    539 B.R. 853 (Bankr. S.D. Ca. 2015) ............................................................19, 21, 24

*Burge v. Parish of St. Tammany,*
    187 F.3d 452 (5th Cir. 1999) .....................................................................................8

*In re Burks,*
    244 F.3d 1245 (11th Cir. 2001) ...............................................................................25

*In re Campbell*,
　547 B.R. 49 (Bankr. E.D.N.Y. 2016)..............................................................20, 24, 26

*In re Cano*,
　410 B.R. 506 (Bankr. S.D. Tex. 2009) (Isgur, J.) ....................................................15

*In re Carow*,
　No. 10–7011, 2011 WL 802847 (Bankr. D.N.D. Mar. 2, 2011).................................17, 18, 19

*Cephus v. Tex. Health & Human Servs. Comm'n*,
　146 F. Supp. 3d 818 (S.D. Tex. 2015) .................................................................8

*In re Christoff*,
　527 B.R. 624 (B.A.P. 9th Cir. 2015).................................................................20

*Chrysler Corp. v. Brown*,
　441 U.S. 281 (1979)................................................................................26, 27

*In re Cline*,
　282 B.R. 686 (W.D. Wash. 2002) .....................................................................13

*Conroy v. Aniskoff*,
　507 U.S. 511 (1993)...................................................................................26

*In re Corbin*,
　506 B.R. 287 (Bankr. W.D. Wash. 2014) ..........................................................17, 19, 21, 24

*Cox v. Zale Del, Inc.*,
　239 F.3d 910 (7th Cir. 2001) ........................................................................10

*In re Decena*,
　549 B.R. 11 (Bankr. E.D.N.Y. 2016), *vacated sub nom. Citizens Bank v.
　Decena*, 562 B.R. 202 (E.D.N.Y. 2016) .............................................................20

*In re Desormes*,
　569 F. App'x 42 (2d Cir. 2014) .....................................................................18

*Dickey v. Bullard*,
　No. 07–0632, 2007 WL 1202449 (W.D. La. Apr. 20, 2007)...................................14

*Eason v. Thaler*,
　73 F.3d 1322 (5th Cir. 1996) .........................................................................9

*Ehlinger & Assocs. v. La. Architects Ass'n*,
　No. 96–2413, 1996 WL 603928 (E.D. La. Oct. 22, 1996) .....................................14

*In re Essangui*,
　No. 16–201–MMH, 2017 WL 4358755 (Bankr. D. Md. Oct. 2, 2017)...................20

*In re Evan Brian Haas*,
No. 15–35886, Dkt. No. 19 (Bankr. S.D. Tex. Feb. 9, 2016) (DRJ) ....................................4, 5

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*,
545 U.S. 546 (2005)........................................................................................................26

*In re Forson*,
549 B.R. 866 (Bankr. S.D. Ohio 2016)..............................................................................13

*Giles v. General Elec. Co.*,
245 F.3d 474 (5th Cir. 2001) ..............................................................................................9

*Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*,
559 U.S. 280 (2010)........................................................................................................24

*Gray v. Petroseed Co., Inc.*,
985 F. Supp. 625 (D.S.C. 1996)........................................................................................14

*Hall v. Hall*,
No. 5:17–cv–82 (MTT), Dkt. No. 34 (M.D. Ga. Nov. 7, 2017) .............................................13

*In re Hamilton Allied Corp.*,
87 B.R. 43 (Bankr. S.D. Ohio 1988)...................................................................................14

*Int'l Union, United Mine Workers of Am. v. Bagwell*,
512 U.S. 821 (1994)........................................................................................................11

*Johnston v. City of Houston, Tex.*,
14 F.3d 1056 (5th Cir.1994) ...............................................................................................9

*Jones v. CitiMortg., Inc.*,
No. 15–14853, 2016 WL 6610208 (11th Cir. Nov. 9, 2016)..................................................12

*In re Joubert*,
411 F.3d 452 (3d Cir. 2005)..............................................................................................10

*In re Kashikar*,
567 B.R. 160 (B.A.P. 9th Cir. 2017)...................................................................................20

*Koons Buick Pontiac GMC, Inc. v. Nigh*,
543 U.S. 50 (2004)..........................................................................................................26

*In re Lonnie Davis*,
No. 06–7016, 2006 WL 2827270 (Bankr. S.D. Tex. Sept. 27, 2006) (Isgur, J.) .........13, 14, 15

*Lubrizol Corp. v. Exxon Corp.*,
871 F.2d 1279 (5th Cir. 1989) ...............................................................................12, 13, 14

*In re Maas*,
497 B.R. 863 (Bankr. W.D. Mich. 2013)........................................................................24, 25

*Mansfield, C & L.M. Ry. Co. v. Swan*,
111 U.S. 379 (1884)......................................................................................................8

*MCG, Inc. v. Great W. Energy Corp.*,
896 F.2d 170 (5th Cir. 1990) ........................................................................................2

*In re McLean*,
794 F.3d 1313 (11th Cir. 2015) .............................................................................11, 12

*In re Meyer*,
No. 15–13193, 2016 WL 3251622 (Bankr. N.D. Ohio June 6, 2016)....................................20

*In re Michael Shahbazi*,
No. 11–16643, Dkt. No. 15 (Bankr. E.D. Va. Jan. 3, 2012) (RGM) ....................................5, 6

*In re Micko*,
356 B.R. 210 (Bankr. D. Ariz. 2006)...........................................................................20, 21

*In re Montano*,
488 B.R. 695 (Bankr. D.N.M. 2013) ...............................................................................13

*In re Motichko*,
395 B.R. 25 (Bankr. N.D. Ohio 2008) ..............................................................................13

*In re Murphy*,
282 F.3d 868 (5th Cir. 2002) .........................................................................................25

*N.L.R.B. v. Health Care & Retirement Corp. of Am.*,
511 U.S. 571 (1994).....................................................................................................27

*Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd.*,
40 F.3d 712 (5th Cir. 1994) ...........................................................................................9

*Matter of Nat'l Gypsum Co.*,
118 F.3d 1056 (5th Cir. 1997) ...................................................................................10, 11

*In re Nelson*,
234 B.R. 528 (Bankr. M.D. Fla. 1999) .............................................................................13

*In re Nunez*,
527 B.R. 410 (Bankr. D. Or. 2015).................................................................................20

*Oswalt v. Scripto, Inc.*,
616 F.2d 191 (5th Cir. 1980) .........................................................................................8

*Penn Mut. Life Ins. Co. v. Lederer*,
    252 U.S. 523 (1920) ........................................................................................................27

*Pereira v. First N. Am. Nat'l Bank*,
    223 B.R. 28 (N.D. Ga. 1998) .........................................................................................13

*Pertuso v. Ford Motor Credit Co.*,
    233 F.3d 417 (6th Cir. 2000) ...................................................................................10, 13

*In re Renshaw*,
    222 F.3d 82 (2d Cir. 2000) ............................................................................................17

*In re Roy*,
    No. 09–1406, 2010 WL 1523996 (Bankr. D.N.J. Apr. 15, 2010) ...........................19

*In re Rumer*,
    469 B.R. 553 (Bankr. M.D. Pa. 2012) ........................................................................25

*In re Rust*,
    510 B.R. 562 (Bankr. E.D. Ky. 2014) .............................................................19, 21, 24

*Schindler Elevator Corp. v. United States ex rel. Kirk*,
    563 U.S. 401 (2011) ................................................................................................24, 25

*In re Schultz*,
    No. 16–ap–3042, 2016 WL 8808073 (Bankr. D. Minn. Dec. 13, 2016) ................20

*Schweinfurth v. Motorola, Inc.*,
    No. 1:05–cv–24, 2008 WL 4449081 (N.D. Ohio Sept. 30, 2008) ............................3

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
    559 U.S. 393 (2010) ........................................................................................................27

*In re Shaw*,
    No. 13–3251, 2015 WL 1000213 (Bankr. S.D. Tex. Mar. 3, 2015) ..............2, 18, 20

*In re Singleton*,
    284 B.R. 322 (D.R.I. 2002) ...........................................................................................13

*Hodge ex rel. Skiff v. Hodge*,
    66 F. Supp. 2d 342 (N.D.N.Y. 1999) ..........................................................................14

*Skinner v. White*,
    505 F.2d 685 (5th Cir. 1974) ........................................................................................10

*In re Skipworth*,
    No. 09–80149–JAC–7, 2010 WL 1417964 (Bankr. N.D. Ala. Apr. 1, 2010) .........19

*Solo Serve Corp. v. Westowne Assoc.*,
   929 F.2d 160 (5th Cir. 1991) ....................................................................9

*State Farm Life Ins. Co. v. Gutterman*,
   896 F.2d 116 (5th Cir. 1990) ....................................................................9

*Matter of Swenson*,
   No. 16–10016, 2016 WL 4480719 (Bankr. W.D. Wis. Aug. 23, 2016) ................................20

