**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| EVAN BRIAN HAAS, MICHAEL SHAHBAZI, | § § § | |
| | § | Chapter 7 |
| Plaintiffs, | § § | Case No. 15-35886 (DRJ) |
| v. | § § | Adv. Pro. No. 16-03175 (DRJ) |
| NAVIENT SOLUTIONS, LLC, NAVIENT CREDIT FINANCE CORPORATION, | § § | **NATIONWIDE CLASS ACTION** |
| Defendants. | § § § | |

**PLAINTIFFS' MEMORANDUM OF LAW**
**IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BY**
**NAVIENT SOLUTIONS, LLC AND NAVIENT CREDIT FINANCE CORPORATION**

## TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................. 1

II.  FACTUAL AND PROCEDURAL BACKGROUND .......................................... 4

    A.  Factual Background ................................................................................. 4

    B.  Procedural Background ........................................................................... 6

III.  STANDARD OF LAW ...................................................................................... 9

IV.  LEGAL ARGUMENT ...................................................................................... 9

    A.  This Court Has Jurisdiction Over Shahbazi's Claims ............................ 9

        1.  Debtors have multiple procedural avenues to enforce the Section 524 (a) discharge injunction; those avenues are not limited to contempt proceedings ................................................................................ 10

        2.  The bankruptcy courts have core bankruptcy jurisdiction over the enforcement of Section 524(a) discharge injunctions because the statutory right provided by Section 524(a) necessarily arises under the Bankruptcy Code. ................ 11

        3.  The relief afforded debtors under Section 524(a) is distinguishable from relief provided by a non-statutory injunction. ....................................................... 13

    B.  Plaintiffs' Loans Are Not Excepted From Discharge. ............................... 16

        1.  Defendants have conceded that these Loans are dischargeable. ..................... 17

        2.  Categorizing Plaintiffs' Loans as "educational loans" is not dispositive of dischargeability under Sections 523(a)(8)(A)(i) or (B). ................................. 20

        3.  Plaintiffs' Loans are not "obligation[s] to repay funds received as an educational benefit" under Section 523(a)(8)(A)(ii). ...................................... 21

            a.  It is permissible to use accepted canons of statutory construction to interpret Section 523(a)(8)(A)(iii). ....................................................... 22

            b.  Defendants inappropriately characterize their position as the "majority view" and fail to acknowledge that the courts are trending away from this approach. .................................................................................. 28

            c.  Defendants' selective quotation of legislative history is misleading. ........................................................................................ 30

            d.  Section 523(a)(8)(A)(ii) does not contain the word "loan" and courts cannot inject language into a statute that was intentionally left out by Congress as indicated by the legislative history. ............................... 35

e.  Congress's use of the word "as" instead of "for" in Section
523(a)(8)(A)(ii) demonstrates the relationship between "funds
received" and "educational benefit." ................................................. 36

C.  SUMMARY JUDGMENT IS NOT APPROPRIATE AT THIS TIME.................... 37

V.  CONCLUSION........................................................................................................ 38

CERTIFICATE OF SERVICE .................................................................................... 40

Plaintiffs, Evan Brian Haas ("Haas") and Michael Shahbazi ("Shahbazi"), appearing both individually and on behalf of all other similarly situated individuals,[1] respectfully submit this memorandum of law in opposition to the Motion for Summary Judgment filed by Navient Solutions, LLC and Navient Credit Finance Corporation (Rec. Docs. 162-63).

## I.  <u>INTRODUCTION</u>

Plaintiffs are former student debtors with consumer education loans serviced by Navient Solutions, LLC ("NSL") and Navient Credit Finance Corporation ("NCFC"; collectively with NSL, "Navient" or "Defendants").[2] Plaintiffs filed this suit seeking to have this Court end Defendants' collection activities on discharged consumer education loan debts. In particular, Defendants have provided dischargeable consumer education loans to students and misrepresented them as non-dischargeable student loans, discouraging debtors from exercising their constitutional right to relief under Title 11 of the United States Code (the "Bankruptcy Code") and permitting Defendants to collect on debts discharged pursuant to the bankruptcy courts' discharge orders and 11 U.S.C. § 524(a) ("Section 524(a)"). Defendants are appropriating a legal presumption for a class of debt that they know is not entitled to such a presumption. This Court should prevent Defendants' further manipulation of the bankruptcy process.

On February 27, 2017, Defendants filed a motion to dismiss (Rec. Doc. 101), raising many of the arguments contained in their motion for summary judgment. After agreeing to defer

---

[1]      Plaintiffs appear both individually and on behalf of all similarly situated individuals who are citizens of the various states who filed for bankruptcy protection in any of the United States Judicial Districts and were issued discharge orders since April 20, 2005, who (1) obtained consumer education loans from Navient Solutions, LLC and Navient Credit Finance Corporation or their predecessors to cover expenses at non-Title IV accredited institutions; (2) have never reaffirmed any pre-petition consumer education loan debt; and (3) have nonetheless been subjected to Defendants' attempts to induce payment on discharged debts.

[2]      NCFC and NSL are subsidiaries of Navient Corporation.

resolution of their motion to dismiss until a class certification hearing, Defendants now move for summary judgment, repeating many of the same arguments they raised in their previous motion. Defendants complain that the "Court should resolve these issues now" to save the parties the cost of discovery on class certification issues,[3] but ignore that Defendants chose this procedure. Specifically, Defendants presented the instant jurisdictional argument in their motion to dismiss and could have then argued that discharge-ability of these loans is a "purely legal question." But Defendants agreed to defer obtaining a ruling on their motion to dismiss, and consented to having it heard at the anticipated class certification hearing. Accordingly, the parties have moved forward with class certification discovery with Defendants' consent. Defendants now seek to avoid this agreement with the instant motion.

This Court should deny Defendants' motion, because Defendants' revived arguments are meritless. First, this Court may enforce Section 524(a) irrespective of whether it issued the discharge injunction order in a debtor's underlying bankruptcy case, as enforcement is within the bankruptcy courts' core bankruptcy jurisdiction arising under the Bankruptcy Code and may be invoked through various procedural avenues, including a motion for contempt or a declaratory judgment action. Consequently, enforcement of Section 524(a) is not limited to the court that originally issued the discharge order, and jurisdiction over Shahbazi's claims is proper.

Second, Defendants' arguments that Plaintiffs' consumer education loans are non-dischargeable cannot prevail. Such arguments conflict with Defendants' own concessions as to the loans' dischargeability, as evidenced by Defendants' deposition testimony and internal documents concerning collection procedures. Moreover, Defendants distort the judicial support

---

[3]     *See* Defendants' Motion for Summary Judgment, Rec. Doc. 163 at 27.

2

for their position and advance an irrational interpretation of the statutory provisions and Congressional intent. This Court should deny Defendants' motion.

Finally, by filing the instant motion for summary judgment rather than setting a hearing on their motion to dismiss, Defendants are attempting to obtain an unfair advantage by seeking summary judgment on the merits of Plaintiffs' claims while refusing to produce merits discovery. To date, Defendants have resisted producing documents related to the development of their internal procedures, pursuant to which Plaintiffs' consumer education loans are considered dischargeable.[4] Defendants claim that they will produce those documents within the next few weeks, after Plaintiffs' opposition is due.[5] Defendants have also refused to produce documents concerning their development of investor disclosures that highlight that Plaintiffs' consumer education loans may be dischargeable, because those documents are relevant to the merits of this case but not class certification. Finally, Plaintiffs have not had the opportunity to depose any of Defendants' employees on the merits of this dispute. If this Court does not deny Defendants' motion for summary judgment, it should defer consideration of the motion pursuant to Federal Rule of Civil Procedure 56(d), to allow Plaintiffs to conduct further discovery. Rule 56(d) requests are to be liberally granted such that, if this Court determines that Plaintiffs cannot present facts essential to justifying their opposition because they have had no opportunity to obtain discovery on the merits, it should defer consideration of the instant motion.

---

[4]    *See* Declaration of Austin Smith at 3 (attached as Exhibit "1").

[5]    *Id.*

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  FACTUAL BACKGROUND.

As students, Haas and Shahbazi applied for their respective consumer education loans with subsidiaries of SLM Corporation d/b/a Sallie Mae ("SLM")—a for-profit corporation—that are now serviced by Defendants.[6] Haas received a Consumer Education loan in 2009 in the form of a Bar Exam Study loan from Sallie Mae Bank to pay for expenses associated with preparing for the Texas bar exam. The loan was ultimately transferred to NCFC.[7] Shahbazi received a Sallie Mae Career Training loan from Sallie Mae, Inc. in 2002 for tuition expenses at STMC Training Institute, an unaccredited technical school in Vienna, Virginia. The loan was thereafter transferred to NSL.[8] (Haas and Shahbazi's loans are hereinafter also referred to as the "Loans").

Haas filed for relief under Title 11 as a Chapter 7 debtor in this Court on November 3, 2015,[9] and this Court ordered discharge of all of Haas' properly scheduled pre-petition debt on February 9, 2016.[10] Shahbazi filed for relief under Title 11 as a Chapter 7 debtor in the Eastern District of Virginia on September 20, 2011.[11] The Court entered discharge of all Shahbazi's

---

[6]    SLM Corporation's loan servicing operation is now a separate, publicly traded entity known as Navient Corporation.

[7]    The loan was then transferred from Sallie Mae Bank to SLM Education Credit Finance Corporation, which then changed its name to Navient Credit Finance Corporation.

[8]    Sallie Mae, Inc. later became Navient Solutions, Inc. On January 31, 2017, Navient Solutions, Inc. became Navient Solutions, LLC. *See* Notice of Name Change, Rec. Doc. 97.

