**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| EVAN BRIAN CROCKER, MICHAEL SHAHBAZI,  WENDY L. LANDES, and RAEGENA SEITZ-MOULDS, on behalf of themselves and all those similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>NAVIENT SOLUTIONS, LLC, NAVIENT CREDIT FINANCE CORPORATION<br><br>    Defendants. | Case Number 15-35586 (DRJ)<br><br>Chapter 7<br><br>Adv. Pro. No. 16-03175 (DRJ)<br><br>**PUTATIVE NATIONWIDE CLASS ACTION** |

**PLAINTIFFS' THIRD AMENDED COMPLAINT**

Plaintiffs Evan Brian Crocker, Michael Shahbazi, Wendy L. Landes, and Raegena Seitz-Moulds, by and through their undersigned counsel, hereby file this third amended complaint upon personal knowledge as to those matters within their knowledge, and upon information and belief as to all other matters, as follows:

**I.**
**PRELIMINARY STATEMENT**

1.      For the last ten years, Defendants have been engaged in a massive effort to defraud student debtors and subvert the orderly workings of the bankruptcy courts. Specifically, Defendants have been originating and servicing dischargeable consumer loans and disguising them as non-dischargeable student loans. Defendants have done this in order to discourage debtors from seeking their constitutional right to relief under Title 11 and to allow creditors to continue to collect on discharged loans after a debtor's

bankruptcy. In order to effectuate this illegality, Defendants have appropriated a legal presumption for a class of debt that they know is not entitled to that presumption, thereby using the authority of the bankruptcy courts to cloak their fraud in the color of law and escape detection. Defendants are willfully and maliciously engaged in a pattern and practice that they know defiles the proper workings of the bankruptcy process, and that is targeted at some of society's most vulnerable persons. Plaintiffs bring this action to enforce their rights and the rights of those similarly situated under the law.

## II.
## PARTIES

2.      EVAN BRIAN CROCKER (formerly known as Evan Brian Haas) is an individual and a resident of this district who filed for relief under Title 11 in this Court in 2015 and was granted a bankruptcy discharge on February 9, 2016.

3.      MICHAEL SHAHBAZI is an individual and a resident of this district, who filed for bankruptcy protection under Title 11 in the United States Bankruptcy Court for the Eastern District of Virginia in 2011 and was granted a bankruptcy discharge on December 27, 2011.

4.      WENDY L. LANDES is an individual and a resident of Lees Summit, Missouri, who filed for bankruptcy protection under Title 11 in the United States Bankruptcy Court for the Western District of Missouri in 2010 and was granted a bankruptcy discharge on January 21, 2016.

5.      RAEGENA SEITZ-MOULDS is an individual and a resident of Lewisville, Texas, who filed for bankruptcy protection under Title 11 in the United States Bankruptcy Court for the Eastern District of Texas in 2014 and was granted a bankruptcy discharge on November 26, 2014.

6.      The CLASS MEMBERS are similarly situated individuals who filed for bankruptcy protection since 2005 in the various Judicial Districts of the United States, who had private educational loans originated and/or serviced by Defendants or their predecessors that do not meet the definition of qualified education loans in IRC 221(d) and 11 U.S.C. § 523(a)(8), and who nonetheless have been the subject of Defendants' policy of attempting to induce payment of discharged debts were subject to attempts by Defendant to induce payment on those loans after discharge.

7.      NAVIENT SOLUTIONS, LLC is a business entity that in the ordinary course of business regularly, on behalf of itself or others, engages in the servicing and collection of consumer debt. NAVIENT SOLUTIONS, LLC is a national company with its principal place of business in Wilkes-Barre, Pennsylvania. NAVIENT SOLUTIONS, LLC is authorized to do business in the State of Texas and may be served through its registered agent CSC-Lawyers Incorporation Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

8.      NAVIENT CREDIT FINANCE CORPORATION is a business entity that in the ordinary course of business regularly, on behalf of itself or others, engages in the origination, servicing and collection of consumer debt. NAVIENT CREDIT FINANCE CORPORATION has a principal place of business at 2001 Edmund Halley Drive, Reston, VA, 20191 and may be served through its registered agent CSC, 111 East Main Street, Richmond, VA, 23219.

