IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| *In re*:<br><br>**EVAN BRIAN HAAS,**<br><br>Debtor. | **Chapter 7**<br><br>Case No. 15–35886 (DRJ) |
| **EVAN BRIAN CROCKER, MICHAEL SHAHBAZI, WENDY L. LANDES, and RAEGENA SEITZ-MOULDS, on behalf of themselves and all those similarly situated,**<br><br>Plaintiffs,<br><br>v.<br><br>**NAVIENT SOLUTIONS, LLC and NAVIENT CREDIT FINANCE CORPORATION,**<br><br>Defendants. | Adv. Pro. No. 16–03175 (DRJ) |

### RESPONSE IN OPPOSITION TO MOTION TO COMPEL

#### (RELATES TO DKT. NO. 204)

Navient Solutions, LLC ("NSL") and Navient Credit Finance Corporation ("NCFC"), through the undersigned counsel, hereby oppose *Plaintiffs' Emergency Motion and Incorporated Memorandum in Support of Their Motion* (the "Motion" or "Motion to Compel"), Dkt. No. 204. In support, NSL and NCFC state as follows:

#### INTRODUCTION

The course of class-certification discovery in this matter has been one of vastly asymmetrical production by NSL and NCFC, which Plaintiffs have punctuated with unnecessary and wasteful motions practice. The Motion to Compel now before the Court is no exception. In

their attempt to manufacture an emergency discovery dispute, Plaintiffs grossly misstate the history of discovery and make fundamental legal errors. The Court should deny the Motion and order the Plaintiffs to pay the fees and costs that NSL and NCFC incurred opposing it.

Plaintiffs challenge nineteen documents that NSL and NCFC have withheld as privileged. The documents at issue are responsive to a supplemental request for production that Plaintiffs made in November 2017. They contain and concern legal advice and opinions on the Bankruptcy Code, proposed legislation, and general principles of bankruptcy law, and certain of them also reflect attorney work product. And they were all authored by or directed to or reflecting advice from in-house or outside counsel. Yet, Plaintiffs assert that these documents are somehow stripped of their attorney-client privilege because they concern an ultimate business decision that NSL and NCFC have made—i.e., the decision to implement internal policies and procedures without conceding or waiving any of their legal rights in litigation, as the Court has acknowledged. *See* Hr'g Trans. at 26:24–27:24 (Mar. 5, 2018) (colloquy between Jones, J. and T. Farrell). Based on that fundamental legal error, Plaintiffs move the Court to compel production of the documents.

What's more, Plaintiffs asked the Court to hear their Motion on an emergency basis. They made that request even though (1) they did not raise the disputes at issue until February 28, 2018, (2) the Court has stayed this matter pending resolution of NSL's and NCFC's Motion for Summary Judgment, and (3) the parties (with the Court's direction) explicitly carved this discovery matter out of the stay. *See* Dkt. No. 209; *see also* Ex. A. Worse still, Plaintiffs press for fevered resolution of this discovery dispute while at the same time requesting the stay of third-party discovery that is directly relevant to class-certification. *See* Dkt. No. 191 and Ex. B.

Finally, during a meet-and-confer call that the parties conducted on March 9, 2018, counsel for NSL and NCFC offered to serve on Plaintiffs a revised privilege log with additional detail on

2

the descriptions of certain of the withheld documents that the parties' agreed are appropriately withheld once Plaintiffs better understood the nature of the documents. Plaintiffs' counsel rejected that proposal, choosing to engage in wasteful motions practice instead. Because Plaintiffs once again failed to conclude in good faith their meet-and-confer obligations, NSL and NCFC believe, but are not certain, that the supplemental privilege log attached as Exhibit C resolves the dispute as to eight of the nineteen contested documents.[1]

The remaining dispute as to eleven of the nineteen documents at issue concerns whether legal advice that NSL and NCFC solicited and received that relates to an ultimate business decision (the decision to implement internal policies and procedures without conceding or waiving any of their legal rights in litigation) retains its privileged status or is somehow transmuted into non-privileged business or technical advice. For the reasons discussed fully below, the Court should deny Plaintiffs' Motion and order that they pay the fees and costs that NSL and NCFC incurred opposing it.

