## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release is entered into by and between (i) Plaintiff Evan Brian Crocker, individually and on behalf of a settlement class, and (ii) Defendants Navient Solutions, LLC and Navient Credit Finance Corporation. The parties hereto intend (subject to court approval) to resolve, discharge, and forever settle on a circuit-wide basis the claims asserted in the adversary class action captioned *Evan Brian Crocker v. Navient Solutions, LLC et al*, Adv. Pro. No. 16-03175, in the United States Bankruptcy Court for the Southern District of Texas, Houston Division.

## RECITALS

A.       On November 3, 2015, Evan Brian Crocker filed for bankruptcy relief in the United States Bankruptcy Court for the Southern District of Texas, Case No. 15-35886. A discharge order was signed on February 9, 2015.

B.       On August 5, 2016, Evan Brian Crocker filed an adversary complaint (Adv. Proc. No. 16-03175) captioned *Evan Brian Crocker v. Navient Solutions, LLC et al* in the United States Bankruptcy Court for the Southern District of Texas, Houston Division. On August 26, 2016, Mr. Crocker amended that complaint to add class action allegations. On July 19, 2021, Mr. Crocker amended his adversary complaint for a final time to include certain statutory claims.

C.       The parties hereto have engaged in extensive discovery, including the exchange of written discovery requests and responses, the production of voluminous documents, and substantial deposition activity. They have also engaged in extensive briefing on multiple issues, including the arbitrability of the asserted claims; the scope and applicability of the exceptions to discharge set forth in 11 U.S.C. § 523(a)(8); the appropriate procedure for asserting discharge

violations; the remedies available for discharge violations; the geographical limitations on a court's ability to enforce discharge injunctions, discovery disputes, and class certification.

D.     Based on the discovery conducted, the evaluation of the facts and the law, and multiple mediation sessions with mediator Eric Green, the parties hereto have agreed (subject to court approval) to a settlement covering certain student loans to borrowers who received bankruptcy discharges in bankruptcy courts in the United States Fifth Circuit (Texas, Louisiana, and Mississippi).

E.     No party to this Settlement Agreement and Release concedes or admits the validity of any position taken by any other party. All parties maintain that the claims, defenses, and positions they have asserted are valid. The parties have nonetheless agreed to enter into this Settlement Agreement and Release to avoid the expense, delay, disruption, and uncertainty of further litigation.

F.     This Settlement Agreement and Release (and all associated exhibits and attachments) are made solely for purposes of attempting to consummate a settlement. This Settlement Agreement and Release is made in compromise of disputed claims.

G.     In the event this Settlement Agreement and Release is terminated pursuant to the provisions set forth below or the court does not finally approve the proposed settlement, this Settlement Agreement and Release shall be deemed null and void and shall have no force or effect whatsoever. In that event, this Settlement Agreement and Release shall not be referred to or utilized for any purpose whatsoever.

H.     The parties hereto reserve all, and do not waive any, rights, claims, and defenses.

## I. DEFINITIONS

As used in this Settlement Agreement and Release, the following terms shall have the meanings set forth below:

1.1     "Action" means the adversary proceeding filed on August 5, 2016, in the United States Bankruptcy Court for the Southern District of Texas, Adv. Pro. No. 16-03175, styled *Evan Brian Crocker v. Navient Solutions, LLC, et al.*

1.2     "Aggregate Restitution Amount" means the sum, for all Settlement Class Members of: (a) all Automatic Refund Amounts; plus (b) all Qualifying Conditional Refund Amounts.

1.3     "Agreement" means this Settlement Agreement and Release and all of its attachments and exhibits.

1.4     "Appellate Deadline" means the date that is thirty (30) days after the Audit Completion Date.

1.5     "Appellate Completion Date" means the date that is fifteen (15) days after the Appellate Deadline.

1.6     "Attorneys' Fees" means the sum of $3,650,000 that Navient has agreed (subject to court approval) to pay to Class Counsel to compensate them for the value of the time spent litigating the Action. The term Attorneys' Fees does not include Litigation Expenses.

1.7     "Audit Notice" means notice in substantially the same form and substance attached as Exhibit 1 through which Navient can inform Settlement Class Members that their Certification Forms have been selected for audit.

1.8     "Audit Selection Deadline" means the date that is ten (10) business days after the Certification Deadline.

1.9     "Audit Completion Date" means the date that is sixty (60) days after the Audit Selection Deadline.

1.10    "Automatic Refund Amount" means: (i) for each Single Borrower Loan, the total payments received by Navient from the date of the Discharged Borrower's discharge through the Notice Approval Date; and (ii) for each Multiple Borrower Loan, the total payments received by Navient after the date of the Discharged Borrower's discharge and prior to the first date (if any) that the Navient system of record for the Multiple Borrower Loan reflected a "Dropped Borrower" through the Notice Approval Date. The Automatic Refund Amount shall be determined by Navient by reference to the appropriate fields in the CLASS System, the FDR System, or other Navient system of record for each Single Borrower Loan and Multiple Borrower Loan. Exhibit 1 to the Class Notice shall have a column setting forth the Automatic Refund Amount, if any, for each Single Borrower Loan and Multiple Borrower Loan of each Class Member.

1.11    "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of Texas.

1.12    "Certification Deadline" means the date identified in the Preliminary Approval Order by which Settlement Class Members must submit Certification Forms with respect to Conditional Refund Amounts in accordance with Section IV of this Agreement. The Certification Deadline shall be no earlier than sixty (60) days after the Notice Mailing Date.

1.13    "Certification Form" means the form included as part of Exhibit 1 to the Class Notice on which Discharged Borrowers on Multiple Borrower Loans may attest to the portion, if any, of any Conditional Refund Amounts that they personally paid from their own funds.

1.14    "Certification Notification Deadline" means the date by which Navient will a) inform Class Counsel of the total number of Certification Forms that were timely submitted to

4

Navient; and (b) report to Class Counsel the aggregate dollar amount of Conditional Refunds that would be payable to Settlement Class Members if the certified amounts on all such Certification Forms constituted Qualifying Conditional Refund Amounts. The Certification Notification Deadline shall be not later than seven (7) days after the Certification Deadline.

1.15    "Class" means, collectively, all Discharged Borrowers on Covered Loans.

1.16    "Class Counsel" means, collectively, all counsel of record for the Class Representative in the Action.

1.17    "Class Member" means a natural person who is a member of the Class according to the Class definition.

1.18    "Class Representative" means Evan Brian Crocker.

1.19    "Collection Cease Order" means the order entered by the Bankruptcy Court in the Action on April 11, 2017, and docketed as ECF No. 122.

1.20    "Complaint" means the Fifth Amended Complaint filed in the Action on July 19, 2021, and docketed as ECF No. 345.

1.21    "Conditional Refund Amount" means, for each Multiple Borrower Loan, the total payments received by Navient after the date of the Discharged Borrower's discharge and after the first date (if any) that the Navient system of record for the Multiple Borrower Loan reflected a "Dropped Borrower" through the Notice Approval Date. The Conditional Refund Amount shall be determined by Navient by reference to the appropriate fields in the CLASS System, the FDR System, or other Navient system of record for each Multiple Borrower Loan. Exhibit 1 to the Class Notice shall have a column setting forth the Conditional Refund Amount, if any, for each Multiple Borrower Loan of each Class Member.