*Toledo Scale Co. v. Computing Scale Co.*,
   261 U.S. 399 (1923).............................................................................11

*Transam. Fin. Serv. v. Danney*,
   No. 99–228–P–H, 1999 WL 33117201 (D. Me. Dec. 23, 1999) ...........................................14

*United States v. Reed*,
   773 F.2d 477 (2d Cir. 1985)......................................................................14

*United States v. Stevens*,
   559 U.S. 460 (2010).............................................................................21

*Waffenschmidt v. MacKay*,
   763 F.2d 711 (5th Cir. 1985) .......................................................10, 11, 13, 14, 15

*Wallace v. Tex. Tech Univ.*,
   80 F.3d 1042 (5th Cir.1996) .....................................................................9

*Walls v. Wells Fargo Bank, N.A.*,
   276 F.3d 502 (9th Cir. 2002) ....................................................................10

*Williams v. Sears, Roebuck & Co.*,
   244 B.R. 858 (S.D. Ga. 2000).....................................................................13

*In re Wills*,
   No. 08–80404–FJO–07, 2010 WL 1688221 (S.D. Ind. Apr. 23, 2010) ................................22

*Wis. Pub. Intervenor v. Mortier*,
   501 U.S. 597 (1991).............................................................................26

*Xcentric Ventures, LLC v. Arden*,
   No. C 10–80058 SI, 2011 WL 806629 (N.D. Cal. Mar. 2, 2011)..........................................14

*Yates v. United States*,
   574 U.S. ___, 135 S. Ct. 1074 (2015)...........................................................23

STATUTES

11 U.S.C. § 523................................................................................ *passim*

11 U.S.C. § 524(a)(2)–(3) ................................................................................10

26 U.S.C. § 22l (d)(l) ......................................................................................18

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56 ........................................................................................1, 8

Fed. R. of Bankr. P. 7056 .................................................................................1

*Hearing on P.L. 101–647 Before the H. Subcomm. On Econ. and Commercial Law of the H. Comm. on the Judiciary*, 101st .........................................28

John M. Golden, *Redundancy: When Law Repeats Itself*, 94 Tex. L. Rev. 629, 633 (2016) ....................................................................................................23

Kyle L. Grant, *Student Loans in Bankruptcy and the "Undue Hardship" Exception: Who Should Foot the Bill?* ......................................................17

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT BY NAVIENT SOLUTIONS, LLC AND NAVIENT CREDIT FINANCE CORPORATION**

**(Related to Dkt. Nos. 95, 162)**

Through counsel, Navient Solutions, LLC ("NSL") and Navient Credit Finance Corporation ("NCFC") hereby move for summary judgment under Federal Rule of Civil Procedure 56, which Federal Rule of Bankruptcy Procedure 7056 incorporates into this adversary proceeding, on all claims asserted in *Plaintiffs' Second Amended Complaint*, Dkt. No. 95.  In support, NSL and NCFC state as follows:

## INTRODUCTION

In 2009, plaintiff Evan Brian Haas obtained an educational loan to fund his study for the Virginia Bar Exam.[1]  Similarly, in 2002, plaintiff Michael Shahbazi (together with Haas, "Plaintiffs") obtained an educational loan to fund his attendance at a technical school in Vienna, Virginia.   In this proceeding, Plaintiffs claim (among other things) that these loans are dischargeable, and were in fact discharged, absent (1) a showing of undue hardship and (2) a determination of dischargeability by a court of competent jurisdiction.  From this position, Plaintiffs allege that communications they received from NSL and NCFC (and the companies' predecessors) about their loans constituted discharge violations for which they are entitled to damages and sanctions.  What's more, Plaintiffs seek to assert these claims on behalf of a putative nationwide class of debtors.

As a threshold matter, the Court lacks jurisdiction to entertain Shahbazi's discharge-violation claims.  Because discharge-violation claims assert that a court-ordered injunction has

---

[1]  Haas changed his name to Evan Brian Crocker in 2017.  Ex. A at Resp. to Interrog. 9. For ease of reference, this Memorandum of Law refers to him by the name under which he filed the Second Amended Complaint: Evan Brian Haas.

been violated, they must be enforced through contempt—in other words, no private right of action for such claims exists. Contempt, in turn, must be prosecuted before the court whose order has allegedly been violated. Shahbazi did not receive his discharge order from this Court, but rather from the U.S. Bankruptcy Court for the Eastern District of Virginia. This Court therefore lacks jurisdiction over his claims, and should enter judgment in favor of NSL and NCFC without prejudice to refiling in the correct forum. In the alternative, the Court should sever and transfer Shahbazi's claims to the U.S. Bankruptcy Court for the Eastern District of Virginia.[2]

Even assuming the Court has jurisdiction over Shahbazi's claims and declines to transfer them, NSL and NCFC are entitled to judgment as a matter of law on both Plaintiffs' claims. Plaintiffs' position that they discharged their obligations to pay their educational loans is a novel one.[3] It is also wrong, and the Court should reject it (as it did before in *In re Shaw*, No. 13–3251, 2015 WL 1000213, *1 (Bankr. S.D. Tex. Mar. 3, 2015)). Simply, Plaintiffs' loans constitute obligations to repay funds received as educational benefits, and are therefore excepted from discharge under § 523(a)(8)(A)(ii) of the Bankruptcy Code. This conclusion is apparent from the face of the statute. It also accords with Supreme Court precedent and canons of interpretation (although the Court need not resort to them given the Bankruptcy Code's clear instruction). And it follows the majority of decisions nationwide that have considered the issue.

The Court should resolve these matters now. First, they are pure legal questions that can dispose of this lawsuit entirely. Second, the parties have engaged in, and continue to engage in,

---

[2] NSL and NCFC raised this argument in their *Motion to Dismiss Adversary Proceeding and to Strike Class Allegations*, Dkt. No. 101 at 8–14, 27–28, which remains outstanding. Because the Court must assure that it has jurisdiction over the matters before it, *see MCG, Inc. v. Great W. Energy Corp.*, 896 F.2d 170, 173 (5th Cir. 1990), NSL and NCFC renew and reassert the argument in this Motion for Summary Judgment and Memorandum of Law in Support.

[3] Indeed, it was not accepted by any court until 2015, and has now been adopted by a minority of jurisdictions only. *See infra* at footnote 8 and Argument § III(B), generally.

extensive discovery: Plaintiffs have taken two separate Rule 30(b)(6) depositions and have requested a third; NSL and NCFC have already made fifteen rolling productions of documents, totaling more than 80,000 pages; and the parties have exchanged extensive written discovery requests.  (Discovery is ongoing and will entail, among other things, additional costly depositions.)  Third, resolving the legal question of whether Plaintiffs discharged their obligations to repay their educational loans will save the parties significant additional costs.

Specifically, despite the limited scope of discovery now permitted, Plaintiffs have demanded virtually every scrap of information that NSL and NCFC possess in regard to the individual loan files of tens of thousands of borrowers.  That is either a concession that no class can be ascertained or certified without a detailed review of every potential member's private documents or else plainly outside the bounds of the limited discovery necessary for class certification.  Nonetheless, NSL and NCFC have generally agreed to grant Plaintiffs' counsel and experts unprecedented access to certain data systems (subject to negotiation of a mutually agreeable access protocol and protective order, and an agreement on timing and limitations on additional depositions and discovery).[4]

But this may be a pointless exercise.  If the Court rules that it lacks jurisdiction to hear discharge-violation claims that arise from orders entered by other courts and that, consistent with the face of the statute and the weight of authority, Plaintiffs did *not* discharge their educational loans in bankruptcy, the parties will have incurred significant costs and disclosed private borrower information to the Plaintiffs for naught.  The Court can avoid potentially unnecessary expenses

---

[4] NSL and NCFC reserve the right to seek to shift some of the incredible discovery costs to the Plaintiffs.  *See generally Boeynaems v. LA Fitness Int'l, LLC*, 285 F.R.D. 331 (E.D. Pa. 2012) (shifting class-certification discovery costs to plaintiffs) and *Schweinfurth v. Motorola, Inc.*, No. 1:05–cv–24, 2008 WL 4449081 (N.D. Ohio Sept. 30, 2008) (ordering plaintiffs to share 50% of production costs).

and data-security concerns by ruling on the merits of Plaintiffs' legal claim now.  It can also conserve resources by considering this limited legal question first before addressing class-certification issues.