[9]    *See* Chapter 7 Voluntary Petition, *In re Evan Brian Haas*, No. 15-35886 (Bankr. S.D. Tex. Nov. 3, 2015), ECF No. 1.

[10]    *See* Exhibit 1 to Plaintiffs' Motion for Preliminary Injunction, Rec. Doc. 100-1 (Order Discharging Chapter 7 Debtor, *In re Haas*, No. 15-35886 (Bankr. S.D. Tex. Feb. 9, 2016), ECF No. 18).

[11]    *See* Chapter 7 Voluntary Petition, *In re Michael Shahbazi*, No. 11-16643 (Bankr. E.D. Va. Sept. 20, 2011), ECF No. 1.

properly scheduled pre-petition debt on December 27, 2011.[12] Accordingly, both Plaintiffs received a Chapter 7 discharge under Section 524(a), discharging all education-related debt that was not excepted from discharge by 11 U.S.C. § 523(a)(8) ("Section 523(a)(8)").

Defendants did not file an adversary proceeding to contest the dischargeability in either instance. Nevertheless, Defendants thereafter engaged the services of various collection firms to attempt to collect on these otherwise discharged Loans in violation of the court orders and Section 524(a) of the Bankruptcy Code. Specifically, Haas produced evidence that he was contacted via phone and email post-discharge,[13] and Shahbazi testified that he was called daily, as were members of his family and their employers.[14]

As with Plaintiffs, Defendants have sought to collect on discharged consumer education loans from the putative class members, all of whom borrowed various types of consumer educational loans to attend unaccredited colleges, secondary schools, trade schools, and professional skills programs, and have since been issued discharge orders from various bankruptcy courts. Defendants' own internal procedures demonstrate that Defendants call defaulted debtors as many as ███████████.[15]

---

[12]    *See* Exhibit 2 to Plaintiffs' Motion for Preliminary Injunction, Rec. Doc. 100-2 (Certificate of Mailing of Discharge of Debtor, *In re Shahbazi*, No. 11-16643 (Bankr. E.D. Va. Dec. 30, 2011), ECF No. 14).

[13]    *See* Exhibits 3-5 to Plaintiffs' Motion for Preliminary Injunction, Rec. Docs. 100-3, 100-4, 100-5 (June 10, 2016 Email from Navient to Haas; Navient Collection Attempts from Haas; Affidavit of Haas).

[14]    *See* Testimony of Michael Shahbazi, Transcript from March 23, 2017 Hearing on Plaintiffs' Motion for Preliminary Injunction, Rec. Doc. 114 at 12 ("Q. How often did you receive calls about the loan? A. The calls were once a week and they turned to twice a day. … Q. Okay. Who else received calls about your loan besides yourself? A. My mother-in-law, my brother, my wife, my wife's employer."); *see also* Exhibit 6 to Plaintiffs' Motion for Preliminary Injunction, Rec. Doc. 100-6 (Email from Navient to Shahbazi).

[15]    *See* Exhibit A to Declaration of Austin Smith (attached as Exhibit "1").

**B. PROCEDURAL HISTORY.**

On August 5, 2016, Haas filed an adversary proceeding in this Court against SLM and Navient Corporation, seeking a (1) declaratory judgment that his debt had been discharged, (2) entry of judgment holding Navient Corporation and SLM (the predecessor to Navient Corporation) in contempt for violations of the discharge injunction, and (3) a temporary injunction.[16] That same day, this Court entered a Temporary Restraining Order (TRO) pending Haas' application for preliminary injunctive relief, enjoining SLM and Navient Corporation from taking any action to collect or attempt to collect from Haas in any manner.[17] On August 17, 2016, the parties agreed to a Preliminary Injunction similar in scope to the Court's TRO, but limited to the proper party Defendant, Navient Solutions, Inc. (now NSL).[18] This Court signed that Agreed Order on August 18, 2016.[19]

On August 26, 2016, Haas amended his complaint to include Shahbazi and seek certification of a putative nationwide class of all similarly situated individuals who (1) filed for bankruptcy protection in any judicial district and were issued discharge orders since April 20, 2005, (2) obtained pre-petition consumer education loans from Defendants or their predecessors to cover expenses at non-Title IV accredited institutions, (3) have never reaffirmed any pre-petition consumer education loan debt, and (4) have nonetheless been subjected to Defendants' attempts to induce payment on discharged debts.[20] Plaintiffs also sought (1) a declaratory judgment that Plaintiffs' and class members' consumer education loans were discharged upon

---

[16] *See* Plaintiff's Original Complaint, Rec. Doc. 1.
[17] *See* Temporary Restraining Order, Rec. Doc. 4 at 2.
[18] *See* Proposed Order Re: Preliminary Injunction, Rec. Doc. 12.
[19] *See* Agreed Order, Rec. Doc. 13.
[20] *See* Plaintiffs' First Amended Complaint, Rec. Doc. 15.

the entry of their respective discharge orders and (2) damages, including attorneys' fees and costs, arising from the Defendants' willful violations of the discharge injunctions.[21]

In response to the corporate restructuring that occurred after Plaintiffs signed their loan agreements, Plaintiffs dismissed SLM without prejudice on December 30, 2017,[22] and filed their Second Amended Complaint on January 26, 2017.[23]

On February 27, 2017, Defendants filed their Motion to Dismiss Adversary Proceeding and to Strike Class Allegations.[24] That same day, Plaintiffs filed their Motion for Preliminary Injunction and Limited Class Certification.[25] In a March 23, 2017 hearing, at this Court's suggestion, the parties entered into a stipulated agreement—filed as an Agreed Order on April 6, 2017 and signed and entered by this Court on April 11, 2017—for Defendants to halt all collection activities on the proposed class pending final resolution by this Court and for Plaintiffs to withdraw their motion for preliminary injunction without prejudice.[26] Defendants thereafter agreed to postpone resolution of their motion to dismiss until a hearing on Plaintiffs' anticipated motion for class certification, and consented to pursuing limited discovery related to such class certification.

The parties agreed to begin class certification discovery on May 15, 2017.[27] On May 16, 2017, Plaintiffs served on Defendants a request for a Rule 30(b)(6) deposition of Navient, and on May 26, 2017, Plaintiffs served discovery requests. On July 10, 2017, Defendants began their

---

[21]     *Id.*

[22]     *See* Order to Dismiss Defendant SLM without Prejudice, Rec. Doc. 74.

[23]     *See* Plaintiffs' Second Amended Complaint, Rec. Doc. 95.

[24]     *See* Defendants' Motion to Dismiss Adversary Proceeding and to Strike Class Allegations, Rec. Doc. 101.

[25]     *See* Plaintiffs' Motion for Preliminary Injunction and Limited Class Certification, Rec. Doc. 100; Agreed Order, Rec. Doc. 118.

[26]     *See* Signed Agreed Order, Rec. Doc. 122.

[27]     *See* Stipulated Scheduling Order, Rec. Doc. 130.

rolling production of responsive documents, but continue to produce documents responsive to Plaintiffs' initial requests to date.[28] Defendants insisted that the Rule 30(b)(6) deposition on class certification issues be postponed until August 31, 2017, and after further delays caused by Hurricane Harvey, the Rule 30(b)(6) deposition was not held until September 19, 2017. That corporate deposition remains to be completed

Following the Rule 30(b)(6) deposition, Plaintiffs and Defendants were able to substantially limit the scope of class certification discovery. On October 10, 2017, after conferring with Defendants, Plaintiffs proffered a written proposal to take two final depositions on class certification (one of which would be a continuation of the Rule 30(b)(6) deposition) in exchange for Defendants allowing Plaintiffs' expert limited access to Navient's systems, because the majority of relevant information about class members is stored electronically.  Plaintiffs now expect to begin to access Navient's systems on December 15, 2017, after extensive deliberation between the parties arranging for the access protocol.

Throughout this period of discovery, Plaintiffs have held countless meet and confer calls with the Defendants to resolve discovery issues and have filed three motions to compel, each of which was resolved without hearing. Due to these efforts, Plaintiffs now expect that after accessing Navient's systems, they will be able to expeditiously conduct the two remaining depositions and complete class certification discovery within the first month or so of 2018.[29]

Now—in an effort to avoid this consented-to discovery—Defendants have filed the instant motion for summary judgment on the merits of this case, revisiting many of the

---

[28]     *See* Declaration of Austin Smith at 1 (attached as Exhibit "1").

[29]     *See* Amended Stipulated Scheduling Order, Rec. Doc. 161.

arguments from their motion to dismiss of which they agreed to defer resolution, despite the fact that they have not produced any discovery on the merits to date.[30]

## III.  STANDARD OF LAW

"Summary judgment is appropriate under Fed. R. Civ. P. 56 if the record discloses 'that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1286 (5th Cir. 1990) (quoting Fed. R. Civ. P. 56). "The pleadings, depositions, admissions, and answers to interrogatories, together with affidavits, must demonstrate that no genuine issue of material fact remains." *Id.* (citing *Celotex Corp v. Catrett*, 477 U.S. 317, 322-23 (1986)). All justifiable inferences must be drawn in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Reid v. State Farm Mut. Auto Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). Rule 56(c) mandates "the entry of summary judgment, *after adequate time for discovery* and upon motion, against any party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322 (emphasis added). Fed. R. Civ. P. 56 is incorporated into the Federal Rules of Bankruptcy Procedure by Fed. R. Bankr. P. 7056.