### III.

### JURISDICTION AND VENUE

9.      This Adversary Proceeding is brought under Case Number 15-35586 (DRJ).

10.      This Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C § 157(b) and 1332.[1] This is a core proceeding under Title 11 because it concerns a determination as to the dischargeability of a debt. Furthermore, this Court has supplemental jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. § 1367 because the additional claims are related to the core proceeding.

11.      This Adversary Proceeding is brought pursuant to 11 U.S.C § 523(a)(8), 15 U.S.C § 105 and Federal Rules of Bankruptcy Procedure Rule 7001(9).

12.      Venue is proper in the Southern District of Texas pursuant to 28 U.S.C. § 1409 because this matter arises in and is related to a bankruptcy case in this district.

---

[1] *In re Wilborn,* 609 F.3d 748, 754 (5th Cir. 2010) ("[C]lass action proceedings are expressly allowed in the Federal Bankruptcy Rules, which provide that the requirements for class actions under Federal Rule of Civil Procedure 23 apply in adversary proceedings. *See* Fed. R. Bankr. P. 7023. Although a federal rule may not extend a court's jurisdiction, its intended purpose should be upheld so long as it otherwise offends no substantive rights. We see no such result here. On the contrary, if bankruptcy court jurisdiction is not permitted over a class action of debtors, Rule 7023 is virtually read out of the rules.").

### IV.

### STATEMENT OF FACTS

**A.  Section 523(a)(8) Of The Bankruptcy Code.**

13.     In 1978, there was a growing concern that students were taking advantage of the Bankruptcy Code by incurring extensive student loan debt and then declaring bankruptcy soon after graduation. In response, Congress enacted section 523(a)(8) of the Bankruptcy Code to prohibit the discharge of federal student loans during the first five years of repayment (unless payment would constitute an undue hardship). Through a series of amendments, which first lengthened and then eliminated the five-year non-dischargeability time frame, it has become increasingly difficult for debtors to attain discharges of their student loan debts.

14.     Although the rationale behind section 523(a)(8) has been questioned by many scholars,[2] the justification for excepting federal student loan debt from discharge was not without some merit. In fact, in the age of soaring tuition costs, the original justification has become more compelling. Section 523(a)(8) serves not only to protect the taxpayers, but also to preserve the solvency of student lending programs for the next generation of students.

15.     In 2005, after extensive lobbying, private education lenders and debt collectors won *limited* protection in bankruptcy *for some of their educational loan*

---

[2] *See* Rafel I. Pardo & Michelle R. Lacey, THE REAL STUDENT-LOAN SCANDAL: UNDUE HARDSHIP DISCHARGE LITIGATION, 83 Am. Bankr. L.J. 179, 181 (2009) ("Tragically, Congress disregarded empirical evidence from a General Accounting Office study which found that less than one percent of all federally insured and guaranteed student loans were discharged in bankruptcy. Simply put, the discharge of student loans in bankruptcy was too minor to threaten the economic viability of the student-loan program.").

*products*.[3]  Specifically, Congress limited protection for private education loan instruments to the extent that such money supplemented and mirrored federal student lending: money lent to eligible students at Title IV accredited schools for tuition, room, board, and books ("Qualified Education Loans").[4]

16.     But commercial lenders were not satisfied with the origination volume of Qualified Education Loans. The paperwork was burdensome, schools would not certify sums in excess of tuition, and the Title IV accreditation requirement prevented lending to thousands of for-profit colleges and high schools that had not obtained Title IV accreditation. Thereafter, lenders initiated new programs that lent money directly to students attending unaccredited schools (hereinafter, "Consumer Education Loans"). Consumer Education Loans were much easier to originate because they bypassed the certification requirements codified in the Higher Education Act. Because the schools were not Title IV-eligible, these loans were not and are not Qualified Education Loans. Like student credit card debt, they are simply unsecured consumer debts and are discharged automatically upon entry of a discharge injunction.