I.     **RELEVANT FACTUAL BACKGROUND**

On May 26, 2017, Plaintiffs served twelve requests for production that concern class-certification issues. Motion, Ex. 2. Relevant here, Plaintiffs' Request for Production No. 10 sought "compliance manuals, training materials, or other internal documentation that [NSL and NCFC] distribute to [] employees and agents." *Id.* at 10. Following a number of meet-and-confer discussions that arose because of Plaintiffs' confusion about the scope of their own request (during which counsel for NSL and NCFC consistently informed Plaintiffs' counsel no responsive documents were being withheld on the basis of privilege) and a motion to compel that was later

---

[1] *See* Ex. D at documents numbered NAV200000003, NAV200000004–7, NAV200000008–9, NAV200000053–54, NAV200000056–57, NAV200000058, NAV200000160, NAV200000053–54, and NAV200000337–338.

withdrawn,[2] on November 3, 2017 Plaintiffs propounded a supplemental request for production. *See* Ex. D.

Plaintiffs' subsequent request for production—Request for Production No. 10(a)—sought "all documents relating to the creation or confection (sic) of any compliance manuals, training materials, or other internal documentation produced in response to RFP 10, as well as any internal analyses justifying or providing a business rationale for these materials." *Id.* After noting their objections to this request on relevance grounds (among other things), NSL and NCFC conducted a reasonably diligent search for documents responsive to this request.

Subject to and without waiver of their objections, on December 22, 2017, NSL and NCFC served a log for twenty-five documents that were withheld from production as protected by the attorney-client privilege.[3] Motion, Ex. 4. On January 4, 2018, Plaintiffs' counsel raised four questions with respect to the privilege log. The parties conducted a meet-and-confer call on January 18, 2018, during which counsel for NSL and NCFC responded to those questions—and believed that the issues were thus resolved. *See* Motion, Ex. 9 at 1. NSL and NCFC then produced a revised privilege log to Plaintiffs' counsel on February 5. 2018. Motion, Ex. 7.

---

[2] This was the second occasion on which Plaintiffs filed a discovery motion without first concluding their meet-and-confer obligations. Other courts have imposed procedural requirements to preclude such wasteful practices, and NSL and NCFC reserve the right to seek similar relief. *See, e.g.* Local Civil Rule 37.2 (S.D.N.Y. & E.D.N.Y. June 26, 2017) (prohibiting the filing of motions under Federal Rules of Civil Procedure 26 through 37 "unless counsel for the moving party has first requested an informal conference with the Court by letter motion . . . and such request has either been denied or the discovery dispute has not been resolved as a result of such a conference"); LBR 7007–1(b) (Bankr. S.D.N.Y. Dec. 1, 2016) (the same).

[3] NSL and NCFC later provided a log for three additional documents (responsive to a separate request) that they withheld as privileged. Plaintiffs' Motion does not concern the additional documents

4

More than three weeks later—and the day after mediation—Plaintiffs' counsel raised for the first time additional questions about NSL's and NCFC's privilege log. Motion, Ex. 8. The parties conducted a meet-and-confer call on March 9, 2018. During that call, counsel for NSL and NCFC assured Plaintiffs' counsel that the documents listed on the revised privilege log were indeed properly withheld from production as protected by the attorney-client privilege, and proposed serving a further revised privilege log with additional detail on the withheld documents by March 20, 2018. Plaintiffs' counsel rejected that request, *see* Ex. E, and filed this Motion instead.

## II.   ARGUMENT

### A.   The attorney-client privilege protects advice and opinions from in-house counsel, even if it touches on business advice.

The attorney-client privilege is the oldest privilege for confidential communications known to the common law. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The privilege applies with equal force to individuals, corporations, in-house attorneys, and outside counsel. *Id.* at 394. Indeed, "[i]t is undisputed that communications between a corporation and its inside counsel are protected in the same manner and to the same degree as communications with outside counsel." *United States v. Exxon Mobil Corp.*, 149 F.R.D. 533, 537 (N.D. Tex. 1993) (citing *Upjohn*, 449 U.S. at 389–97 and *In re LTV Sec. Litig.*, 89 F.R.D. 595, 602 (N.D. Tex. 1981)).