1.22    "Consumer Credit Report" means an individual's credit report issued by any of the three major Credit Reporting Agencies.

1.23    "Covered Loans" means the loans listed on the Covered Loan List.

1.24    "Covered Loan List" means the list attached hereto as Exhibit 2, which identifies the Class Members and the loans of those Class Members for which the Settlement provides relief. The Covered Loan List shall include the Automatic Refund Amount, if any, and the Conditional Refund Amount, if any, for each Covered Loan.

1.25    "Credit Reporting Agency" means TransUnion, Experian, and Equifax.

1.26    "Defendants" means Navient Solutions, LLC and Navient Credit Finance Corporation.

1.27    "Defendants' Counsel" means Navient's counsel of record in the Action.

1.28    "Discharged Borrower" means each borrower or co-borrower who, from October 17, 2005, to the Notice Approval Date: (a) received a discharge in a bankruptcy case pending in any United States Bankruptcy Court in the United States Fifth Circuit (Texas, Louisiana, and Mississippi); and (b) who is or was an obligor on a Covered Loan for which there exists no reaffirmation agreement enforceable under 11 U.S.C. § 524.

1.29    "District Court" means the United States District Court for the Southern District of Texas.

1.30    "Effective Date" means the date when all the conditions in Section 2 of this Agreement have occurred.

1.31    "Final" means five (5) business days after the latest of: (i) the date of final affirmance on appeal of the Order of Final Approval; (ii) the date of final dismissal with prejudice of the latest pending appeal from the Order of Final Approval; (iii) if no appeal is filed, the

expiration of the time for the filing or noticing of any form of valid appeal from the Order of Final Approval.

1.32    "Final Approval Hearing" means a hearing set by the District Court to take place approximately thirty (30) days after the Opt-Out Deadline and the Objection Deadline for the purpose of:

(i)    Determining the fairness, adequacy, and reasonableness of the Agreement and the Settlement;

(ii)    Determining the good faith of the Agreement and the Settlement; and

(iii)    Entering the Order of Final Approval.

1.33    "Interest Accrual Order" means the order entered in the Action on May 10, 2021, and docketed as ECF No. 326.

1.34    "Litigation Expenses" means the out-of-pocket expenses incurred by Class Counsel in prosecution of the Action. The term Litigation Expenses does not include Attorneys' Fees.

1.35    "Multiple Borrower Loans" means all Covered Loans on which there has been, at any time, one or more co-borrowers, co-signers, or obligors in addition to the primary borrower.

1.36    "Navient" means Navient Solutions, LLC and Navient Credit Finance Corporation.

1.37    "Net Restitution Amount" means the Restitution Amount payable to a Settlement Class Member after deduction of his or her Proportionate Share of Litigation Expenses.

1.38    "Neutral Party" means Fouad Kurdi of Resolutions, LLC, the party designated to issue binding determinations on any appeals from Rejection Notices under Section IV of this Agreement.

1.39    "Notice" or "Class Notice" means a notice (and associated Certification Form) to be approved by the Bankruptcy Court substantially in the form and substance attached hereto as Exhibit 3.

7

1.40    "Notice Approval Date" means the date of the Preliminary Approval Order, which (among other things) approves the Notice.

1.41    "Notice Mailing Date" means a date no later than five (5) business days after the Notice Approval Date by which Navient shall mail the Class Notice to the individuals on the Covered Loan List.

1.42    "Objection Deadline" means the date identified in the Preliminary Approval Order by which a Settlement Class Member must serve written objections to the Settlement, if any, in accordance with Section X of this Agreement. The Objection Deadline shall be no earlier than sixty (60) days after the Notice Mailing Date.

1.43    "Opt-Out Deadline" means the date identified in the Preliminary Approval Order by which a Request to Opt Out must be submitted in writing in accordance with Section IX of this Agreement. The Opt-Out Deadline shall be no earlier than sixty (60) days after the Notice Mailing Date.

1.44    "Order of Final Approval" means a final judgment and order to be entered and filed by the District Court substantially in the form and substance attached hereto as Exhibit 4.

1.45    "Parties" means the Class Representative and the Defendants.

1.46    "Preliminary Approval Order" means an order to be entered and filed by the Bankruptcy Court titled "Order Preliminarily Approving Settlement and Providing for Notice" substantially in the form and substance attached hereto as Exhibit 5.

1.47    "Private Student Loans" means student loans that were not made, insured, or guaranteed by a governmental unit or non-profit institution; were not made under any program funded in whole or in part by any governmental entity or non-profit institution; and were for attendance at schools that were not accredited under Title IV of the Higher Education Act of 1965.

1.48    "Proportionate Share of Litigation Expenses" means the amount equal to the class members' Restitution Amount multiplied by the percentage that results from dividing the Litigation Expenses by the Aggregate Restitution Amount.

1.49    "Qualifying Conditional Refund Amount" means the portion, if any, of the Conditional Refund Amount that a Discharged Borrower certifies as having been paid with his or her own personal funds on a Certification Form that is: (a) fully completed and properly executed; (b) timely returned; and (c) not subject to a Rejection Notice issued under Section IV hereof or, if subject to a Rejection Notice, is determined by the Neutral Party to be payable by Navient.

1.50    "Rejection Notice" means notice in substantially the same form and substance attached as Exhibit 6 through which Navient will inform Settlement Class Members that their Certification Forms have been rejected.

1.51    "Released Claims" means any and all claims, defenses, demands, actions, causes of action, rights, offsets, suits, damages, lawsuits, costs, relief for contempt, losses, attorneys' fees, expenses, or liabilities of any kind whatsoever, in law or in equity, for any relief whatsoever, including monetary, sanctions or damage for contempt, injunctive, or declaratory relief, rescission, general, compensatory, special, liquidated, indirect, incidental, consequential, or punitive damages, as well as any and all claims for treble damages, penalties, interest, attorneys' fees, costs, or expenses, whether a known or Unknown Claim, suspected or unsuspected, contingent or vested, accrued or not accrued, liquidated or unliquidated, matured or unmatured, and including any claims arising under the United States Bankruptcy Code, the Fair Credit Reporting Act, or state unfair trade practice laws, that in any way concern, arise out of, or relate to Covered Loans or the facts and circumstances alleged in the Complaint. Released Claims also include any allegation that any Defendant or Releasee conspired with, aided and abetted, or otherwise acted in concert with

any other Defendant, Releasee, or other third parties, with regard to any of the facts, acts, events, transaction, occurrences, courses of conduct or business practices within the scope of these Released Claims.