For these reasons, described more fully below, the Court should (1) grant summary judgment to NSL and NCFC on all claims asserted by Shahbazi in the Second Amended Complaint, without prejudice to refiling in the U.S. Bankruptcy Court for the Eastern District of Virginia, for lack of jurisdiction, and (2)(a) grant summary judgment to NSL and NCFC on all claims asserted by Haas in the Second Amended Complaint or (b) if it concludes that it has jurisdiction over and declines to transfer Shahbazi's claims, grant summary judgment to NSL and NCFC on all claims asserted by both Haas and Shahbazi in the Second Amended Complaint.[5]

## BACKGROUND

### I.   EVAN BRIAN HAAS

To fund his study for and taking of the Virginia Bar Exam, plaintiff Evan Brian Haas obtained an educational loan from Sallie Mae Bank in December 2009 in the principal amount of $15,000.  Ex. A at Resp. to Interrog. 3; Ex. B at Resps. to Reqs. for Admission 1, 7; Ex. C at 1.  In the promissory note that he executed to obtain his loan, Haas represented that he would use "[t]he proceeds of [his] loan . . . to pay educational expenses[.]"  Ex. C at 7.  He then certified that this representation was "true, complete and correct to the best of [his] knowledge and belief" and that he made it "in good faith[.]"  *Id.*  Haas later confirmed that he "used the proceeds of his [educational loan] to pay for [a] BarBri study course, register and pay for associated costs to take

---

[5]   NSL and NCFC reserve all rights, arguments, and defenses not addressed herein, including, without limitation, with respect to certification of a class, jurisdiction, venue, damages, and recovery of attorneys' fees under 11 U.S.C. §§ 523 and 524, and all other matters raised in the pending Motion to Dismiss, Dkt. No. 101.

the Virginia state bar exam, and pay for costs of living during the period leading up to and shortly after taking the exam." Ex. A at Resp. to Interrog. 7; *see also* Ex. B at Resp. to Req. for Admission 7. And, consistent with the position taken in a majority of jurisdictions, Haas received notice in his promissory note that, among other things, his obligation to repay his educational loan "may not be dischargeable in bankruptcy." Ex. C at 4.

In July 2010, Haas's bar-study loan was transferred from Sallie Mae Bank to SLM Education Credit Finance Corporation, which entity subsequently became NCFC. Dkt. No. 95 ¶ 21. Haas filed for voluntary chapter 7 bankruptcy in the United State Bankruptcy Court for the Southern District of Texas in November 2015. *Id.* ¶ 22. He scheduled the claim relating to his bar-study loan as an "Educational . . . Private loan." Ex. D at 17. He described the claim as non-contingent, liquidated, and not disputed. *Id.* On February 9, 2016, Haas received from this Court a discharge of some of his prepetition debts. *See* Ex. E. The Court closed his chapter 7 bankruptcy proceeding the same day. *See In re Evan Brian Haas*, No. 15–35886, Dkt. No. 19 (Bankr. S.D. Tex. Feb. 9, 2016) (DRJ).

## II.   MICHAEL SHAHBAZI

To fund his tuition for and expenses at a technical school in Vienna, Virginia, plaintiff Michael Shahbazi obtained an educational loan from SLM Financial Corporation in June 2002 in the principal amount of $11,648.99. Ex. F at Resp. to Interrog. 7; Ex. G at Resp. to Reqs. for Admission 1, 6; Ex. H. In the promissory note that he executed to obtain his loan, Shahbazi represented that he would use "[t]he proceeds of [his] loan . . . to pay educational expenses[.]" Ex. H at 3. He then certified that this representation was "true, complete and correct to the best of [his] knowledge and belief." *Id.* at 5. Shahbazi later confirmed that he "used the proceeds of his [educational loan] to pay for expenses associated with attending STMC Training Institute[.]" Ex. G at Resp. to Req. for Admission 6. And, consistent with the position taken in a majority of

jurisdictions, Shahbazi received notice in his promissory note that his educational loan "**IS AN EDUCATION LOAN THAT MUST BE REPAID.**"  Ex. H at 5 (emphasis in original).

Shahbazi filed for voluntary chapter 7 bankruptcy in the United States Bankruptcy Court for the Eastern District of Virginia in September 2011.  Dkt. No. 95 ¶ 28.  Shahbazi scheduled the claim relating to his educational loan as a "Student Loan."  Ex. I at 19.  He described the claim as non-contingent, liquidated, and not disputed.  *Id.*  On December 27, 2011, Shahbazi received from the United States Bankruptcy Court for the Eastern District of Virginia a discharge of some of his prepetition debt.  Ex. J.  That court closed his bankruptcy proceeding on January 3, 2012.  *See In re Michael Shahbazi*, No. 11–16643, Dkt. No. 15 (Bankr. E.D. Va. Jan. 3, 2012) (RGM).

## III.    THE EVOLUTION OF THIS ADVERSARY PROCEEDING

Haas filed this adversary proceeding against SLM Corporation d/b/a Sallie Mae Education Trust ("Sallie Mae") and NSL on August 5, 2016.  Dkt. No. 1.  His initial pleading simply recounted his law school attendance and graduation, application for the educational bar-study loan, and bankruptcy filing.  *Id.* ¶¶ 6–10.  Because Haas (wrongly) believes that his bar-study loan does not fall within "the class of debts excepted under 11 U.S.C. § 523(a)(8)(A)[,]" he asked the Court to determine that it is dischargeable in bankruptcy.  *Id.* ¶¶ 14–22.  Haas also requested injunctive relief directing Sallie Mae and NSL to cease collection efforts, *id.* ¶¶ 31–37, 41, and damages for their alleged violation of the Discharge Order, *id.* ¶¶ 23–30, 40, 42–44.

On August 26, 2016, Haas filed his First Amended Complaint.  Dkt. No. 15.  This filing differed from its earlier iteration in several respects.  Most importantly, it added Shahbazi as a plaintiff and purported to represent a nationwide class of "individuals who have declared bankruptcy since 2005 in the various district courts of the United States with educational loans originated and/or serviced by [Sallie Mae and NSL] that do not meet the definition of a qualified education loan in [Internal Revenue Code section] 221(d) and 11 U.S.C. § 523(a)(8)(B)."  Dkt.

No. 15 ¶¶ 3–4, 27–56.

After being served with the First Amended Complaint on September 1, 2016, Dkt. No. 17, NSL timely moved to compel arbitration of the claims asserted in this Adversary Proceeding on October 31, 2016.  Dkt. No. 37.  Following a hearing on the matter, on January 10, 2017, the Court denied NSL's motion to compel arbitration.  Dkt. Nos. 85, 88.  Next, under the terms of an agreed order in which the parties established various litigation deadlines, Dkt. No. 94, Haas and Shahbazi filed a Second Amended Complaint.  Dkt. No. 95.  Substantively similar to the First Amended Complaint, the Second Amended Complaint added NCFC as a defendant and removed Sallie Mae. *See* Dkt. No. 43 at 1–2, ¶¶ 4–8; *see also* Dkt. No. 74 (dismissing Sallie Mae from the Adversary Proceeding without prejudice).

Since then, the parties have engaged in (and continue to engage in) extensive discovery. As noted above, Plaintiffs have conducted two separate Rule 30(b)(6) depositions—one of which they have kept open and intend to continue in excess of the time permitted by the Federal Rules— and have requested a third.  The parties have exchanged extensive written discovery, and NSL and NCFC have made fifteen rolling productions of documents, totaling over 80,000 pages.  NSL and NCFC have also responded to numerous informal requests that Plaintiffs have made, and have generally agreed to grant Plaintiffs' expert unprecedented access to certain data systems (subject to negotiation of a mutually agreeable written protocol and protective order and an agreement on timing and limitations on additional depositions and discovery).[6]  Finally, the parties have filed a third amended stipulated scheduling order.  Dkt. No. 161.

Because the Court can potentially allow the parties to avoid the significant additional expense that will result from continued discovery, and to conserve judicial resources, NSL and

---

[6] *See supra* at n.4.

NCFC now move for summary judgment on (1) on all claims asserted by Shahbazi in the Second Amended Complaint, without prejudice to refiling in the U.S. Bankruptcy Court for the Eastern District of Virginia, for lack of jurisdiction, and (2)(a) all claims asserted by Haas in the Second Amended Complaint or (b) if the Court concludes that it has jurisdiction over and declines to transfer Shahbazi's claims, grant summary judgment to NSL and NCFC on all claims asserted by both Haas and Shahbazi in the Second Amended Complaint.

## LEGAL STANDARD

### I.    LACK OF JURISDICTION

It is "well-established that a court may at any time, and sua sponte, determine whether it has jurisdiction." *Oswalt v. Scripto, Inc.*, 616 F.2d 191, 192 (5th Cir. 1980); *see also Burge v. Parish of St. Tammany*, 187 F.3d 452, 465 (5th Cir. 1999).   Indeed, challenges to a court's jurisdiction "may be raised by a party . . . at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 507 (2006); *see also Mansfield, C & L.M. Ry. Co. v. Swan*, 111 U.S. 379, 381 (1884).