## IV.  LEGAL ARGUMENT

### A.  THIS COURT HAS JURISDICTION OVER SHAHBAZI'S CLAIMS.

Section 524(a) provides debtors with a substantive right, such that enforcement is within the bankruptcy courts' core bankruptcy jurisdiction arising under the Bankruptcy Code. Consequently, enforcement of Section 524(a) is not limited to the court that originally issued the discharge order; multiple procedural avenues exist for enforcement. Accordingly, this Court may

---

[30]  *See* Defendants' Motion for Summary Judgment, Rec. Docs. 162-63.

enforce Section 524(a) pursuant to its core bankruptcy jurisdiction irrespective of whether it issued the initial discharge order. Moreover, the Court is not precluded from finding Defendants in contempt pursuant to its inherent and statutory contempt power. Thus, jurisdiction over Shahbazi's Section 524(a) claims is proper.

Nevertheless, Defendants argue that Plaintiffs' only recourse for seeking relief from violations of Section 524(a) is through a motion for contempt, and that such a motion must be made with the issuing court. Defendants primarily reference nonbinding circuit and district court opinions to support their contentions and selectively quote Fifth Circuit precedent that, upon closer review, does not favor their position. This Court should reject Defendants' argument because Fifth Circuit precedent clearly establishes that a motion for contempt is not necessary to enforce a Section 524(a) discharge injunction and that enforcement is not limited to the issuing court.

1.  **Debtors have multiple procedural avenues to enforce the Section 524(a) discharge injunction; those avenues are not limited to contempt proceedings.**

Multiple procedural avenues exist for enforcement of the Section 524(a) discharge injunction. As stated in *National Gypsum*, "[t]he discharge injunction granted by section 524(a) is a substantive right conferred by the Bankruptcy Code, often enforced by a motion for contempt, … but also enforceable through a declaratory judgment action[.]" *In re Nat'l Gypsum Co.*, 118 F.3d 1056, 1063 (5th Cir. 1997) (citations omitted).[31] A debtor may therefore seek to enforce Section 524(a) by filing a motion for contempt in the original bankruptcy proceeding or, alternatively, by filing a separate action seeking declaratory judgment. If a debtor seeks

---

[31]  Tellingly, Defendants quote *National Gypsum* for the proposition that "[t]he discharge injunction granted by section 524(a) is … often enforced by a motion for contempt," but fail to include the remainder of the sentence that states that the injunction is "also enforceable through a declaratory judgment action[.]" 118 F.3d at 1063 (citations omitted).

declaratory judgment in an adversary proceeding, the bankruptcy court is not, however, restricted from finding a creditor in contempt and entering an appropriate order. Once subject matter jurisdiction over the adversary proceeding is established, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code and the court may take such action *sua sponte*. 11 U.S.C. § 105(a). A debtor need not file a motion for contempt to benefit from the relief associated with a finding of contempt. Plaintiffs are not precluded from recovering "actual damages, emotional distress damages, and attorney's fees" in an adversary proceeding. *In re Fauser*, 545 B.R. 907, 912 (Bankr. S.D. Tex. 2016).

2. **The bankruptcy courts have core bankruptcy jurisdiction over the enforcement of Section 524(a) discharge injunctions because the statutory right provided by Section 524(a) necessarily arises under the Bankruptcy Code.**

Additionally, enforcement of Section 524(a) is not limited to the court that originally issued the discharge because "[t]he discharge injunction granted by section 524(a) is a substantive right conferred by the Bankruptcy Code[.]" *Nat'l Gypsum*, 118 F.3d at 1063 (citations omitted). An adversary proceeding to enforce or construe a discharge injunction under Section 524(a) "is a federal cause of action, asserting a statutory right under the Bankruptcy Code[.]" *Id.* at 1064. Notably, such a proceeding "necessarily arises under title 11 and supports a finding that federal jurisdiction exists under 28 U.S.C. § 1334 and that such a proceeding is 'core' under 28 U.S.C. § 157(b)." *Id.* Because the bankruptcy courts' core bankruptcy jurisdiction to enforce Section 524(a) *arises under the Code*, jurisdiction is not limited to the issuing court.

This principle was explained in greater detail by U.S. Bankruptcy Judge Marvin Isgur of the Southern District of Texas in *In re Cano*, 410 B.R. 506 (Bankr. S.D. Tex. 2009). The

jurisdictional analysis begins with consideration of whether a district court has jurisdiction over the bankruptcy matter, to allow for referral to the bankruptcy court under 11 U.S.C. § 157(a). *Cano*, 410 B.R. at 544. The "district courts have subject matter jurisdiction over all 'civil proceedings *arising under* title 11, or *arising in* or *related to* cases under title 11.'" *Id.* (quoting 28 U.S.C. § 1334(b)) (emphasis added). Thus, there are "three jurisdictional prongs" with three "distinct meanings." *Id.* With the first prong, "a matter arises under title 11 'if it invokes a substantive right provided by title 11.'" *Id.* at 545 (quoting *In re Southmark Corp.*, 163 F.3d 925, 930 (5th Cir. 1999)). Under the second prong, "a matter arises in a case under title 11 if it, 'by its nature, could arise only in the context of a bankruptcy case.'" *Id.* (quoting *In re Wood*, 825 F.2d 90, 97 (5th Cir. 1987)). Finally, under the third prong, "[a] matter is 'related to' a case under title 11 if the adversary proceeding's outcome may 'both (1) alter the rights, obligations, and choices of action of the debtor, and (2) have an effect on the administration of the estate.'" *Id.* at 544-45 (quoting *In re Bass*, 171 F.3d 1016, 1022 (5th Cir. 1999)).

Because a discharge injunction order is a prerequisite to an action to enforce Section 524(a), such an adversary proceeding cannot fall within the court's "related to" jurisdiction because there is no longer a bankruptcy estate post-discharge. Still, as stated by Judge Isgur:

> The 'arising in' and 'arising under' prongs of § 1334 provide independent bases of jurisdiction. The Supreme Court and Fifth Circuit have explained that courts can exercise bankruptcy jurisdiction over matters that "arise in" a bankruptcy case *or* "arise under" the Bankruptcy Code even when the matters are not "related to" a bankruptcy case.

*Id.* at 546 (emphasis added). This notion was iterated most recently by U.S. Bankruptcy Judge Jeff Bohm of the Southern District of Texas. *See* Order Denying Motion to Dismiss, *Jones v. Atlas Acquisition LLC*, Adv. Pro. No. 16-3235 (Bankr. S.D. Tex. May 19, 2017), ECF No. 44 (attached as Exhibit "2"). There, the court rejected many of the same arguments advanced by Defendants and concluded that the bankruptcy court maintained "arising under" and "arising in"

jurisdiction over a nationwide class of debtors, irrespective of where their individual bankruptcy proceedings initially took place. *Id.* at 11-14.[32]

Accordingly, as set forth by the Fifth Circuit in *National Gypsum* and explained in *Cano* and *Jones*, the bankruptcy courts have subject matter jurisdiction "to protect important debtor rights created by the Bankruptcy Code"—including those rights provided by Section 524(a)— "pursuant to § 1334's 'arising in' or 'arising under' jurisdictional grants." *Id.* (citing *Nat'l Gypsum*, 118 F.3d 1056). Hence, this Court's subject matter jurisdiction over enforcement of Section 524(a) exists under the Bankruptcy Code and is not dependent on a pending bankruptcy case. *In re Lonnie Davis*, No. 06-7016, 2006 WL 2827270, at *2 (Bankr. S.D. Tex. Sept. 27, 2006) ("The discharge injunction created under 11 U.S.C. § 524 is a Congressionally imposed injunction. It is not a case specific injunction issued by a Court based on the traditional factors considered for the issuance of an injunction."). Correspondingly, jurisdiction over proceedings to enforce Section 524(a) is not limited to a particular district court.[33]

### 3. The relief afforded debtors under Section 524(a) is distinguishable from relief provided by a non-statutory injunction.

Finally, Defendants inappropriately marginalize the difference between case-specific injunctions and statutory injunctions. Defendants quote *Waffenschmidt v. MacKay*, as well as subsequent cases referencing that decision, for the proposal that "[e]nforcement of an injunction through a contempt proceeding must occur in the issuing jurisdiction because contempt is an

---

[32]     *See also id.* at 9-10 (discussing the decision in *Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970 (5th Cir. 2000), as further evidence of the Fifth Circuit's "implicit approval of the District Court's ability to certify a nationwide class of debtors").

[33]     This Court itself stated in a January 9, 2017 hearing in this matter: "Well, we're one Bankruptcy Court, right, just different districts? Only One Bankruptcy Code." *See* Transcript of Hearing on Motion to Compel, Rec. Doc. 88 at 12.

affront to the court issuing the order." 763 F.2d 711, 716 (5th Cir. 1985).[34] Although there is no denying the veracity of this principle to case-specific injunctions, Defendants do not disclose the context of this quote, which shows that *Waffenschmidt* is linked to case-specific injunctions.