1.   **The Application Of Section 523(a)(8).**

17.     Prior to 2005, section 523(a)(8) was easy to apply because the exception to dischargeability was absolute. If a student loan was issued or guaranteed by the federal government, it was non-dischargeable absent a showing of "undue hardship."  This fueled

---

[3] Bankruptcy Abuse and Consumer Protection Act Pub. L. No. 109-8, § 220, 119 Stat. 23, 59 (2005) (hereinafter "BAPCPA").

[4] *In re Decena,* 2016 WL 1371031, at *6 (Bankr. E.D.N.Y. Apr. 4, 2016) ("[S]ection 523(a)(8)(B) excepts from discharge loans for attending an 'eligible educational institution,' recognition of which is dictated by the Federal School Codes List for the years 2004–05, which identify '[a]ll postsecondary schools that are currently eligible for Title IV aid.'").

the belief that all student loans are non-dischargeable. But private lenders were only given *qualified* protection in 2005 such that section 523(a)(8)(B) only excepts *some* private education loans from discharge.[5] This created an opportunity for unscrupulous creditors to exploit the application of section 523(a)(8) and deceive debtors into thinking that all private student loans, like their federal cousins, were excepted from discharge.

18. This problem was made worse because section 523(a)(8) is "self-executing" and thus its correct application relies on the good faith and honesty of creditors. When a debtor files a bankruptcy petition, the debtor includes all unsecured debts on a Schedule F form, listing only the amount of the debt, the name of the creditor, and the consideration received. After demonstrating compliance with the Bankruptcy Code, a court then issues an order discharging all pre-petition debts listed on the bankruptcy petition except for those listed in section 523(a).[6] Importantly, the discharge order does not specifically state which loans, if any, are presumptively excepted from discharge. Rather, it states that the order does not discharge some debts, including "debts for most student loans."

19. If a creditor believes that a debt they hold is excepted from discharge, it is their legal burden to prove that the debt is encompassed by section 523(a)(8).[7] Once the

---

[5] 11 U.S.C. § 523(a)(8)(B).

[6] 11 U.S.C.A. § 727(b) ("Except as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter.").

[7] *Owens v. Owens,* 155 F. App'x 42, 43 (2d Cir. 2005) ("It is the creditor seeking an exception to discharge who bears the burden of proving facts coming within one of the § 523 exceptions."); *In re Renshaw,* 222 F.3d 82, 86 (2d Cir. 2000) ("Because bankruptcy is both a right of the debtor, and a remedy for the creditor . . . a proper balancing of those competing interests requires the creditor to prove by a preponderance of the evidence that its claim is one that is not dischargeable."); *In re Metcha,* 310 F.3d 308, 311 (3d. Cir 2002) (stating that creditor opposing discharge has burden of establishing that the obligation is an educational loan under section 523(a)(8)).

creditor proves the debt is presumptively non-dischargeable, the burden then shifts to the debtor to prove that repaying the debt would constitute an "undue hardship."[8] Absent an adversary proceeding, any educational debt not encompassed by section 523(a)(8) is automatically and as a matter of law discharged upon entry of the discharge order.[9] Accordingly, it is left to the creditors to determine whether their particular educational loan is excepted from discharge by section 523(a)(8), and, where confusion exists, seek clarity from the court. The creditor's good faith and the threat of sanctions are the only checks on compliance with discharge injunctions.

## 2. Defendants Manipulate The Application Of Section 523(a)(8) And Deceive Debtors Into Believing Their Non-Qualified Student Loans Were Not Discharged.

20.     Not content with the protections won from Congress in 2005, creditors soon devised a scheme to manipulate this presumption of non-dischargeability and deceive debtors and the bankruptcy courts into thinking that all private student loans, both qualified and non-qualified, to both accredited and unaccredited schools, were excepted from discharge. To effectuate this fraud, creditors represented to student debtors that the Bankruptcy Code prohibited discharge of any loan made to any person for any educational purpose.