Under this long-established authority, NSL and NCFC withheld from discovery twenty-eight documents as privileged.[4] Plaintiffs challenge the withholding of nineteen of those documents, primarily on their legally and factually unsupported ground that the documents contain "business," rather than legal, advice. *See, e.g.*, Motion ¶¶ 30–44, 57–58, 62. Specifically, Plaintiffs assert that because NSL and NCFC made the business decision to treat certain loans as

---

[4] *See supra* at 4 n.3.

5

dischargeable under internal policies and procedures—in other words, without prejudice to NSL's and NCFC's rights under governing law—any legal advice they receive related to the dischargeability of loans in bankruptcy is somehow transmuted into business advice itself, and therefore stripped of the attorney-client privilege protection that would otherwise attach.

That is a fundamental error. "The mere fact that business considerations are weighed in the rendering of legal advice does not vitiate the attorney-client privilege." *Coleman v. Am. Broadcasting Cos., Inc.*, 106 F.R.D. 201, 206 (D.D.C. 1985). And courts have rejected the proposition that legal advice given "to facilitate a business decision rather than the rendition of professional legal services" is somehow deprived of attorney-client privilege. *See, e.g.*, *Electronic Data Sys. Corp. v. Steingraber*, No. 4:02-cv-225, 2003 WL 21653414, at *3 (E.D. Tex. July 9, 2003); *LTV*, 89 F.R.D. at 595.

For example, in *Exxon Mobil Corp. v. Hill*, the Fifth Circuit vacated and reversed the district court's denial of a motion to strike from admission a memorandum from in-house counsel regarding business negotiations with a third party. 751 F.3d 379 (2014). Specifically, in the course of negotiations, an Exxon employee conducted tests on the third-party's proposed services. The third party asked for the results, and the employee sought guidance from in-house counsel. *Id.* at 380. In-house counsel advised the employee to disclose only one of four tables and drafted a proposed response to accompany the results. *Id.* The advice was later recorded in a memorandum. *Id.* The plaintiff's attorney obtained and refused to destroy an inadvertently disclosed copy of the memorandum, which was admitted into evidence during a discovery fight. *Id.* at 380–81. The district court refused to strike the memorandum, which decision the Fifth Circuit vacated and reversed. 751 F.3d at 381. In relevant part, the Fifth Circuit found that the attorney-client privilege protected the memorandum from disclosure. *Id.* at 382–83. Though the underlying genesis of the

guidance from in-house counsel was a business transaction, the Fifth Circuit held that the memorandum was not stripped of its privilege protection. *Id.* at 382–83.

Similarly, the court in *Great Plains Mutual Insurance Co., Inc. v. Mutual Reinsurance Bureau* held that minutes from a board-of-directors' meeting were protected by the attorney-client privilege where the minutes concerned legal advice given by in-house counsel. 150 F.R.D. 193, 197–98 (D. Kan. 1993). While the advice could affect the corporation's success as a business, that possibility did not transform legal advice into business advice. *Id.* at 197. The advice "required the skill and expertise of an attorney" and was understood to convey legal opinions. *Id.* at 197–98. It therefore could not be discovered in litigation. *Id.* at 198.

The same conclusion should follow here. While the withheld documents may have some bearing on NSL's and NCFC's ultimate business decision, they are without question legal documents. As NSL's and NCFC's privilege log shows, the documents concern the interpretation of statutes and proposed legislation and case law and the provision of legal opinions on those topics. In short, the opinions given in the documents required "the skill and expertise of an attorney," rather than mere business guidance or technical know-how. That the legal opinions were given on subjects for which NSL and NCFC have made business decisions does not strip them of their privileged status. *See, e.g.*, *Securities & Exch. Comm'n v. Brady*, 238 F.R.D. 429, 439 (N.D. Tex. 2006) (finding memorandum from outside counsel that was "laced with underlying facts, legal opinions, and business advice" to be protected from disclosure by the attorney-client privilege) and *United States v. United Shoe Machinery Corp.*, 89 F. Supp. 357, 359 (D. Mass. 1950) (findings privileged 800 documents that included "recommendations [that] had in addition to legal points some economic or policy or public relations aspect").