1.52    "Releasees" or "Released Parties" means each of: (1) Defendants; (2) each of Defendants' past, present or future subsidiaries, parent companies, divisions, affiliates, partners or any other organizational units of any kind doing business under their names, or doing business under any other names, or any entity now or in the past controlled by, controlling, or under the common control with any of the foregoing and doing business under any other names, and each and all of their respective affiliates and subsidiaries, and each of their respective predecessors, successors, and assigns; and (3) each of the present and former officers, directors, partners, shareholders, agents, employees, attorneys (including any consultants hired by counsel), advisors, trustees and co-trustees, investment advisors, associates, investment bankers, independent contractors, representatives, beneficial owners, insurers, accountants, heirs, executors, and administrators, and each of their respective predecessors, successors, and assigns of any person or entity in subparts (1) or (2) hereof.

1.53    "Releasors" means the Class Representative, all Settlement Class Members, and each of their respective heirs, executors, administrators, assigns, predecessors, and successors, and any other person claiming by, through, or under any or all of them.

1.54    "Request to Opt Out" means the written request from a Class Member that seeks to exclude that person from the Settlement Class and that complies with the requirements set forth in Section IX of this Agreement.

1.55    "Restitution Amount" means: (i) on Single Borrower Loans, 100% of the amount set forth in the Automatic Refund column of the Covered Borrower List; and (ii) on Multiple

Borrower Loans, that portion of the amount set forth in the Conditional Refund column of the Covered Borrower List that has been determined through the process set forth in Section IV to have been paid by the Discharged Borrower from his or own personal funds. On Multiple Borrower Loans, the Restitution Amount does not include any portion of the amount set forth in the Conditional Refund column of the Covered Borrower List unless and until such amount is determined to constitute a Qualifying Conditional Refund Amount.

1.56   "Restitution Payment Date" means the date that is ten (10) business days after the Appellate Completion Date.

1.57   "Settlement" means the settlement terms set forth in this Agreement.

1.58   "Settlement Class" means the collective group of all Class Members who do not properly and timely exclude themselves from the Settlement.

1.59   "Settlement Class Member" means any person who is a member of the Settlement Class.

1.60   "Single Borrower Loans" means all Covered Loans on which there has never been any co-borrowers, co-signers, or obligors other than the primary borrower.

1.61   "Termination Event" means any of the following events or circumstances: (a) the failure of the Bankruptcy Court to preliminarily approve the Settlement or to enter the Preliminary Approval Order without material changes; (b) the failure of the District Court to finally approve the Settlement or to enter the Order of Final Approval without material changes; (c) reversal of or any material change to the Order of Final Approval by any appellate court having jurisdiction; (d) any order by the Bankruptcy Court, the District Court, or any appellate court having jurisdiction that would require Navient to pay any amount of Attorneys' Fees in excess of $3,650,000 or any amount at all for Litigation Expenses; and (e) the timely submission of Requests to Opt Out by

more than 25 % of Class Members or by Class Members representing more than 25 % of the sum of all Automatic Refund Amounts and Conditional Refund Amounts set forth on the Covered Loan List. The following shall *not* constitute Termination Events: (i) any failure or refusal by the District Court to award some or all of the Litigation Expenses sought by Class Counsel; (ii) any reduction or elimination of Litigation Expenses imposed by any appellate court having jurisdiction; (iii) any failure or refusal by the District Court to award some or all of the Attorneys' Fees sought by Class Counsel; and (iv) any reduction or elimination of Attorneys' Fees imposed by any appellate court having jurisdiction.

  1.62 "Unknown Claims" means any Released Claims which any Releasor does not know or suspect to exist in his or her favor at the time of the entry of the Order of Final Approval, and which, if known by him or her, might have affected his or her settlement with and release of the Releasees, or might have affected his or her decision to opt out of the Settlement Class or to object to this Settlement. With respect to any and all Released Claims, the Parties stipulate and agree that, upon the Effective Date, the Class Representative shall expressly, and each of the Settlement Class Members shall be deemed to have, and by operation of the Order of Final Approval shall have to the fullest extent allowed by law, waived the provisions, rights, and benefits of any statute or principle of common law similar to California Civil Code § 1542, which provides:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

Each Releasor may hereafter discover facts in addition to or different from those which he or she now knows or believes to be true with respect to the subject matter of the Released Claims, but the Releasors, upon the Effective Date, shall be deemed to have, and by operation of the Order of Final Approval shall have, fully, finally, and forever settled and released to the fullest extent allowed by

law any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which then exist, or heretofore have existed upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, contract, law, or rule without regard to the subsequent discovery or existence of such different or additional facts. The Class Representative acknowledges, and the Settlement Class Members shall be deemed by operation of the Order of Final Approval to have acknowledged, that the foregoing waiver was separately bargained for and constitutes a material term of the Settlement.

## II. CONDITIONS TO AND EFFECTIVENESS OF THE AGREEMENT

2.1     This Agreement is contingent upon the satisfaction in full of each of the material conditions set forth below. The Effective Date of this Agreement shall be the date when all of the following have occurred.

2.2     The Parties have signed the Agreement.

2.3     Navient has complied with the reporting requirements of 28 U.S.C. § 1715.

2.4     The Bankruptcy Court has preliminarily approved the Settlement, including the Class Notice, and has entered the Preliminary Approval Order.

2.5     The District Court has granted a motion to withdraw the reference to consider and approve the Settlement.

2.6     Navient has caused the Class Notice to be delivered pursuant to the Preliminary Approval Order and the terms of the Agreement.

2.7     The District Court has entered the Order of Final Approval in the form attached hereto as Exhibit 4.

2.8     The Order of Final Approval has become Final.

### III. SETTLEMENT CONSIDERATION

3.1     In consideration for the Releases set forth in Section VIII, Navient will provide the following benefits to the Settlement Class.

3.2     Navient will forego collection from all Discharged Borrowers of 100% of all outstanding balances (whether comprised of unpaid principal, unpaid interest, and/or unpaid fees) that, as of the Effective Date, are reflected in Navient's records on all Covered Loans. From and after the Effective Date, each Covered Loan shall be deemed to have been discharged as to the Discharged Borrowers, with no additional amounts due for principal, interest, fees, or otherwise. This agreement by Navient to forego collection of loan balances shall not be treated as the forgiveness of debt for purposes of tax reporting, because the loans shall be deemed to have been discharged in the Discharged Borrower's respective bankruptcies. Navient will not issue any Form 1099-C to any Settlement Class Member as a result of this agreement to forego collection. Navient's agreement to forego collection as set forth herein shall not in any way impair Navient's right or ability to seek repayment or other relief from any obligor on any Covered Loan(s) who is not himself or herself a Discharged Borrower. Non-discharged co-borrowers, co-signers, or obligors on Covered Loan(s) shall not be entitled to any relief under Section III of this Agreement.

3.3     Navient will pay to each Discharged Borrower who is a Settlement Class Member the Net Restitution Amount, if any, applicable to each Covered Loan. Navient is not obligated by this Agreement or otherwise to refund any payments made on Covered Loans that do not qualify as Net Restitution Amounts as that term is defined in this Agreement. Navient will pay Net Restitution Amounts to Discharged Borrowers who are Settlement Class Members according to the procedures set forth below in Section IV.