### II.    SUMMARY JUDGMENT

A party "may file a motion for summary judgment at any time until 30 days after the close of all discovery." Fed. R. Civ. P. 56(b).   Summary judgment is appropriate when, viewing the evidence in the light most favorable to the non-movant, the pleadings and record evidence show that no genuine issue of material fact exists and that, as a matter of law, the movant is entitled to judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   A dispute of material fact is genuine if the evidence would allow a reasonable jury to find in favor of the non-movant. *Id.*

"Conclusory allegations unsupported by evidence will not preclude summary judgment." *Cephus v. Tex. Health & Human Servs. Comm'n*, 146 F. Supp. 3d 818, 826 (S.D. Tex. 2015) (citing *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd.*, 40 F.3d 712, 713 (5th Cir. 1994) and *Eason v.*

*Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996)).  The "mere scintilla of evidence" is not sufficient to defeat summary judgment; instead, "there must be evidence on which the jury could reasonably find for the plaintiff."  *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990) (quotations omitted).  Indeed, the Fifth Circuit requires the non-movant to submit "significant probative evidence."  *Id.*

Allegations in a plaintiff's complaint are not evidence. *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir.1996) ("[P]leadings are not summary judgment evidence."); *Johnston v. City of Houston, Tex.,* 14 F.3d 1056, 1060 (5th Cir.1994) (stating that, for the party opposing the motion for summary judgment, "only evidence—not argument, not facts in the complaint—will satisfy the burden," and citing *Solo Serve Corp. v. Westowne Assoc.*, 929 F.2d 160, 164 (5th Cir. 1991)). The non-movant must "go beyond the pleadings and by [his] own affidavits, or by depositions, answers to interrogatories and admissions on file, designate specific facts showing that there is a genuine issue of material fact for trial." *Giles v. General Elec. Co.*, 245 F.3d 474, 493 (5th Cir. 2001) (citing *Celotex*, 477 U.S. at 324).

**ARGUMENT**

## I.  THE COURT LACKS JURISDICTION OVER SHAHBAZI'S CLAIMS

As an initial matter, Shahbazi's claims suffer from a significant procedural defect: he purports to assert in this Court claims for violations of a discharge order issued by another court. A discharge order is unique to the court that issued it, though.  That is, because an alleged violation thereof constitutes contempt if proven, only the issuing court can enforce its discharge order.  As a result, the Court should dismiss Shahbazi's claims in their entirety for lack of jurisdiction.[7]

Though authorized by statute, a discharge in bankruptcy is ultimately effected when a court

---

[7]  *See supra* note 3.

enters an order affording that relief to a debtor via injunction.  11 U.S.C. § 524(a)(2)–(3); *see Cox v. Zale Del, Inc.*, 239 F.3d 910, 915 (7th Cir. 2001) (stating that "the creditor who attempts to collect a discharged debt is violating not only a statute but also an injunction and is therefore in contempt of the bankruptcy court that issued the order of discharge") and *Matter of Nat'l Gypsum Co.*, 118 F.3d 1056, 1063 (5th Cir. 1997) (stating that "[t]he discharge injunction granted by section 524(a) is a substantive right conferred by the Bankruptcy Code, often enforced by a motion for contempt"); *see also In re Joubert*, 411 F.3d 452, 456 (3d Cir. 2005) ("Under § 524(a)(2), a discharge operates as an injunction against a broad array of creditor efforts to collect debts as personal liabilities of the discharged debtor.  This Court has not addressed whether § 524 implies a private right of action, either alone or through § 105(a), *but the weight of circuit authority is that it does not*.") (emphasis added); *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 510 (9th Cir. 2002) ("The Bankruptcy Code provides its own remedy for violating § 524, civil contempt under § 105."); *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 421–23 (6th Cir. 2000) (explaining that "the traditional remedy for violation of an injunction lies in contempt proceedings").  Thus, the remedy for alleged discharge violations is contempt.  *See, e.g.*, *Cox*, 239 F.3d at 917 (finding that suit alleging discharge violation can be brought as a contempt action) and *Nat'l Gypsum*, 118 F.3d at 1063 (the same); *see also Skinner v. White*, 505 F.2d 685, 688–89 (5th Cir. 1974) (discussing contempt, generally).

Contempt necessarily concerns a court order, so the Fifth Circuit has required that "[e]nforcement of an injunction through a contempt proceeding must occur in the issuing jurisdiction because contempt is an affront to the court issuing the order."  *Waffenschmidt v. MacKay*, 763 F.2d 711, 716 (5th Cir. 1985) (collecting authorities).  Indeed, it is a "well-established principle that only the court that issued an order or injunction has subject matter

jurisdiction to hold in contempt a violator of that order or injunction." *Barrett v. Avco Fin. Srvs. Mgmt. Co.*, 292 B.R. 1, 8 (D. Mass. 2003) (collecting authorities); *see also, e.g.*, *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 831 (1994) ("[C]ivil contempt proceedings leave the offended judge solely responsible for identifying, prosecuting, adjudicating, and sanctioning the contumacious conduct."); *Toledo Scale Co. v. Computing Scale Co.*, 261 U.S. 399, 426–27 (1923); *In re McLean*, 794 F.3d 1313, 1318–20 (11th Cir. 2015) ("It is settled that the court that issued the injunctive order alone possesses the power to enforce compliance with and punish contempt of that order, and this power to sanction contempt is jurisdictional.") (internal quotations and citations omitted). This conclusion applies regardless of whether the plaintiff seeks a declaratory judgment, sanctions, or both. *See, e.g.*, *Alderwoods Grp., Inc. v. Garcia*, 682 F.3d 958, 969–73 (11th Cir. 2012) (considering, *inter alia*, a declaratory judgment count and holding that the issuing court was the proper body to hear that claim); *see also McLean*, 794 F.3d at 1319–20, n.2 (describing a court's ability to enforce its own orders through contempt as jurisdictional).

Here, Haas is the only party to the Adversary Proceeding that is alleged to have received a discharge from this Court. Dkt. No. 95 ¶¶ 2, 22–23. This Court cannot entertain claims that (or determine whether) discharge orders issued by other courts have been violated. It should therefore dismiss the claims asserted by Shahbazi, who received his discharge from the United States Bankruptcy Court for the Eastern District of Virginia. Dkt. No. 95 ¶¶ 3, 28–29.

First, this result follows from binding Fifth Circuit precedent. *Waffenschmidt*, 763 F.2d at 716; *National Gypsum*, 118 F.3d at 1063 (noting that "actions to enforce the discharge injunction . . . call on a bankruptcy court to construe and enforce its own orders"); *see also Wilborn*, 609 F.3d 748, 754 (5th Cir. 2010) (citing *Waffenschmidt* for the proposition that Rule 23 cannot expand a court's jurisdiction and therefore authorizing certification of a "class action of debtors *whose*

*petitions are filed within its judicial district*") (emphasis added) and *Lubrizol Corp. v. Exxon Corp.*, 871 F.2d 1279, 1282 (5th Cir. 1989).

Second, this limitation is consistent with the overwhelming weight of case law from jurisdictions across the country that have held that only the court that issues a discharge order may enforce it.  For example, in 2012, the Eleventh Circuit considered the exact issue of whether "a bankruptcy court in one federal district has jurisdiction to determine whether a debt was discharged in a bankruptcy case litigated in another federal district."  *Alderwoods*, 682 F.3d at 961.  After writing that "the ultimate question in a case like this one is which court has the power to enforce the discharge injunction," court concluded that, for both declaratory and monetary relief, "the court that issued the injunctive order alone possesses the power to enforce compliance with and punish contempt of that order."  *Id.* at 968, 969.  This result followed from the nature of a bankruptcy court's jurisdiction over a debtor's estate, *id.* at 969, and from the general proposition that a court that enters an injunction retains the jurisdiction to enforce it, *id.* at 970.  The Eleventh Circuit also cited pragmatic concerns: it reasoned that "it would wreak havoc on the federal courts to leave enforcement of the injunctive order of a bankruptcy court in one district to the interpretive whims of a bankruptcy court in another district."  *Id.*

Notably, the court relied on *Waffenschimidt* for the conclusion that the issuing court "alone has the power to sanction . . . alleged contempt for prosecuting discharged claims in violation of the injunction."  *Id.* at 971.  What's more, the Eleventh Circuit has applied this reasoning regardless of whether the discharge appeared in a confirmation order, as in *Alderwoods*, or in a form discharge order in a chapter 7 case, as in *Jones v. CitiMortg., Inc.*, No. 15–14853, 2016 WL 6610208, at *6 (11th Cir. Nov. 9, 2016), and *McLean,* 794 F.3d at 1318–20.