In *Waffenschmidt*, the plaintiffs sought enforcement of a court-ordered preliminary injunction during the pendency of their underlying action. *Id.* As a result, the plaintiffs were limited to seeking enforcement of that injunction in the court that issued it, where the lawsuit was pending. In this case, although the discharge injunction is implemented by court order, it is not merely preliminary in nature as in *Waffenschmidt*. Here, the discharge injunction is statutory in nature because it exists under Section 524(a), such that subject matter jurisdiction over enforcement does not require the pendency of a lawsuit, nor is jurisdiction limited to the issuing court. *See Nat'l Gypsum Co.*, 118 F.3d at 1064. *Waffenschmidt*'s directive is inapplicable in this instance as it applies only when an injunction exists solely because of a court order.[35]

Courts in this District have already rejected Defendants' proposed interpretation of *Waffenschmidt*. *See Davis*, No. 06-7016, 2006 WL 2827270. In *Davis*, the plaintiffs argued that the court lacked subject matter jurisdiction over enforcement of a Section 524 discharge injunction because it was not the court that issued the discharge injunction order, quoting the

---

[34]    As additional support for this proposition, Defendants cite two other Fifth Circuit cases which reference *Waffenschmidt*: *In re Wilborn*, 609 F.3d 748, 754 (5th Cir. 2010) and *Asher v. A.G. Edwards & Sons, Inc.*, 272 F. App'x 357, 358 (5th Cir. 2008). *Wilborn* cites *Waffenschmidt* for the unrelated principle that "a federal rule may not extend a court's jurisdiction." *Wilborn*, 609 F.3d at 754 (citing *Waffenschmidt*, 763 F.2d at 720). *Asher* quotes the same excerpt of *Waffenschmidt* reproduced herein, but concerned the federal court's abstention from addressing a contempt motion filed in state court. *Asher*, 272 F. App'x at 358 (quoting *Waffenschmidt*, 763 F.2d at 716).

[35]    The Supreme Court cases cited by Defendants, as well as the remaining Fifth Circuit case referenced in this section, likewise concern situations in which an injunction exists solely because of a court order. *See Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821 (1994); *Toledo Scale Co. v. Computing Scale Co.*, 261 U.S. 399 (1923); *Lubrizol Corp. v. Exxon Corp.*, 871 F.2d 1279 (5th Cir. 1989).

previously reproduced text from *Waffenschmidt* as support. *Id.* at *2 (quoting *Waffenschmidt*, 763 F.2d at 716). In rejecting that argument, Judge Isgur explained:

> The enforcement of the injunction in *Waffenschmidt* refers to an injunction crafted for a specific case. *The [Section 524(a) claim] falls under a statutorily created injunction.* With an individually crafted injunction, "the judge's insights and thought processes may be of particular significance," which may mandate enforcement only by the issuing court. *Bessette v. Avco Fin. Services Inc.*, 230 F.3d 439, 446 (1st Cir. 2000). However, when an injunction is statutorily created rather than individually created, "few of [these] practical reasons for confining contempt proceedings to the issuing tribunal apply …." *Id.* Therefore, the authority to enforce the injunction does not remain only with the issuing court. *Id. Since the discharge injunction is a statutory injunction, this Court has subject matter jurisdiction ….*

*Id.* (emphasis added). This Court should not dismiss such logic.

For these reasons, this Court should conclude that it has subject matter jurisdiction over enforcement of the Section 524(a) discharge injunction claims of Shahbazi. It should reject Defendants' arguments that enforcement of the discharge injunctions may only be accomplished through a motion for contempt filed in the issuing jurisdiction.[36]

---

[36]    Plaintiffs do not construe Defendants' motion for summary judgment as denying this Court's jurisdiction over a nationwide class of debtors. However, to the extent Defendants intend to argue as much, Plaintiffs have fully briefed this issue in their opposition to Defendants' motion to dismiss, and incorporate those arguments herein. *See* Plaintiffs' Opposition to Defendants' Motion to Dismiss Adversary Proceeding and to Strike Class Allegations, Rec. Doc. 124 at 7-20 (discussing this Court's jurisdiction over Shahbazi and a nationwide class). *See also In re Haynes*, No. 11-23212-RDD, 2014 WL 3608891, at *9 (Bankr. S.D.N.Y. July 22, 2014) ("I conclude for the foregoing reasons, therefore, that the Court has the statutory power and the subject matter jurisdiction to decide this nationwide class action. I have again been largely informed by the analysis undertaken by Judge Isgur in the *Cano* case."); *In re Rivers*, No. 03-05671, 2010 WL 5375950 (Bankr. S.D. Miss. Dec. 22, 2010) (allowing class action adversary proceeding).

**B. PLAINTIFFS' LOANS ARE NOT EXCEPTED FROM DISCHARGE.**

Not all educational debts are non-dischargeable under the Bankruptcy Code.[37] Section

523(a)(8) of the Code reads as follows:

> (a) A discharge … does not discharge an individual debtor from any debt—
>
> …
>
> (8) unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for—
>
> (A)(i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
>
> (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or
>
> (B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual[.]

11 U.S.C. § 523(a)(8). According to its plain terms, Sections 523(a)(8)(A)(i) and (B) restrict

discharge of only three types of educational loans: (i) an educational loan made, guaranteed, or

insured by a governmental unit; (ii) an educational loan made under any program funded in

whole or in part by a governmental unit or nonprofit institution; (iii) an educational loan that is a

qualified education loan under 26 U.S.C. § 221(d)(1). In addition, Section 523(a)(8)(A)(ii)

restricts discharge of a defaulted conditional educational grant made by a school, an employer, or

the state. Defendants argue that it is this latter section, Section 523(a)(8)(A)(ii), that excepts

Plaintiffs' Loans from discharge.[38]

---

[37] The standard nationwide discharge order itself states that debts for "most student loans" are not discharged, indicating that "some" *are* dischargeable. Otherwise, the order would read that debts for "all student loans" are not discharged.

[38] Plaintiffs maintain that their Loans are likewise not excepted from discharge under Section 523(a)(8)(A)(i) or Section 523(a)(8)(B) but omit discussion of these sections because Defendants do not argue that they apply to except the Loans from discharge.

In arguing that Plaintiffs' Loans are excepted from discharge, Defendants rely on several bankruptcy court decisions to rewrite Section 523(a)(8)(A)(ii) to except from discharge "any loan that provides educational advantages."[39] Essentially, Defendants insist that Congress codified and amended Section 523(a)(8) to except three very specific types of educational loans, and then also excepted every single type of educational debt in section 523(a)(8)(A)(ii). In fact, Defendants insist that even after Congress excepted any and all types of educational debt from discharge in 1990, Congress added Section 523(a)(8)(B) in 2005, a provision that codified protection for a smaller subset of loans already exempt from discharge. This is an irrational interpretation of legislative intent and conflicts with Defendants' own concessions.

### 1. Defendants have conceded that these Loans are dischargeable.

Perhaps most telling, Defendants have explicitly acknowledged that these Loans are dischargeable. Critically, Defendants' own testimony and internal documents indicate that Defendants recognize the dischargeability of Plaintiffs' Loans. Particularly, Defendants' policy for Career Training Loans and Self Insured Loans, *i.e.*, private loans, confirms that some private loans are eligible for discharge. Defendants' internal documents provide the following procedure ██████████████████████████████:

---

[39]     Presumably this would include a car loan made to a student so she could get to class, or a credit card purchase of books at Barnes & Noble, or even a trip to Paris to visit the Louvre.



In Defendants' Rule 30(b)(6) deposition, Defendants verified that ██████████████ ████████████████████████████████████████████████████████████████████ ██████████[41] As highlighted by this evidence and testimony, Defendants' policies and procedures for discharging certain loans conflict with their arguments in their present motion for summary judgment.

Further, Defendants' argument that Shahbazi's loan and other loans like it are non-dischargeable is in direct contrast to their testimony that ████████████████████ ██████████████████████████████████████████████████████████████[42]

Specifically, Defendants acknowledged that ██████████████████████████████ ██████████████[43] Defendants testified that ████████████████████████████████ ████████████████████████████████████████████████████████████████████ ██████████████████[44]

---

[40]   *See* Exhibit 30 to September 19, 2017 Deposition of Patricia Peterson at 1-2 (attached as Exhibit "3") (emphasis added); *see also* September 19, 2017 Deposition of Patricia P. Peterson at 316-328 (attached as Exhibit "4") (discussing application of the procedures in Exhibit 30).

[41]   Deposition of Peterson at 318 (attached as Exhibit "4"). *See also id.* at 339 _____ _____; *id.* at 344 _____ _____ _____ _____.

[42]   *See id.* at 347-48.

[43]   *Id.* at 347.

[44]   *Id.* at 347-48.



Nonetheless, in this motion, Defendants argue that all loans like Shahbazi's are always non-dischargeable, contradicting their own testimony and procedures. At the very least, this evidence creates a genuine issue of material fact as to dischargeability, and summary judgment should therefore be denied.

Most alarmingly, documents produced by Defendants demonstrate that

The willfulness of Defendants' behavior is disturbing. As Plaintiffs' complaint originally alleged, Defendants appear to have a common practice of seeking to collect on non-Title IV educational loans after bankruptcy, even though their own procedures and internal records recognize that these loans are dischargeable and were, in fact, discharged.

Additionally, Defendants openly disclose to their investors that Career Training loans are dischargeable in bankruptcy.[47] Given the foregoing, Defendants should not be permitted to argue that Plaintiffs' Loans are non-dischargeable—or at least should be precluded from arguing that

---

[45]  *Id.* at 352-53.

[46]  *See* Declaration of Austin Smith at 2 (attached as Exhibit "1").

[47]  *See* Exhibit 9 to Plaintiffs' Motion for Preliminary Injunction, Rec. Doc. 100-9 (Navient 2016 2nd Quarter Investor Deck at 48 (July 25, 2016)).

there is a lack of a genuine issue of material fact on this issue. Plaintiffs' Loans are not exempt from discharge in bankruptcy under any subsection of Section 523(a)(8).