---

[8] *See In re Bronsdon,* 435 B.R. 791, 796 (B.A.P. 1st Cir. 2010) ("The creditor bears the initial burden of establishing that the debt is of the type excepted from discharge under § 523(a)(8). Once the showing is made, the burden shifts to the debtor to prove that excepting the student loan debt from discharge will cause the debtor and her dependents 'undue hardship.'").

[9] *In re Meyer,* No. 15-13193, 2016 WL 3251622, at *2 (Bankr. N.D. Ohio June 6, 2016) ("For the reasons stated in the debtor's motions and the *Decena* decision, the Court finds that the debtor's student loans were discharged on September 16, 2015, because they do not fall within 11 U.S.C. § 523(a)(8). The Court further finds that the student loan servicers violated the discharge injunction of § 524(a)(2) by attempting to collect on the student loan accounts after the date of the debtor's discharge.").

21.     And so, a law that was originally designed to prevent students from taking advantage of the bankruptcy system enabled unscrupulous creditors to take advantage of the bankruptcy system. These loans are disproportionately issued to low-income minority students who lack the resources and knowledge to seek relief in an adversary proceeding, which is an expensive and time-consuming undertaking. In fact, only one tenth of one percent (0.1%) of debtors in bankruptcy seek to discharge their student debts.[10]  In the rare event a debtor has filed an adversary proceeding, creditors often settle or forgive student debts that were already legally discharged, thereby preventing courts from discovering that these debts were never entitled to a presumption of non-dischargeability in the first instance, and ensuring that they are able to continue collecting on 99.9% of other discharged debts without consequence.

### 3.  Defendants Reveal Their Bad Faith By Relaying Different Information To The SEC And Sophisticated Investors.

22.     During the same timeframe, student lenders were securitizing these debts for sale on the secondary market. Lenders were rightfully concerned that if they represented to investors that all private student loans were non-dischargeable in bankruptcy, sophisticated investors would easily enough discover the misrepresentation (based on a plain reading of the statute), and issuers would be liable for securities violations.[11]  Major lenders and underwriters therefore included in student loan asset-backed securities' prospectuses ("SLABS"), language warning investors that, pursuant to section 523(a)(8),

---

[10] Jason Iuliano, AN EMPIRICAL ASSESSMENT OF STUDENT LOAN DISCHARGES AND THE UNDUE HARDSHIP STANDARD, 86 Am. Bankr. L.J. 495, 505 (2012) (stating that in 2007, at least, only .01% of all debtors in bankruptcy with student loans filed an adversary proceeding seeking discharge).

[11] *See, e.g.*, 15 U.S.C. § 78j.

only private loans made for qualified expenses were excepted from discharge.[12]   In addition, Navient has been warning shareholders in investor presentations that Career Training loans—*i.e.,* one form of non-qualified loans made to students at unaccredited colleges and high schools — are dischargeable in bankruptcy.

**B.**   **Plaintiffs Borrow Consumer Education Loans And Seek Relief Under Title 11.**

23.   On or about December 1, 2009, Plaintiff Evan Brian Crocker incurred a Consumer Education Loan in the form of a Bar Exam Study loan issued by Sallie Mae Bank (the "Crocker Bar Study Loan"). This debt was used to pay for expenses associated with preparing for the Virginia bar exam. On July 29, 2010, the Crocker Bar Study Loan was transferred from Sallie Mae Bank to SLM Education Credit Finance Corporation, which subsequently changed its name to Navient Credit Finance Corporation. Ultimately, the Crocker Bar Study Loan was transferred to Navient, LLC for servicing.

24.   In November 2015, the Plaintiff sought relief under Title 11 in this Court in Case No. 15-35886, *In re Evan Brian Haas*, formerly pending before this Honorable Court.

25.   On February 9, 2016, this Court ordered discharge of all Plaintiff Evan Brian Crocker's properly scheduled pre-petition debt.