### B. The attorney-client privilege protects communications by and among non-legal employees of a corporate client.

Plaintiffs also assert that certain documents NSL and NCFC withheld from production as privileged must be disclosed because "they reference no lawyer whatsoever[.]" Motion ¶ 53 (citing documents numbered NAV00000002.001–.0002, NAV00000060–81, NAV00000335, NAV00000336, and NAV00000337). Plaintiffs, however, are both factually and legally wrong.

First, four of the documents Plaintiffs cite compiled specific questions on which legal advice was sought. For example, as was explained to Plaintiffs' counsel on a March 9, 2018 meet-and-confer call, the document numbered NAV00000002.001–.0002 was drafted for the purpose of obtaining legal advice and attached to and explicitly referenced in an email to in-house counsel for that purpose. *See* Ex. C. Similarly, the documents numbered NAV00000060–81 and NAV00000336 are draft documents that contain in-text questions on which legal advice was sought and that were attached to emails scheduling calls with in-house counsel for that purpose. *Id*. And the document numbered NAV00000335 is an invitation to a meeting with in-house counsel that was scheduled for the purpose of securing legal advice, which discloses the questions on which that advice was sought. *Id.*

Second, the Supreme Court holds that the attorney-client privilege "applies to communications by any corporate employee regardless of position when the communications concern matters within the scope of the employee's corporate duties and the employee is aware that the information is being furnished to enable the attorney to provide legal advice to the corporation." *Mobil Corp.*, 149 F.R.D. at 537 (citing *Upjohn*, 449 U.S. at 394). Further to this point, communications between or among non-legal employees are themselves privileged if they concern or discuss legal advice, and "'[a] document need not be authored or address to an attorney in order to be properly withheld on attorney-client privilege grounds.'" *Nalco Co., Inc. v. Baker*

8

*Hughes Inc.*, No. 4:09-cv-1885, 2017 WL 3033997, at *2 (S.D. Tex. July 18, 2017) (citing *Baptiste v. Cushman & Wakefiled, Inc.*, No. 3-cv-2102, 2004 WL 330235, at *2 (S.D.N.Y. Feb. 20, 2004) and *Weeks v. Samsung Heavy Indus. Co.*, No. 93-cv-4899, 1996 WL 341537, at *4 (N.D. Ill. June 20, 1996)). This is so because "[i]n the case of a corporate client . . . 'documents subject to the [attorney-client] privilege may be transmitted between non-attorneys . . . so that the corporation may be properly informed of legal advice and act appropriately." *SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 477 (E.D. Pa. 2005) (quoting *Santrade Ltd. v. Gen. Elec. Co.*, 150 F.R.D. 539, 545 (E.D.N.C. 1993)).

For these reasons, the documents that Plaintiffs believe do not "reference" an attorney retain their privileged status. Even assuming that the four documents identified above did not "reference" an attorney—which they do—the documents are properly withheld as privileged because they collect information for the express purpose of obtaining legal advice. And—as was explained to Plaintiffs' counsel on a March 9, 2018 meet-and-confer call—the fifth document that Plaintiffs identify, numbered NAV00000337, is an email containing and reflecting legal advice that an individual forwarded to himself.

Faced with similar circumstances, courts find that the attorney-client privilege protects such communications from disclosure. For example, in *Havel v. Dentsu McGarry Bower UK, Ltd.*, the Southern District of Texas held that communications among non-lawyers that "prepared information in order to get legal advice from" counsel were properly withheld from production. No. H-13-1291, 2015 WL 409837, at *2–3 (S.D. Tex. Jan. 29, 2015) (quoting *Comtide Holdings, LLC v. Booth Creek Mgmt. Corp.*, No. 2:07-cv-1190, 2010 WL 5014483, at *2 (S.D. Tex. Jan. 29, 2015)). Relatedly, the Northern District of Illinois has found protected from disclosure a

memorandum sent from one non-lawyer to another that summarized legal advice given to their companies. *Weeks*, 1996 WL 341537 at *4–5.

The Court should reach the same conclusion here. Simply, the documents that Plaintiffs believe do not "reference" an attorney were either created with the express purpose of compiling questions to be sent to in-house counsel to obtain legal opinions or otherwise contained and reflected legal advice. *See, e.g.*, *Cuno, Inc. v. Pall Corp.*, 121 F.R.D. 198, 203 (E.D.N.Y. 1988) (holding that documents transmitting legal advice between non-lawyers were privileged) and *Ill. Tool Works, Inc. v. KL Spring & Stamping Corp.*, No. 79-c-596, 1980 WL 30331, at *2 (N.D. Ill. Feb. 19, 1980) (the same).