3.4     For each Single Borrower Loan, Navient will, within thirty (30) days after the Effective Date, request that the Credit Reporting Agencies take steps to delete all trade lines at Credit Reporting Agencies. For each Multiple Borrower Loan, Navient will, within thirty (30) days after the Effective Date, request that the Credit Reporting Agencies update the trade lines to reflect that the loan was subject to a bankruptcy discharge. Navient shall take commercially reasonable steps to ensure that updating a trade line does not refresh any such trade line on any borrower's Consumer Credit Report.

3.5     Upon District Court approval in the Order of Final Approval, Navient agrees to pay Class Representative Evan Brian Crocker an award not to exceed $15,000 for his representation of the Class.

3.6     Navient agrees to implement business-practice enhancements reasonably designed to ensure that, when Navient processes bankruptcy discharges after the Effective Date: (i) Private Student Loans shall be coded as discharged as to any borrower or co-borrower who received a bankruptcy discharge; and (ii) no post-discharge collection activity will occur on any such loans against any discharged borrower or discharged co-borrower. These business-practice enhancements are prospective only and shall not be admissible in support of any claim made by or on behalf of any borrower or co-borrower who received a discharge outside of the Fifth Circuit before the Effective Date. These business-practice enhancements shall not impact Navient's ability to collect on any loans against any obligors who did not themselves obtain bankruptcy discharges. Navient agrees to maintain these business-practice enhancements in place unless and until (1) Congress amends the Bankruptcy Code, or the United States Supreme Court issues a decision, making such Private Student Loans non-dischargeable in bankruptcy, or (2) Navient is required,

either through an enforcement action, consent order, or other government decree, to modify its business practices.

3.7     The Order of Final Approval shall dissolve and vacate the Collection Cease Order, but shall provide that the terms of the Interest Accrual Order shall remain in effect after the Effective Date. Notwithstanding entry of the Order of Final Approval, Navient will continue, after the Effective Date, to comply with the Interest Accrual Order.

## IV. PROCESS FOR DETERMINING AND PAYING NET RESTITUTION AMOUNTS

4.1     Each Class Member will receive, as Exhibit 1 to the Notice, a schedule setting forth the Covered Loans on which he or she is a Discharged Borrower. That schedule will set forth, for each Covered Loan, the Automatic Refund amount, if any, and the Conditional Refund Amount, if any.

4.2     If the Settlement receives final approval, Navient will pay to each Settlement Class Member any Automatic Refund Amounts set forth on Exhibit 1 to the Notice for that Settlement Class Member (less the Proportionate Share of Litigation Expenses applicable to each Automatic Refund Amount). In order to receive payment under this Section 4.2, Settlement Class Members do not have to submit any Certification Form or other information to Navient. In the case of Covered Loans that have more than one Discharged Borrower associated with them, Navient will pay the Automatic Refund Amounts to the primary borrower as shown in Exhibit 1.

4.3     If the Settlement receives final approval, Navient will pay to each Settlement Class Member the portion of any Conditional Refund Amounts set forth on Exhibit 1 to the Notice for that Settlement Class Member that is determined, according to the procedures set forth below, to be a Qualifying Conditional Refund Amount.

4.4     To be eligible for payment of any portion of any Conditional Refund Amounts, a Settlement Class Member must submit a Certification Form to Navient by mailing the Certification Form to McGuireWoods LLP, attn: Crocker Settlement Administrator, JPMorgan Chase Tower, 600 Travis Street, Suite 7500, Houston, TX 77002-2906, and/or by electronically submitting a PDF copy of the Certification Form to crockersettlement@mcguirewoods.com. Certification Forms must be post-marked and/or electronically submitted by no later than the Certification Deadline.

4.5.     By the Certification Notification Deadline, Navient will (a) inform Class Counsel of the total number of Certification Forms that were timely submitted to Navient; and (b) report to Class Counsel the aggregate dollar amount of Conditional Refunds that would be payable to Settlement Class Members if the certified amounts on all such Certification Forms constituted Qualifying Conditional Refund Amounts.

4.6     By the Audit Selection Deadline, Navient will identify to Class Counsel any Certification Forms (not to exceed 50% of the total Certification Forms received by Navient) selected by Navient for audit. Navient shall also provide to Class Counsel copies of any or all Certification Forms.

4.7     For each Certification Form that Navient selects for audit, Navient will send the Settlement Class Member an Audit Notice by the Audit Selection Deadline. The Audit Notice shall provide the Settlement Class member no less than thirty (30) days to submit to Navient any supporting documents or other information substantiating the information set forth in the Certification Form. Navient shall provide copies of any or all Audit Notices to Class Counsel.

4.8     By five (5) business days after the Audit Completion Date, Navient shall identify to Class Counsel all Settlement Class Members who either (a) failed or refused to submit

17

supporting documents or information in response to an Audit Notice or (b) submitted documents or information in response to an Audit Notice that Navient has in good faith determined to indicate the existence of material misrepresentations or omissions in their Certification Forms. All such Settlement Class Members shall be deemed, subject to the appellate rights set forth below, to have forfeited the right to payment of any portion of any Conditional Refund Amounts. Navient shall send to each such Settlement Class Member a Rejection Notice indicating that his or her Certification Form has been rejected and apprising him or her of appellate rights. Navient shall provide to Class Counsel: (a) copies of any or all Rejection Notices; and (b) copies of the information received by Navient in response to any or all Audit Notices subject to Rejection Notices.

      4.9     Any Settlement Class Member who receives a Rejection Notice shall have the right to appeal the rejection of his or her claim to a refund of Conditional Settlement Amounts to the Neutral Party. Any such appeal must be initiated by submitting a written notice to the Neutral Party of the Settlement Class Member's intent to appeal at the following address: 125 High Street, Suite 2205 Boston, MA 02110. Any such written notice must be postmarked on or before the Appellate Deadline. The written notice must include any information or documents that the Settlement Class Member wants the Neutral Party to consider. Upon receipt of the notice of appeal, the Neutral Party will provide notice of the appeal to Navient's Counsel within five (5) business days, and Navient will have five (5) business days to submit any additional information Navient wants the Neutral Party to consider.  The Neutral Party shall determine (based solely on the Certification Form, any information submitted in response to the Audit Notice, any material submitted by the Settlement Class Member with the notice of appeal, and any materials submitted by Navient in response to the notice of appeal) the amount, if any, of the Conditional Refund Amount that the

Settlement Class Member has reasonably established to have been personally paid by the Settlement Class Member himself or herself. The Neutral Party shall submit its determination (which need not state the Neutral Party's reasons or basis for the decision) to the appealing Settlement Class Member, with copies to Navient's Counsel and Class Counsel, within fifteen (15) days of receiving a notice of appeal. The Neutral Party shall resolve all appeals by no later than the Appellate Completion Date. Decisions by the Neutral Party shall be binding and conclusive and shall not be subject to judicial review. Navient shall be responsible for paying the fees and expenses of the Neutral Party, but shall have no obligation to pay any fees or expenses incurred in the appellate process by any Settlement Class Member.