Third, lower courts routinely reach the same conclusion as the Eleventh Circuit.  *See, e.g.*,

-12-

*Hall v. Hall*, No. 5:17–cv–82 (MTT), Dkt. No. 34 at 9–10 (M.D. Ga. Nov. 7, 2017) (referring discharge violation claims to the bankruptcy court that issued the discharge order allegedly being violated); *In re Forson*, 549 B.R. 866, 870 (Bankr. S.D. Ohio 2016) ("A contempt proceeding resulting from a violation of an order or injunction may only be maintained in the court that issued the order or injunction that was violated."); *In re Motichko*, 395 B.R. 25, 31 (Bankr. N.D. Ohio 2008) ("Even where a complaint is brought in the appropriate bankruptcy court, it will be dismissed under the *Pertuso* rule if debtors attempt to create a nationwide class because that would require the bankruptcy court to rule upon violations of injunctions issued by other courts."); *Barrett*, 292 B.R. at 8 (collecting authorities); *In re Cline*, 282 B.R. 686, 693–95, 696 (W.D. Wash. 2002); *In re Singleton*, 284 B.R. 322, 325 (D.R.I. 2002); *In re Beck*, 283 B.R. 163, 166–75 (Bankr. E.D. Penn. 2002); *Williams v. Sears, Roebuck & Co.,* 244 B.R. 858, 867–68 (S.D. Ga. 2000); *In re Nelson*, 234 B.R. 528, 534 (Bankr. M.D. Fla. 1999); *Pereira v. First N. Am. Nat'l Bank*, 223 B.R. 28, 31 (N.D. Ga. 1998) (collecting authorities). *Cf. Lubrizol*, 871 F.2d at 1289–90 (requiring a defendant to assert a counterclaim in the court that issued the protective order on which the counterclaim was based) and *In re Montano*, 488 B.R. 695, 710–15 (Bankr. D.N.M. 2013) (granting motion to decertify classes of New Mexico debtors that alleged discharge violations).

It appears that this Court disagreed with this line of case law on two occasions, but neither of those opinions alters the analysis above. First, in a 2006 decision, this Court distinguished *Waffenschmidt* on the grounds that a statutorily created injunction differs from an "injunction crafted for a specific case." *In re Lonnie Davis*, No. 06–7016, 2006 WL 2827270, at *2 (Bankr. S.D. Tex. Sept. 27, 2006) (Isgur, J.). From that position, the Court wrote that "the authority to enforce the [statutorily created] injunction does not remain only with the issuing court." *Id*.

First, most importantly, *Davis* is not precedential and the Fifth Circuit has on multiple

-13-

occasions reaffirmed its requirement that "[e]nforcement of an injunction through a contempt proceeding must occur in the issuing jurisdiction." *See, e.g.*, *Asher v. A.G. Edwards & Sons, Inc.*, 272 F. App'x 357, 358 (5th Cir. 2008); *Wilborn*, 609 F.3d at 754 (citing *Waffenschmidt*); *Lubrizol Corp.*, 871 F.2d at 1289–90. So too have other courts relied on *Waffenschmidt* for this proposition. *See, e.g.*, *Alderwoods*, 682 F.3d at 971.[8]

Second, the sole authority on which *Davis* relied, *Bessette v. Avco Financial Services Inc.*, 230 F.3d 439 (1st Cir. 2000), does not stand for the proposition that a court in one judicial district can enforce a discharge order entered by a court in a foreign judicial district. Rather, the case concerned whether a district court could enforce a discharge order entered by a bankruptcy court in the *same* judicial district. *See, e.g.*, *Bessette*, 230 F.3d at 442–43 (discussing procedural history) and *Bessette v. Avco Fin. Servs., Inc.*, 279 B.R. 442, 448–49 (D.R.I. 2002) (determining, on remand, that the court could only hear claims that relate to bankruptcy estates in the District of Rhode Island).

Finally, no other court appears to have interpreted *Waffenschmidt* in the same manner as did *Davis*. Nor does any other court appear to have cited *Davis* or to have similarly considered the degree to which an injunction is specifically crafted by the issuing court. Nor does this Court appear to have followed its reasoning in any other matter. And moreover, the analysis in which the

---

[8]   *See also United States v. Reed*, 773 F.2d 477, 481 (2d Cir. 1985) (noting that "contumacious conduct may be punished in the district where the order was issued whether or not the acts occurred elsewhere, the effects of the acts fell elsewhere or the evidence thereof is located elsewhere"); *Xcentric Ventures, LLC v. Arden*, No. C 10–80058 SI, 2011 WL 806629, at *2 (N.D. Cal. Mar. 2, 2011) (collecting authorities); *Dickey v. Bullard*, No. 07–0632, 2007 WL 1202449, at *1 (W.D. La. Apr. 20, 2007); *Transam. Fin. Serv. v. Danney*, No. 99–228–P–H, 1999 WL 33117201, at *2 (D. Me. Dec. 23, 1999); *Hodge ex rel. Skiff v. Hodge*, 66 F. Supp. 2d 342, 344 (N.D.N.Y. 1999); *Ehlinger & Assocs. v. La. Architects Ass'n*, No. 96–2413, 1996 WL 603928, at *2 (E.D. La. Oct. 22, 1996) ("The Fifth Circuit has consistently held that the district court that originally issued an order must enforce such order."); *Gray v. Petroseed Co., Inc.*, 985 F. Supp. 625, 631 n.5 (D.S.C. 1996); *In re Hamilton Allied Corp.*, 87 B.R. 43, 45 (Bankr. S.D. Ohio 1988).

*Davis* court engaged is dicta: ultimately, the court did not enforce another court's discharge order. Rather, it bifurcated the adversary proceeding and transferred the defendant's discharge-violation counterclaim to the bankruptcy court that issued her discharge order.  2006 WL 2827270 at *2.

The Court again addressed this matter in *In re Cano*, 410 B.R. 506 (Bankr. S.D. Tex. 2009) (Isgur, J.).  But *Cano* does not change the analysis above, either.  First, it antedates binding Fifth Circuit authority that authorizes, at most, a district-wide class action comprised of debtors. *Wilborn*, 609 F.3d at 754 (citing *Waffenschmidt*).  Second, it failed to address binding Fifth Circuit authority that holds that contempt claims must be adjudicated by the court that issued the order allegedly violated.  *Waffenschmidt*, 763 F.2d at 716.  And third, it dismissed claims for discharge violations under section 524, so any statements it made about the viability of a nationwide class would be non-binding dicta as applied to that statute.  410 B.R. at 536, 555.

Thus, for the reasons described above, the Court should grant summary judgment to NSL and NCFC on Shahbazi's claims, without prejudice to refiling in the U.S. Bankruptcy Court for the Eastern District of Virginia, for lack of jurisdiction.[9]  *See, e.g.*, *Alderwoods*, 682 F.3d at 969–72 (finding, on appeal from cross-motions for summary judgment, that Florida bankruptcy court lacked jurisdiction over discharge order entered by Delaware bankruptcy court).

## II.   PLAINTIFFS' LOANS CONSTITUTE OBLIGATIONS TO REPAY FUNDS RECEIVED AS EDUCATIONAL BENEFITS

Through their educational loans, Plaintiffs received funds that allowed them to study for and take the Virginia Bar Exam and to attend technical school, respectively.  Indeed, both Haas

---

[9]  In the alternative, the Court should sever Shahbazi's claims and transfer venue to the Alexandria Division of the United States Bankruptcy Court for the Eastern District of Virginia, which is the division and jurisdiction in which Shahbazi filed his bankruptcy proceeding and the court from which he received a discharge.  *See, e.g.*, *Alderwoods*, 682 F.3d at 973–74 (transferring case to issuing court) and *Davis*, 2006 WL 2827270 at *2 (transferring discharge violation counterclaim to the issuing court).

and Shahbazi certified in their promissory notes that the proceeds of their loans would be used "to pay educational expenses." Ex. C at 7; Ex. H at 3.  And both Haas and Shahbazi certified that this representation was "true, complete and correct to the best of [their] knowledge and belief."  Ex. C at 7; Ex. H at 3.  Further, consistent with the position taken in a majority of jurisdictions, Haas received notice in his promissory note that, among other things, his obligation to repay his educational loan "may not be dischargeable in bankruptcy," Ex. C at 4, and Shahbazi received notice in his promissory note that his educational loan "**IS AN EDUCATION LOAN THAT MUST BE REPAID**."  Ex. H at 5 (emphasis in original).

What's more, when he filed for bankruptcy, Haas scheduled the claim relating to his bar-study loan as an "Educational . . . Private loan." Ex. D at 17.  Similarly, Shahbazi scheduled the claim relating to his educational loan as a "Student Loan."  Ex. I at 19.  Haas confirmed in discovery that he "used the proceeds of his [educational loan] to pay for [a] BarBri study course, register and pay for associated costs to take the Virginia state bar exam, and pay for costs of living during the period leading up to and shortly after taking the exam."  Ex. B at Resp. to Interrog. 8. And Shahbazi confirmed that he "used the proceeds of his [educational loan] to pay for expenses associated with attending STMC Training Institute[.]"  Ex. G at Resp. to Req. for Admission 6.

Notably, Plaintiffs do not allege anywhere in the Second Amended Complaint that they used the proceeds of their educational loans for anything *other* than educational expenses.  Thus, by enabling Haas and Shahbazi to study for and take the Virginia Bar Exam and attend technical school, respectively, and to support their personal decisions to improve their lives, Plaintiffs' educational loans conferred "educational benefits."  They are therefore excepted from discharge under § 523(a)(8)(A)(ii) of the Bankruptcy Code.  The Court should grant summary judgment to

NSL and NCFC on all claims asserted by Haas (and, to the extent that the Court finds that it has jurisdiction over his claims, Shahbazi) in the Second Amended Complaint.