**2. Categorizing Plaintiffs' Loans as "educational loans" is not dispositive of dischargeability under Sections 523(a)(8)(A)(i) or (B).**

On the basis of boiler-plate statements contained in the promissory notes, Defendants claim that Plaintiffs' statements that their loans are "educational loans" is dispositive, based upon the mistaken impression that all educational loans are non-dischargeable. But as the plain language of Sections 523(a)(8)(a)(i) and (B) make clear, demonstrating that a loan is an "educational loan" is only the first step of the analysis, as only three types of educational loans are non-dischargeable under those subsections, those that are: (1) made, guaranteed or insured by a governmental unit; (2) made under any program funded in whole or in part by a governmental unit or nonprofit institution; or (3) otherwise qualified under the tax code.[48]

Thus, even assuming that the Loans are educational loans or student loans, this fact is not dispositive of their dischargeability under Section 523(a)(8) as Defendants insist.[49] This exact

---

[48]    As will be clarified in Section IV(B)(3), *infra*, "educational loans" do not fall within the scope of Section 523(a)(8)(A)(ii).

[49]    Although the term "educational loan" is not defined in the code, the majority of courts to consider this question have held that educational loans differ from consumer loans because they are made at low interest rates to students to further a public good (contrary to Defendants' position that educational loans need not be altruistic). Whether or not the debts are "educational loans" is irrelevant because Section 523(a)(8)(A)(ii) does not concern "loans" at all. However, Plaintiffs reserve the right to dispute whether the Loans are "educational loans" at a later time. *See Matter of Roberson*, 999 F.2d 1132, 1135-36 (7th Cir. 1993) ("[E]ducational loans are different from most loans. They are made without business considerations, without security, without cosigners, and rely [] for repayment solely on the debtor's future increased income resulting from the education. In this sense, the loan is viewed as a mortgage on the debtor's future.") (citing H.R. Rep. No. 595, 95th Cong., 1st Sess. 133 (1977)). *U.S. Dep't of Health & Human Servs. v. Smith*, 807 F.2d 122 (8th Cir. 1986) (same). Admittedly, these cases predated the 2005 BAPCPA amendment that gave private educational lenders qualified protection, and thus this definition of "educational loan" may only apply to Section 523(a)(8)(A) and not Section 523(a)(8)(B).

argument has been asserted previously in bankruptcy court and rejected. *See In re Dufrane*, 566 B.R. 28, 40 (Bankr. C.D. Cal. 2017) ("The fact that … each of the promissory notes evidencing the SunTrust Private Loans [provided] that the loan proceeds would be used to pay educational and living expenses … does not make the [] Loans the type of 'obligation to repay funds received as an educational benefit' that Congress sought to make nondischargeable under § 523(a)(8)(A)(ii).").

3. **Plaintiffs' Loans are not "obligation[s] to repay funds received as an educational benefit" under Section 523(a)(8)(A)(ii).**

Plaintiffs' Loans were not excepted under Section 523(a)(8)(A)(ii) because they are not "obligation[s] to repay funds received as an educational benefit, scholarship, or stipend." Defendants seemingly concede that Plaintiffs' Loans are not obligations to repay funds received as educational "scholarships" or "stipends," so the underlying funds must fall into the category of educational "benefits" for Plaintiffs' Loans to be subject to discharge under Section 523(a)(8)(A)(ii). Plaintiffs' Loans are not obligations to repay funds received as educational "benefits" as that word is properly defined.

Congress used the word "benefit" in Section 523(a)(8)(A)(ii) to mean a "conditional payment" made by an employer, the state, or the school. *See, e.g.*, *In re Essangui*, 573 B.R. 614, 623 (Bankr. D. Md. 2017) ("The Court agrees with the courts in *Campbell* and *Dufrane* that '[s]ection 523(a)(8)(A)(ii) excepts from discharge educational debts, other than loans, such as conditional grants and stipends that generally are not required to be repaid."); *In re Campbell*, 547 B.R. 49, 55 (Bankr. E.D.N.Y. 2016) ("The concept which unites the three separate terms in the list in § 523(a)(8)(A)(ii) is that they all refer to types of conditional grants.").[50] That is,

---

[50]   Notably, the United States Code has an entire chapter on the structure of Veterans' Benefits, including VA educational benefits. *See* 38 U.S.C. §§ 101 *et. seq.*.

"benefit" is defined as a contractual sum of money tied to a federal or scholastic service program. The phrase "obligation to repay funds received as an educational benefit, scholarship, or stipend" means "an obligation to repay funds received as an educational grant," where the conditional education grant refers to programs such as VA Benefits, and National Health Service Scholarships.[51] Plaintiffs' Loans are not based on an obligation to repay funds such as these and are therefore not subject to dischargeability under Section 523(a)(8)(A)(ii).

Defendants disingenuously argue that even though the Loans were not made for qualified education expenses, they are nonetheless non-dischargeable under Section 523(a)(8)(A)(ii) as an "obligation to repay funds received as an educational benefit." In order to accept this argument, this Court must determine that Congress actually defined the term "benefit" to mean "an advantage or profit gained from something" such that Section 523(a)(8)(A)(ii) truly means "any obligation to repay funds received that provided educational advantages." This plainly is not the intended meaning of the word "benefit," nor of Section 523(a)(8)(A)(ii), and Defendants' argument is without merit.

    a. *It is permissible to use accepted canons of statutory construction to interpret Section 523(a)(8)(A)(iii).*

Defendants acknowledge that other courts have adopted a more narrow interpretation of Section 523(a)(8)(A)(ii), but insist that these courts were wrong because each of them wrongly employed (1) the canon against superfluity; (2) the canon of *noscitur a sociis*; and (3) reliance on legislative history. However, when a statute is ambiguous, it is appropriate for the courts to use available and accepted canons of statutory construction to interpret the statute's meaning.

---

[51]    The government has a right to recoup conditional educational benefits provided to citizens who break the terms of their contract. *See United States v. Garrahan*, 614 F. Supp. 152 (N.D. Fla. 1985) (granting the Government's motion for summary judgment in suit where Government brought action to recover VA educational benefits expended on courses in which the grade assigned was not used to compute graduation requirements of the defendant).

Section 523(a)(8)(A)(ii) is an ambiguous clause because it is awkwardly worded and structured, and for that reason, has been susceptible to two very different meanings and interpretations—it is this susceptibility to multiple interpretations that renders it "ambiguous" as a matter of law and therefore triggers the statutory construction methodologies. *See, e.g.*, *In re Hopson*, 324 B.R. 284, 288 (S.D. Tex. 2005) ("For statutory language to be considered ambiguous, it must be susceptible to more than one reasonable interpretation or more than one accepted meaning.") (internal quotation marks and citations omitted).[52] Due to Section 523(a)(8)(A)(ii)'s ambiguity, over a dozen bankruptcy and appellate courts have employed various tools to best interpret Congressional meaning. *See* Section IV(B)(3)(b), *infra*.

From the outset, there are two potentially applicable definitions for the word "benefit" in Section 523(a)(8)(A)(ii). The word "benefit" can either mean "an advantage or profit gained from something" or "a payment made by an employer, an insurance company or the state." Oxford Dictionary of English (3d ed. 1997).[53] The first definition results in the statute indicating that "any loan that provides educational advantages is non-dischargeable." The second, more narrow, interpretation results in interpreting Section 523(a)(8)(A)(ii) to mean "an obligation to repay a conditional educational payment made by an employer, an insurance company, or the state." The plain text of the statute is not determinative, because it does not identify which definition Congress intended. But the latter definition is more reasonable because it best conforms to common sense and accepted canons of statutory construction.

---

[52]     *In re Phillips*, 485 B.R. 53, 56 (Bankr. E.D.N.Y. 2012) ("Statutory language is ambiguous if it is susceptible to two or more reasonable meanings. In determining plainness or ambiguity, courts are directed to look 'to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.' Moreover, courts may utilize canons of statutory construction to help resolve any ambiguity. However, where both the plain meaning and the rules of statutory construction are unavailing, courts may resort to legislative history to aid in their interpretation.") (internal citations omitted).

[53]     The third possible definition is not applicable.

Defendants argue that use of these canons is wrong and courts must interpret the statute broadly to except from discharge any debt that provides educational benefits. This Court should reject that argument because it is incompatible with the requirement to interpret exceptions to discharge narrowly. *See In re M.M. Winkler & Assocs.*, 239 F.3d 746, 751 (5th Cir. 2001) ("[E]xceptions to dischargeability are to be construed narrowly in favor of the debtor."); *In re Renshaw*, 222 F.3d 82, 90 (2d Cir. 2000) ("[T]he exception to discharge of a debt in bankruptcy set out in § 523(a)(8) must be narrowly construed[.]"). This Court should not summarily reject the accepted and sensible canons of statutory construction that support the latter interpretation of Section 523(a)(8)(A)(ii).

First, numerous courts across the country have recognized that a broad interpretation of Section 523(a)(8)(A)(ii) is unworkable and inappropriate because it defies the canon of *noscitur a sociis*. The canon of *nosciturr a soccis* instructs that the words "benefit, scholarship, and stipend" should be defined with reference to each other.[54] "Scholarships" and "stipends" are both types of "payments made by an employer, the state, or public agency" and thus "benefit" should also be interpreted this way, as that is one of the word's possible definitions. *See, e.g.*, *Essangui*, 573 B.R. at 623  ("The definition or scope of educational benefit thus should align with that of scholarship and stipend—both terms representing funds extended for educational purposes that generally do not need to be repaid unless the recipient fails to graduate or meet other specified requirements.").

---

[54]    The canon of *noscitur a sociis* states that where a word is included in a series, each word is presumed to have a similar meaning to each other. Accordingly, the words "benefit, scholarship, and stipend" as found in Section 523(a)(8)(A)(ii) must be defined to give each word a similar meaning.