26.   Defendants were notified of Plaintiff Evan Brian Crocker's discharge.

---

[12] *See* SLM Loan Trust 2008-1 Prospectus Supplement dated January 10, 2008, at 33 ("Risk of Bankruptcy Discharge of Private Credit Student Loans: Private credit student loans **made for qualified education expenses** are generally not dischargeable by a borrower in bankruptcy . . . direct-to-consumer loans are disbursed directly to the borrowers based upon certifications and warranties contained in their promissory notes, including their certification of the cost of attendance for their education. This process does not involve school certification as an additional control and, therefore, may be subject to some additional risk that **the loans are not used for qualified education expenses**. If you own any notes, you will bear any risk of loss resulting from the discharge of any borrower of a private credit student loan to the extent the amount of the default is not covered by the trust's credit enhancement.") (emphasis added).

27.     Despite their legal burden, Defendants did not file an adversary proceeding to contest the dischargeability of the Crocker Bar Study Loan.

28.     Instead of charging off the Crocker Bar Study Loan, after Mr. Crocker's discharge, Defendant Navient Solutions, LLC thereafter sought to collect and/or induce payment on this otherwise discharged debt in violation of this Court's Order and the Bankruptcy Code. Specifically, Defendants and/or their agents called Plaintiff Evan Brian Crocker not fewer than 29 times between July 1 and July 11, 2016 to collect on his discharged debt.

29.     Plaintiff Evan Brian Crocker repeatedly informed Defendants that his Bar Study Loan was discharged, and he should not be receiving collection notices or phone calls.

30.     In January 2002, Plaintiff Michael Shahbazi incurred a Consumer Education Loan in the form of a Sallie Mae Career Training loan from Sallie Mae, Inc (the "Shahbazi Career Training Loan"). This loan was used for tuition expenses at STMC, an unaccredited technical school in Vienna, Virginia. Ultimately, the Shahbazi Career Training Loan was transferred to Navient, LLC for servicing. On September 20, 2011, Plaintiff Michael Shahbazi filed for relief under Title 11 in the United States Bankruptcy Court for the Eastern District of Virginia in Case No. 11-16643, *In re Michael Shahbazi.*

31.     On December 27, 2011, the court entered discharge of all Plaintiff Michael Shahbazi's properly scheduled pre-petition debt.

32.     Defendants were notified of Plaintiff Michael Shahbazi's discharge on December 30, 2011.

33.     Instead of charging off the Shahbazi Career Training Loan, Defendant Navient Solutions, LLC and its predecessors-in-interest, Navient Solutions, Inc. and Sallie Mae Inc.,

and their agents, thereafter engaged the services of various collection firms, including but not limited to Northstar Location Services, LLC, to attempt to collect and/or induce payment on this otherwise discharged debt in violation of a court order and the Bankruptcy Code. Specifically, Northstar Location Services, LLC sent Plaintiff Michael Shahbazi a letter demanding payment on the discharged debt on August 8, 2016.

34.     Plaintiff Michael Shahbazi repeatedly informed Defendants that the Shahbazi Career Training Loan was discharged and he should not be receiving collection notices or phone calls.

35.     On or about October 29, 2001 and December 12, 2001, Plaintiff Wendy L. Landes incurred Consumer Education Loans in the form of Career Training loans issued by Sallie Mae Bank (the "Landes Career Training Loans"). The Landes Career Training Loans were used for tuition expenses at Conseva Learning Center of Kansas City, an unaccredited Information Technology school in Kansas City, Missouri. Ultimately, the Landes Career Training Loans were transferred to Navient, LLC for servicing.

36.     On November 12, 2010, Plaintiff Wendy L. Landes filed for relief under Title 11 in the United States Bankruptcy Court for the Western District of Missouri in Case No. 10-46093-can13, *In re Melvin D. Landes and Wendy L. Landes*.

37.     On January 21, 2016, the court entered discharge of all Plaintiff Wendy L. Landes's properly scheduled pre-petition debt.

38.     Defendants were notified of Plaintiff Wendy L. Landes's discharge on or about March 14, 2016.

39.     Instead of charging off the Landes Career Training Loans, Defendant Navient Solutions, LLC, and its predecessors-in-interest Navient Solutions, Inc. and Sallie Mae Inc.,

and their agents, thereafter sought to collect and/or induce payment on this otherwise discharged debt in violation of this Court's Order and the Bankruptcy Code.