**C.    NSL and NCFC have revised their privilege log to provide more detail on the documents withheld from production.**

Plaintiffs claim that NSL's and NCFC's privilege log is insufficient under the Federal Rules of Civil Procedure. Motion ¶¶ 48, 52–62. NSL and NCFC disagree, and assert that they provided wholly satisfactory descriptions of the withheld documents and the individuals involved in the communications on their revised privilege log.

Nevertheless, during the parties' March 9, 2018 meet-and-confer call, counsel for NSL and NCFC offered to further revise their privilege log to provide additional detail on the withheld documents. Because counsel for NSL and NCFC was going to be on vacation, he proposed serving the further revised privilege log on Plaintiffs on March 20, 2018. *See* Ex. A. If Plaintiffs still took issue with the further-revised descriptions, counsel for NSL and NCFC proposed that Plaintiffs file a "non-emergency motion on the privilege log, notwithstanding that the other aspects of the case have been stayed." *Id.*

Despite the fact that counsel for Plaintiffs (1) did not voice their concerns with NSL's and NCFC's privilege log until January 4, 2018, which concerns counsel for NSL and NCFC resolved

10

during a January 18, 2018 meet-and-confer call, and (2) only raised the disputes now at issue in this Motion on February 28, 2018, counsel for Plaintiffs rejected NSL's and NCFC's proposal. *See* Motion, Ex. 9.  They did so on the false ground that "the[] issues have been outstanding for a very long time[.]" *See* Ex. E.  Worse still, Plaintiffs then filed this Motion on an emergency basis when they knew lead counsel for NSL and NCFC was unavailable, even though the discovery dispute had been carved out of the general stay in this case pending a resolution of NSL's and NCFC's Motion for Summary Judgment and there is absolutely no cognizable "emergency."

Although Plaintiffs rejected NSL's and NCFC's proposal, thus forcing the parties and the Court to expend time and resources litigating issues that could have been resolved (or narrowed) through extrajudicial means, NSL and NCFC have further revised their privilege log, which is attached to this response as Exhibit C.  As noted above, NSL and NCFC believe that this further revised privilege log fully resolves any question as to whether eight of the documents—those numbered NAV200000003, NAV200000004–7, NAV200000008–9, NAV200000053–54, NAV200000056–57, NAV200000058, NAV200000160, NAV200000053–54, and NAV200000337–338—have been properly withheld as privileged.  And when combined with the Court's correction of Plaintiffs' legal error—i.e., legal advice that touched on a business decision loses its attorney-client privilege protection—NSL's and NCFC's further revised privilege log should resolve Plaintiffs' entire Motion to Compel.

## CONCLUSION

For the reasons described above, the Court should deny Plaintiffs' Motion to Compel, Dkt. No. 204, and order Plaintiffs to pay the attorneys' fees and costs incurred by NSL and NCFC opposing the Motion.

Dated: March 23, 2018  NAVIENT SOLUTIONS, LLC AND
       Houston, Texas  NAVIENT CREDIT FINANCE CORPORATION

*/s/ Thomas M. Farrell*
Thomas M. Farrell (TXB 06839250)
Attorney-in-Charge
JPMorgan Chase Tower
600 Travis Street
Suite 7500
Houston, Texas 77002
Telephone: 713.571.9191
Facsimile: 713.571.9652
E-mail: tfarrell@mcguirewoods.com

—and—

Dion W. Hayes (admitted *pro hac vice*)
K. Elizabeth Sieg (admitted *pro hac vice*)
Kyle R. Hosmer (admitted *pro hac vice*)
Gateway Plaza
800 East Canal Street
Richmond, Virginia 23219
Telephone: 804.775.1000
Facsimile: 804.698.2255
E-mail: dhayes@mcguirewoods.com
      bsieg@mcguirewoods.com
      khosmer@mcguirewoods.com

*Counsel to Navient Solutions, LLC and*
*Navient Credit Finance Corporation*

12

## **CERTIFICATE OF SERVICE**

   I certify that on this 23rd day of March, 2018, I filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Thomas M. Farrell*