4.10    By no later than ten (10) business days after the Appellate Completion Date, Navient shall calculate and inform Class Counsel of the Aggregate Restitution Amount.

4.11    By no later than ten (10) business days after the Appellate Completion Date, Navient shall also calculate the Proportionate Share of Litigation Expenses by dividing the approved Litigation Expenses by the Aggregate Restitution Amount. By way of example, if the District Court were to award $500,000 in Litigation Expenses, and if the Aggregate Restitution Amount were $2 million, each Settling Class Member's Proportionate Share of Litigation Expenses would equal 25% of his or her Restitution Amount.

4.12    By no later than the Restitution Payment Date, Navient shall: (a) pay to each Settling Class Member his or her Net Restitution Amount; and (b) pay to Class Counsel, solely out of the Aggregate Restitution Amount, any Litigation Expenses awarded by the District Court. Navient shall pay Net Restitution Amounts by checks payable to Settlement Class Members as their names are set forth on the Covered Loan List and mailed to them at their addresses set forth on the Covered Loan List. Navient shall pay Litigation Expenses, if any, by wire transfer according

19

to instructions to be provided to Navient by Class Counsel. Navient shall have no obligation to pay any Litigation Expenses except for such Litigation Expenses as may be awarded by the District Court to be paid solely out of the Aggregate Restitution Amount.

4.13    Automatic Refund Amounts otherwise payable to Settlement Class Members for whom Navient is unable to locate a valid address shall be distributed on a pro rata basis as a second distribution to Settlement Class Members entitled to the payment of Net Restitution Amounts until each has received 100% of his or her Restitution Amount. Any Automatic Refund Amounts that thereafter remain undistributed to Settlement Class members shall be paid as cy pres to a non-profit organization acceptable to the Class Representative and to Navient, and approved by the Court.

## V. NOTICE TO THE CLASS

5.1    Notice of the Settlement shall be provided to all Class Members in the form of the Class Notice.

5.2    On or before the Notice Mailing Date, Navient will mail the Class Notice (including the Certification Form) to all Class Members via first class mail through the United States Postal Service, postage pre-paid, at the addresses set forth on the Covered Loan List, and email the Class Notice (including the Certification Form) to all Class Members at any email address Navient has on file for that Class Member.

5.3    Navient shall provide Class Counsel with written confirmation that the Class Notice has been mailed and emailed to all Class Members.

5.4    If any Notice is returned to Navient by the United States Postal Service with a forwarding address for the recipient, Navient shall re-mail the Notice to that forwarding address.

If an email is returned to Navient as undeliverable, Navient shall have no obligation to attempt to find an alternate email address.

5.5      Navient shall use commercially reasonable efforts (through the same skip-tracing or other methods Navient uses in the ordinary course of its business to locate addresses for borrowers from who it is attempting to collect on student loans) to obtain a valid address for every Class Member whose Notice is returned to Navient as undeliverable without the provision by the Postal Service of any forwarding address. Navient shall remail the Class Notice to all such Class Members at any new addresses Navient is able to locate through this process.

5.6      To the extent Navient is unable to determine a valid mailing address for any Class Member through the process set forth above, Navient shall send a text message to any cell phone number that Navient has on file for that Class Member stating: "You may be entitled to obtain valuable benefits from Navient under a class action settlement applicable to one or more of your student loans. Please contact us immediately to provide us a valid address to which we can mail you the details of this settlement"; and/or (c) place up to three (3) phone calls to each phone number Navient has on file for that Class Member to communicate (either to the person answering the call or on a voicemail message): "You may be entitled to obtain valuable benefits from Navient under a class action settlement applicable to one or more of your student loans. Please contact us immediately to provide us a valid address to which we can mail you the details of this settlement." Navient shall remail the Class Notice to any new addresses Navient is able to obtain through this process.

5.7      Navient shall provide to Class Counsel all email addresses and phone numbers that Navient has on file for those Class Members for whom, through the processes outlined above, Navient has been unable to obtain valid mailing addresses. Class Counsel shall then attempt to

contact all such Class Members by emailing, texting, and calling them to obtain valid addresses to which the Class Notice could be mailed. Class Counsel shall mail and/or email the Class Notice to all Class Members for whom they are able to obtain valid addresses through these efforts.

5.8     Navient shall provide to Class Counsel all mailing addresses, email addresses, and phone numbers that Navient has on file for those Class Members who have Conditional Refund Amounts listed on their Class Notices. Class Counsel may contact these Class Members to inform them of the need to return a Certification Form in order to obtain their Conditional Refund Amounts.

## VI. COVENANTS NOT TO SUE

6.1     The Class Representative, on behalf of himself and the Settlement Class Members, covenants and agrees: (i) not to file, commence, prosecute, intervene in, or participate in (as class a member or otherwise) any action in any jurisdiction based on or relating to any of the Released Claims, or the facts and circumstances alleged in the Complaint, against any of the Released Parties; (ii) not to organize or solicit the participation of Settlement Class Members, or persons who would otherwise fall within the definition of the Settlement Class but who requested to be excluded from the Settlement Class, in a separate class for purposes of pursuing any action (including by seeking to amend a pending complaint to include class allegations, or seeking class certification in a pending action in any jurisdiction) based on or relating to any of the Released Claims or the facts and circumstances alleged in the Complaint, against any of the Released Parties; and (iii) that the foregoing covenants and this Agreement shall be a complete defense in any action that any Releasor may hereafter assert on any of the Released Claims against any of the Releasees.

## VII. REPRESENTATIONS AND WARRANTIES

7.1      The Class Representative represents and warrants that he has not assigned or otherwise transferred any interest in any of the Released Claims against any of the Released Parties. The Class Representative further covenants that he will not hereafter assign or otherwise transfer any interest in any of the Class Representative's Released Claims.

7.2      The Class Representative represents and warrants that he has no surviving claim or cause of action against any of the Released Parties with respect to any of the Released Claims.

7.3      The Parties, and each of them on his, her, or its own behalf, represent and warrant that they are voluntarily entering into the Settlement Agreement as a result of arm's-length negotiations among their counsel; that in executing the Settlement Agreement, they are relying solely upon their own judgment, belief, and knowledge, and the advice and recommendations of their own independently selected counsel, concerning the nature, extent and duration of their rights and claims hereunder and regarding all matters which relate in any way to the subject matter hereof; and that, except as provided herein, they have not been influenced to any extent whatsoever in executing the Agreement by representations, statements, or omissions pertaining to any of the foregoing matters by any Party or by any person representing any Party. Each of the Parties assumes the risk of mistake as to facts or law.