### III.   PLAINTIFFS' EDUCATIONAL LOANS ARE EXCEPTED FROM DISCHARGE UNDER SECTION 523(A)(8)(A)(II) OF THE BANKRUPTCY CODE

#### A.   Consistent with the plain language of the statute, the majority of judicial decisions nationwide holds that a private student loan is an "obligation to repay funds received as an educational benefit" that is presumptively non-dischargeable under § 523(a)(8)(A)(ii).

To ensure "that students [could not] take advantage of the bankruptcy system by incurring large amounts of student debt [and] obtain a discharge of the debt on the eve of lucrative careers," Congress added § 523(a)(8) to the Bankruptcy Code in the late 1970s to exempt student-loan debt from discharge in bankruptcy (unless doing so would cause the debtor undue hardship).  *See* Kyle L. Grant, *Student Loans in Bankruptcy and the "Undue Hardship" Exception: Who Should Foot the Bill?*, 2011 Brigham Young U. L. Rev. 819, 827 (2011).  *See also In re Renshaw*, 222 F.3d 82, 86–87 (2d Cir. 2000).   Since then, Congress's every action on the subject has been to comprehensively expand the scope of *non-dischargeability* of student loans—most recently in 2005 as part of the BAPCPA amendments.  *Renshaw*, 222 F.3d at 87–88.  *See, e.g.*, *In re Corbin*, 506 B.R. 287, 296–98 (Bankr. W.D. Wash. 2014); *In re Beesley*, No. 12–2444–CMB, 2013 WL 5134404, *4 (Bankr. W.D. Pa. Sept. 13, 2013) (collecting authorities); *In re Carow*, No. 10–7011, 2011 WL 802847, *4–5 (Bankr. D.N.D. Mar. 2, 2011) (noting that "Congress has expanded the scope of § 523(a)(8) through successive amendments").

Three types of educational debts are now exempt from discharge under § 523(a)(8):

- "An educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution[,]" 11 U.S.C. § 523(a)(8)(A)(i).;

- "[O]bligation[s] to repay funds received as an educational benefit, scholarship or stipend[,]" *id.* § 523(a)(8)(A)(ii); and

-17-

- "[Q]ualified educational loan[s]" as defined in 26 U.S.C. § 221 (d)(l), *id.* § 523(a)(8)(B).

Faced with dischargeability claims similar to Plaintiffs', most courts nationwide have found that private educational loans are not dischargeable in bankruptcy. Indeed, in the only circuit court opinion to have considered the issue, the Second Circuit held that a debt for a private bar-study loan was excepted from discharge under § 523(a)(8)(A)(ii). *In re Desormes*, 569 F. App'x 42, 43 (2d Cir. 2014) (unpublished).

This Court's decision in *Shaw* is particularly instructive. 2015 WL 1000213 at *1. There, a debtor consolidated two student loans into a single $104,405.98 loan before she filed her chapter 7 case. The debtor neither objected to the lender's proof of claim nor filed an adversary proceeding to determine whether the debt could be discharged. After the lender obtained a post-discharge default judgment on the consolidated loan in state court, the debtor reopened her bankruptcy case to seek a determination whether that debt was dischargeable. *Id.* The Court rejected the debtor's arguments and found that the lender's consolidated loan was exempt from discharge "under section 523(a)(8)(A)(ii) as it is an obligation to repay funds received as an educational benefit." *Id.* at *2.

As another example, in *Carow*, a debtor obtained four private loans related to her attendance at two colleges. 2011 WL 802847 at *1–2. The debtor certified—as Plaintiffs did here—that the proceeds of her loans would be used for educational purposes and that she would "repay any funds . . . received which cannot reasonably be attributed to meeting [her] educational expenses related to attendance at" college. *Id.* at *2. *Compare, e.g.*, Ex. A at 8; Ex. B at 8. The debtor argued that she discharged these loans in bankruptcy, but the court rejected that position. The court found that the debtor "failed to establish that the debt to [the private lender] is not an obligation to repay funds received as an 'educational benefit.'" 2011 WL 802847 at *4.

Similarly, the court in *In re Edwards* found that "[t]here [was] no dispute" that private educational loans used to obtain a bachelor's degree were excepted from discharge under § 523(a)(8)(A)(i), (ii).  561 B.R. 848, 855 n.11 (Bankr. D. Kan. 2016).  Likewise, the court in *In re Rizor* found that private loans used to fund a debtor's attendance at veterinary school "easily fit within the description of § 523(a)(8)(A)(ii)."  553 B.R. 144, 150 (Bankr. D. Alaska 2016).

These opinions are not anomalous.  The majority of courts across the country have concluded that private loans qualify as an "obligation to repay funds received as an educational benefit" under § 523(a)(8)(A)(ii).  *See, e.g.*, *In re Brown*, 539 B.R. 853, 859 (Bankr. S.D. Ca. 2015) ("The court . . . concludes that § 523(a)(8)(A)(ii) should be interpreted broadly to include a bar examination loan under the definition of 'educational benefit.'"); *Corbin*, 506 B.R. at 296 ("Section 523(a)(8) was amended in 2005 by Congress to make a broader range of student loan debt non-dischargeable, regardless of the nature of the lender.  Section 523(a)(8)(A)(ii) was added [to the Bankruptcy Code], covering loans made by nongovernmental and profit-making organizations, and making non-dischargeable 'an obligation to repay funds received as an educational benefit, scholarship or stipend.'"); *In re Rust*, 510 B.R. 562, 567, 571–72 (Bankr. E.D. Ky. 2014) (noting that "a loan qualifies as an 'educational benefit'" and collecting authorities that held similarly); *Beesley*, 2013 WL 5134404 at *4 (describing authorities that have interpreted "funds received as an educational benefit" to include loans); *In re Roy*, No. 09–1406, 2010 WL 1523996, *1 (Bankr. D.N.J. Apr. 15, 2010) (finding that loan extended for tutoring provided an educational benefit and was not dischargeable under § 523(a)(8)(A)(ii)); *In re Skipworth*, No. 09–80149–JAC–7, 2010 WL 1417964, at *2 (Bankr. N.D. Ala. Apr. 1, 2010) ("The Court thus finds that the debtor's obligation to Citibank is clearly 'an obligation to repay funds received as an educational benefit' for purposes of § 523(a)(8)(A)(ii) in that Citibank loaned funds to the debtor

-19-

to assist the debtor with his educational expenses, i.e. the debtor's bar review course."); *In re Micko*, 356 B.R. 210, 212–17 (Bankr. D. Ariz. 2006).

Because Plaintiffs certified that the proceeds of their educational loans would be used for educational expenses, because they have admitted to using the proceeds of their educational loans for costs related to studying for and taking the Virginia Bar Exam and attending technical school, respectively, and because they do not—and cannot—claim that they used those funds for anything but educational purposes, Plaintiffs cannot avoid the same result here.[10]

### B.    The minority line of cases holding otherwise is wrongly decided and should not be followed.

Although the weight of authority holds that private student loans are excepted from discharge under § 523(a)(8)(A)(ii), decisions are not unanimous and a minority position does exist. *See, e.g.*, *In re Campbell*, 547 B.R. 49 (Bankr. E.D.N.Y. 2016).[11]   The minority rationale (which is the quintessence of Plaintiffs' Second Amended Complaint) misapplies the three principles of statutory interpretation that it invokes: (1) the canon against superfluities; (2) the canon of *noscitur*

---

[10]   For the reasons discussed in NSL's and NCFC's Motion to Dismiss, Plaintiffs cannot recover contempt damages even if this Court concludes that their obligations to repay their educational loans are dischargeable in this proceeding. Dkt. No. 101 at 25–27.

[11]   In addition to this Court's prior adoption of the majority position in *Shaw*, none of the opinions that adopt the minority position are binding.  *See, e.g.*, *In re Essangui*, No. 16–201– MMH, 2017 WL 4358755, *1 (Bankr. D. Md. Oct. 2, 2017); *In re Kashikar*, 567 B.R. 160, 166 (B.A.P. 9th Cir. 2017) (block quoting *In re Christoff*, 527 B.R. 624, 632 (B.A.P. 9th Cir. 2015) to conclude that medical school debt was not excepted from discharge); *In re Schultz*, No. 16–ap– 3042, 2016 WL 8808073 (Bankr. D. Minn. Dec. 13, 2016) (interlocutory oral ruling that is a legal nullity because the case settled); *In re Decena*, 549 B.R. 11 (Bankr. E.D.N.Y. 2016) (Grossman, J.), *vacated sub nom. Citizens Bank v. Decena*, 562 B.R. 202 (E.D.N.Y. 2016) (Spatt, J.); *Matter of Swenson*, No. 16–10016, 2016 WL 4480719 (Bankr. W.D. Wis. Aug. 23, 2016); *In re Meyer*, No. 15–13193, 2016 WL 3251622 (Bankr. N.D. Ohio June 6, 2016); *In re Nunez*, 527 B.R. 410 (Bankr. D. Or. 2015) (which misinterpreted § 523(a)(8) by finding that a debt that otherwise satisfies § 523(a)(8)(A)(ii) must also satisfy § 523(a)(8)(A)(i) to qualify for a discharge exemption).