Accordingly, the word "benefit" should not be interpreted to mean "an advantage or profit gained from something," but instead "a payment made by an employer, the state, or public agency." More eloquently stated:

> [T]he canon of statutory construction known as *noscitur a sociis* instructs that when a statute contains a list, each word in that list presumptively has a similar meaning. To the extent that educational benefit (defined nowhere in the Bankruptcy Code) is ambiguous, it should be presumed to have a meaning similar to the other items in the list set forth in § 523(a)(8)(A)(ii). Scholarship and stipend both refer to funds which are not generally required to be repaid by the recipient. Therefore, in the absence of plain meaning to the contrary, or compelling legislative history, educational benefit must be understood to refer to something other than a loan, especially given that Congress uses the word loan elsewhere in § 523(a)(8). The concept which unites the three separate terms in the list in § 523(a)(8)(A)(ii) is that they all refer to types of conditional grants.

*Campbell*, 547 B.R. at 55 (internal citations omitted). If "benefit" is defined as a "payment made by the state or an employer" then it is irrelevant whether the funds provided educational advantages.[55]

Second, interpreting Section 523(a)(8)(A)(ii) broadly to preclude discharge of any educational debt is illogical because it would render the rest of the statute superfluous and violate the canon against superfluity. That is, if any educational debt were non-dischargeable under Section 523(a)(8)(A)(ii), Congress would have had no reason for crafting the other two subsections. There would be no need to except certain types of federally insured, non-profit, and other educational loans qualified under the tax code, because any loan that provided educational advantages would be absolutely non-dischargeable. *See In re Scott*, 287 B.R. 470, 474 (Bankr. E.D. Mo. 2002) ("If the third provision of section 523(a)(8) were interpreted to mean that all educational loans were excepted from discharge then the first two categories (extending an

---

[55] This is doubly confusing because "benefits" in the second sense provide "benefits" in the first sense (that is, educational payments made by the state provide educational advantages). This is likely one of the sources of confusion in the courts.

exception to only governmental entities and nonprofit institutions) would certainly be rendered meaningless and superfluous.").[56]

Not only would those two subsections be rendered superfluous if Section 523(a)(8)(A)(ii) were interpreted as Defendants demand, but the statute so interpreted would indicate that debt for any educational purpose whatsoever—whether a fine at the local library, a credit card charge for books on Amazon, or a past-due museum membership—would be non-dischargeable under Section 523(a)(8). *See Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 836 (1988) (expressing reluctance "to adopt an interpretation of a congressional enactment which renders superfluous another portion of that same law"). This is clearly not what the statute was intended to accomplish.

Finally, the legislative history of Section 523(a)(8) supports a narrow interpretation of Section 523(a)(8)(A)(ii), referencing an important decision from the Eighth Circuit regarding a debtor who sought to discharge an "obligation to repay funds received as an educational benefit" as the genesis for the 1990 amendment. *Campbell*, 547 B.R. at 55 ("This interpretation is consistent with legislative history. The phrase 'educational benefit' first appeared in § 523(a)(8)

---

[56]     This principle has been recognized by multiple courts. *See, e.g.*, *In re Decena*, 549 B.R. 11, 18-19 (Bankr. E.D.N.Y.), *rev'd in part, vacated in part on other grounds sub nom. Citizens Bank v. Decena*, 562 B.R. 202 (E.D.N.Y. 2016) ("Section 523(a)(8)(A)(ii) is not a 'catch-all' provision designed to encompass any educational claim arising out of any transaction that bestows an educational benefit on a debtor. … [I]t defies logic to suggest that Congress added subsection 523(a)(8)(B) in 2005 to encompass a subset of loans already covered under subsection 523(a)(8)(A)(ii)."); *In re Nunez*, 527 B.R. 410, 415 (Bankr. D. Or. 2015) (same); *In re Schultz*, Adv. Pro. No. 16-03042, 2016 WL 8808073, at *4 (Bankr. D. Minn. Dec. 13, 2016) ("To read the phrase educational benefit as broadly as advocated by Navient would lead to the result that the other two provisions would in essence be read out of the statute[.]"); *In Matter of Swenson*, No. 16-10016, 2016 WL 4480719, at *3 (Bankr. W.D. Wis. Aug. 23, 2016) (same); *In re Meyer*, No. 15-13193, 2016 WL 3251622, at *2 (Bankr. N.D. Ohio June 6, 2016) (same). *See also In re McClure*, 210 B.R. 985, 988 (Bankr. N.D. Tex. 1997) ("In order for this court to find the debt [] nondischargeable it would be necessary to expand § 523(a)(8) to any loan which can be said to provide an educational benefit. The court finds that this would be outside the intent of Congress, and thus refuses to broaden § 523(a)(8).").

of the Bankruptcy Code in 1990, as codification of the holding in *U.S. Dep't of Health & Human Servs. v. Smith*, where the 8th Circuit determined that a conditional grant to a medical student was a nondischargeable loan within the meaning of § 523(a)(8).") (citing *U.S. Dep't of Health & Human Servs. v. Smith*, 807 F.2d 122 (8th Cir. 1986)). In that case, the debtor, a medical student, received an educational grant for medical school in exchange for agreeing to work in a physician-shortage area for a certain number of years after graduation. *Smith*, 807 F.2d at 123. The debtor finished school, but failed to perform on his contractual obligations. *Id.* The student thereby incurred an obligation to repay funds received as an educational benefit. *Id.* But under the pre-1990 version of Section 523(a)(8), only certain educational loans were non-dischargeable, and thus a defaulted conditional educational benefit was fully dischargeable under a plain reading of the statute. After Congress codified this holding in the 1990 version of the statute, Section 523(a)(8) read as follows to exempt from discharge a debt:

> (8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless—
>
> (A) such loan, benefit, scholarship, or stipend overpayment first became due more than 7 years (exclusive of any applicable suspension of the repayment period) before the date of the filing of the petition; or
>
> (B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents[.]

*In re Shorts*, 209 B.R. 818, 819 (Bankr. D.R.I. 1997) (quoting 11 U.S.C. § 523(a)(8) (1990)) (internal quotation marks omitted). Thus, Congress legislated that Section 523(a)(8) except four types of educational debts: loans, benefits, scholarships, and stipends. If all of these debts are merely types of "educational benefits" as Defendants insist, there was no need for Congress to articulate all four categories.

     *b.   Defendants inappropriately characterize their position as the "majority view" and fail to acknowledge that the courts are trending away from this approach.*

Defendants argue that this Court should adopt their position because it is the "majority view," citing a handful of decisions (many of which are unpublished) as support. However, to Plaintiffs' knowledge, Defendants' position has never been characterized as the "majority view," except by parties whose interests align with Defendants. *See Essangui*, 573 B.R. at 621 n.10 ("Defendant refers to the cases interpreting section 523(a)(8) more broadly as the 'majority' position. The Court uses the terms 'majority' and 'minority' in this decision only to separate and identify the two competing lines of cases on the legal issue. The Court has not conducted a formal tally to determine which position is in the lead at this point.").

On the other hand, Plaintiffs' position is also supported by numerous cases—including all cases from 1990 through 2005 and eight of the nine cases decided since 2016. *See In re Kashikar*, 567 B.R. 160 (B.A.P. 9th Cir. 2017); *Essangui*, 573 B.R. 614; *In re Dufrane*, 566 B.R. 28, 40 (Bankr. C.D. Cal. 2017) ("In a series of cases following the 1990 amendment, bankruptcy courts uniformly rejected the notion that the new term 'educational benefit' could be read broadly and independent of other portions of § 523(a)(8) to except from discharge loans made by for-profit lenders to fund truck driving training courses."); *In re Decena*, 549 B.R. 11 (Bankr. E.D.N.Y.), *rev'd in part, vacated in part on other grounds sub nom. Citizens Bank v. Decena*, 562 B.R. 202 (E.D.N.Y. 2016); *In re Campbell*, 547 B.R. 49 (Bankr. E.D.N.Y. 2016); *Scott*, 287 B.R. 470; *In re Reis*, 274 B.R. 46 (Bankr. D. Mass. 2002); *In re Jones*, 242 B.R. 441 (Bankr. W.D. Tenn. 1999); *In re Meinhart*, 211 B.R. 750 (Bankr. D. Colo. 1997); *In re McClure*, 210 B.R. 985 (Bankr. N.D. Tex. 1997); *Shorts*, 209 B.R. 818; *In re Alibatya*, 178 B.R. 335 (Bankr. E.D.N.Y. 1995); *In re Schultz*, Adv. Pro. No. 16-03042, 2016 WL 8808073 (Bankr. D. Minn. Dec. 13, 2016); *In Matter of Swenson*, No. 16-10016, 2016 WL 4480719, at *1 (Bankr. W.D.

Wis. Aug. 23, 2016); *In re Meyer*, No. 15-13193, 2016 WL 3251622, at *1 (Bankr. N.D. Ohio June 6, 2016). This list does not include dozens of other opinions (including appellate decisions) that have adopted the position advocated by Plaintiffs (*see, e.g.*, *In re Christoff*, 527 B.R. 624 (B.A.P. 9th Cir. 2015), *appeal dismissed* (Aug. 7, 2015); *In re Nunez*, 527 B.R. 410 (Bankr. D. Or. 2015); *London-Marable v. Sterling*, Adv. Pro. No. 06-0024, 2008 WL 2705374, at *1 (D. Ariz. July 9, 2008)), nor does it include reference to those decisions properly interpreting the statute when confronted with defaulted conditional educational grants. *See, e.g.*, *In re Burks*, 244 F.3d 1245 (11th Cir. 2001).