40.     Plaintiff Wendy L. Landes continued paying toward her debt during her bankruptcy and after receipt of discharge.

41.     Prior to August 2014, Plaintiff Raegena Seitz-Moulds incurred a Consumer Education Loan in the form of a Career Training loan issued by Sallie Mae Bank (the "Seitz-Moulds Career Training Loan"). The Seitz-Moulds Career Training Loan was used for tuition expenses at Salon Professional Academy, an unaccredited salon and spa trade school in San Antonio, Texas. Ultimately, the Seitz-Moulds Career Training Loan was transferred to Navient, LLC for servicing.

42.     On August 29, 2014, Plaintiff Raegena Seitz-Moulds filed for relief under Title 11 in the United States Bankruptcy Court for the Eastern District of Texas in Case No. 14-41851, *In re Matthew D. Moulds and Raegena L. Moulds.*

43.     On November 26, 2014, the court entered discharge of all Plaintiff Raegena Seitz-Moulds' properly scheduled pre-petition debt.

44.     Defendants were notified of Plaintiff Raegena Seitz-Moulds' discharge on or about November 26, 2014.

45.     Instead of charging off the Seitz-Moulds Career Training Loans, Defendant Navient Solutions, LLC, and its predecessor-in-interest Sallie Mae Inc., and their agents, thereafter sought to collect and/or induce payment on this otherwise discharged debt in violation of this Court's Order and the Bankruptcy Code.

46.     Plaintiff Raegena Seitz-Moulds continued paying toward her debt following her bankruptcy, and has since paid off this discharged debt.

47.     Defendants' abusive, deceptive and harassing collection efforts after the Plaintiffs' bankruptcy discharges were made in violation of this Court's and other bankruptcy courts' discharge orders and must be sanctioned.

**C.**     **All Class Members Share A Similar Narrative.**

48.     All Class Members share a similar factual narrative.

49.     All Class Members borrowed various types of Consumer Education Loans from Defendants and their predecessors to attend unaccredited colleges, secondary schools, trade schools, and professional skills programs.

50.     All Class Members filed for bankruptcy protection in the various bankruptcy courts of the United States.

51.     At the conclusion of these bankruptcy cases, all Class Members were issued discharge orders.

52.     These discharge orders extinguished all education-related debt that was not excepted from discharge by 11 U.S.C. § 523(a)(8).

53.     Notwithstanding the discharge of these debts, Defendants have employed processes, practices and acts designed to mislead Class Members into believing that their debts were not discharged and inducing them to make payments on extinguished debts.

54.     Defendants have misled Class Members and sought to collect on discharged debts by use of dunning letters, text messages, emails, autodialers, and live phone calls demanding repayment. In addition, Defendants have continued to report these debts as delinquent to the major credit bureaus to compel payment.

55.     Defendants have also commenced or continued legal actions against Class Members to induce payment on discharged debts.

**V.**

**CLASS ACTION ALLEGATIONS**

56.     Pursuant to Rule 23(a), 23(b)(1), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure, Crocker, Shahbazi, Landes, and Seitz-Moulds bring this action on behalf of themselves and all other persons similarly situated, as representatives of the following class:

> Citizens of the various states who filed for bankruptcy protection in any of the United States Judicial Districts on or after October 17, 2005 (the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act), who:

> a)  incurred, whether as borrower or co-signer, Consumer Education Loans that were not guaranteed by any non-profit institution to cover expenses at non-eligible educational institutions as that term is defined in 26 U.S.C. 221(d);

> b)  were granted a discharge;

> c)  have never reaffirmed any pre-petition Consumer Education Loan debt;

> d)  have nonetheless been the subject of Defendants' policy of attempting to induce and/or successfully inducing payment of these discharged Consumer Education Loans.

57.     Plaintiffs reserve the right to amend the definition of the class and/or add subclasses to include or exclude members.

58.     As described below, this action satisfies the numerosity, commonality, typicality, superiority, predominance, and adequacy of representation requirements of Rule 23 of the Federal Rules of Civil Procedure.