## VIII. RELEASES

8.1      On the Effective Date, Releasors, including but not limited to the Class Representative, on his own behalf and on behalf of each Settlement Class Member, by operation of this Release and the Order of Final Approval, do hereby and shall be deemed to have fully, finally, conclusively, irrevocably, and forever released, settled, compromised, relinquished, and discharged any and all of the Releasees of and from any and all Released Claims and, without

further action by any person or the District Court, will be deemed: (a) to have consented to dismissal of the Action and the dismissal with prejudice of any and all Released Claims; (b) to have released and forever discharged any and all Released Claims; and (c) to be forever barred and enjoined from instituting or further prosecuting, in any forum whatsoever, including but not limited to any state, federal, or foreign court, or regulatory agency, or any arbitration forum, each and every Released Claim. The Parties agree that the Releasees will suffer irreparable harm if any Settlement Class Member takes action inconsistent with this paragraph, and that, in that event, the Releasees may seek an injunction as to such action without further showing of irreparable harm in this or any other forum.

8.2     The Releasors acknowledge and agree that they are aware that they may hereafter discover material or immaterial facts in addition to or different from those which they now know or believe to be true with respect to the subject matter of this Release; that it is possible that unknown facts, losses or claims exist; and that known losses may have been underestimated in amount or severity. This was explicitly taken into account in connection with this Agreement. It is the Releasors' intention to, and they do hereby, upon the Effective Date of this Agreement, fully, finally, and forever settle and release each and every one of the Releasees from each and every Released Claim.

8.3     Subject to District Court approval, each Settlement Class Member shall be bound by this Agreement and all of their Released Claims shall be dismissed with prejudice and released even if they never received actual, prior notice of the Action or the Settlement in the form of the Notice or otherwise. The Release and agreements contained in this Section VIII shall apply to and bind all Settlement Class Members, including those Settlement Class Members whose Notices are returned as undeliverable, and those for whom no current address can be found.

8.4     On the Effective Date, Releasors hereby release the Releasees from each and every Released Claim.

8.5     Promptly after the Effective Date, Settlement Class Members shall dismiss with prejudice all claims, actions or proceedings that are released pursuant to this Agreement. In the event any such actions, or proceedings are not dismissed and Navient learns of the action, Navient may provide notice to the Settlement Class Member of this Settlement and request dismissal of the action.

## IX. OPT OUT RIGHTS

9.1     A Class Member who wishes to be excluded from the Settlement Class must do so in writing. In order to opt out, the Class Member must complete and mail to Navient, at the address listed in the Class Notice, a written Request to Opt Out that is postmarked no later than the Opt-Out Deadline. The Request to Opt Out must: (a) identify the case name; (b) identify the name and address of the person requesting exclusion; (c) be personally signed by the person requesting exclusion; and (d) contain a statement that indicates a desire to be excluded from the Settlement Class, such as "I hereby request that I be excluded from the proposed Settlement Class in the Action." Mass or class opt outs shall be void.

9.2     Any Class Member who does not opt out of the Settlement in the manner described herein shall be deemed to be a Settlement Class Member upon the expiration of the Opt-Out Deadline and shall be bound by all subsequent proceedings, orders, and judgments.

9.3     Any Class Member who desires to opt out must submit a timely written Request to Opt Out pursuant to this section, even if the person desiring to opt out of the Class (a) files or has filed a separate action against any of the Released Parties, or (b) is, or becomes, a putative or actual class member in any other class action filed against any of the Released Parties.

9.4     Any Class Member who properly opts out of the Settlement Class shall not: (a) be bound by any orders or judgments relating to the Settlement; (b) be entitled to any relief under, or be affected by, the Agreement; (c) gain any rights by virtue of the Agreement; or (d) be entitled to object to any aspect of the Settlement.

9.5     Navient shall provide Class Counsel with a list of all timely Requests to Opt Out within seven (7) business days after the Opt-Out Deadline.

9.6     Notwithstanding the foregoing, a Class Member shall have the right to revoke a properly and timely submitted request for exclusion by mailing a notice of the Class Member's election to revoke his or her Request to Opt Out to the address set forth in the Class Notice. Any such relocation request must be postmarked on or before the Opt-Out Deadline.

## X. OBJECTIONS

10.1     Any Settlement Class Member may object to the Settlement. To object, the Settlement Class Member must comply with the procedures and deadlines in this Agreement.

10.2     Any Settlement Class Member who wishes to object to the Settlement must do so in writing on or before the Objection Deadline, as specified in the Class Notice and Preliminary Approval Order. The written objection must be filed with the Clerk of Court, and mailed (with the requisite postmark) to Class Counsel and Defendants' Counsel (at the addresses identified in Section XIX), no later than the Objection Deadline.

10.3     The requirements to assert a valid written objection shall be set forth in the Class Notice. To be valid, the written objection must include: (a) the case name and number; (b) the name, address, telephone number of the Settlement Class Member objecting and, if represented by counsel, of his/her counsel; (c) the basis for objection; and (d) a statement of whether he/she intends to appear at the Final Approval Hearing, either with or without counsel.

10.4     Any Settlement Class Member who fails to object to the Settlement in the manner described in the Class Notice and consistent with this section shall be deemed to have waived any such objection, shall not be permitted to object to any terms or approval of the Settlement at the Final Approval Hearing, and shall be foreclosed from seeking any review of the Settlement or the terms of the Agreement by appeal or other means.

10.5     Subject to approval of the District Court, any Settlement Class Member who files and serves a written objection in accordance with this section and the Class Notice may appear, in person or by counsel, at the Final Approval Hearing held by the District Court, to show cause why the proposed Settlement should not be approved as fair, adequate, and reasonable, but only if the objecting Settlement Class Member: (a) files with the Clerk of the District Court a Notice of Intention to Appear at the Final Approval Hearing by the Objection Deadline; and (b) serves the Notice of Intention to Appear on all counsel designated in the Class Notice by the Objection Deadline.

10.6     The Notice of Intention to Appear must include copies of any papers, exhibits, or other evidence that the objecting Settlement Class Member will present to the Court in connection with the Final Approval Hearing.

10.7     Any Settlement Class Member who does not file a Notice of Intention to Appear in accordance with the deadlines and other specifications set forth in the Agreement and the Class Notice shall not be entitled to appear at the Final Approval Hearing or raise any objections.

## XI. TERMINATION

11.1     Upon the occurrence of a Termination Event described in subparts (a) through (d) of Paragraph 1.60, this Agreement shall automatically terminate. Upon the occurrence of a Termination Event described in subpart (e) of Paragraph 1.60, Navient (but not the Class

27

Representative) shall have the option to declare that this Agreement has terminated. In either case, upon termination, this Agreement shall be deemed null and void and the Parties shall return to the status quo that existed in the Action before execution of this Agreement, as if the Parties had never entered into the Agreement. In such event, this Agreement and all of the negotiations, orders, and proceedings relating to the Agreement shall be without prejudice to the rights of the Parties. If this Agreement terminates pursuant to this section, neither this Agreement nor any proceedings related to it (including, without limitation, any entry of the Preliminary Approval Order or any preliminary certification of a class) may be relied on, referred to, or used by anyone in any way for any purpose in connection with further proceedings in this Action or in any other action, lawsuit, arbitration, or proceeding.

## XII. CERTIFICATION OF SETTLEMENT CLASS FOR SETTLEMENT PURPOSES

12.1    After the Preliminary Approval Order and no later than twenty-one (21) days before the Final Approval Hearing, the Class Representative shall move for final approval of the Settlement and entry of the Order of Final Approval and shall request that the preliminary certification of the Settlement Class for settlement purposes be made final.