*a sociis*; and (3) reliance on legislative history.  The minority line of cases is wrongly decided and this Court should not follow its errant path.

### 1.    The minority position misapplies canons of statutory interpretation.

Any exercise in statutory interpretation begins with the language of the statute itself.  *See, e.g.*, *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004).  Because the text of § 523(a)(8)(A)(ii) is clear and unambiguous, the minority cases did not need to resort to—and should not have resorted to—any canons of interpretation.  *Id.* (collecting authorities); *see also United States v. Stevens*, 559 U.S. 460, 474 (2010); *Corbin*, 506 B.R. at 296 (characterizing the wording of § 523(a)(8)(A)(ii) as "plain language"); *Rust*, 510 B.R. at 572 (the same); *Brown*, 539 B.R. at 858 (the same).  Simply, § 523(a)(8)(A)(ii) applies to *all* obligations to repay funds received as educational benefits regardless of whether the lender is a governmental, non-profit, or for-profit entity and regardless of the form of the obligation to repay.  *See, e.g.*, *Micko*, 356 B.R. at 216.  However, the minority cases decided to overlook the Bankruptcy Code's plain language and go in a different direction.  For the following reasons, the minority cases got it wrong.

### a.    Including student loans within the § 523(a)(8)(A)(ii) discharge exception does not render any other provision superfluous.

The minority cases reason that if § 523(a)(8)(A)(ii) applied to loans, it would "swallow" the other subsections of § 523(a)(8).  That position is not only incorrect, it is also hyperbolic.  Correctly construing § 523(a)(8)(A)(ii) to encompass private student loans does not render any other portion of the statute superfluous.

While there may be some overlap under certain scenarios, § 523(a)(8)(A)(ii)'s application to private student loans catches instances of non-dischargeability that the other subparts of § 523(a)(8) miss.  Unlike the other subsections, § 523(a)(8)(A)(ii) requires funds to be received—a requirement that defeats any argument that it is a "catch-all" provision.  For example, a debt owed

to a co-signer for paying off a defaulted government-backed education loan would be excepted from discharge under § 523(a)(8)(A)(ii) but not § 523(a)(8)(A)(i) or (B).

The case of *In re Wills* provides a concrete illustration. *In re Wills*, No. 08–80404–FJO–07, 2010 WL 1688221 (S.D. Ind. Apr. 23, 2010). There, a grandfather took out an educational loan for his grandson to attend a Title-IV technical school. *Id.* at *1. The grandson withdrew from school and did not graduate. When the grandfather tried to discharge the educational loan in bankruptcy, the court ruled that he could not do so absent a showing of undue hardship. *Id.* at *4–7. The court held that the loan, which covered tuition at a Title-IV school but which did not confer an educational benefit on the borrower, fell under the discharge exception of § 523(a)(8)(B) but not § 523(a)(8)(A)(ii). *See id.* at *7.

Put another way, § 523(a)(8)(A)(ii) and (B) together reinforce the broad scope of the discharge exception for student loans by making clear that: (1) loans incurred for the purpose of attendance at qualified educational institutions are exempt from discharge without regard to how or whether the funds were "received" as an "educational benefit"; (2) "funds received as educational benefits" may be provided in numerous forms; and (3) "educational benefits" may be received other than at qualified educational institutions.

In any case, the Supreme Court has rejected the argument that any interpretation creating potential overlap between discharge exceptions is improper. To the contrary, the Supreme Court has stated that some overlap in § 523 is "inevitable." In *Husky*, for example, the Supreme Court held that interpreting "actual fraud" in § 523(a)(2)(A) to encompass "forms of fraud, like fraudulent conveyance schemes, that can be effected without a false representation" did not render duplicative the use of "actual fraud" in § 523(a)(4) and (6). Among other things, the Court wrote that it saw "no reason to craft an artificial definition of 'actual fraud' merely to avoid narrow

-22-

redundancies in § 523 that appear unavoidable." *Id.* at 1588 (finding that the same act could be non-dischargeable under multiple subsections of § 523(a) and providing hypothetical examples).

Consistent with *Husky*, the three subsections of 523(a)(8) provide partially overlapping coverage where, under some circumstances, a particular student debt may be exempt from discharge under multiple subsections. But that "inevitab[ility]" does not render any portion of § 523(a)(8) "redundant" where all subparts of the statute serve different functions. *Id.* at 1588. The Supreme Court has instructed that potential redundancy is not the specter that the minority cases claim. Rather, in the interest of comprehensive coverage, "recognition of the desirability of redundancy to protect against human limitations pervades the law." John M. Golden, *Redundancy: When Law Repeats Itself*, 94 Tex. L. Rev. 629, 633 (2016). Recent scholarship further notes that legislators *do not* draft statutes with the rule against superfluities in mind, but "intentionally err on the side of redundancy to 'capture the universe'" because "the *political interests* of [their] audience[s] often demand redundancy." Abbe R. Gluck & Lisa Schultz Bressman, *Statutory Interpretation From the Inside—An Empirical Study of Congressional Drafting, Delegation, and the Canons: Part I*, 65 Stanford L. Rev. 901, 934 (May 2013) (emphasis in original). It is easy to see that intent manifested in § 523(a)(8). The minority cases were wrong to find otherwise.

> **b.** **Minority courts misapply the canon of noscitur a sociis by constricting its focus too narrowly.**

*Noscitur a sociis* is a canon of statutory interpretation instructing that "a word is known by the company it keeps[.]" *Yates v. United States*, 574 U.S. __, 135 S. Ct. 1074, 1085 (2015). The minority cases misapply *noscitur a sociis* to conclude that the use of "obligation to repay funds received as an educational benefit" in § 523(a)(8)(A)(ii) should have a meaning similar to "scholarship or stipend"—i.e., that it means only items in the nature of conditional grants. The minority cases further take the canon to an absurd extreme by holding that the phrase "obligation

to repay funds received as an educational benefit, scholarship or stipend" can refer only to items that are *not* generally required to be repaid.[12]  *See, e.g.*, *Campbell*, 547 B.R. at 55.  For at least three reasons, neither the statutory text nor Supreme Court precedent allows that construction.

First, as used in § 523(a)(8)(A)(ii), an "obligation to repay funds received as an educational benefit" does not keep company with "scholarship or stipend" alone.  The minority cases cherry-pick language from one subsection (§ 523(a)(8)(A)(ii)) while neglecting to consider the context in which it appears: sandwiched between two other subsections (§ 523(a)(8)(A)(i) and (B)) that unquestionably apply to student loans and that are located in a statute that *was enacted specifically to address student loans*.  The Supreme Court has reversed decisions that misapplied *noscitur a sociis* in such a manner.  *Schindler Elevator Corp. v. United States ex rel. Kirk*, 563 U.S. 401, 409 (2011) (reversing statutory interpretation that "applied the *noscitur a sociis* canon only to the immediately surrounding words, to the exclusion of the rest of the statute").  It has also found a list of three items insufficient to support an inference of Congressional intent.  *Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 288 (2010) ("A list of three items . . . is too short to be particularly illuminating.").

Second, courts have consistently found that a loan used for educational purposes confers an educational benefit on the borrower.  *See*, *e.g.*, *Corbin*, 506 B.R. at 296; *Brown*, 539 B.R. at 858; *Rust*, 510 B.R. at 567 ("[A] majority of courts determine whether a loan qualifies as an 'educational benefit' by focusing on *the stated purpose for the loan when it was obtained*, rather than on how the loan proceeds were actually used.") (emphasis in original); *Maas*, 497 B.R. at 869 (the same); *see also In re Murphy*, 282 F.3d 868, 871 (5th Cir. 2002) ("[N]o court has suggested

---

[12]  This flawed reading of the statute also implicitly, and without any textual support, introduces considerations regarding the motives of the entity to whom educational debts are owed by restricting exemption from discharge to scholarships, stipends, and grants.

that the word 'benefit' should reduce the scope of covered loans."). When a loan has an educational purpose, it *is* similar to a scholarship or stipend: it assists the borrower with meeting the costs of education. This interpretation thus comports with longstanding case law, which considers a debtor's purpose in incurring an obligation to be determinative under § 523. *See, e.g.*, *Murphy*, 282 F.3d at 870; *In re Maas*, 497 B.R. 863, 869–70 (Bankr. W.D. Mich. 2013) (collecting authorities); *In re Rumer*, 469 B.R. 553, 562 (Bankr. M.D. Pa. 2012) (the same). Moreover, loans, scholarships, and stipends must all be repaid in various ways. With a loan, repayment is monetary. Scholarships and stipends are usually repaid by academic means—e.g., maintaining a certain grade-point average or providing teaching assistance—but repayment can be monetary if the customary terms of repayment are breached. *Cf. In re Burks*, 244 F.3d 1245, 1246–47 (11th Cir. 2001) (collecting examples of educational loans that are primarily repaid through non-monetary means, but must be repaid by monetary means if the borrower breaches a condition of repayment).