Moreover, in some of the cases referenced as support for their position, Defendants distort the facts and legal conclusions. For instance, Defendants state, "Indeed, in the only circuit court opinion to have considered the issue, the Second Circuit held that a debt for a private bar-study loan was excepted from discharge under § 523(a)(8)(A)(ii). *In re Desormes*, 569 F. App'x 42, 43 (2d Cir. 2014) (unpublished)."[57] Notwithstanding Defendants' representation, review of the Second Circuit's unpublished summary order in *Desormes* uncovers no reference to a private bar-study loan. *See In re Desormes*, 569 F. App'x 42, 43 (2d Cir. 2014) (summary order). In fact, a closer look at the appellate briefs reveals that the decision in *Desormes* concerned the dischargeability of a promissory note for unpaid tuition at a private unaccredited law school—not a private bar-study loan—owed to the law school as opposed to a third-party bank or lender. *See* Brief of Appellant, *In re Desormes*, No. 13-3663, 2013 WL 7120193 (2d Cir. Nov. 13, 2013). Consequently, whatever precedential effect *Desormes* might have is irrelevant here.

Similarly, Defendants selectively quote the decision in *In re Shaw*, No. 08-30319, 2015 WL 1000213 (Bankr. S.D. Tex. Mar. 3, 2015), to suggest that the case concerned only

---

[57]     *See* Defendants' Motion for Summary Judgment, Rec. Doc. 163 at 27.

dischargeability under Section 523(a)(8)(A)(ii) and that the court's determination of non-dischargeability was under that subsection alone.[58] The underlying debt in *Shaw* is distinguishable from the debts at issue here, as *Shaw* concerned a loan funded by a non-profit corporation to pay back two private educational loans. *Shaw*, 2015 WL 1000213, at *2. Notably, though the debtor in *Shaw* challenged the applicability of Section 523(a)(8), she did not dispute that her debt fell within the current statutory provisions. *Id.* Instead, she argued that her debt was dischargeable because it was not encompassed by the former version of Section 523(a)(8), which she argued should apply to her debt. *Id.* The court rejected this argument and, while ultimately stating that the debt was non-dischargeable under Section 523(a)(8)(A)(ii), concluded that the debt was likewise non-dischargeable under the other two subsections of Section 523(a)(8). *Id.* Accordingly, *Shaw* has little to do with this case because the underlying debt differed from the debts at issue here, the debtor never briefed whether the debt was dischargeable under the current subsections of Section 523(a)(8), and the court did not rely on Section 523(a)(8)(A)(ii) in concluding that the debt was non-dischargeable. Any statement regarding Section 523(a)(8)(A)(ii) in *Shaw* is dicta.

      *c.  Defendants' selective quotation of legislative history is misleading.*

Defendants argue that it is inappropriate to look to Section 523(a)(8)'s legislative history to interpret the statute's meaning when that history supports Plaintiffs' position, but then argue that Section 523(a)(8)'s legislative history should be consulted when it allegedly reinforces Defendants' position.[59] Though the legislative history is not fundamental to Plaintiffs' purported

---

[58]    *See* Defendants' Motion for Summary Judgment, Rec. Doc. 163 at 27.

[59]    *See* Defendants' Motion for Summary Judgment, Rec. Doc. 163 at 35-37. Defendants seem unaware that, despite Justice Scalia's quip about cocktail parties, the Supreme Court routinely uses legislative history to aid in interpretation. *See Harrison v. Northern Trust Co.*, 317 U.S. 476, 479 (1943) ("But words are inexact tools at best and for that reason there is wisely no

interpretation of Section 523(a)(8)(A)(ii), and numerous other courts have interpreted the statute

consistent with Plaintiffs' position without resort to such history (*see, e.g.*, *Kashikar,* 567 B.R. at

167; *Christoff*, 527 B.R. at 634; *Nunez*, 527 B.R. at 415), it bears mention that Defendants have

selectively quoted from the legislative history in an attempt to persuade this Court to misapply

the offered quotation.[60]

Because Defendants misrepresent the structure of the legislative history, the entire

passage is reproduced herein for clarity:

> Section 203. Amendment to 11 U.S.C. § 523(a)(8)
>
> This section adds to the list of non-dischargeable debts, obligations to repay educational funds received in the form of benefits (such as VA benefits), scholarships (such as medical service corps scholarships) and stipends. These obligations are often very sizeable and should receive the same treatment as a "student loan" with regard to restrictions on dischargeability in bankruptcy. *See U.S. Department of Health and Human Services v. Smith*, 807 F.2d 122 (8th Cir. 1986).
>
> The limitation period is extended in the Senate on these claims from five to seven years in recognition of the lengthy processing and enforcement requirements. We recommend a further extension to 10 years. It has been brought to our attention that this section may have an unintended adverse effect on certain programs administered by the Department of Health and Human Services. We therefore recommend that subsection (8) be amended by adding the following after "educational benefit, scholarship or stipend": "(other than a loan made under subpart I of part C of title VII of the Public Health Service Act or an obligation for payment of damages arising under section 338E of such Act)".

*Federal Debt Collection Procedures of 1990: Hearing on P.L. 101-647 Before the H. Subcomm.*

*on Econ. and Commercial Law of the H. Comm. on the Judiciary*, 101st Cong. 74-75 (1990) (Mr.

Brooks' Questions for the Record for Mr. Wortham) (parentheticals in original) (attached as

Exhibit "5").

---

rule of law forbidding resort to explanatory legislative history no matter how clear the words may appear on superficial examination.") (internal quotation marks and citations omitted).

[60]   *See* Defendants' Motion for Summary Judgment, Rec. Doc. 163 at 35-37.

As seen above, the legislative history is broken into two paragraphs. The first paragraph addresses the new amendment, which added "an obligation to repay funds received as an educational benefit, scholarship, or stipend" as a third clause to the existing Section 523(a)(8). Defendants confusingly argue that this first paragraph—which states that "benefits … scholarships … and stipends … should receive the same treatment as a 'student loan' with regard to restrictions on dischargeability in bankruptcy"—indicates that Congress intended for the terms "scholarship and stipend" to be included in (and presumably be used interchangeably with) the phrase "student loans."[61] However, the proffered quotation is a comparative clause, comparing "obligations [benefits, scholarships, and stipends]" with "student loans" for the purpose of dischargeability treatment. Thus, Defendants' argument requires that Congress intended to compare terms that it also intended to be synonymous with each other. If this argument were accepted, the sentence would essentially read: "student loans should receive the same treatment as a 'student loan' with regard to restrictions on dischargeability in bankruptcy." This nonsensical result highlights the absurdity of Defendants' position.

Unlike the first paragraph, which provides clarification only in the context of the new—but not yet enacted—amendment (that is the focal point of this dispute), the second paragraph and its proposed amendment sought to address issues concerning the entirety of Section 523(a)(8) as it was written in 1990. This is made clear by the second paragraph's discussion of the temporal limitations on all educational debts encompassed by Section 523(a)(8). Particularly, these temporal limitations on discharge applied to all of Section 523(a)(8), as opposed to only one or two of the three individual clauses. Defendants reference this portion of the legislative history as though it were addressing only "obligations to repay funds received as educational

---

[61]     *See* Defendants' Motion for Summary Judgment, Rec. Doc. 163 at 36-37.

benefits, scholarships, or stipends," when in fact the second paragraph addresses the entirety of Section 523(a)(8).

Moreover, the proposed amendment in the second paragraph was intended to correct the confusion then prevalent in the bankruptcy courts as to which piece of federal law controlled the dischargeability of Public Health Service Act Loans ("HEAL Loans")—Section 11 U.S.C. § 523(a)(8) or 42 U.S.C § 294f(g). *See In re Hampton*, 47 B.R. 47, 50 (Bankr. N.D. Ill. 1985) (concluding that 42 U.S.C § 294f(g), as opposed to 11 U.S.C. § 523(a)(8), governed exceptions to the general rule of nondischargeability in the context of HEAL Loans); *see also In re Hines*, 63 B.R. 731, 735 (Bankr. D.S.D. 1986) ("The Seventh Circuit Court of Appeals, in the *Matter of Johnson*, 787 F.2d 1179 (7th Cir. 1986), addressed the issue of whether 42 U.S.C. § 294f(g), and not 11 U.S.C. § 1328(a), is paramount for determining HEAL student loan dischargeability in Chapter 13 matters and, based on reasoning similar to that of the *Hampton* court, held that Section 294f(g) controls.").[62] These cases predated the addition of "obligation to repay funds

---

[62]    As stated in *Hampton*:

The two statutes at issue concern the same subject matter, discharge of student loans in bankruptcy, but conflict as to whether there are exceptions to the general rule of nondischargeability. …

Bankruptcy Code § 523(a)(8) was enacted as part of the "Bankruptcy Reform Act of 1978" which became effective on October 1, 1979. Public Health Service Act § 294f(g) was enacted as part of the "Omnibus Budget and Reconciliation Act of 1981". The Bankruptcy Code provision concerns the discharge of guaranteed student loans in general while the Public Health Service Act is specifically concerned with the discharge of H.E.A.L. loans. Public Health Service Act, 42 U.S.C. § 294f(g) being the more recently enacted and more specific statute controls the discharge of debtor's loan.

47 B.R. at 50. Ultimately, rather than amending the Bankruptcy Code, Congress amended the Public Health Service Act in 1993 to clear up any confusion in the courts.  *See In re Burd*, No. 03-11590, 2008 WL 5054247, at *2 (Bankr. D. Vt. Nov. 24, 2008) ("Debtor cites 11 U.S.C. § 523(a)(8) as the governing statute to determine whether his student loans are dischargeable. … However, Congress included a specific provision in the Public Health Services Act governing the bankruptcy discharge of debts incurred as part of the HEAL program. [42 U.S.C. § 292f(g)] provides the standard for dischargeability of a HEAL loan in Bankruptcy.").

received as an educational benefit, scholarship, or stipend" discussed in the first paragraph of the legislative history. Consequently, the proposed amendment in the second paragraph could not logically refer to any confusion arising from the new—but not yet enacted—amendment proposed in the first paragraph.