15

## A.  __Numerosity__

59.     The persons in the class of plaintiffs are so numerous that joinder of all members is impracticable. In the interest of judicial economy, this dispute should be resolved through class action.

60.     The number of plaintiffs will likely exceed 10,000. The quantity, identity, and location of class members are ascertainable through appropriate discovery and may be identified by the records maintained and possessed by Defendants.

61.     The class of plaintiffs is geographically dispersed, as Defendants are or were national providers, holders, and servicers of Consumer Education Loans and made these loans available to students nationwide.

62.     The Class Members have been through bankruptcy over the last decade. Upon information and belief, the individual members of the class of plaintiffs, or at least a large portion thereof, lack the means to pursue these claims individually and severally. Defendants have relied on this to effectuate their scheme. In fact, 99.9% of debtors with student loans lack the means to pursue an adversary proceeding to contest non-dischargeability.

## B.  __Commonality__

63.     There are common questions of law/fact affecting the entirety of the class. Specifically, predominant common questions include without limitation: (i) whether the Class Members' Consumer Education Loans were discharged at the conclusion of their bankruptcy cases; and (ii) whether Defendants violated the applicable Discharge Orders by seeking to collect on discharged private education debt.

64.     Answers to these common questions will drive the resolution of the injuries shared by each member of the class.

**C.  Typicality**

65.     Crocker's, Shahbazi's, Landes', and Seitz-Moulds' claims against Defendants are representative of those of all Class Members. Specifically, Crocker's Bar Study Loan and Shahbazi's, Landes', and Seitz-Moulds' Career Training Loans are four individual species of Consumer Education Loans originated and serviced by Defendants.

**D.  Predominance and Superiority**

66.     There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class Members. The questions include, but are not limited to:

(i) whether the Class Members' Consumer Education Loans were discharged at the conclusion of their bankruptcy cases; and

(ii) whether Defendants violated the applicable discharge orders by seeking to collect on discharged Consumer Education Loans.

67.     This action should be maintained as a class action because the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications, with respect to individual members, which would establish incomplete standards of conduct for the parties opposing the Class, as well as a practical matter be dispositive of interests of other members not parties to the adjudications, or substantially impair or impede their ability to protect their interests.

68.     Defendants have acted, or refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

69.     A class action is a superior method for the fair and efficient adjudication of this controversy. Management of the Class claims is likely to present significantly fewer difficulties than those presented in many individual claims. The identities of the Class members may be obtained from Defendants' records.

**E.  Adequacy of Representation**

70.     Crocker, Shahbazi, Landes and Seitz-Moulds will fairly and adequately represent and protect the interests of the members of the class of plaintiffs. Crocker's, Shahbazi's, Landes's, and Seitz-Moulds' interests are squarely aligned with those of the individual members of the class. Plaintiffs' counsel, Corral Trahn Singh, Ross Banks, Smith Law Group, Fishman Haygood LLP, Jones, Swanson Huddell & Garrison L.L.C, the Law Office of Joshua B. Kons LLC, and Boies Schiller Flexner LLP are experienced in class actions lawsuits, complex commercial litigation, bankruptcy law and procedure, and/or student loan litigation.

**VI.**

**CLAIMS FOR RELIEF**

**Count One: Declaratory Judgment and Injunctive Relief**

71.     Plaintiffs hereby incorporate the allegations in the preceding paragraphs as if fully set forth herein.

72.     Plaintiffs request declaratory judgment pursuant to 28 U.S.C. § 2201 and Federal Rule of Bankruptcy Procedure 7001(9) that Plaintiffs' and Class Members'

Consumer Education Loans are not non-dischargeable student loans or qualified education loans, and were therefore discharged upon entry of the applicable discharge injunctions.

73.     Plaintiffs request injunctive relief prohibiting Defendants from continuing to seek collection on their discharged debts.

**Count Two: Violations Of The Discharge Orders**

74.     Plaintiffs hereby incorporate the allegations in the preceding paragraphs as if fully set forth herein.

75.     The Consumer Education Loans were discharged pursuant to Class Members' Discharge Orders because they were unsecured consumer loans and not non-dischargeable student loans.