12.2    If the Settlement is not granted final approval and the Order of Final Approval is not entered in substantially the form and substance attached hereto as Exhibit 4, the certification of the above-described Settlement Class shall be automatically vacated and shall not constitute evidence or a binding determination that the requirements for certification of a class for any other purposes in this or any other action can be or have been satisfied. In such circumstances, Defendants reserve and shall have all rights to challenge certification of a Settlement Class or any other class for any other purpose in the Action or any other action on all available grounds as if no Settlement Class had been certified.

## XIII. ATTORNEYS' FEES

13.1     Class Counsel may seek preliminary approval from the Bankruptcy Court and final approval from the District Court for an award of Attorneys' Fees in the Action in an amount not to exceed $3,650,000. Class Counsel agree that such amount shall fully and fairly compensate them for all legal work in the Action, whether conducted before or after entry of the Order of Final Approval. Navient shall pay to Class Counsel the Attorneys' Fees allowed by the District Court in the Order of Final Approval within thirty (30) days after the Effective Date up to the amount of $3,650,000. In the event the District Court awards Class Counsel less than $3,650,000 in Attorneys' Fees, this Agreement shall nonetheless remain in full force and effect and the other benefits or payments due or to become due shall not be increased or changed. In no event shall Navient be obligated to pay Attorneys' Fees in an amount greater than $3,650,000. Navient shall have no responsibility for allocation or distribution of Attorneys' Fees among Class Counsel.

13.2     Any order or proceedings relating to the application for Attorneys' Fees or any appeal from any order relating thereto or reversal or modification thereof will not operate to terminate or cancel this Agreement or affect or delay implementation of any other aspect of the Settlement.

13.3     Class Counsel shall cooperate with Navient to provide all information necessary to process the payment of Attorneys' Fees including completing any requested tax forms (*e.g.,* IRS Form W-9 and applicable tax identification numbers). Navient shall have no responsibility for, and no liability whatsoever with respect to, any tax obligations or any allocation among the Class Representative and Class Counsel, and/or any other person who may assert some claim thereto, of any award or payment made in this Action or pursuant to this Agreement, including but not limited to any award or payment pursuant to this Section XIII. Class Counsel and the Class Representative

shall alone be responsible for the reporting and payment of any federal, state, and/or local income or other form of tax on any payment made pursuant to this Section XIII. No party shall be deemed the prevailing party for any other purposes of the Action.

## XIV. LITIGATION COSTS AND EXPENSES (OTHER THAN ATTORNEYS' FEES)

14.1     Class Counsel may seek preliminary approval from the Bankruptcy Court and final approval from the District Court for an award of Litigation Expenses to Class Counsel to be paid solely and only from Restitution Amounts. Defendants shall not be liable to pay any portion of Litigation Expenses awarded by the District Court. The possibility of an award of Litigation Expenses, including the fact that any such award will operate to reduce the Restitution Amounts otherwise available to Settlement Class Members, shall be set forth in the Class Notice. Any Litigation Expenses awarded to Class Counsel to be paid from the Restitution Amounts shall be paid according to the procedure set forth in Section IV.

## XV. STAY OF DISCOVERY AND OTHER PROCEEDINGS

15.1     To the extent the Action has not already been stayed by the Bankruptcy Court, upon execution of this Agreement, the Parties shall discontinue all discovery activity or related proceedings in the Action.

15.2     To the extent the Action has not already been stayed by the Bankruptcy Court, upon the entry of the Preliminary Approval Order, the Parties agree that the Bankruptcy Court should stay and suspend all proceedings in the Action, but excluding proceedings that may be necessary to carry out the terms and conditions of the Agreement.

15.3     Upon the Effective Date, and notwithstanding any of the other provisions in this Agreement, the Defendants shall have no obligation to preserve documents and evidence with respect to Released Claims. The Class Representative and Class Counsel shall not pursue any

spoliation claims or other actions or sanctions against Defendants with respect to documents or evidence related to the Released Claims.

## XVI. MEDIA AND CONFIDENTIALITY

16.1    The Parties, including their counsel, agree that the terms of this Settlement shall remain confidential and shall not be publicly disclosed by any Party until the Settlement Agreement is filed in connection with the Class Representative's motion for preliminary approval.

16.2    The Parties, including their counsel, agree that they shall not at any time publish or issue a press release or public announcement (including but not limited to any announcement to any media outlet or on the Internet) concerning the Settlement. The Parties further agree that they shall not make any statement, with or without attribution, in response to any media inquiries concerning the Action, Defendants, or the Settlement. In response to any inquiries about such matters, the Parties shall refer the inquiring person to the papers filed in the court docket and uploaded to the website NavientClassAction.com. As a matter of clarification, any communications by Class Counsel to Class Members pursuant to Sections 5.7 and 5.8 of this Agreement shall not be deemed to be public announcements or press releases.

## XVII. RESERVATION OF RIGHTS

17.1    Certain borrowers on Private Student Loans who received discharges outside of the United States Court of Appeals for the Fifth Circuit are pursuing claims against Navient based on legal arguments that are similar in some respects to those asserted by the Class Representative in the Action. Some (but not all) of those borrowers are represented by Class Counsel.

17.2    Navient contends that the claims of borrowers who received discharges outside of the United States Court of Appeals for the Fifth Circuit present substantive and procedural issues and considerations that are materially different from those that exist in the Action. In light of those

differences, Navient contends that this Agreement should establish no precedent, either legally or practically, for the resolution of any claims by borrowers on Private Student Loans who received discharges outside of the United States Court of Appeals for the Fifth Circuit.

17.3 Navient reserves the right to assert all defenses and objections (substantive and procedural) to any existing or future claims asserted by borrowers who received discharges outside of the United States Court of Appeals for the Fifth Circuit, whether such borrowers are represented by Class Counsel or otherwise. In particular, but without limitation, Navient reserves the right to assert that: (a) Private Student Loans are non-dischargeable under 11 U.S.C. § 523(a)(8)(A)(ii) as obligations to repay funds received as educational benefits; (b) claims for violations of discharge injunctions are not susceptible, outside of the settlement context, of being resolved on a class basis; (c) courts lack authority, outside of a settlement context, to enforce discharge orders (by contempt or otherwise) that were issued by courts in other judicial districts; and (d) in the event of discharge violations, borrowers on Private Student Loans are not necessarily entitled to restitution of all post-discharge payments made by them on discharged loans.

17.4   Navient has entered into this Settlement based on Class Counsel's agreement that the existence and terms of this Agreement will not be admissible against Navient in any other action or proceeding or used by Class Counsel in any way to suggest that Navient is estopped or foreclosed from asserting any positions or defenses in any other actions. By entering into this Agreement, Class Counsel acknowledge and agree that this Agreement and Settlement impact only the Action and shall establish no precedent applicable to any other existing or future actions against Navient. Any existing or future lawsuits or proceedings against Navient (other than the Action) shall be litigated and resolved as if this Agreement and this Settlement did not exist.