Finally, that Congress did not use the word "loan" in § 523(a)(8)(A)(ii) is of no moment. *See Schindler Elevator Corp*, 563 U.S. at 409. The term that Congress did use—an "obligation to repay funds received"—is by definition a loan. Indeed, what else is a loan if not an "obligation to repay funds"? Logically, combining the words "obligation" and "repay" *could not fail to include loans*. It is also consistent with Congress's ever-broadening scope of the § 523(a)(8) exemption, as an "obligation to repay funds as an educational benefit" is more *expansive* than the term "loan," not more *restrictive*.

Given the context in which it occurs—a subpart of § 523 that was enacted to specifically address student loans—an "obligation to repay funds as an educational benefit" must include loans. The text confirms this: § 523(a)(8)(B) refers to "*other* educational loans." (Emphasis added.) This language indicates that the previous subsection, 523(a)(8)(A), *must also* cover educational loans.

-25-

Nothing in the statute excludes educational loans from subsection 523(a)(8)(A)(ii)—Congress's language in subsection (B) shows just the opposite.

> ### c. Selective partial recitation of purported "legislative history" is an illusory justification for ignoring the statute's plain meaning.

The Supreme Court has repeatedly cautioned that legislative history is an unreliable indicator of legislative intent. *See, e.g.*, *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005) and *Wis. Pub. Intervenor v. Mortier*, 501 U.S. 597, 617 (1991). Justice Scalia memorably described combing through legislative history for support as "the equivalent of entering a crowded cocktail party and looking over the heads of guests for one's friends." *Conroy v. Aniskoff*, 507 U.S. 511, 519 (1993) (Scalia, J., concurring). That "selective recognition" principle applies here, where the primary piece of "legislative history" that the minority cases invoke is a lone statement from the U.S. Attorney for the Eastern District of Texas—not a member of Congress—from a superseded version of the statute at issue. *Cf. Chrysler Corp.*, 441 U.S. at 311 ("The remarks of a single legislator, even the sponsor, are not controlling in analyzing legislative history."). Specifically, the minority cases quote the attorney's hearing testimony for the point that the 1990 amendments to § 523(a)(8) added "educational funds received in the form of benefits (such as VA benefits), scholarships (such as medical service corps scholarships) and stipends." 547 B.R. at 56.

The minority cases' resort to legislative history thus "lends itself to a kind of ventriloquism" by making "words appear to come from Congress's mouth which were spoken or written by others[.]" *Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 73 (2004) (Scalia, J., dissenting). Indeed, by citing (a) a single remark (b) made by a non-legislator (c) regarding a prior version of the statute (d) passed fifteen years before (e) the current, substantially different version, the minority cases accomplish the seemingly Herculean feat of uniting in agreement Justices

Brandeis, Rehnquist, Scalia, and Kennedy: all four have authored notable opinions for the Supreme Court rejecting such a use of legislative history. *See, e.g.*, *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 403–05 (2010) (Scalia, J.) (legislative history did not persuade the Supreme Court that a New York statute provided a substantive, rather than procedural, right for purposes of *Erie* analysis); *N.L.R.B. v. Health Care & Retirement Corp. of Am.*, 511 U.S. 571, 582 (1994) (Kennedy, J.) (rejecting the National Labor Relation Board's citations to legislative history in advocating for a particular interpretation of statutory language); *Chrysler Corp. v. Brown*, 441 U.S. 281, 311 (1979) (Rehnquist, J.) ("The remarks of a single legislator, even the sponsor, are not controlling in analyzing legislative history."); *Penn Mut. Life Ins. Co. v. Lederer*, 252 U.S. 523, 538 (1920) (Brandeis, J.) (declining to consider the legislative history of different iterations of the Revenue Act, ruling that "no aid could possibly be derived from the legislative history of another act passed nearly six years after the one in question" and that such a use of legislative history would be "inappropriate").  Even more to the point, the Supreme Court found no need to resort to legislative history in *Husky* when holding that an interpretation of a subsection of § 523 was not improper even if it rendered other subsections partially superfluous.  *See generally* 136 S. Ct. at 1585–90.

Setting aside the Supreme Court's admonishments that this Court should not allow itself to be guided by a statement from a non-legislator in relation to a superseded version of § 523(a)(8), the purported legislative history actually supports an expansive interpretation of subsection 523(a)(8)(A)(ii).  That is, the purported legislative history on which the minority cases rely states that "benefits . . . scholarships . . . and stipends" should "receive *the same treatment as a 'student' loan* with regard to restriction on dischargeability in bankruptcy."  *Federal Debt Collection Procedures of 1990: Hearing on P.L. 101–647 Before the H. Subcomm. On Econ. and Commercial*

*Law of the H. Comm. on the Judiciary*, 101st Cong. 74–75 (1990) (Mr. Brooks's Questions for the Record for Mr. Wortham) [hereinafter "*Federal Debt Collection Procedures of 1990*"]) (emphasis added).  To be clear, this statement concerns a prior law that has received substantive amendments.  But if it were indicative of Congress's intent with regard to all subsequent versions of § 523(a)(8)—including that passed in 2005, which is the only version at issue here—it would show that the phrase "scholarships and stipends" was intended to take meaning from and receive the same exceptions as student loans.

Further, this piece of purported legislative history goes on to "recommend" that "subsection (8) [of § 523(a)] be amended by adding the following after 'educational benefit, scholarship or stipend': '(other than a loan made under subpart I of part C of title VII of the Public Health Service Act or an obligation for payment of damages arising under section 338E of such Act)'."  *Id.* at 75 (Mr. Brooks's Questions for the Record for Mr. Wortham).  By recommending that Congress omit one particular type of loan from § 523(a)(8)'s discharge exemption, the legislative history demonstrates that, at least in the mind of one non-legislator, the phrase "obligation to repay funds received as an educational benefit, scholarship or stipend" *was always considered to encompass student loans*.  In other words, if the language that now appears in § 523(a)(8)(A)(ii) did *not* encompass loans, there would be no need to exclude by explicit reference any particular loan type that may be omitted from the discharge exemption.

Thus, Plaintiffs' loans are excepted from discharge as "obligations to repay funds received as [] educational benefit[s]" under § 523(a)(8)(A)(ii) of the Bankruptcy Code.  Those loans could not have been, and were not, discharged.  The Court should therefore grant summary judgment to NSL and NCFC on all claims asserted by Haas (and, to the extent that the Court finds that it has jurisdiction over his claims, Shahbazi) in the Second Amended Complaint.

-28-

<u>C<small>ONCLUSION</small></u>

For the reasons described above, the Court should grant summary judgment to Navient Solutions, LLC and Navient Credit Finance Corporation on (1) all claims asserted by Shahbazi in the Second Amended Complaint, without prejudice to refiling in the U.S. Bankruptcy Court for the Eastern District of Virginia, for lack of jurisdiction, and (2)(a) all claims asserted by Haas in *Plaintiffs' Second Amended Complaint*, Dkt. No. 95 or (b) if it concludes that it has jurisdiction over and declines to transfer Shahbazi's claims, on all claims asserted by both Haas and Shahbazi in *Plaintiffs' Second Amended Complaint*, Dkt. No. 95.

Dated: November 10, 2017
      Houston, Texas

N<small>AVIENT</small> S<small>OLUTIONS</small>, LLC <small>AND</small>
N<small>AVIENT</small> C<small>REDIT</small> F<small>INANCE</small> C<small>ORPORATION</small>

*/s/ Thomas M. Farrell*
Thomas M. Farrell (TXB 06839250)
Attorney-in-Charge
JPMorgan Chase Tower
600 Travis Street
Suite 7500
Houston, Texas 77002
Telephone: 713.571.9191
Facsimile: 713.571.9652
E-mail: tfarrell@mcguirewoods.com

—and—

Dion W. Hayes (admitted *pro hac vice*)
K. Elizabeth Sieg (admitted *pro hac vice*)
Kyle R. Hosmer (*pro hac vice* pending)
Gateway Plaza
800 East Canal Street
Richmond, Virginia 23219
Telephone: 804.775.1000
Facsimile: 804.698.2255
E-mail:  dhayes@mcguirewoods.com
        bsieg@mcguirewoods.com
        khosmer@mcguirewoods.com

*Counsel to Navient Solutions, LLC and*

*Navient Credit Finance Corporation*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on this 10th day of November, 2017, a true and correct copy of the foregoing *Memorandum of Law in Support of Motion for Summary Judgment* was served via the Court's electronic case filing system (CM/ECF) to all parties registered to receive such notice in the above-captioned proceeding.

*/s/ Thomas M. Farrell*