Finally, Defendants' assumption that the purpose of the suggested amendment in the second paragraph was to place a limitation on "benefit, scholarship, or stipend" simply because the proposed language was to follow those words is without merit. At the time this legislative history was created, Section 523(a)(8) was only one lengthy sentence composed of three clauses. *See In re Renshaw*, 222 F.3d 82, 86 (2d Cir. 2000) ("[A] discharge … does not discharge an individual debtor from any debt … for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend[.]") (quoting 11 U.S.C. § 523(a)(8) (1994)). Section 523(a)(8) was not divided into its current format of three subsections until the 2005 BAPCPA amendments. *Campbell*, 547 B.R. at 57. ("In 2005, under ... BAPCPA ...  the phrase 'an obligation to repay funds received as an educational benefit, scholarship, or stipend' was placed in a separate subsection, and new text was added as § 523(a)(8)(B)."). The second paragraph of the legislative history suggested placing this new reference to "Title VII of the Public Health Service Act" after "benefit, scholarship or stipend" because, at the time, that was the end of Section 523(a)(8) and hence the most logical place to insert the proposed amendment.  The suggested amendment was not intended as a limitation on "educational benefits, scholarships, or stipends," but as a limitation on the preceding clause ("educational loans made, insured, or

guaranteed by a governmental unit"), which remained the opening clause of Section 523(a)(8) in 1990.

> d. *Section 523(a)(8)(A)(ii) does not contain the word "loan" and courts cannot inject language into a statute that was intentionally left out by Congress as indicated by the legislative history.*

Section 523(a)(8)(A)(i) does not use the word "loan" and thus cannot cover educational loans. *Kashikar*, 567 B.R. at 167 ("[W]e hold that a 'loan' is not an 'educational benefit' within § 523(a)(8)(A)(ii)."). Notably, Congress used the term "educational loan" in subsections 523(a)(8)(A)(i) and (a)(8)(B) but did not use it in subsection 523(a)(8)(A)(ii). *Schultz*, Adv. Pro. No. 16-03042, 2016 WL 8808073, at *1 ("Congress knows how to use the word loan when necessary. And they use it, of course, in other parts of 523(a)(8) and other parts of the bankruptcy code."); *see also Christoff*, 527 B.R. at 634 ("Meridian argues that we should read § 523(a)(8)(A)(ii) to say 'loans received' as opposed to 'funds received.' But this we must not do."). Defendants ignore the plain language of the statute and argue that all "obligations to repay funds received" must also necessarily be loans.[63] This argument fails to recognize that although all *loans* may be *obligations to repay funds received*, all *obligations to repay funds received* are not *loans*. *Essangui*, 573 B.R. at 625 ("[T]he Court is not persuaded by the Defendant's argument that an "obligation to repay funds" is equivalent to a loan[.]"). An educational benefit, scholarship, or stipend is a sum of money advanced to a student, often coupled with contractual obligations, such as obtaining a certain grade point average or joining the military after graduation. If a student performs on the conditions, she would never incur the obligation to repay. But if the student breaches the terms of the contract, then that student incurs an "an

---

[63]     *See* Defendants' Motion for Summary Judgment, Rec. Doc. 163 at 34. Defendants further argue that since Section 523(a)(8)(B) says "other educational loans," Section 523(a)(8)(A) must also include loans. Indeed it does, in Section 523(a)(8)(A)(i).

obligation to repay funds received." Contrary to Defendants' assertions, this obligation to repay funds received is not necessarily a loan. *See Burks*, 244 F.3d at 1246-47 (collecting cases wherein students incurred an "obligation to repay funds received as an educational benefit" by failing to adhere to the contractual terms of their scholarship or stipend).

> e. *Congress's use of the word "as" instead of "for" in Section 523(a)(8)(A)(ii) demonstrates the relationship between "funds received" and "educational benefit."*

More recently, in October 2017, the court in *Essangui* articulated yet another reason for narrowly interpreting the phrase "obligation to repay funds received as an educational benefit" by examining its grammatical structure. 573 B.R. 614, 622-25. Section 523(a)(8)(A)(ii) is an appositive clause wherein the word "as" conjoins the subject "obligation to repay funds received" with the predicate "an educational benefit, scholarship, or stipend." In *Essangui*, the court found that because Congress used the preposition "as" rather than "for" to connect the subject with the predicate, the words "benefit, scholarship, or stipend" must be treated as *examples* of the "funds received" rather than being *descriptions of the purpose* of the "funds received." *Id.* at 623 ("[I]in describing the kinds of funds within subsection (A)(ii), Congress used the word 'as' rather than 'for.' The word 'as' commonly refers to the role or character of something … when used in a prepositional phrase. … [T]he word 'for' commonly signals the object or purpose of something when used in this grammatical structure."). Said another way, the "funds received" *are* the educational benefit; they are not *for* an educational benefit. Accordingly, the question is not whether the "funds received" provided educational advantages, but whether the "funds received" were conditional educational payments made by an employer or the state. Since the funds received were clearly structured as loans and not benefits, scholarships, or grants, Plaintiffs' Loans could not be excepted from discharge under Section 523(a)(8)(A)(ii).

**C.  SUMMARY JUDGMENT IS NOT APPROPRIATE AT THIS TIME.**

If this Court does not deny Defendants' motion for summary judgment, it should defer consideration of the motion pursuant to Rule 56(d). *See* Fed. R. Civ. P. 56(d); *see also* Fed. R. Bankr. P. 7056. Rule 56(d) allows "a nonmovant, through an affidavit or declaration, and with specific reasons, to petition the court to defer consideration of a motion for summary judgment or to allow for more discovery." *Sanderson v. Shelter Mut. Ins. Co.*, No. CV-15-1793, 2015 WL 7162511, at *1 (W.D. La. Nov. 13, 2015). "Rule [56(d)] discovery motions are 'broadly favored and should be liberally granted' because the rule is designed to 'safeguard non-moving parties from summary judgment motions that they cannot adequately oppose.'" *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010) (citation omitted).

Plaintiffs have not yet received discovery on various issues relating to the merits of this case, including Defendants' development of procedures pursuant to which the Plaintiffs' loans are found to be dischargeable, and Defendants' promulgation of disclosures alerting investors that Plaintiffs' loans are dischargeable. Because Plaintiffs have not yet received discovery on these issues, and many more, Plaintiffs cannot present facts essential to justifying their opposition on the merits of the dischargeability of their loans. If this Court declines to reject Defendants' motion on the law, it should defer consideration of the instant motion for summary judgment under Rule 56(d) until Plaintiffs conduct merits discovery.

## V.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request this court deny Defendants' motion for summary judgment.

Dated: December 1, 2017.                    Respectfully submitted,

<div style="margin-left: 40%;">

By:      /s/ Adam Corral
   Adam Corral
Jason W. Burge (*pro hac vice*)
SBN (LA) 30420
FISHMAN HAYGOOD L.L.P.
201 St. Charles Avenue, 46th Floor
New Orleans, Louisiana 70170-4600
(504) 586-5252; (504) 586-5250 fax
jburge@fishmanhaygood.com

Kathryn J. Johnson (*pro hac vice*)
SBN (LA) 36513
FISHMAN HAYGOOD  L.L.P.
201 St. Charles Avenue, 46th Floor
New Orleans, Louisiana 70170-4600
(504) 586-5252; (504) 586-5250 fax
kjohnson@fishmanhaygood.com

Austin Smith (*pro hac vice*)
SBN (NY) 5377254
SMITH LAW GROUP
3 Mitchell Place
New York, New York 10017
(917) 992-2121
Austin@acsmithlawgroup.com

Lynn E. Swanson (*pro hac vice*)
SBN (LA) 22650
JONES, SWANSON, HUDDELL & GARRISON, L.L.C.
601 Poydras Street, Suite 2655
New Orleans, Louisiana 70130
(504) 523-2500; (504) 523-2508 fax
Lswanson@jonesswanson.com

</div>

Joshua B. Kons (*pro hac vice*)
SBN (IL) 6304853
Law Offices of Joshua B. Kons, LLC
939 West North Avenue, Suite 750
Chicago, IL 60642
(312) 757-2272
joshuakons@konslaw.com

Adam Corral
SBN (TX) 24080404
Corral Tran Singh, LLP
440 Louisiana St, Suite 2450
Houston, TX 77002
(832) 975-7300; (832) 975-7301 fax
Adam.corral@ctsattorneys.com

Susan Tran
SBN (TX) 24075648
Corral Tran Singh, LLP
440 Louisiana St, Suite 2450
Houston, TX 77002
(832) 975-7300; (832) 975-7301 fax
susan.tran@ctsattorneys.com

Brendon Singh
SBN (TX) 2407646
Corral Tran Singh, LLP
440 Louisiana St, Suite 2450
Houston, TX 77002
(832) 975-7300; (832) 975-7301 fax
brendon.singh@ctsattorneys.com

Marc Douglas Myers
SBN (TX) 00797133
Ross, Banks, May, Cron & Cavin, P.C.
7700 San Felipe, Suite 550
Houston, Texas 77063
(713) 626-1200; (713) 623-6014 fax
mmyers@rossbanks.com

***Counsel to Plaintiffs***

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on this 1st day of December, 2017, a true and correct copy of *Plaintiffs' Memorandum of Law in Opposition to Motion for Summary Judgment by Navient Solutions, LLC and Navient Credit Finance Corporation* was served via that Court's electronic case filing system (CM/ECF) to all parties registered to receive such notice in the above-captioned proceeding.

/s/ Adam Corral

Adam Corral