76.     Defendants were notified of the Class Members' Discharge Orders pursuant to Federal Rule of Bankruptcy Procedure 4004(g).

77.     Defendants nonetheless sought to collect on these debts, either directly or indirectly, by use of dunning letters, text messages, emails, autodialers, and live phone calls demanding repayment, negative reports made to the major credit bureaus, failure to update these credit reports, and commencing or continuing legal action to recover the discharged debts in violation of 11 U.S.C § 524.

78.     Plaintiffs and Class Members request that Defendants be cited for civil contempt and ordered to pay restitution and/or disgorgement, and damages in an amount to be determined at trial for the willful violations of the discharge injunctions pursuant to 11 U.S.C § 105, and also request an award of attorneys' fees and costs.

**PRAYER**

79.     In light of the foregoing, Plaintiffs and Class Members request that Defendants be cited to appear and judgment be entered against Defendants for:

(1)    declaratory relief that Plaintiffs and Class Members' Consumer Education Loans were discharged upon entry of the applicable discharge injunctions;

(2)    injunctive relief prohibiting Defendants from continuing to seek collection on discharged debts;

(3)    actual damages and punitive damages, in an amount not less than $500 for each violation of the Discharge Orders;

(4)    restitution and/or disgorgement;

(5)    attorneys' fees and costs to the fullest extent permitted under the law;

(6)    prepetition and post-judgment interest; and

(7)    other such relief as the Court deems just and proper.

Respectfully submitted,

*/s/* Marc Douglas Myers
Marc Douglas Myers
SBN (TX) 00797133
ROSS, BANKS, MAY, CRON & CAVIN, P.C.
7700 San Felipe, Suite 550
Houston, Texas 77063
(713) 626-1200; (713) 623-6014 fax
mmyers@rossbanks.com

Lynn E. Swanson (*pro hac vice*)
SBN (LA) 22650
JONES, SWANSON, HUDDELL & GARRISON,
L.L.C.
601 Poydras Street, Suite 2655
New Orleans, Louisiana 70130
(504) 523-2500; (504) 523-2508
Lswanson@jonesswanson.com

Jason W. Burge (*pro hac vice*)
SBN (LA) 30420
FISHMAN HAYGOOD L.L.P.
201 St. Charles Avenue, 46th Floor
New Orleans, Louisiana 70170-4600
(504) 586-5252; (504) 586-5250 fax
jburge@fishmanhaygood.com

Kathryn J. Johnson (*pro hac vice*)
SBN (LA) 36513
FISHMAN HAYGOOD  L.L.P.
201 St. Charles Avenue, 46th Floor
New Orleans, Louisiana 70170-4600
(504) 586-5252; (504) 586-5250 fax
kjohnson@fishmanhaygood.com

Austin Smith (*pro hac vice*)
SBN (NY) 5377254
SMITH LAW GROUP
3 Mitchell Place
New York, New York 10017
(917) 992-2121
Austin@acsmithlawgroup.com

Joshua B. Kons (*pro hac vice*)
SBN (IL) 6304853
LAW OFFICE OF JOSHUA B. KONS, LLC
939 West North Avenue, Suite 750
Chicago, IL 60642
(312) 757-2272
joshuakons@konslaw.com

Adam Corral
SBN (TX) 24080404
CORRAL TRAN SINGH, LLP
440 Louisiana St, Suite 2450
Houston, TX 77002
(832) 975-7300; (832) 975-7301 fax
Adam.corral@ctsattorneys.com

George F. Carpinello
SBN (NY) 1652684
Adam R. Shaw
SBN (NY) 2587467
Robert C. Tietjen
SBN (NY) 4113700
BOIES SCHILLER FLEXNER LLP
30 South Pearl St., 11th Floor
Albany, NY 12207
(518) 434-0600
gcarpinello@BSFLLP.com
adamshaw@BSFLLP.com
rtietjen@BSFLLP.com
***Counsel to Plaintiffs***

21