## XVIII. NOTICES

18.1    All notices (other than the Class Notice and those for which other instructions are set forth herein) required or permitted by this Agreement shall be made in writing and communicated by mail and email to the following addresses:

All notices to the Class Representative or to Class Counsel shall be sent to:

Jason W. Burge
Fishman Haygood LLP
201 St. Charles Avenue, 46th Floor
New Orleans, Louisiana 70170
(504) 586-5252
jburge@fishmanhaygood.com

All notices to Defendants or to Defendants' Counsel shall be sent to:

Thomas M. Farrell
McGuireWoods LLP
600 Travis Street, Suite 7500
Houston, Texas 77002
(713) 571-9191
tfarrell@mcguirewoods.com

## XIX. MISCELLANEOUS PROVISIONS

19.1    Cooperation. The Parties: (a) acknowledge that it is their intent to consummate this Agreement; and (b) agree to cooperate to the extent reasonably necessary to effect and implement all terms and conditions of the Agreement and to exercise their best efforts to accomplish the foregoing terms and conditions of the Agreement.

19.2    No Admission. The Agreement compromises claims which are contested in good faith. The Agreement shall not be deemed an admission by any of the Parties as to the merits of any claim or defense. The Parties agree that the relief provided in the Settlement and the other terms of the Agreement were negotiated in good faith by the Parties and at arm's length and reflect a Settlement that was reached voluntarily after consultation with competent legal counsel. Neither the Agreement nor the Settlement, nor any act performed or document executed pursuant to, or in

furtherance of, the Agreement or the Settlement: (a) is or may be used as an admission of, or evidence of, the validity of any Released Claim, or of any wrongdoing or liability of the Releasees, or any of them; (b) is or may be used as an admission that, or evidence that, the requirements for class certification have been or can be satisfied in any other case or proceeding; or (c) is or may be used as an admission of, or evidence of, any fault or omission of the Releasees, or any of them, in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal. The Class Representative and Class Counsel agree not to argue or present any argument, and hereby waive any argument, that Defendants could not contest (or are estopped from contesting) class certification on any grounds if this Action were to proceed. This Agreement shall not be deemed an admission by, or ground for estoppel against, Defendants that class certification and/or proceeding collectively is proper in this Action or in any other action, lawsuit, or proceeding.

19.3    Exhibits. All of the exhibits to the Agreement are material and integral parts hereof and are fully incorporated herein by this reference.

19.4    Amendment/Modification. The Agreement may be amended or modified only by a written instrument signed by or on behalf of all Parties or their respective successors-in-interest. The waiver by one Party of any breach of this Agreement by any other Party shall not be deemed a waiver of any other prior or subsequent breach of this Agreement. Class Counsel, on behalf of the Class, are expressly authorized by the Class Representative to take all appropriate action required or permitted to be taken by the Class pursuant to the Agreement to effect its terms, and also are expressly authorized to enter into any modifications or amendments to the Agreement on behalf of the Class which they deem appropriate. Any amendment or modification occurring after entry of the Preliminary Approval Order shall require court approval.

19.5     Entire Agreement. The Agreement and the related documents entered at the time of this Agreement or referenced herein constitute the entire agreement among the Parties hereto concerning the settlement of the Action. No representations, warranties, or inducements have been made to any party concerning the Agreement or its exhibits other than the representations, warranties, and covenants contained and memorialized in such documents. Except as otherwise provided herein, each Party shall bear its own costs and attorneys' fees.

19.6     Authority. Each person executing the Agreement or any of its exhibits on behalf of any Party hereto hereby warrants that such person has the full authority to do so.

19.7     Counterparts. The Agreement may be executed in one or more counterparts, including by signature transmitted by facsimile or by email in PDF format. All executed counterparts and each of them shall be deemed to be one and the same instrument.

19.8     Successors and Assigns. The Agreement shall be binding upon, and inures to the benefit of, the heirs, executors, successors, and assigns of the Parties, the Releasors and the Releasees; but this Agreement is not designed to and does not create any third-party beneficiaries.

19.9     No Third-Party Rights or Beneficiaries. Except as expressly provided for herein, no government agency or official or any other person or entity can claim any rights under this Agreement or the Settlement. There are no third party beneficiaries created or implied.

19.10     Jurisdiction. The District Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Agreement. All Parties and all Settlement Class Members hereto submit to the jurisdiction of the District Court for purposes of implementing and enforcing the Settlement embodied in the Agreement.

19.11     Governing Law. The Agreement and the exhibits hereto shall be considered to have been negotiated, executed, and delivered, and to have been wholly performed, in the State of Texas.

The rights and obligations of the Parties to the Agreement shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of Texas without giving effect to that State's choice of law principles.

19.12  Drafting. The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against either Party. No Party shall be deemed the drafter of this Agreement. The Parties acknowledge that the terms of the Agreement are contractual and are the product of negotiations between the Parties and their counsel. Each Party and its counsel cooperated in the drafting and preparation of the Agreement. In any construction to be made of the Agreement, the Agreement shall not be construed against any Party and any canon of contract interpretation to the contrary shall not be applied.

19.13  Recitals. The recitals set forth above shall be and hereby are terms of this Agreement. The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

19.14  No Collateral Attack. Upon entry of the Order of Final Approval, this Agreement shall not be subject to collateral attack by any Class Member or Settlement Class Member.

19.15  Obligation to Meet and Confer. Before filing any motion raising a dispute arising out of this Agreement or the implementation of the Settlement, the Parties shall confer in good faith in an attempt to resolve any pending issues.

19.16  Delegation of Administrative Tasks. Any administrative task associated with implementing the Settlement that is assigned in this Agreement to Navient may be delegated by Navient to and performed by Defendants' Counsel.  Navient shall be responsible for paying any fees incurred by Defendants' Counsel in this regard.

Dated: _____, 2021        CLASS REPRESENTATIVE
                                       EVAN BRIAN CROCKER


                                       By: _____
                                        EVAN BRIAN CROCKER


Dated: _Aug 4, 2021_____, 2021      NAVIENT SOLUTIONS LLC

                                            *Matt Sheldon*
                                       By: _____


Dated: _Aug 4, 2021_____, 2021      NAVIENT CREDIT FINANCE
                                       CORPORATION

                                            *Matt Sheldon*
                                       By: _____

Dated: _8/4/2021_____, 2021        CLASS REPRESENTATIVE
EVAN BRIAN CROCKER


By: _*Evan Crocker*_____
  EVAN BRIAN CROCKER



Dated: _____, 2021        NAVIENT SOLUTIONS LLC


By: _____



Dated: _____, 2021        NAVIENT CREDIT FINANCE
CORPORATION


By: _____

## <u>INDEX OF EXHIBITS</u>

Exhibit 1                     Audit Notice

Exhibit 2                     Covered Loan List

Exhibit 3                     Class Notice

Exhibit 4                     Order of Final Approval

Exhibit 5                     Preliminary Approval Order

Exhibit 6                     Rejection Notice

148065183_1